May 20, 2016

<u>VIA ELECTRONIC FILING</u>
The Honorable Josephine L. Staton
U.S.D.C., Central District of California
411 W. Fourth Street, Courtroom 10A
Santa Ana, California 92701

   **Re**: *In re Vizio, Inc. Consumer Privacy Litig.*, No. 16-ml-02693-JLS(KESx)
     This Document Relates to: ALL ACTIONS

Dear Judge Staton:

  Pursuant to the Court's Order and Federal Rule 23(g), I, Eve-Lynn J. Rapp of Edelson PC ("EPC") and counsel for Plaintiff Palma Reed, respectfully request appointment as co-lead class counsel in this action, along with C Brooks Cutter. of Cutter Law P.C. and Robert Shelquist of Lockridge Grindal Nauen P.L.L.P. ("Proposed Co-Lead Counsel"), and an Executive Committee chaired by Keller Rohrback LLP and comprised of the attorneys referenced in Ex. A. This structure has the most support of all the cases (13) that have been filed—as well as the most plaintiffs (20)—and will allow for the vigorous and effective litigation of this matter.

## I. I Readily Satisfy the Criteria for Appointment Identified by the Court.

  **Criteria 1:** **Knowledge and experience prosecuting similar complex cases.**

First and foremost, my law firm, Edelson PC, has the most experience—by a wide margin—litigating and settling claims under the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"). Indeed, my firm has litigated 24 cases involving the VPPA, and Michigan's state analogue, the Michigan Video Rental Privacy Act ("VRPA"), Mich. Comp. Laws §§ 445.1711 *et seq*. EPC, for example, secured the very first VPPA class settlement in the nation based on the unlawful retention of personally identifiable information, where my firm was also appointed lead over consolidated cases, *see In re Netflix Privacy Litig.*, No. 11-CV-00379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013), and, more recently, the very first VPPA appellate victory. *See Yershov v. Gannett Satellite Information Network, Inc.*, No. 15-1719, --F.3d. --, 2016 WL 1719825 (1st Cir. April 29, 2016). EPC has also secured first-of-their-kind results under the VRPA. *See, e.g., Halaburda v. Bauer Publishing Co.*, No. 12-cv-12831, Dkt. 68 (E.D. Mich. Jan. 6, 2015) (first ever VRPA class settlement); *Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524 (E.D. Mich. 2015) (first ever VRPA adversarial class certified).

  Moreover, approximately 80% of my firm's practice is focused upon privacy related issues, and we have achieved landmark decisions in this space, including most recently, in the case of *Spokeo, Inc. v. Robins*, where, for the first time in the privacy context, the United States Supreme Court held that intangible harm can be sufficient to satisfy Article III's injury-in-fact requirement. No. 13-1339, 2016 WL 2842447, at *7-8 (U.S. May 16, 2016) ("Although tangible injuries are [ ] easier to recognize . . . intangible injuries can nevertheless be concrete"). None of the other firms seeking

leadership positions here (nor any other firm in the country) has the institutional and practical knowledge demonstrated by these—and other—cases.

With respect to my specific experience, I am a Partner at EPC with a proven commitment to zealously litigating consumer privacy class actions. (*See* Ex. B.) Notable examples—among the 20+ consumer- and privacy-related class actions I've led, litigated, or settled—include *Birchmeier et al. v. Caribbean Cruise Line, Inc.*, No. 12-cv-0469 (N.D. Ill.) (where EPC was appointed co-lead over three consolidated cases, and I lead the efforts to win certification of the largest-ever adversarial TCPA class and partial summary judgment) and *Clark et al v. Gannet Co., Inc.*, No. 16-CH-0663 (Cir. Ct. Cook Cnty. Ill.) (where I recently negotiated, and am seeking preliminary approval of, a $13.8 million non-reversionary, *pro rata* fund of 2.5 million individuals). (*See also* Ex. B (listing additional cases).)

