Eric H. Gibbs (Bar No. 178658)
Andre Mura (Bar No. 298541)
Linda Lam (Bar No. 301461)
**GIRARD GIBBS LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel:  (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amm@classlawgroup.com
lpl@classlawgroup.com

Joseph W. Cotchett (Bar No. 36324)
Adam J. Zapala (Bar No. 245748)
Gwendolyn R. Giblin (Bar No. 181973)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel:  (650) 697-6000
Fax: (650) 697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
ggiblin@cpmlegal.com

*Co-lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| IN RE: VIZIO, INC., CONSUMER PRIVACY LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | Case No. 8:16-ml-02693-JLS (KESx)<br><br>**CONSOLIDATED COMPLAINT**<br><br>Hon. Josephine L. Staton |

Plaintiffs Dieisha Hodges, Rory Zufolo, William DeLaurentis, John Walsh, Chris Rizzitello, and Linda Thomson on behalf of themselves and all others similarly situated, allege the following against Defendants VIZIO, Inc.; VIZIO Holdings, Inc.; VIZIO Inscape Technologies, LLC; and VIZIO Inscape Services, LLC (collectively referred to as "VIZIO") in this Consolidated Complaint:

## I.    INTRODUCTION AND SUMMARY OF CASE

1.    If you own a VIZIO Smart TV, Friday night movie night in the privacy of your home is a surprisingly public affair. This is because VIZIO Smart TVs watch what you're watching while you're watching it.

2.    VIZIO collects highly specific data about consumers' viewing histories and preferences through invasive software secretly installed on millions of its Smart TVs. It then discloses this data to advertisers and media content providers so they can deliver targeted advertisements. These targeted ads are sent not just to the Smart TVs, but also to any smartphones, tablets, PCs, or other devices within the home that share the same Internet connection as the Smart TV.

3.    Monetizing consumer data is a critical part of VIZIO's business plan. The television market is saturated and highly competitive. VIZIO's growth strategy hinges not only on sales of its Smart TVs, but also on its ability to profit from the collection and disclosure of a rich portfolio of consumer data, including personal viewing histories and preferences, among other information.

4.    In essence, VIZIO's business plan treats consumers as VIZIO's very own Nielsen family. The critical difference is that, unlike VIZIO consumers, Nielsen family members agree to share their viewing habits and are paid for their participation.

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

5.     VIZIO single-handedly and deceptively created "a community of over 8 million VIZIO connected units, or VCUs," referring to Internet-connected Smart TVs that transmit data that is collected by VIZIO's Inscape software.[1]

6.     This is community by conscription, not consent.  The data collection software—Smart Interactivity—is turned "on" by default. Consumers of VIZIO's Smart TVs are therefore automatically included in this community. No other major television manufacturer—not Samsung, not LG Electronics— tracks users' viewing habits unless they affirmatively elect to share their sensitive information.

7.     Though consumers may turn off Smart Interactivity, VIZIO obscures that option to discourage opt-outs. Even assuming consumers discovered that VIZIO was collecting their viewing data and then managed to navigate the opt-out process, the opt-out function was broken during much of the relevant time period. An independent investigation by security software company Avast, published in the fall of 2015, found that the "off" function was not operational "for months, if not years. That means consumer data has been shared without consent for this entire span of time."[2]

8.     VIZIO disclosed extensive consumer data to advertisers, data brokers, media content providers, and other third parties. That information included viewing history and other information particularly useful to uniquely identify individuals. Such information includes, but is not limited to, the online services a consumer visited and the presence of a consumer's other Internet-connected devices.  VIZIO also disclosed consumers' Internet Protocol (IP) addresses, media access control (MAC) addresses, and zip codes. This personally identifiable information can be used to pinpoint a consumer's physical location (*i.e.*, "geolocation" information).

---

[1] VIZIO Form S-1 Registration Statement, https://www.sec.gov/Archives/edgar/data/1648158/000119312515262817/d946612ds1.htm#toc946612_2 (last visited Aug. 11, 2016).

[2] Aaron McSorley, *The Anatomy of an IoT Hack*, https://blog.avast.com/2015/11/11/the-anatomy-of-an-iot-hack/#more-38414 (last visited Aug. 11, 2016).

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

9.      VIZIO knows advertisers and data brokers can and do connect these dots. And yet VIZIO falsely and deceptively tells consumers that the information it discloses along with viewing habits cannot be traced back to them. For instance, it characterizes the information it discloses as "non-personal" or "anonymous" information even though it uniquely identifies individuals and their viewing habits.

10.      Because a large number of opt-outs would threaten VIZIO's ability to profit from its Inscape data services business, VIZIO purposefully omits information about Inscape data collection practices or Smart Interactivity in advertising, marketing, or television packaging. VIZIO's Smart TV packaging, for example, touts its "connectivity," by which it means the ability of the television to deliver programing available through the Internet and also from cable and satellite providers, streaming devices, and other connected media sources. Nowhere on its packaging, however, does VIZIO tell consumers that it discloses to advertisers and data brokers their viewing histories and information used to link them to their viewing histories. Neither does VIZIO disclose this in advertising and marketing.

11.      Any reference to Inscape data services or Smart Interactivity which may (or may not) be found in obscure sections of its website, in some (but not all) iterations of its privacy policies, or pop-ups which may appear on the television screen and then quickly disappear, is not an adequate disclosure. Such disclosures are hard to find, tough to understand, fleeting, or buried alongside other ads or messages to minimize their significance and implications.

12.      Plaintiffs are consumers of VIZIO's Smart TVs who did not consent to this invasive data collection program. They bring this putative class action suit against VIZIO to enforce their and other VIZIO owners' privacy and consumer rights under federal and state law.

13.      The privacy violations occur because VIZIO has collected and disclosed Plaintiffs' sensitive viewing histories and personal information without their consent. The movies or television consumers watch may reveal sensitive information suggestive of

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

their politics, religious views, or sexuality—in other words, their most personal and intimate details. As Congress itself has recognized, "films are the intellectual vitamins that fuel the growth of individual thought."[3] The "intimate process" of "intellectual growth is one of privacy" which "should be protected from the disruptive intrusion of a roving eye."[4] VIZIO has violated the federal and state privacy rights of its consumers by, intercepting, collecting, and disclosing their sensitive viewing histories, and information capable of linking them to their viewing histories, without their consent.

14.     In addition, VIZIO's affirmative misrepresentations and material omissions regarding its data collection program and invasive tracking software are false, deceptive, and misleading in violation of state consumer protection laws. Had Plaintiffs known the truth about VIZIO's data collection practices and tracking software, they would not have purchased Smart TVs or would have paid less for them.

15.     These harms are independently actionable and justify the relief sought here, including statutory damages, actual damages, and restitution. In addition, because VIZIO continues to collect sensitive consumer data without consent and has not changed its practice of automatically including consumers in the Inscape data collection program, equitable relief, including an injunction, is appropriate here.

## II.     PARTIES

### A. Plaintiffs

16.     Plaintiff Dieisha Hodges is a resident of Oakland, California. Ms. Hodges purchased a VIZIO Smart TV, Model No. E550i-A0, in Oakland, California. Ms. Hodges connected her VIZIO Smart TV to the Internet via a Wi-Fi connection shortly after purchasing it, and used the Netflix, Hulu, and YouTube "apps" on the television to stream video content. She also uses her Smart TV to watch cable provided by Xfinity. Ms. Hodges connects her Smart TV to a PlayStation 3 and Google Chromecast. When

---

[3] Committee Report, S. Rep. 100-599, at 7 (Oct. 21, 1988) (citing Senate Judiciary Subcommittee on Technology and the Law, Hearing Tr. at 10 (Aug. 3, 1988)).
[4] *Id.*

1  Ms. Hodges purchased her Smart TV, she was not aware that VIZIO would collect her

2  viewing data and disseminate that information to third parties. After she learned of this

3  by reading an online article, Ms. Hodges tried to find a way to disable the tracking

4  software on her television.

5       17.   Plaintiff Rory Zufolo is a resident of Oxnard, California. Mr. Zufolo

6  purchased a VIZIO Smart TV, Model No. M552i-B2, in Oxnard, California. Mr. Zufolo

7  connected his VIZIO Smart TV to the Internet via a Wi-Fi connection shortly after

8  purchasing it and used the Netflix, Amazon, Hulu, and YouTube "apps" on the television

9  to stream video content. Mr. Zufolo also uses his Smart TV to watch cable provided by

10  Time Warner. Up until September 2015, he watched television provided by DirecTV. He

11  occasionally connects his Smart TV to a Xbox or PlayStation. When Mr. Zufolo

12  purchased his Smart TV, he was not aware that VIZIO would collect his viewing data and

13  disseminate that information to third parties. After he learned of this, he stopped using the

14  television to stream videos through Netflix and other apps.

15       18.   Plaintiff William DeLaurentis is a resident of Beverly Hills, Florida. Mr.

16  DeLaurentis purchased a VIZIO Smart TV, Model No. P502UI-B1, in Lecanto, Florida.

17  Mr. DeLaurentis connected his VIZIO Smart TV to the Internet via a Wi-Fi connection

18  shortly after purchasing it, and used the Netflix, Amazon, and YouTube "apps" on the

19  television to stream video content. Mr. DeLaurentis also connects his Smart TV to a

20  Roku, DVD player, and Xbox. When Mr. DeLaurentis purchased his Smart TV, he was

21  not aware that VIZIO would collect his viewing data and disseminate that information to

22  third parties. After he learned of this, he proceeded to learn how to deactivate the data

23  collection and sought a workaround by purchasing and using a Roku to stream video

24  content.

25       19.   Plaintiff John Walsh is a resident of Boston, Massachusetts. Mr. Walsh

26  purchased a VIZIO Smart TV, Model No. E400i-B2, in Boston, Massachusetts. Mr.

27  Walsh connected his Smart TV to the Internet via an Ethernet cable connection shortly

28  after purchasing it, and used it to stream video content from the Netflix and YouTube

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

"apps." Mr. Walsh also uses his Smart TV to watch cable provided by Comcast, and connects his Smart TV to a DVD receiver that also has TiVo. When Mr. Walsh purchased his Smart TV, he was not aware that VIZIO would collect his viewing data and disseminate that information to third parties. After he learned of this, he disconnected his Smart TV from the Internet in order to prevent the collection of his viewing data. On January 13, 2016, Mr. Walsh, through his counsel, sent VIZIO a written demand letter detailing the acts and practices complained of herein and the injury suffered. VIZIO responded with a letter denying all allegations.

20.   Plaintiff Chris Rizzitello is a resident of Cairo, New York. Mr. Rizzitello purchased a VIZIO Smart TV, Model No. M422I-B1, at a Walmart location in Catskill, New York. Mr. Rizzitello connected his VIZIO Smart TV to the Internet via a Wi-Fi connection shortly after purchasing it, and used the YouTube and other media apps to stream video content. Mr. Rizzitello also connects his Smart TV to a PlayStation 4 and Raspberry PI3. When Mr. Rizzitello purchased his Smart TV, he was not aware that VIZIO would collect his viewing data and disseminate that information to third parties. After he learned of this, he stopped using the Smart TV to watch videos on the YouTube app, disconnected the television from the Internet, and, when he learned he could do so, turned off the Smart Interactivity feature.