Outside of our specific VPPA experience, EPC has been recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country." *In re Facebook Privacy Litig.*, No. 10-02389, Dkt. 69 at 5 (N.D. Cal. Dec. 10, 2010). Simply put, EPC has obtained the most decisive decisions—and negotiated the most influential settlements—for consumer privacy class actions. *See, e.g., Dunstan v. comScore*, No. 11-cv-5807 (N.D. Ill.) (EPC secured adversarial certification of largest ever privacy class certified under federal privacy statutes and secured $14 million settlement, where claimants received nearly $600 each); *Resnick v. AvMed*, 10-cv-24513 (S.D. Fla.) (EPC secured key appellate win and first-ever data breach class settlement where *all* claimants received cash payments); *In re Facebook Biometric Info. Privacy Litig.*, 15-cv-3747 (N.D. Cal.) (EPC secured landmark ruling under Illinois Biometric Information Privacy Act, defeating Rule 12 and 56 motions).

**Criteria 2, 3 & 4**: **Willingness and ability to immediately commit to time-consuming litigation, ability to work cooperatively, and access to substantial resources.** To date, I have contributed substantial time and resources to this case (and will, of course, continue to do so) and have demonstrated my ability to work cooperatively and for the benefit of the class(es). For example, prior to consolidation, EPC worked with counsel for Defendant to secure and produce key information (e.g., witness lists and insurance policies) to *all* plaintiffs' counsel involved in this litigation. These and other efforts—including, for example, (i) coordinating various plaintiffs' responses to the motion to transfer, (ii) organizing an in-person meeting with Vizio's counsel in Washington D.C., and (iii) generally scheduling and conducting meetings amongst the various plaintiffs' firms—reflect my and EPC's willingness and ability to work cooperatively in a MDL (and multi-firm) environment. Indeed, each of EPC's experiences in a MDL leadership setting has emphasized the need for and importance of cooperation and collaboration, from the very first stages of the case and through class certification, merits' adjudication, and settlement. And here, I have built a

consensus amongst the majority of the other plaintiffs' lawyers (*see* Ex. A)—none of whom we have a financial agreement with—that will be vital to prosecuting this MDL.

## II. Judges & Mediators Before Whom I've Appeared in Complex Matters.

- **The Hon. Matthew Kennelly** (312-435-5618). Judge Kennelly is overseeing my work in *Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12-cv-0469 (N.D. Ill.).
- **The Honorable Jose Linares** (973-645-6042). Judge Linares is overseeing my work in *Oliver v. Funai Corp.*, No. 14-cv-04532 (D.N.J.).
- **The Hon. Cathy Waldor, Magistrate** (973-776-7862). Judge Waldor oversaw my work in *Casagrand v. Gannet Co. Inc.*, No. 14-cv-00022, before it was refiled.
- **The Hon. Rebecca Thorson** (651-848-1210). Judge Thorson is overseeing my work in *Kran v. Hearst Newspapers, LLC*, No. 15-cv-02058 (D. Minn.).
- **Mediators:** The Hon. Edward Infante (Ret.), JAMS (415-982-5267); The Hon. Wayne Andersen (Ret.), JAMS (312-655-0555); The Hon. Morton Denlow (Ret.), JAMS (same); Rodney Max, Upchurch Watson White & Max (305-266-1224).

## III. Other Considerations that Qualify Me for a Leadership Role.

The ability to understand and analyze Vizio's Tracking Software is crucial to successfully litigating—and resolving—these actions. To this end, EPC employs an *in-house* team of digital forensic analysts that assist attorneys on privacy related investigations, including source code review, spyware and network traffic analysis. Before filing our case, these analysts examined Vizio's TVs on secure, isolated networks, which provided the factual basis for EPC's novel and detailed allegations (many of which were copied, often verbatim, in the various cases that followed). The availability of this team—and their experience in working directly with attorneys on active litigations—will be an invaluable resource for the class.

## IV.  The Proposed Attorneys Fee Rates and Fund Percentages to be Sought.

The Court has requested a proposal regarding attorney fees for class counsel. The Ninth Circuit precedent considers percentage awards in the range of 20% to 33 1/3% of the total settlement value to be reasonable, with an award equaling 25% of the common fund as the "benchmark." *Ching v. Siemens Indus.*, 2014 U.S. Dist. LEXIS 89002, *26, 2014 WL 2926210 (N.D. Cal. June 27, 2014). Assuming a common fund is created, I believe that range would apply to this case, and that a "sliding scale" percentage could be appropriate as the size of any common fund increases, especially if it is a large common fund. Such a determination would also be based upon the appropriate retrospective analysis of the results achieved, the time and resources required, and the risk incurred in reaching that result.

Respectfully submitted,

Eve-Lynn J. Rapp
Eve-Lynn J. Rapp