21.   Plaintiff Linda Thomson is a resident of Bellingham, Washington. Ms. Thomson purchased a VIZIO Smart TV, Model No. M702iB3, in Bellingham, Washington. Ms. Thomson connected her Smart TV to the Internet shortly after purchasing it and has since used it to watch movies and television shows from the Amazon app. She also uses her Smart TV to watch cable provided by Xfinity and/or Comcast. When Ms. Thomson purchased her Smart TV, she was not aware that VIZIO would collect her viewing data and disseminate that information to third parties. After she learned of this, she refrained from using certain apps on her Smart TV. Shortly after she filed her lawsuit, Ms. Thomson saw a message pop up on her Smart TV regarding privacy settings. The message disappeared before should could read it through, and she

6

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

has not found a way to retrieve the message. She believes the message pertained to the privacy issues involved in this case.

22.   When shopping for their Smart TVs, Plaintiffs looked at the description of the televisions provided on the boxes in which their VIZIO Smart TVs were packaged. The packaging for the VIZIO Smart TVs described its features and indicated that the televisions were equipped to deliver video content through the Internet and could display content from cable and satellite providers, streaming devices, and other connected media sources. The packaging, however, failed to inform Plaintiffs that if they took advantage of those features or watched live broadcast programming on their Smart TVs, their viewing data would be collected by VIZIO and disseminated to third parties. Had Plaintiffs known the truth about VIZIO's collection and dissemination of Plaintiffs' viewing data, Plaintiffs would not have purchased, or would have paid less for, their VIZIO Smart TVs.

23.   At no time did Plaintiffs consent to having their viewing information collected and disseminated to third parties.

**B. Defendants**

24.   Defendant VIZIO, Inc. is a California corporation that maintains its principal place of business at 39 Tesla, Irvine, California. VIZIO, Inc. is registered to conduct business in California. VIZIO, Inc. designs, markets, and distributes for sale consumer electronic devices, including Smart TVs, throughout the United States, including in this District.

25.   Defendant VIZIO Holdings, Inc. is a Delaware corporation that maintains its principal place of business at 39 Tesla, Irvine, California.

26.   Defendant VIZIO Inscape Technologies, LLC, formerly known as Cognitive Media Networks, Inc., is a Delaware corporation that maintains its principal place of business at 39 Tesla, Irvine, California. VIZIO Inscape Technologies, LLC conducts business throughout the United States, including in this District.

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

27.   Defendant VIZIO Inscape Services, LLC is a Delaware corporation that maintains its principal place of business at 39 Tesla, Irvine, California. VIZIO Inscape Services, LLC is registered to conduct business in California.

28.   Defendants acted as one, jointly, collectively, or in concert unless a particular Defendant is identified by its full name.

### III.   JURISDICTION AND VENUE

29.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as this action arises under a federal statute. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

30.   This Court also has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because: (i) at least one Plaintiff is a citizen of a different state than the Defendants; (ii) the amount in controversy exceeds $5,000,000; and (iii) there are at least 100 individuals in the putative class that Plaintiffs seek to represent through this action.

31.   This Court has personal jurisdiction over Defendants because Defendants regularly conduct business in California, are present and licensed to conduct business in California, and because the events giving rise to this lawsuit occurred, in substantial part, in California.

32.   Venue is proper in this District pursuant to 28 U.S.C. 1391(b) because Defendant VIZIO is headquartered in this District, Defendants conduct substantial business in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

### IV.   FACTUAL ALLEGATIONS

#### Smart TVs

33.   Since the mid-2000s, Smart TVs have become increasingly popular in the United States. A Smart TV is essentially a technological cross between a computer and a television. Aside from the traditional function of a television set, a Smart TV is also equipped with integrated software applications that allow users to access the Internet, and

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

on-demand services such as Netflix, Hulu, and Pandora, and other online media content, such as Facebook and Twitter.

34.   Although Smart TVs are more expensive than traditional television sets, Smart TVs are popular because they are equipped to deliver movies and television shows on an on-demand basis, including programming that may not be conventionally available (*e.g.*, broadcast on network or cable television).

**VIZIO's Business Platform**

35.   VIZIO is a consumer electronics company headquartered in Irvine, California. Since its founding in 2002, it has sold over 65 million television and audio sets. VIZIO sells its products in over 8,000 retail stores throughout the United States, including large chains such as Costco, Sam's Club, Walmart, and Best Buy. In 2014, it held the second-largest market share of Smart TVs in the country.

36.   VIZIO has developed a business platform that rests on three pillars.

37.   The first is its line of connected entertainment products, which include Smart TVs and audio products.

38.   The second is its discovery and engagement software, called either VIZIO Internet Apps (and Apps Plus) or SmartCast, which delivers video and audio content.

39.   The third is Inscape data services, which uses automatic content recognition technology to capture, in real time, up to 100 billion viewing data points each day from over 8 million VIZIO Smart TVs. VIZIO calls its automatic content recognition technology "Smart Interactivity."



CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

40.   According to VIZIO, there is a market opportunity for audience and advertisement measurement. In 2014, the total global market spent on the industry was approximately $1.9 billion. Competitors in the market for viewing behavior data and analysis include well-established companies such as A.C. Nielsen and Rentrak.



41.   VIZIO believes the principal competitive factors impacting the market for its Inscape data services are the quality and accuracy of its data, the timeliness of its data, and the amount and level of detailed information and insight its data provides. "Advertisers and media content providers are looking for access to accurate, real-time data regarding consumer preferences and behaviors so they can better measure and increase their return on content creation and advertising spend."[5] VIZIO has partnered with media and analytics companies to provide them with user data.

---

[5] VIZIO Form S-1 Registration Statement at 90, https://www.sec.gov/Archives/edgar/data/1648158/000119312515262817/d946612ds1.htm#toc946612_2 (last visited Aug. 11, 2016).

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

42.   To monetize its data collection platform, VIZIO has developed partnerships with advertisers, media content and analytics providers, and brands. VIZIO's business growth is, by its own account, highly dependent on the success of its Inscape data services. VIZIO has sought to distinguish itself from market competitors such as Nielsen by designing its Inscape data services to provide data of such quantity and quality to be highly valuable to advertisers. According to VIZIO, its current user base of 8 million Smart TVs reflects U.S. census demographics and provides more accurate viewing behavior data in real time than any other brand.

### VIZIO'S Collection and Dissemination of Viewing Histories and Personally Identifiable Information Is Critical to Its Business Model

43.   For the years 2013, 2014, and through the third quarter of 2015, VIZIO's reported net income was $25.7 million, $45.0 million, and $44.3 million, respectively.[6] VIZIO generates billions of dollars in annual revenues, demonstrating that it has slim margins. VIZIO attributes a substantial portion of its net income to sales of its Smart TVs. To make up for these slim margins, VIZIO sought to develop a new source of revenue by monetizing the viewing habits of its millions of customers and settling that information to advertisers without adequately disclosure to its customers.

44.   VIZIO has recognized the threat to its business model that exists if consumers were to understand its tracking software.  In an October 2015 filing with the Securities and Exchange Commission regarding its initial public offering, VIZIO revealed its concern that its customers might react negatively to the surreptitious collection of their data: "Our customers may also object to or opt out of the collection and use of their data, which may harm our business."

### VIZIO's Data Collection Software and Program

45.   *Discovery and engagement software.* VIZIO delivers video content through VIZIO Internet Apps, Internet Apps Plus, and SmartCast. This software allows consumers to access programming available on Netflix, Hulu, YouTube, and Amazon Instant Video, among others. VIZIO Internet Apps, Internet Apps Plus, and SmartCast

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

1   are software that are pre-installed on the television or installed through software updates.

2   In turn, Netflix, Hulu, YouTube and Amazon Instant Video and the like are entertainment

3   companies that create, produce, or license video programming either for free, for rent, or

4   as part of a paid subscription.

5       46.   The VIZIO Internet Apps and Internet Apps Plus user interface displays a

6   streamlined App Launcher that allows users to select available programming. The app

7   may also be accessed through the VIZIO Smart TV remote.

 

19      47.   Certain VIZIO Smart TVs use "SmartCast" to deliver movies, TV shows, live

20  streams and more across multiple apps at once. SmartCast is VIZIO's latest delivery

21  engagement software. It can be used on a tablet remote that comes with the television.

22  This technology allows a user to watch programming on the tablet remote, or to "cast," or

23  display, content from the tablet remote to the television display or speakers.

24      48.   This software is also available for use on a smartphone through the VIZIO

25  SmartCast App, which is available for download for free from the Apple App Store or

26  Google Play. This technology also "casts" content from a smartphone to the Smart TV.

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

 

49.   *Inscape data services.* Inscape captures real-time viewing behavior data from VIZIO Smart TVs—up to 100 billion viewing data points each day—thereby enabling VIZIO to provide this data to advertisers and media content providers, who in turn delivered and re-targeted advertisements. Ad re-targeting is the process of pushing ads to consumers based on their previous interactions with that ad, in situations where the consumers' first view of the ad did not result in a sale or conversion.

50.   This data program is powered by automatic content recognition (ACR) technology, which is designed to recognize attributes of the content displayed on VIZIO Smart TVs and match those attributes to a database of existing content, such as movies, TV shows, and games.

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

51.   VIZIO calls its ACR technology "Smart Interactivity." Smart Interactivity software was designed by Cognitive Media Networks, Inc. VIZIO acquired Cognitive Media in August 2015.

52.   Using Smart Interactivity software, the Inscape program is able to collect, aggregate, and store data regarding most content displayed on VIZIO Smart TVs, including content from cable and satellite providers, streaming devices, and gaming consoles. In fact, Inscape collects viewing data behavior from all media sources that connect via external input to the Smart TVs—for example, set top boxes, digital video recorders, streaming media players, Blu-ray and DVD players and gaming consoles.



53.   Based upon the findings of an investigation conducted by journalists at ProPublica, VIZIO's technology is said to be "watching you." VIZIO's data collection includes, but is not limited to, data related to publicly available content displayed on VIZIO Smart TVs, such as the identity of a broadcast, cable, or satellite television provider, and the television programs and commercials viewed (including time, date, channel, and whether they were viewed live or at a later time).

54.   Inscape also collects consumers' IP addresses (which are unique identifiers assigned to personal digital devices such as laptops, tablets, and Smart TVs), zip codes,

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

and online services visited by the consumer, as well as MAC addresses, product model numbers, hardware and software versions, chipset IDs, and region and language settings, among other information. In turn, this information can be used to learn even more about the user, including demographic details such as age, profession, and wealth indicators.

55.   For SmartCast users, Inscape collects the above and also:  (1) information about what video or audio is playing on the Smart TV, tablet remote, or mobile phone using the SmartCast App; and (2) programming choices requested, the date and time of these choices, user-initiated searches, content consumers browse while using the SmartCast tablet, or other commands communicated to the SmartCast Products through the SmartCast App.

56.   SmartCast app users may create a myVIZIO account or log into an existing myVIZIO/Fandemonium account.

57.    For SmartCast users, VIZIO associates the data collected with any myVIZIO account profile, which includes a first and last name and e-mail address.

58.   VIZIO then discloses the associated data described above to advertisers and data brokers, and other third parties, including its partners.

**Smart Interactivity**

59.   VIZIO initiated the Smart Interactivity feature in or about February 2014 through an "over-the-air" update. It also began pre-installing Smart Interactivity software on its Smart TVs in or around that same time.

60.   Unlike its competitors, VIZIO's default policy is to turn on this data collection feature on all of its Smart TVs.

61.   This default 'on' setting differentiates VIZIO from competing television manufacturers such as Samsung and LG Electronics, who only track users' viewing habits if users voluntarily turn the feature on. Unless a Samsung or LG consumer opts into the data collection program, those companies will not collect the consumer's personal viewing histories. VIZIO consumers, by contrast, must opt out of the data collection feature to avoid having their personal viewing habits collected.

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

62.   In its Prospectus, VIZIO brags about the scope and detail of the data collected and sold and its potential advertising profits as follows:

> Our Inscape data services capture, in real time, up to 100 billion anonymized viewing data points each day from our over 10 million VCUs [(VIZIO connected units)]. Inscape collects, aggregates and stores data regarding most content displayed on VCU television screens, including content from cable and satellite providers, streaming devices and gaming consoles. Inscape provides ***highly specific viewing behavior*** data on a massive scale with great accuracy, which can be used to generate intelligent insights for advertisers and media content providers and to drive their delivery of more relevant, personalized content through our VCUs.

63.   VIZIO refers to the information it surreptitiously collects as "Non-Personal Information," which VIZIO describes as "data in a form that does not, on its own, permit direct association with any specific individual."  As alleged, this includes, but is not limited to, the IP addresses products that are assigned to users' internet-connected devices, their zip codes, the online services they visit, information about their VIZIO products (such as MAC addresses, product model numbers, hardware and software versions, chipset IDs, and region and language settings), as well as information about the products users request or purchase, the presence of other devices connected to their local networks, and the number of users and frequency of use of VIZIO products and services. VIZIO also collects "anonymous information regarding customer activities on our websites, on Internet-connected products and services, and on VIZIO's Internet store."

64.   Although VIZIO claims that the information collected is non-personal, technical experts have challenged this characterization. For example, Extreme Tech's website contains the following excerpt from an article authored by Joel Hruska on November 10, 2015.

> "Non-personally identifiable information" is a contradiction in terms, particularly when the companies in question have access to mobile data. The entire point of VIZIO's advertising push is

16

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

to sell this information to companies so they can track you on multiple devices. In order to do that, they're going to need to find those devices. If an advertiser can pick up on the fact that you watch, say, Arrow in order to send you ads enticing you to watch The Flash, then that advertiser effectively knows who you are.[6]

65.   If a consumer wanted to opt out, that option was not functional for a considerable period of time during the relevant time period. According to an independent investigation by security software company Avast, published in the fall of 2015, the "off" function was not operational "for months, if not years. That means consumer data has been shared without consent for this entire span of time."[7]

66.   If a VIZIO Smart TV is ever reset to factory settings, either intentionally or inadvertently through an update or power failure, the TV will return to its default settings, thereby reactivating the Smart Interactivity feature.

67.   Although intending to profit from selling personal information to third parties without consent, VIZIO itself recognized potential privacy law concerns. VIZIO stated the following:

We collect, process, store, use and to some extent disclose information collected from or about purchasers and users of our products, and from the devices themselves. **The collection and use of personal information**, and analysis and sharing of anonymous user data and unique identifiers to inform advertising or analyze viewing behaviors subject us to legislative and regulatory burdens, may expose us to liability, and our actual or perceived failure to adequately protect consumer data could harm our brand, our reputation in the marketplace and our business.

Privacy laws and regulations, if drafted or interpreted broadly, could be deemed to apply to the technologies we use to collect, analyze and share viewing behaviors or other data collected from our Smart TVs or

---

[6] Joel Hruska, "Vizio TVs Caught Tracking Viewing Habits, Selling Data to Advertisers." ExtremeTech (Nov. 10, 2015) (available at http://www.extremetech.com/internet/217762 viziotvs-caught-tracking-viewing-habits-selling-data-to-advertisers) (emphasis in original)

[7] Joel Hruska, *New Vizio hack reveals company shares your data whether you accept its privacy policy or not*, http://www.extremetech.com/extreme/217923-new-vizio-hack-reveals-company-shares-your-data-whether-you-accept-its-privacy-policy-or-not (last visited Aug. 11, 2016).

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

consumers, and could restrict our information collection methods or decrease the amount and utility of the information that we would be permitted to collect and share. . . . In addition, a determination by a court or government agency that any of our practices, or those of our agents, do not meet these standards could result in liability, or result in negative publicity, and adversely affect our business

## VIZIO Knows the Information It Discloses Identifies Individual Viewers and Their Viewing Habits

68.   As discussed, the consumer data VIZIO discloses to advertisers, data brokers, media content providers, and other third parties, such as its partners, includes viewing history and information which identifies individuals. This information reveals sensitive geolocation information and is personally identifying.

69.   Media access control (MAC) addresses, for example, are unique 12-digit identifiers that are assigned to individual mobile devices, computers, Smart TVs, or other electronic devices. These addresses are tied to the devices' physical embedded chipsets and thus are persistent throughout the life of the device. MAC addresses are automatically broadcast when devices search for networks or communicate with other devices.

70.   MAC addresses often can be linked to individuals by name. For example, when you sign into a commercial WiFi hotspot, your MAC address is tied to the information you use to sign up for the service. Additionally, automatic WiFi probes also broadcast the names of the last networks a device has connected to, which can reveal additional information about the individual, such as the name of a home or work network.

71.   MAC addresses can be used to develop highly specific geolocation data. For example, retail analytics firms have used MAC addresses to pinpoint customer locations—a practice which the Federal Trade Commission ("FTC") has investigated.

72.   When VIZIO discloses MAC addresses of all the devices that connect to the same network as a VIZIO Smart TV, along with IP addresses, zip codes, the online services consumers visit, the presence of other devices connected to the consumer's local network, the number of users and frequency of use of VIZIO products and services, and

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

other information, the disclosure provides a "game plan" to associate individuals with their viewing habits. And for SmartCast consumers, the association of myVizio account information, which includes first and last name and e-mail addresses along with viewing data and other personal information, makes it especially easy for third parties to associate viewing habits with actual persons.

73. Though VIZIO falsely and misleading informs consumers that it provides only non-personal or anonymized information, and that viewing data cannot be linked to actual individuals, VIZIO knows that individuals and their viewing histories can be, and are easily being, identified and linked by the information VIZIO discloses.

74. In fact, individuals can be identified with far less information than what VIZIO discloses. A groundbreaking study published in 2000 revealed that three pieces of information—zip code, birth date (including year), and sex—uniquely identified 87 percent of the U.S. population.[8] Other studies have found similarly high rates of identification.[9]

75. At least since 2006, video service providers and data aggregators have known that the disclosure of viewing data not associated with individual names can nevertheless be associated with specific individuals. That year, Netflix released a data set representing the movies rated by over 480,000 Netflix customers and the date each rating was given. In an apparent effort by Netflix to anonymize the data, the company replaced customers' names with unique numbers and did not include addresses, phone numbers, or other direct identifiers.[10]

---

[8] Latanya Sweeney, *Uniqueness of Simple Demographics in the U.S. Population*, Carnegie Mellon University, School of Computer Science, Data Privacy Laboratory, Technical Report LIDAP-WP4 (2000).

[9] Philippe Golle, *Revisiting the Uniqueness of Simple Demographics in the US Population*, ACM Workshop on Privacy in the Elec. Society at 77, 78 (2006).

[10] March 12, 2010 Letter from Maneesha Mithal to Reed Freeman, https://www.ftc.gov/sites/default/files/ documents/closing_letters/netflix-inc. /100312netflixletter.pdf (last visited Aug. 11, 2016).

19

76.     Netflix released the data "as part of its Netflix Prize 1 contest ("Prize 1"), through which researchers competed to improve the algorithm Netflix uses to recommend movies to its subscribers. Netflix's algorithm takes into account past viewing habits and movie preferences of each of its subscribers."[11]

77.     Following the release of this data set, two researchers at the University of Texas announced that it was possible to identify a significant number of subscribers based on the data set released.[12] Using publicly-available movie reviews posted by Netflix subscribers on the popular site IMDb (www.imdb.com), "one could determine all of the Netflix movies that a subscriber had rated for a given period of time."[13] By way of example, the researchers were able to identify one user's movie choices, which may suggest facts about his or her politics ("Fahrenheit 9/11"), religious views ("Jesus of Nazareth"), or sexual preference ("Queer as Folk").

78.     Netflix nevertheless announced a second Prize contest in 2009. This time it planned to release an even more comprehensive data set of viewing habits and demographic information. In response, a group of Netflix customers filed a class action lawsuit, and the FTC warned Netflix that the second Prize contest raised privacy concerns as well as questions regarding whether its representations to consumers about its privacy policies were false or misleading under federal law. Netflix ultimately settled the private suit and agreed not to proceed with the contest as planned.

79.     VIZIO thus knows that third parties to whom it discloses this information, which includes its partners, can and do connect these dots. The linkage between viewing data and individuals is firm and readily foreseeable to VIZIO, in particular because the

---

[11] *Id.*

[12] Arvind Narayanan & Vitaly Shmatikov, *Robust De-anonymization of Large Sparse Datasets*, Proceedings of the 2008 IEEE Symposium on Security and Privacy at 111-123 (hereinafter "Netflix Prize Study"), https://www.cs.utexas.edu/~shmat/shmat_oak08netflix.pdf (last visited Aug. 11, 2016).

[13] Mithal Letter, *supra* note 8.

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

information it discloses is effectively a correlated look-up table, complete with geolocation data.

80.     As discussed, VIZIO has acknowledged to investors, but not consumers, that its activities may violate various privacy laws and regulations: "[W]e cannot assure you that our privacy policies and other statements regarding our practices will be sufficient to protect us from liability or adverse publicity relating to the privacy and security of information about consumers or their devices." Further, VIZIO has informed investors that it may be the subject of litigation over these practices.

**VIZIO's Product Packaging, Advertising, Marketing, Website, and Privacy Policy Are False or Misleading and Omit Material Information**

81.     In advertising and marketing, and on product packaging, VIZIO promotes the connectivity of its Smart TVs in two critical ways. First, it tells consumers that its Smart TVs have built-in WiFi and are Internet-enabled, and that its VIZIO Internet Apps (and Apps Plus), and SmartCast are a "passport to a world of entertainment, movies, TV shows and more." Next, it tells consumers its Smart TVs are "perfect for connecting all your high definition entertainment devices to the TV." This feature is often promoted through pictures of HDMI and USB ports.

82.     But VIZIO does not disclose that if consumers take advantage of those features and/or watch live broadcast programming on their Smart TVs, their viewing data will be collected by VIZIO and disseminated to third parties.

83.     Consider VIZIO's representations in product packaging.

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    84.    While the packaging on VIZIO's Smart TVs describe its features and
18 indicate that the televisions are equipped to deliver video content through the Internet and
19 can display content from cable and satellite providers, streaming devices, and other
20 connected media sources, the packaging fails to inform (let alone adequately inform)
21 consumers that if they take advantage of the TV's connectivity platform, their viewing
22 data and personal information will be collected and shared with others.
23    85.    Neither is Smart Interactivity and Inscape data services disclosed, let alone
24 adequately disclosed, during the set up process for VIZIO Smart TVs. On the televisions
25 themselves, any reference to Smart Interactivity is deeply embedded in an obscure
26 settings menu. This reference is displayed in small font that is limited to a fraction of the
27 screen size. This reference does not explain what Smart Interactivity is. A consumer
28 would have no reason to know to turn it off.

22

86.     Also, on the televisions, Smart Interactivity and Inscape are not adequately disclosed in any Privacy Policy which may be viewed on the screen. The Privacy Policy is buried within the "Reset & Admin" section of a Smart TV's settings menu, and is presented in extremely small font size.



87.     Smart Interactivity and Inscape are not adequately disclosed in marketing or advertising on VIZIO's website, either. VIZIO's website touts its Smart TVs connectivity but does not disclose that VIZIO will collect and disseminate viewing habits and personal information upon connection. In fact, Smart Interactivity and Inscape data services are conspicuously absent from VIZIO's online advertising for its entire M-Series and P-Series line.

88.     To find any mention of Smart Interactivity on VIZIO's website, a consumer would have to know to look for that term. What a consumer would find is VIZIO's statement that "Smart Interactivity intelligently recognizes the content on the screen in

23

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

order to determine which interactive features to display on your device. This allows viewers to enjoy additional, related content for a richer, more interactive TV experience." This statement is misleading and confusing in that it suggests that the collection and dissemination of viewing histories is for the benefit of the user, rather than a source of revenue for VIZIO, and does not disclose what Smart Interactivity actually does.

89.   VIZIO's privacy policies have been updated over time and are available on its website. In all iterations in which VIZIO discusses its data collection practices, its statements are false or misleading and omit material information.

90.   Critically, VIZIO falsely and deceptively tells consumers in its privacy policy that the information it discloses along with viewing habits cannot be traced back to consumers. It characterizes the information it discloses as "non-personal" or "anonymous" even though the information is useful for uniquely identifying individuals and their viewing habits.

91.   Relatedly, VIZIO also fails to adequately inform consumers about its data collection program, including that viewing data and personally identifiable information is being disclosed to third parties. The information disclosed is valuable and useful precisely because it is not anonymous but instead is personally identifying. VIZIO does not properly disclose that it sells this information to third party advertisers and data brokers.

92.   VIZIO gives consumers a false sense of security when it informs them it 'hashes' (i.e., transforms a string of characters into a shorter, fixed-length value that represents the original string) and replaces parts of IP addresses before sharing them with media and analytics partners. The FTC has criticized hashing as ineffective because it is so easy to circumvent. Free precomputed tables of known hashes (*i.e.*, rainbow tables) are available that make reversing known hashes practically instantaneous." Also, hashing generates a unique number that can be used to identify a device throughout its lifetime and is a process that can easily be reversed. Though VIZIO tells consumers in certain privacy policies that it takes measures to ensure that the data it discloses is securely

24

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

transmitted, in or around 2015, Avast security discovered that the information transmitted to Cognitive Networks was being transferred insecurely because of a "known exploit" in the software. According to VIZIO, that exploit was closed when the software was updated in 2015.

93.     Even today, Smart Interactivity and Inscape data services are also conspicuously absent from VIZIO's online advertising for entire product lines. VIZIO's website touts its Smart TVs connectivity but does not disclose that VIZIO will collect and disseminate viewing habits and personal information upon connection.

94.     Any reference to Inscape data services or Smart Interactivity which may (or may not) be found in obscure sections of its website, in some (but not all) iterations of its privacy policies, or pop-ups which appear on the television screen and then quickly disappear, are not adequate disclosures because they are hard to find, tough to understand, fleeting, or buried alongside other ads or messages in order to distract from the disclosures.

## V.     CLASS ACTION ALLEGATIONS

95.     Pursuant to Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and all Members of the Nationwide Class (the "Nationwide Class"), which shall initially be defined as:

> All individuals in the United States who purchased a VIZIO Smart TV with Smart Interactivity capability for personal or household use, and not for resale, during the applicable statute of limitations period.

96.     Additionally, or in the alternative, pursuant to Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and all Members of the California Class (the "California Class"), which shall initially be defined as:

> All persons in California who purchased a VIZIO Smart TV with Smart Interactivity capability for personal or household use, and not for resale, during the applicable statute of limitations period.

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

97.     Additionally, or in the alternative, pursuant to Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and all Members of the New York Class (the "New York Class"), which shall initially be defined as:

> All persons in New York who purchased a VIZIO Smart TV with Smart Interactivity capability for personal or household use, and not for resale, during the applicable statute of limitations period.

98.     Additionally, or in the alternative, pursuant to Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and all Members of the Florida Class (the "Florida Class"), which shall initially be defined as:

> All persons in Florida who purchased a VIZIO Smart TV with Smart Interactivity capability for personal or household use, and not for resale, during the applicable statute of limitations period.

99.     Additionally, or in the alternative, pursuant to Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and all members of the Massachusetts Class (the "Massachusetts Class"), which shall be initially defined as:

> All persons in Massachusetts who purchased a VIZIO Smart TV with Smart Interactivity capability for personal or household use, and not for resale, during the applicable statute of limitations period.

100.    Additionally, or in the alternative, pursuant to Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and all Members of the Washington Class (the "Washington Class"), which shall initially be defined as:

> All persons in Washington who purchased a VIZIO Smart TV with Smart Interactivity capability for personal or household use, and not for resale, during the applicable statute of limitations period.

101.    Excluded from the Classes are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants; officers, directors,

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Classes are any judge, justice, or judicial officer presiding over this matter, and the members of their immediate families and judicial staff.

102.    The Classes described in this Complaint may be jointly referred to as the "Class" and proposed Members of the Classes may be jointly referred to as "Class Members."

103.    Plaintiffs reserve the right to amend or modify the Class and/or Subclass definitions with greater specificity, further division into subclasses, or with limitation to particular issues as discovery and the orders of this Court warrant.

104.    The Court can define the Class and create additional subclasses as may be necessary or desirable to adjudicate common issues and claims of the Class Members if, based on discovery of additional facts, the need arises.

105.    Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief and damages appropriate with respect to the Class as a whole. Specifically, Defendants continue to obtain and disseminate sensitive viewing histories and personal information on an opt-in basis and without consent, and to date have not adequately disclosed the true nature of the VIZIO Smart TVs with integrated Smart Interactivity technology, including that the TVs collect and disseminate consumers' personal information.

106.    Numerosity and Ascertainability: The exact number of members of the Class is unknown as such information is unavailable to Plaintiffs at this time. However, Plaintiffs believe individual joinder in this case is impracticable. The Class likely consists of hundreds of thousands of individuals. These individuals can be readily ascertainable through Defendants or their agents' records and are obtainable to Plaintiffs only through the discovery process.

107.   <u>Predominance of Common Questions of Fact and Law</u>: Questions of law and fact common to all Class members exist and predominate over any questions affecting only individual Class members, including, but not limited to, the following:

a.   Whether Defendants unlawfully collected and disseminated Plaintiffs' and Class members' personal information;

b.   Whether Defendants disclosed to Plaintiffs and Class members before the tracking software was activated on their VIZIO Smart TVs that their personal information would be collected and disseminated to third parties;

c.   Whether Defendants misrepresented or omitted material facts with regard to the Smart Interactivity feature of the Smart TVs;

d.   Whether Plaintiffs and Class members consented to the collection of their personal information and its sale to third parties;

e.   Whether Plaintiffs and Class members have a reasonable expectation of privacy in the information collected and disseminated by Defendants;

f.   Whether Defendants' conduct constitutes violations of the laws and statutes asserted herein;

g.   Whether Defendants' conduct was knowing;

h.   Whether, as a result of Defendants' conduct, Plaintiff and Class members are entitled to damages, including compensatory, statutory, or punitive, and the amount of such damages;

i.   Whether, as a result of Defendants' conduct, Plaintiffs and Class members are entitled to equitable relief, such as declaratory or injunctive relief;

j.   Whether Defendants were unjustly enriched by their conduct;

k.   Whether, for the Nationwide Class noted above,  California has a significant contact to the claims of each class member to apply California law to all members of the Nationwide Class;

l.   Whether, for the Nationwide Class noted above, the Video Privacy Protection Act applies to all members of the Nationwide Class; and

28

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

m.   Whether, as a result of Defendants' conduct, Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, prejudgment interest, or costs of suit.

108.   Typicality: Plaintiffs' claims, and Defendants' defenses, are typical of the claims and defenses of and to the Class. Every member of the Class was similarly affected by Defendants' course of conduct and experienced the same harm, damages and loss based on Defendants' unlawful conduct. As such, Plaintiffs and Class members must establish the same facts in order to prove the claims asserted herein.

109.   Adequacy of Representation: Plaintiffs do not have any conflicts with any other members of the Class, and will fairly and adequately represent and protect the interests of the members of the Class and any other subclass. Plaintiffs have retained counsel competent and experienced in consumer protection and class action litigation, trials, and appeals.

110.   Superiority of a Class Action: A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of the individual litigation would make it impracticable or impossible for the Class members to prosecute their claims individually. Absent a class action, Defendants likely will retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for these wrongs. Absent a representative action, the Class members will continue to suffer losses and Defendants will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains. The trial and litigation of Plaintiffs' and Class members' claims are manageable. Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform court judgment. Thus, the benefits of proceeding as a class action outweigh the difficulties.

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

# VI.   CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710
### (On Behalf of All Plaintiffs and the Nationwide Class Against All Defendants)

111.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

112.   VIZIO is a video tape service provider subject to 18 U.S.C. § 2710(a)(4) of the Video Privacy Protection Act ("VPPA"). VIZIO is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" by delivering videos to consumers through its Internet-connected Smart TVs. VIZIO facilitates the transmission of specific video titles to be made to consumers through its VIA and VIA Plus services that allow consumers to watch movies and TV shows, listen to music, and access applications on demand.

113.   As users of VIZIO's Smart TVs, Plaintiffs and members of the Class are consumers within the definition of 18 U.S.C. § 2710(a)(1) of the VPPA.

114.   The collection of consumers' viewing information – including movies, shows, and programs viewed, IP addresses, media access control (MAC) addresses, zip codes, computer names, and product serial numbers – constitutes the collection of personally identifiable information ("PII") within 18 U.S.C. § 2710(a)(3), because it "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

115.   VIZIO has disclosed, and continues to disclose, PII to third-parties, including data brokers and advertisers, to generate revenue and profit.

116.   VIZIO failed to solicit and/or obtain consent from Plaintiffs and the Class members to collect and disclose their PII, nor did VIZIO provide clear and conspicuous notice of the disclosure of PII, as defined in 18 U.S.C. § 2710 (b)(2)(B).

30

117.   VIZIO's disclosures were not made in the ordinary course of business as defined by 18 U.S.C. § 2710(a)(2), which limits disclosures to "debt collection activities, order fulfillment, request processing, and the transfer of ownership."

118.   The knowing disclosure and transmission of PII violates the VPPA within the meaning of 18 U.S.C § 2710(b)(1).

119.   Accordingly, Plaintiffs and members of the Class are entitled under 18 U.S.C. § 2710(c)(2) to an award of damages (actual, liquidated, or punitive), reasonable attorneys' fees, other litigation costs reasonably incurred, and such other preliminary and equitable relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF

### Violation of the Wiretap Act, 18 U.S.C. § 2510 *et seq.*
### (On Behalf of All Plaintiffs and the Nationwide Class Against All Defendants)

120.   Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

121.   The Federal Wiretap Act, 18 U.S.C. § 2510 et seq., prohibits the interception of any wire, oral, or electronic communications. The statute confers a civil cause of action on "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a).

122.   "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce…" 18 U.S.C. § 2510(12).

123.   "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

124.   "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

125.   "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

126.   Plaintiffs and Class members are persons as defined under § 2510(6) of the Act.

127.   VIZIO's automated content recognition software, Smart Interactivity, is a device for purposes of the Wiretap Act because it is software used to intercept electronic communication.

128.   VIZIO, through its design, authorship, programming, knowing and intentional installation, activation, and/or other involvement with Smart Interactivity software and its Inscape data program has intentionally intercepted, endeavored to intercept, and/or procured others to intercept or endeavor to intercept, electronic communications as described herein, in violation of 18 U.S.C. § 2511(1)(a). This interception was acquired during transmission, as Smart Interactivity operated in real-time to acquire the content of Plaintiffs' and the Class members' electronic communications, including their viewing habits and identifying information, as described above.

129.   The contents intercepted include information concerning the substance, purport, or meaning of that communication, including, but not limited to, viewing histories and preferences, IP addresses, MAC addresses, zip codes, product model numbers, hardware and software versions, chipset IDs, and region and language settings.

130.   Plaintiffs' and the Class members' electronic communications were intercepted without their consent and for the unlawful and/or wrongful purpose of monetizing their private information, including by using their private information to create targeted advertisements for profit, without Class members' consent, and for tortious purposes and for the purpose of committing unfair business practices.

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

131.   As a result, Plaintiffs and Class members have suffered harm and injury, including due to the interception and transmission of private and personal, confidential, and sensitive communications, content, and data.

132.   Plaintiffs and the Class have been damaged by the interception or disclosure of their communications in violation of the Wiretap Act, as described herein, and are thus entitled to preliminary, equitable, or declaratory relief; statutory and punitive damages; and reasonable attorney's fees and litigations costs reasonably incurred. 18 U.S.C. § 2520(b).

## THIRD CLAIM FOR RELIEF

**Violation of California's Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*
(On Behalf Of Plaintiffs And The Nationwide Class
And Separately, On Behalf Of Plaintiffs Hodges and Zufolo And The California
Subclass Against All Defendants)**

133.   Plaintiffs incorporate all allegations of the preceding and succeeding paragraphs as though fully set forth herein.

134.   Under California's Invasion of Privacy Act ("CIPA"), it is unlawful to intentionally, willfully, and without consent tap or make any unauthorized connection by means of any machine, instrument, or contrivance, or in any other manner with any telegraph or telephone wire, line, cable, or instrument, in order to purposefully intercept a communication or its content that is in transit or passing over any wire, line, or cable, or is being sent from or received within California; and to use, attempt to use, or communicate any such information obtained by these means. See Cal. Penal Code § 631

135.   VIZIO, Cognitive Media Networks, and/or Inscape Technologies, LLC, which operate in California, intentionally, willfully, and without consent, made unauthorized connections with Plaintiffs' and Class members' Smart TVs to purposefully intercept communications in transit. See Cal. Penal Code § 631. The contents were then collected and/or analyzed by these entities.

136.   The contents intercepted include information concerning the substance, purport, or meaning of that communication, including, but not limited to, viewing

histories, online services visited by the consumer, IP addresses, MAC addresses, zip codes, product model numbers, hardware and software versions, chipset IDs, and region and language settings.

137.   Furthermore, VIZIO used, attempted to use, and communicated the information it obtained, through Smart Interactivity software and using its Inscape data services program, to data brokers and advertisers.

138.   Plaintiffs' and the Class members' electronic communications were intercepted without their consent and for the unlawful and/or wrongful purpose of monetizing their private information, and for tortious purposes and for the purpose of committing unfair business practices.

139.   As an actual and proximate result of the above actions, Plaintiffs and Class members have been injured and suffered actual damages in an amount to be determined at trial. For each violation of CIPA by VIZIO, Plaintiffs and Class members are entitled to damages pursuant California Penal Code § 637.2 of $5,000 or three times the amount of their actual damages (at their election). *See* Cal. Penal Code § 637.2. Plaintiffs and Class members are also entitled to injunctive relief, including, but not limited to, an order: (1) prohibiting VIZIO from collecting and then disclosing their and the Class' viewing histories and personal information in the future; (2) requiring it to inform existing and potential consumers of its Inscape data program and Smart Interactivity, including its very existence and true nature; and (3) requiring it to disable the Smart Interactivity software until consumers affirmatively consent (or opt in) to its use.

## FOURTH CLAIM FOR RELIEF

### Violations of California Civil Code § 1799.3
**(On Behalf Of Plaintiffs And The Nationwide Class
And Separately, On Behalf Of Plaintiffs Hodges and Zufolo And The California
Subclass Against All Defendants)**

140.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

---

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

141.   Plaintiffs Hodges and Zufolo reside, and bought their VIZIO Smart TVs, in California. They bring this claim on behalf of California Subclass members who live in California or who purchased their VIZIO Smart TV in California.

142.   California Civil Code § 1799.3(a) provides: "No person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."

143.   VIZIO is a "person providing video recording sales or rental services" because it facilitates the sale and rental of videos to consumers through its Internet connected Smart TVs.

144.   None of the exemptions provided by California Civil Code § 1799.3(b) apply.

145.   VIZIO has disclosed and continues to disclose personal information of Plaintiffs Hodges and Zufolo and members of the California Subclass, as well as the contents of records prepared or maintained by VIZIO to third parties. VIZIO initially discloses collected personal information and contents of records to third-party data brokers to "enhance" information collected through the tracking software with other demographic information about Plaintiff. VIZIO then discloses the "enhanced" personal information and contents of records to advertisers.

146.   At all times VIZIO has acted willfully.

147.   At no time did Plaintiffs Hodges and Zufolo or members of the California Class provide VIZIO with any form of consent allowing it to collect personal information and viewing records, nor to disclose personal information and viewing records to third parties.

148.   As a result of VIZIO's unlawful disclosures, Plaintiffs Hodges and Zufolo, the Nationwide Class, and the California Subclass have had their statutorily defined right to privacy violated. Plaintiffs Hodges and Zufolo seek an injunction which would, among

35

other things: (1) prohibit VIZIO from collecting and then disclosing their and the Class' viewing histories and personal information in the future; (2) inform existing and potential consumers of its Inscape data program and Smart Interactivity, including its very existence and true nature; and (3) disable the Smart Interactivity software until consumers affirmatively consent (or opt in) to its use

149.   Plaintiffs Hodges and Zufolo, the Nationwide Class, and the California Subclass also seek the maximum statutory and punitive damages available under California Civil Code § 1799.3(c)(1).

### FIFTH CLAIM FOR RELIEF
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf Of Plaintiffs And The Nationwide Class**
**And Separately, On Behalf Of Plaintiffs Hodges and Zufolo And The California**
**Subclass Against All Defendants)**

150.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

151.   Plaintiffs and each member of the Class are "consumers" as defined by Cal. Civ. Code § 1761(d).

152.   Defendants are each a "person" as defined by Cal. Civ. Code § 1761(c).

153.   Defendants' Smart TVs are "goods" as defined by Cal. Civ. Code § 1761(a).

154.   Defendants' sale of Smart TVs, to wholesalers and retailers constitutes transactions that were intended to result, or did result, in the sale of goods to consumers within the meaning of Cal. Civ. Code §§ 1761(e) and 1770(a).

155.   The CLRA protects consumers against unfair and deceptive practices, and is intended to provide an efficient means of securing such protection.

156.   Defendants violated the CLRA by engaging in unfair and deceptive practices, and by causing harm to Plaintiffs and the Class.

157.   Specifically, Defendants installed the tracking software on their Smart TVs, used that software to monitor and collect consumer data and viewing habits, and then sold the aggregated data to various third parties.

158.   Defendants did not, however, disclose to consumers the existence of the tracking software or the fact that the software collected consumers' data, and never obtained consumer consent to monitor, collect, and/or sell consumers' data.

159.   Defendants' failure to disclose the presence of the tracking software violated the CLRA in multiple ways:

a.   In violation of Cal. Civ. Code § 1770(a)(5), Defendants represented that their Smart TVs had characteristics, ingredients, uses, benefits, or quantities which they did not have;

b.   In violation of Cal. Civ. Code § 1770(a)(7), Defendants represented that their Smart TVs were of a particular standard, quality, or grade, when they were of another; and

c.   In violation of Cal. Civ. Code § 1770(a)(9), Defendants advertised their Smart TVs with the intent not to sell them as advertised.

d.   In violation of Cal. Civ. Code § 1770(a)(14), Defendants knowingly and intentionally withheld material information from Plaintiffs and the Class – namely that their Smart TV purchases would result in the collection and dissemination of their viewing history, in violation of their statutorily protected rights to privacy.

e.   In violation of Cal. Civ. Code § 1770(a)(16), Defendants represented that their Smart TVs were in full compliance with all governing federal and state consumer protection and privacy laws, when in fact they were not.

160.   Defendants' unfair or deceptive acts or practices were capable of deceiving a substantial portion of the purchasing public.

161.   Defendants did not disclose facts about the tracking software to consumers who purchased the Smart TVs because they knew consumers would not purchase the Smart TVs if they knew of the tracking software, and how Defendants would use that software.

162.    Defendants were under a duty to Plaintiffs and the Class to disclose that the Smart TVs contained the tracking software for several reasons including, but not limited to:

a.    Defendants were in a superior position to know that the tracking software was installed on the Smart TVs;

b.    Plaintiffs and the Class could not reasonably have been expected to learn or discover that Defendant included the tracking software on the Smart TVs, especially given the practices of VIZIO's competitors;

c.    Defendants knew Plaintiffs and the Class members could not reasonably have been expected to learn or discover that Defendants included the tracking software on the Smart TVs; and

d.    Defendants knew that Plaintiffs and the Class members would not purchase, or would pay much less for, the Smart TVs if they knew of the tracking software.

163.    By failing to disclose the Smart TVs' tracking software, Defendants knowingly and intentionally concealed material facts and breached their duty to Plaintiffs and the Classes.

164.    The facts concealed or not disclosed by Defendants to Plaintiffs and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase, or how much to pay for, the Smart TVs.

165.    Plaintiffs and the Class reasonably expected that their televisions would be free from tracking software.

166.    The existence of tracking software on a television is a material term for the purchase of a television, and a primary reason not to purchase a particular television.

167.    Defendants did not disclose facts about the tracking software to consumers that purchased the Smart TVs because they knew consumers, acting reasonably under the

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

circumstances, would not purchase, or would pay less for, the Smart TVs if the fact that tracking software was installed on the Smart TVs was disclosed prior to purchase.

168.   Through the omissions detailed herein, Defendants wrongfully induced Plaintiffs and the other members of the Class to purchase the Smart TVs when they otherwise would not have purchased, or paid less for, them.

169.   As a direct and proximate result of Defendants' violations of the CLRA, Plaintiffs and each Class member have suffered harm in the form of paying moneys to purchase the Smart TVs when they otherwise would not have purchased. Or paid less for, them.

170.   Pursuant to Cal. Civ. Code § 1780(a) and (b), Plaintiffs, individually and on behalf of the Classes, seek an injunction requiring Defendants to cease and desist the illegal conduct alleged in this Complaint, damages for Defendants' violations, and all other appropriate remedies for Defendants' violations of the CLRA.

171.   Pursuant to Cal. Civ. Code § 1782(a), Plaintiff Hodges served Defendants with notice of their alleged violations of the CLRA by certified mail return receipt requested on December 16, 2015.

172.   Defendants' conduct in (1) developing the software and technology capable of collecting consumers' viewing history and personally identifiable information on a massive scale, and (2) their scheme in disclosing this information to third parties, including advertisers, data brokers and data aggregators for profit without adequate disclosure to consumers, all emanated from California and has a substantial connection to the State of California.

**SIXTH CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf Of Plaintiffs And The Nationwide Class,**
**And Separately, On Behalf Of Plaintiffs Hodges and Zufolo And The California**
**Class)**

173.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

174.   The UCL protects consumers and competitors by promoting fair competition in commercial markets for goods and services.

175.   The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact.

176.   Defendants violated the UCL by engaging in unlawful, unfair and fraudulent business acts or practices.

177.   Defendants' conduct is unlawful because, as explained above, it violates the Video Privacy Protection Act (18 U.S.C. § 2710), the Wiretap Act (18 U.S.C. § 2510 et seq.), California's Invasion of Privacy Act (Penal Code § 630 et seq.), Cal. Civ. Code § 1799.3(a), California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.), California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 et seq.), Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 et seq.), New York General Business Law §§ 349, 350, and 670-675, Massachusetts' Unfair and Deceptive Trade Practices Statute (Massachusetts General Laws ch. 93A et seq.), Massachusetts' Video Records Protection Statute (Massachusetts General Laws ch. 93, § 106), Massachusetts' Statutory Right to Privacy (Massachusetts General Laws ch. 214, § 1B), Washington's Consumer Protection Act (Wash Rev. Code § 19.86 et seq.) and constitutes unjust enrichment, privacy based on intrusion, intentional misrepresentation and/or fraud by omission, and negligent misrepresentation and/or omission.

178.   Defendants' conduct is unfair because it is substantially injurious to consumers, and is immoral, unethical, oppressive and unscrupulous.  Defendants' conduct is not outweighed by any countervailing benefits to consumers or competition, and Defendants' conduct, and the harm it causes, is not reasonably avoidable by consumers.

179.   Defendants monitor, collect, and record consumer viewing habits and other information in order to sell it to third parties for profit, and do so without disclosing their

40

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

data practices to consumers or obtaining consumer consent for the collection or sale of consumer data.

180.   Had consumers known Defendants' Smart TVs employed software that monitored, collected and disseminated consumer viewing habits and other data, consumers would not have purchased, or would have paid less for Defendants' Smart TVs.

181.   Moreover, by surreptitiously monitoring, collecting, and recording consumer viewing habits and other information, and by selling, or otherwise disclosing, that information to third parties without consumer knowledge or consent, Defendants prevent consumers from avoiding Defendants' data practices, and prevent consumers from protecting their right to privacy and their right to control the dissemination of their personal information.

182.   Defendants knew or had reason to know that Plaintiffs and the Class could not have reasonably known or discovered the existence of the tracking software, without disclosure by Defendants.

183.   The injury to consumer privacy rights, and the causing of consumers to buy products they otherwise would not have purchased, or would have paid less for, outweighs the profit motive for Defendants' unauthorized and secretive monitoring, collection and dissemination of consumer data.

184.   Defendants' conduct is fraudulent because it is reasonably likely to deceive consumers.

185.   The specifications of a consumer product are a material term of any transaction in that they directly affect a consumer's choice and conduct in purchasing product.

186.   Despite the importance of specifications to consumer purchase decisions, Defendants do not disclose that their Smart TVs have the tracking software installed, and that the tracking software monitors, collects and disseminates consumer data.

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

187.   Defendants' failure to disclose this specification of their Smart TVs, as well as Defendant's failure to gain consumer authorization to allow Defendants to monitor and collect consumer information by use of the tracking software, deceived consumers into believing they were merely purchasing a benign entertainment device.

188.   Had Defendants disclosed to consumers that their Smart TVs employed the tracking software, and that consumer viewing habits and other information would be collected without consent or knowledge, consumers would not have bought, or would have paid less for, Defendants' Smart TVs, and also would have avoided Defendants' products and data practices.

189.   Defendants' unlawful, fraudulent and unfair conduct occurred during the marketing, distribution, and sale of Smart TVs, and therefore occurred in the course of Defendants' business practices.

190.   Defendants' conduct directly and proximately caused Plaintiffs and the Class actual monetary damages in the form of the price paid for the Smart TVs.

191.   Defendants' also profited from their unlawful, fraudulent and unfair conduct in that they obtained the personal information of Plaintiffs and Class members without their knowledge or consent, and then sold that information to third parties for profit.

192.   Had Defendants disclosed that their tracking software was installed and operating on the VIZIO Smart TVs, Plaintiffs and Class members would not have purchased the Smart TVs, or would have paid less for them.

193.   In fact, Defendants did not disclose facts about the tracking software to consumers that purchased the Smart TVs because they knew consumers, acting reasonably under the circumstances, would not purchase, or would pay less for, the Smart TVs if the fact that tracking software was installed on the Smart TVs was disclosed prior to purchase.

194.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seeks an order (1) requiring Defendants to cease the fraudulent and unfair practices described herein; (2) requiring Defendants to restore to Plaintiffs and each Class member any money acquired

by means of unfair competition (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

## SEVENTH CLAIM FOR RELIEF

**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*
**(On Behalf Of Plaintiffs And The Nationwide Class,**
**And Additionally, On Behalf Of Plaintiffs Hodges and Zufolo**
**The California Class)**

195.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

196.   The FAL prohibits corporations from intentionally disseminating advertisements for products or services that are "unfair, deceptive, untrue, or misleading." Cal. Bus. & Prof. Code §17500.

197.   As detailed herein, Defendants disseminated unfair, deceptive, untrue, and misleading advertisements because Defendants' advertising, marketing, and promotional materials do not disclose that the Smart TVs contain the tracking software.

198.   As explained above, a reasonable person is likely to be deceived by Defendants' omissions.

199.   Defendants knew or should have known when creating and disseminating advertisements without disclosing that the Smart TVs contain the tracking software that their advertising contained materially false and misleading information.

200.   On the boxes in which the Smart TVs were packaged, Defendants informed Plaintiffs that one would be able to stream and view video content from the Smart TVs, as well as connect the Smart TVs to other devices such as Blu-ray DVD players and gaming consoles. However, Defendants failed to further inform Plaintiffs that if they take advantage of these features and/or watch live broadcast programming on their Smart TVs, their viewing data is collected and disseminated to third parties. Had Plaintiffs known the full truth about Defendants' collection and dissemination of Defendants'

viewing data, Plaintiffs would not have purchased or would have paid less for their Smart TVs.

201.   Defendants' conduct directly and proximately caused Plaintiffs and the Class actual monetary damages in the form of the price paid for the Smart TVs.

202.   Plaintiffs seek an order (1) requiring Defendants to cease the false advertising practices described herein; (2) requiring Defendants to restore to Class members any money acquired by means of false advertising (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

## EIGHTH CLAIM FOR RELIEF

**Violation of Florida's Deceptive And Unfair Trade Practices Act ("FDUTPA")
Fla. Stat. § 501.201,** *et seq.*
**(On Behalf Of The Florida Class)**

203.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

204.   Plaintiffs and each member of the Class are "consumers" as defined by Fla. Stat. § 501.203(7).

205.   Defendants, through their conduct alleged herein, are engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

206.   The FDUTPA was enacted to protect consumers and businesses from unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

207.   To this end, the FDUTPA declares as unlawful all unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

208.   Defendants violated the FDUTPA because their conduct, as alleged herein, is deceptive and unfair.

209.   Defendants' conduct is deceptive because it is likely to mislead a reasonable consumer.

210. The specifications of a consumer product are a material term of any transaction in that they directly affect a consumer's choice and conduct in purchasing a product.

211. Despite the importance of specifications to consumer purchase decisions, Defendants do not disclose that their Smart TVs have the tracking software installed, and that the tracking software monitors, collects and disseminates consumer data.

212. On the boxes in which the Smart TVs were packaged, Defendants informed Plaintiffs that one would be able to stream and view video content from the Smart TVs, as well as connect the Smart TVs to other devices such as Blu-ray DVD players and gaming consoles. However, Defendants failed to inform Plaintiffs that if they take advantage of these features and/or watch live broadcast programming on their Smart TVs, their viewing data is collected and disseminated to third parties. Had Plaintiffs known the full truth about Defendants' collection and dissemination of Defendants' viewing data, Plaintiffs would not have purchased or would have paid less for their Smart TVs.

213. Defendants' failure to disclose these specifications of their Smart TVs, as well as Defendants' failure to gain consumer consent to allow Defendants to monitor and collect consumer information by use of the tracking software, deceived consumers into believing they were purchasing a benign entertainment device.

214. Had Defendants disclosed to consumers that their Smart TVs employed the tracking software, and that consumer viewing habits and other information would be collected and disseminated without consent or knowledge, consumers would not have bought, or would have paid less for, Defendants' Smart TVs and would have avoided Defendants' products and data practices.

215. In fact, Defendants did not disclose facts about the tracking software to consumers that purchased the Smart TVs because they knew consumers, acting reasonably under the circumstances, would not purchase, or would pay less for, the Smart

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

TVs if the fact that tracking software was installed on the Smart TVs was disclosed prior to purchase.

216.   Defendants' conduct is unfair because it offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

217.   Defendants' conduct offends established public policy because it violated 18 U.S.C. § 2710 and 18 U.S.C. § 2510 et seq., as explained above.

218.   Defendants' conduct is substantially injurious, and is immoral, unethical, oppressive and unscrupulous because Defendants monitor, collect, and record consumer viewing habits and other information in order to sell it to third parties for profit, and does so without disclosing its data practices to consumers or obtaining consumer consent for the collection and sale of consumer data.

219.   Had consumers known Defendants' Smart TVs employed software that monitored, collected and disseminated consumer viewing habits and other data, consumers would not have purchased, or would have paid less for, Defendants' Smart TVs.

220.   Moreover, by surreptitiously monitoring, collecting, and recording consumer viewing habits and other information, and by selling, or otherwise disclosing, that information to third parties without consumer knowledge or consent, Defendants prevent consumers from avoiding its data practices and from protecting their right to privacy and their right to control the dissemination of their personal information.

221.   Defendants knew or had reason to know that Plaintiffs and the Class could not have reasonably known or discovered the existence of the tracking software, without disclosure by Defendants.

222.   The injury to consumer privacy rights, and the causing of consumers to buy products they otherwise would have avoided, outweighs the profit motive and ultimate goal for Defendants' unauthorized and secretive monitoring, collection and dissemination of consumer data.

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

223. Defendants' deceptive and unfair conduct occurred during the marketing, distribution, and sale of Smart TVs, and therefore occurred in the course of Defendants' business practices.

224. Defendants' conduct directly and proximately caused Plaintiffs and the Class actual monetary damages in the form of the price paid for the Smart TVs.

225. If Defendants had disclosed that their tracking software was installed and operating on the VIZIO Smart TVs, Plaintiffs and Class members would not have purchased, or would have paid less for, the Smart TVs.

226. Pursuant to Fla. Stat. § 501.211, Plaintiffs seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to pay damages to Plaintiffs and the Class; and (3) awarding attorney's fees and court costs.

### NINTH CLAIM FOR RELIEF

**Violation Of N.Y. Gen. Bus. Law §§ 349 & 350**
**(On Behalf Of Plaintiff Chris Rizzitello And The New York Subclass**
**Against All Defendants)**

227. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

228. N.Y. Gen. Bus. Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.

229. N.Y. Gen. Bus. Law § 350 declares as unlawful false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state.

230. Defendants' conduct as alleged herein is covered under New York Gen. Bus. Law §§ 349 and 350 because such conduct is properly defined as consumer-oriented conduct.

231. Defendants' uniform omission regarding the tracking software installed on its Smart TVs, and its disclosure of consumer information collected by its Smart TVs to

47

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

1  third parties affects and deceives consumers at large, and has invaded the privacy rights
2  of millions of consumers.

3      232.   Defendants violated N.Y. Gen. Bus. Law §§ 349 & 350 by engaging in
4  conduct that is likely to mislead a reasonable consumer.

5      233.   The specifications of a consumer product are a material term of any
6  transaction in that they directly affect a consumer's choice and conduct in purchasing a
7  product.

8      234.   Despite the importance of specifications to consumer purchase decisions,
9  Defendants do not disclose that their Smart TVs have the tracking software installed, and
10  that the tracking software monitors, collects and disseminates consumer data.

11      235.   As discussed, on the boxes in which the Smart TVs were packaged,
12  Defendants informed Plaintiffs that one would be able to stream and view video content
13  from the Smart TVs, as well as connect the Smart TVs to other devices such as Blu-ray
14  DVD players and gaming consoles. However, Defendants failed to further inform
15  Plaintiffs that if they take advantage of these features and/or watch live broadcast
16  programming on their Smart TVs, their viewing data is collected and disseminated to
17  third parties. Had Plaintiffs known the full truth about Defendants' collection and
18  dissemination of Defendants' viewing data, Plaintiffs would not have purchased or would
19  have paid less for their Smart TVs.

20      236.   Defendants' failure to disclose these specifications of their Smart TVs, as
21  well as Defendants' failure to gain consumer authorization to allow Defendants to
22  monitor and collect consumer information by use of the tracking software, deceived
23  consumers into believing they were purchasing a benign entertainment device.

24      237.   Had Defendants disclosed to consumers that their Smart TVs employed the
25  tracking software, and that consumer viewing habits and other information would be
26  collected and disseminated without consent or knowledge, consumers would not have
27  bought, and would have paid less for, Defendants' Smart TVs, and would have avoided
28  Defendants' products and data practices.

48

238.   In fact, Defendants did not disclose facts about the tracking software to consumers that purchased the Smart TVs because they knew consumers, acting reasonably under the circumstances, would not purchase, or would pay less for, the Smart TVs if the fact that tracking software was installed on the Smart TVs was disclosed prior to purchase.

239.   Defendants' conduct directly and proximately caused Plaintiffs and the Class actual monetary damages in the form of the price paid for the Smart TVs.

240.   Defendants' conduct also caused direct harm to the privacy rights of Plaintiffs and the Class, and harmed the ability of Plaintiffs and Class members to control the dissemination of their private information.

241.   Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiffs seek an order: (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to pay damages to Plaintiffs and the Class, or fifty dollars to Plaintiffs and each class member, whichever is greater; (3) treble damages for Defendants' knowing and willful violations; and (4) reasonable attorneys' fees.

## TENTH CLAIM FOR RELIEF

### Violation of N.Y. Gen. Bus. Law §§ 670-675
### (On Behalf Of Plaintiff Chris Rizzitello And The New York Subclass Against All Defendants)

242.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

243.   Plaintiff Rizzitello resides and bought his VIZIO Smart TV in New York. He brings this claim on behalf of New York Subclass members who live in New York or who purchased their VIZIO Smart TV in New York.

244.   N.Y. Gen. Bus. Law § 673 prohibits the wrongful disclosure of video tape rental records, and states that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

provider shall be liable to the aggrieved person for the relief provided in § 675 of this article."

245. VIZIO is a "video tape service provider" because it facilitates the sale and rental of videos to consumers through its Internet-connected Smart TVs.

246. None of the exemptions provided by N.Y. Gen. Bus. Law §§ 673(2) and 673(3) apply.

247. VIZIO has disclosed and continues to disclose personally identifiable information of Plaintiff Rizzitello and members of the New York Subclass to third parties.

248. At no time did Plaintiff Rizzitello or members of the New York Subclass provide VIZIO with any form of consent allowing it to collect their personal information and viewing records, nor to disclose their personal information and viewing records to third parties.

249. As a result of VIZIO's unlawful disclosures, Plaintiff Rizzitello and the New York Subclass have had their statutorily defined right to privacy violated. Plaintiff Rizzitello seeks an injunction prohibiting VIZIO from collecting and disclosing his and the Class's personal information in the future, requiring it to destroy any data unlawfully collected, and requiring it to turn off Smart Interactivity on all Smart Televisions, as well as the statutory damages available under N.Y. Gen. Bus. Law § 675.

## ELEVENTH CLAIM FOR RELIEF

**Violation Of Massachusetts' Unfair and Deceptive Trade Practices Statute**
**Massachusetts General Laws ch. 93A, et seq.**
**(On Behalf Of Plaintiff John Walsh And The Massachusetts Subclass Against All Defendants)**

250. Plaintiffs incorporate by reference all the preceding allegations as if fully set forth herein.

251. Defendants' acts and practices complained of herein—including but not limited to installing tracking software on its Smart TVs, surreptitiously monitoring and

acquiring the personally identifiable information of Plaintiff Walsh and members of the Massachusetts Subclass, and selling that information to third parties without consent—amount to "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," as proscribed by Massachusetts General Laws ch. 93A, § 2(a). Pursuant to the notice requirement in Massachusetts General Laws ch. 93A, § 9(3), Plaintiff Walsh delivered a written demand letter detailing the acts and practices complained of herein and the injury suffered to Defendant thirty days before the filing of his underlying class action, *Walsh et. al v. VIZIO, Inc.*, Case No. 1:16-cv-10758-DJC (D. Mass).  Defendant responded with a letter denying all allegations.

252.   Plaintiff Walsh and members of the Massachusetts Subclass suffered actual injury as the result of Defendant's acts, practices, and omissions described herein.

253.   As a result of Defendant's violations of Massachusetts' Unfair and Deceptive Trade Practices Statute, Plaintiff Walsh and members of the Massachusetts Subclass are entitled to—and accordingly seek—actual damages and attorneys' fees, pursuant to Massachusetts General Laws ch. 93A, § 9.

### TWELFTH CLAIM FOR RELIEF

**Violation Of Massachusetts' Video Records Protection Statute**
**Massachusetts General Laws ch. 93, § 106**
**(On Behalf Of Plaintiff John Walsh And The Massachusetts Subclass Against All Defendants)**

254.   Plaintiffs incorporate by reference all the preceding allegations as if fully set forth herein.

255.   Plaintiff Walsh and members of the Massachusetts Subclass are "persons" within the meaning of Massachusetts General Laws ch. 93, § 2.

256.   Pursuant to Massachusetts General Laws ch. 93, § 106, Defendant may not "maintain records that would indicate the title or category of any video leased or rented by a borrower other than the records necessary to ensure a completed transaction of such video," nor may Defendant "make available to a third party records that would indicate

51

the name of the borrower or the title or category of any video leased or rented by a borrower."

257.   However, in direct contravention of Massachusetts law, Defendants' acts and practices complained of herein—including but not limited to installing tracking software on its Smart TVs, surreptitiously monitoring and acquiring the personally identifiable information of Plaintiff Walsh and members of the Massachusetts Subclass, and selling that information to third parties without consent—have caused Plaintiff Walsh and Members of the Massachusetts Subclass injury, both to their persons and to their property.

258.   Pursuant to Massachusetts General Laws ch. 93, § 12, and on behalf of himself and the members of the Massachusetts Subclass, Plaintiff Walsh actual damages (trebled due to the malicious intent with which Defendant has acted), costs, attorney's fees, and such injunctive relief as the Court deems proper, including, but not limited to, an order requiring Defendants to turn off Smart Interactivity.

## THIRTEENTH CLAIM FOR RELIEF

### Violation Of Massachusetts' Statutory Right to Privacy
### Massachusetts General Laws ch. 214, § 1B
### (On Behalf Of Plaintiff John Walsh And The Massachusetts Subclass Against All Defendants)

259.   Plaintiffs incorporate by reference all the preceding allegations as if fully set forth herein.

260.   Pursuant to Massachusetts General Laws ch. 214, § 1B, Massachusetts guarantees persons freedom from unreasonable, substantial, or serious interference with their privacy.

261.   Defendants' acts and practices complained of herein—including but not limited to installing tracking software on its Smart TVs, surreptitiously monitoring and acquiring the personally identifiable information of Plaintiff Walsh and members of the Massachusetts Subclass, and selling that information to third parties without consent—have violated the law guaranteeing the rights of Plaintiff Walsh and Members of the

Massachusetts Subclass to be free from unreasonable, substantial, or serious interference with their privacy.

262.   As a result of Defendants' acts and practices complained of herein, Plaintiff Walsh and Members of the Massachusetts Subclass have suffered and will continue to suffer actual and irreparable harm, and are entitled to (and accordingly seek) damages and equitable relief.

**FOURTEENTH CLAIM FOR RELIEF**

**Violation of Washington's Consumer Protection Act ("WCPA")**
**Wash Rev. Code §§ 19.86, et seq.**
**(On Behalf Of Plaintiffs Linda Thomson And The Washington Subclass Against All Defendants)**

263.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

264.   Plaintiff Linda Thomson resides and bought her VIZIO Smart TV in the state of Washington. She brings this claim on behalf of Washington Subclass members who live in the state of Washington or who purchased their VIZIO Smart TV in the state of Washington.

265.   Plaintiffs, the Class members and Defendants are "persons" within the meaning of Wash. Rev. Code § 19.86.010(1).

266.   Defendants conduct "trade" and "commerce" within the meaning of the Wash. Rev. Code § 19.86.010(2).

267.   The WCPA declares as unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade of commerce.

268.   Defendants violated the WCPA by engaging in deceptive and unfair acts or practices.

269.   Defendants' conduct, as alleged herein, is deceptive because it has the capacity to deceive a substantial portion of the population.

270.   The specifications of a consumer product are a material term of any transaction in that they directly affect a consumer's choice and conduct in purchasing a product.

271.   Despite the importance of specifications to consumer purchase decisions, Defendants do not disclose that their Smart TVs have the tracking software installed, and that the tracking software monitors, collects and disseminates consumer data through the Inscape data collection program.

272.   Defendants' failure to disclose these specifications of their Smart TVs, as well as Defendants' failure to gain consumer authorization to allow Defendants to monitor and collect consumer information by use of the tracking software, deceived consumers into believing they were purchasing a benign entertainment device.

273.   Had Defendants disclosed to consumers that their Smart TVs employed the tracking software, and that consumer viewing habits and other information would be collected and disseminated without consent or knowledge, consumers would not have not not have bought, or would have paid less for, Defendants' Smart TVs and would have avoided Defendants' products and data practices.

274.   In fact, Defendants did not disclose facts about the tracking software to consumers that purchased the Smart TVs because they knew consumers, acting reasonably under the circumstances, would not purchase, or would pay less for, the Smart TVs if the fact that tracking software was installed on the Smart TVs was disclosed prior to purchase.

275.   Defendants' conduct is unfair because it offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

276.   Defendants' conduct offends established public policy because it violated 18 U.S.C. § 2710 as explained above.

277.   Defendants' conduct is substantially injurious, and is immoral, unethical, oppressive and unscrupulous because Defendants monitor, collect, and record consumer

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

viewing habits and other information in order to sell it to third parties for profit, and do so without disclosing their data practices to consumers or obtaining consumer consent for the collection and sale of consumer data.

278.   Had consumers known Defendants' Smart TVs employed software that monitored, collected and disseminated consumer viewing habits and other data, consumers would not have purchased, or would pay less for, Defendants' Smart TVs.

279.   Moreover, by surreptitiously monitoring, collecting, and recording consumer viewing habits and other information, and by selling, or otherwise disclosing, that information to third parties without consumer knowledge or consent, Defendants prevent consumers from avoiding its data practices, and from protecting their right to privacy and their right to control the dissemination of their personal information.

280.   Defendants knew or had reason to know that Plaintiffs and the Class could not have reasonably known or discovered the existence of the tracking software, without disclosure by Defendants.

281.   The injury to consumer privacy rights, and the causing of consumers to buy products they otherwise would have avoided, outweighs the profit motive and ultimate goal for Defendants' unauthorized and secretive monitoring, collection and dissemination of consumer data.

282.   Defendants' unfair acts and practices were capable of injuring a substantial portion of the public, and have caused widespread public injury.

283.   Defendants' unfair acts are ongoing and thus, have a substantial likelihood of continuing to harm the general consuming public.

284.   Defendants' deceptive and unfair conduct occurred during the marketing, distribution, and sale of Smart TVs, and therefore occurred in the course of Defendants' business practices.

285.   Defendants' conduct directly and proximately caused Plaintiffs' and the Class's actual monetary damages in the form of the price paid for the Smart TVs.

286.   If Defendants had disclosed that their tracking software was installed and operating on the VIZIO Smart TVs, Plaintiffs and Class members would not have purchased, or would have paid less for, the Smart TVs.

287.   Pursuant to Wash. Rev. Code § 19.86.090, Plaintiffs seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to pay actual and treble damages to Plaintiffs and the Class; and, (3) awarding attorneys' fees and court costs.

## FIFTEENTH CLAIM FOR RELIEF

### Unjust Enrichment/Quasi-Contract
### (On Behalf of Plaintiffs Hodges, Rizzitello, Thomson, Walsh, and the California, Florida, Massachusetts, New York, and Washington, and Classes Against All Defendants)

288.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

289.   Plaintiffs and the California, Florida, Massachusetts, Washington, and New York Classes have conferred a benefit on VIZIO in the form of their personal information and viewing habits. Absent the unauthorized collection of such information and its disclosure to third parties, VIZIO would have had to pay Plaintiffs and the Subclasses money in exchange for this viewing history. In addition, Plaintiffs would not have purchased or would have paid less for their Smart TVs, had VIZIO disclosed that its Smart TVs collect user data and viewing habits for dissemination.

290.   VIZIO has obtained moneys which rightfully belong to Plaintiffs and the Subclasses to the detriment of Plaintiffs and the Subclasses.

291.   It would be inequitable and unjust for VIZIO to retain these wrongfully obtained profits and benefits at Plaintiffs' and the Classes' expense.

292.   VIZIO's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

293.   Plaintiffs and the Classes are entitled to restitution of the profits unjustly obtained, plus interest.

## SIXTEENTH CLAIM FOR RELIEF
## PRIVACY VIOLATION BASED ON INTRUSION

**(On Behalf of All Plaintiffs and the Nationwide Class Against All Defendants, under the laws of California, Florida, Massachusetts, and Washington)**

294.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

295.   VIZIO, by collecting and disseminating Plaintiffs' viewing habits without their knowledge, intentionally intruded into a realm in which Plaintiffs have a reasonable expectation of privacy.

296.   VIZIO obtained unwanted access to Plaintiffs' data, including but not limited to, the media content Plaintiffs are viewing, when Plaintiffs are viewing it, and whether they are viewing it live or at a later time.

297.   VIZIO's intrusion into Plaintiffs' privacy would be highly offensive to a reasonable person, namely because it occurred without Plaintiffs' consent or knowledge.

298.   By invading Plaintiffs' privacy, VIZIO has obtained moneys which rightfully belong to Plaintiffs and the Class.

299.   It would be inequitable and unjust for VIZIO to retain these wrongfully obtained profits and benefits at Plaintiffs' and the Class's expense.

300.   Plaintiffs and the Class are entitled to restitution of the profits unjustly obtained (plus interest), as well as damages for VIZIO's invasion of privacy.

## EIGHTEENTH CLAIM FOR RELIEF

**Intentional Misrepresentation/Fraud by Omission**
**(On Behalf of Plaintiffs Hodges, Rizzitello, Thomson, Walsh, and the California, Florida, Massachusetts, Washington, and New York Subclasses Against All Defendants)**

301.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

302.   Defendants concealed, suppressed, or omitted material facts concerning Vizio Smart TVs, to wit, the existence of the Smart Interactivity software that tracks and

1   collects the users' information and viewing history as well as information from other

2   devices that are connected to the user's Wi-Fi network and its disclosure of such viewing

3   history, along with personally identifiable information.

4       303.   Defendants were under a duty to Plaintiff and Class members to disclose that

5   the Smart TVs contained the pre-enabled tracking software and that VIZIO disclosed the

6   information collected by that software and other software due to the following:

7       a.    Defendant Vizio, as the manufacturer, was in a superior position to

8       know of the existence of the pre-enabled tracking software on Vizio

9       Smart TVs and its dissemination of such data;

10       b.    The Video Protection Privacy Act prohibits the collection,

11       interception, disclosure, and/or transmission of the information at

12       issue without the prior, informed consent of Plaintiff and the Class

13       members or the opportunity, given in a clear and conspicuous manner,

14       to prohibit the disclosure;

15       c.    Plaintiff and Class members could not reasonably have been expected

16       to learn or discover that Vizio included pre-enabled tracking software

17       on its TVs and its dissemination of such information;

18       d.    Vizio should have known that Plaintiff and Class members could not

19       reasonably have been expected to learn or discover that Vizio

20       included pre-enabled tracking software on its TVs, and in fact, Vizio

21       took steps to actively conceal the tracking software; and

22       e.    Vizio should have known that the existence and nature of the pre-

23       enabled software and the dissemination of such data was a material

24       fact that influenced the purchasing decision of Plaintiff and Class

25       members.

26       304.   Defendants intentionally concealed, suppressed, or omitted the material facts

27   described above with the intent to defraud Plaintiff and Class members because

28   Defendants knew or should have known that Plaintiff and Class members would not have

purchased the Smart TVs, or would have paid less, if the existence of the software were disclosed.

305.   A significant part of Defendants' marketing of Vizio Smart TVs was informing consumers that the TVs could be connected to the internet through a home network, or to cable and satellite television, or to gaming consoles. Defendants deliberately chose, however, to omit the fact that connecting to the internet or these devices would allow Defendants to track, record, and disseminate for profit the personal viewing histories and personally identifiable information without the consumers' affirmative consent.

306.   Defendants recognize the materiality of the tracking software in Defendants' Prospectus, as set forth above, by admitting that if the public knew the truth, it could significantly impact sales of its Smart TVs and its ability to profit from the sale of users' personally identifiable information to third parties.

307.   Plaintiff and Class members were unaware of the existence of the tracking software on Vizio's Smart TVs at the time of the purchases. Had they known, Plaintiff and Class members would not have purchased Vizio Smart TVs, or would have paid less for them.

308.   Defendants' conduct directly and proximately caused Plaintiff and Class members actual monetary damages as a result of the unauthorized use, and dissemination of, their personal information.

309.   Plaintiff and Class members seek damages, including punitive damages, reasonable attorneys' fees, and costs as a result of Defendants' fraudulent omissions.

### NINETEENTH CLAIM FOR RELIEF

#### Negligent Misrepresentation/Omission
**(On Behalf of Plaintiffs Hodges, Rizzitello, Thomson, Walsh, and the California, Florida, Massachusetts, Washington, and New York Subclasses Against All Defendants)**

310.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

311.    Defendants negligently concealed, suppressed, or omitted a material fact. To wit, Defendants concealed the existence of the Smart Interactivity tracking software that tracks and collects the users' information and viewing history as well as information from other devices that are connected to the user's Wi-Fi network and its disclosure of such viewing history, along with personally identifiable information.

312.    Defendants were under a duty to Plaintiff and Class members to disclose that the Smart TVs contained the pre-enabled tracking software and that it disseminated such data due to the following reasons:

     a.  Vizio, as the manufacturer, was in a superior position to know of the existence of the pre-enabled tracking software and the dissemination of data on Vizio Smart TVs;

     b.  The Video Protection Privacy Act prohibits the collection, interception, disclosure, and/or transmission of the information at issue without the prior, informed consent of Plaintiff and the Class members or the opportunity, given in a clear and conspicuous manner, to prohibit the disclosure;

     c.  Plaintiff and Class members could not reasonably have been expected to learn or discover that Defendants included pre-enabled tracking software on the Smart TVs, including the dissemination of such data;

     d.  Defendants should have known that Plaintiff and Class members could not reasonably have been expected to learn or discover that Defendants included pre-enabled tracking software on its TVs, and in fact, Defendants took steps to actively conceal the tracking software; and

     e.  Defendants should have known that the existence and nature of the pre-enabled software was a material fact that influenced the purchasing decision of Plaintiff and Class members

313.    Defendants negligently concealed and/or suppressed information about the tracking software and the dissemination of data collected by that software and other software. Defendants should have known that Plaintiff and Class members would not

have purchased the Smart TVs for the price they paid if Defendants had disclosed the existence of pre-enabled tracking software.

314.   Defendants recognized the materiality of the tracking software and the dissemination of data in Vizio's Prospectus, as set forth above, by admitting that if the public knew the truth, it would significantly impact sales of its Smart TVs and its ability to profit from the sale of users' personally identifiable information to third parties

315.   Plaintiff and Class members were unaware of the existence of the tracking software on Vizio's Smart TVs at the time of the purchases, along with the dissemination of data by that software and other software. Had they known, Plaintiff and Class members would not have purchased Vizio Smart TVs or would have paid less for them

316.   Defendants' conduct directly and proximately caused Plaintiff and Class members actual monetary damages in the form of the purchase price of the Smart TVs and damages as a result of the unauthorized access.

317.   On behalf of herself and the Class, Plaintiff seeks damages, including expenses, attorneys' fees, and costs, as a result of Defendants' negligence.

## VII.   PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

    a.   Determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs are proper class representatives, and appoint Plaintiffs' Counsel as counsel for the Class;

    b.   Enter an order declaring Defendants' actions are unlawful;

    c.   Award Plaintiffs and class members appropriate relief, including actual, statutory, and punitive damages;

    d.   Award Plaintiffs and class members restitution, disgorgement, and other equitable relief as the Court deems proper;

    e.   Award injunctive and declaratory relief as may be appropriate;

    f.   Award attorneys' fees and all other costs of prosecuting this action;

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES

g. Award Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable;

h. Grant additional legal or equitable relief as this Court may find just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated:  August 15, 2016

**GIRARD GIBBS LLP**

*/s/ Eric H. Gibbs*
Eric H. Gibbs
ehg@classlawgroup.com
Andre Mura
amm@classlawgroup.com
Linda Lam
lpl@classlawgroup.com
505 14th Street, Suite 1110
Oakland, CA 94612
Tel:  (510) 350-9700
Fax: (510) 350-9701

**COTCHETT, PITRE & MCCARTHY, LLP**

*/s/ Joseph W. Cotchett*
Joseph W. Cotchett
jcotchett@cpmlegal.com
Adam J. Zapala
azapala@cpmlegal.com
Gwendolyn R. Giblin
ggiblin@cpmlegal.com
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel:  (650) 697-6000
Fax: (650) 697-0577

*Co-lead Counsel for Plaintiffs*

62

Gary F. Lynch
glynch@carlsonlynch.com
**CARLSON LYNCH SWEET & KILPELA, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246

Andrew N. Friedman
afriedman@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005
Telephone: 202-408-4600
Facsimile: 202-408-4699

Brian C. Gudmundson
brian.gudmundson@zimmreed.com
**ZIMMERMAN REED, LLP**
1100 IDS Center 80 South 8th St.
Minneapolis, MN 55402
Telephone: (612) 341-0400

Ashleigh E. Aitken
ashleigh@aitkenlaw.com
**AITKEN COHN**
3 MacArthur Pl #800
Santa Ana, CA 92707
Phone: (714) 434-1424
Fax: (714) 434-3600

*Plaintiffs' Interim Steering Committee*

63

CONSOLIDATED COMPLAINT
CASE NO. 8:16-ML-02693-JLS-KES