**AKIN GUMP STRAUSS HAUER & FELD LLP**
ANTHONY T. PIERCE (*admitted pro hac vice*)
apierce@akingump.com
1333 New Hampshire Avenue NW, Suite 1500
Washington, DC  20036
Tel:  202-887-4000
Fax:  202-887-4288

HYONGSOON KIM (SBN 257019)
kimh@akingump.com
4 Park Plaza, Suite 1900
Irvine, CA  92614
Tel:  949-885-4100
Fax:  949-885-4101

PATRICK EOGHAN MURRAY (SBN 293765)
pmurray@akingump.com
1999 Avenue of the Stars Suite 600
Los Angeles, CA  90067
Tel:  310-229-1000
Fax:  310-229-1001

*Attorneys for Defendants VIZIO Holdings, Inc.,*
*VIZIO, Inc., VIZIO Inscape Services, LLC,*
*and VIZIO Inscape Technologies, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re: Vizio, Inc., Consumer Privacy Litigation<br><br><br>This document relates to:<br><br>ALL ACTIONS | MDL Case No. 8:16-ml-02693-JLS-KES<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 9(b), 12(b)(1) and 12(b)(6)**<br><br>Date:      December 16, 2016<br>Time:     2:30 p.m.<br>Place:    Courtroom 10A<br><br>Judge:    Hon. Josephine L. Staton |

# <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ............................................................................................... 1

II.  FACTUAL ALLEGATIONS ............................................................................ 2

    A.   Allegations Regarding Plaintiffs' Purchases.......................................... 2

    B.   Allegations Regarding Smart Interactivity............................................. 3

    C.   Allegations Regarding SmartCast. .......................................................... 4

    D.   Defendants' Alleged Representations Regarding Smart Interactivity. ........................................................................................... 4

    E.   Plaintiffs' Claims..................................................................................... 5

III. LEGAL STANDARD ....................................................................................... 6

IV.  PLAINTIFFS LACK ARTICLE III STANDING............................................. 6

    A.   Spokeo Confirms the Prior Rule that Statutory Violation Alone Is Insufficient for Article III Standing. ................................................. 7

    B.   Plaintiffs' Allegations of Mere Statutory Violations Cannot Establish Article III Standing................................................................. 8

    C.   Plaintiffs Also Lack Standing to Pursue Claims Relying on Alleged Price Premium Injury................................................................ 10

    D.   Plaintiffs' Intrusion on Privacy Claim Must Also Be Dismissed for Lack of Standing............................................................................... 12

    E.   Plaintiffs Lack Standing to Bring Any Claim Based on SmartCast. .............................................................................................. 12

V.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE VIDEO PRIVACY PROTECTION ACT ...................................................................... 13

    A.   Defendants Are Not "Video Tape Service Providers," Because They Do Not Provide Any Video Materials or Services. ...................... 13

    B.   Plaintiffs Are Not "Consumers" Within the Meaning of the VPPA........................................................................................................ 16

    C.   Plaintiffs Fail to Allege that Defendants Disclosed Personally Identifiable Information. ......................................................................... 17

        1.   Anonymous Device Identifiers Are Not "Personally Identifiable Information". ................................................................ 17

i

2. Anonymous Device Information Cannot Become PII Based on a Recipient's Idiosyncratic Knowledge. ...........................20

VI. PLAINTIFFS' STATE LAW VPPA-ANALOG CLAIMS MUST BE DISMISSED FOR THE SAME REASONS AS THE VPPA CLAIM ................21

VII. PLAINTIFFS' WIRETAP ACT CLAIM MUST BE DISMISSED ....................23

    A. Plaintiffs Have Not Alleged that Communications Are Acquired in Transmission, as Required by the Wiretap Act......................24

    B. The Information Allegedly Captured Is Not Actionable Under the Wiretap Act. ......................................................................26

VIII. PLAINTIFFS' CIPA CLAIM MUST BE DISMISSED FOR THE SAME REASONS AS WIRETAP ACT CLAIM ............................................28

IX. PLAINTIFFS' FRAUD-BASED CLAIMS ARE NOT PLED WITH PARTICULARITY REQUIRED BY FED. R. CIV. P. 9(B)...............................28

    A. Plaintiffs Do Not Allege What Specific Representations the Named Plaintiffs Saw or When They Saw Any Representation................29

    B. Plaintiffs Have Failed to Allege Actual Reliance with Particularity. ..................................................................................30

    C. Plaintiffs Are Required to Plead, but Have Not Pled, Their Omission Claims with Particularity. ............................................31

    D. To the Extent that Plaintiffs' California False Advertising Law Claim and Plaintiffs' Claim for Negligent Misrepresentation Under California and Washington Law Are Based on an Omissions Theory, These Claims Should Be Dismissed............................32

X. PLAINTIFFS' STATE CONSUMER PROTECTION CLAIMS MUST BE DISMISSED FOR FAILURE TO ALLEGE AN "ACTUAL INJURY" TO THE EXTENT THAT THE INJURY ALLEGED IS THE COLLECTION AND DISCLOSURE OF PERSONAL INFORMATION....................................33

XI. PLAINTIFFS' CLAIMS FOR VIOLATION OF PRIVACY MUST BE DISMISSED ....................................................................................34

    A. Plaintiffs Fail to Allege a Highly Offensive Intrusion................................34

    B. Plaintiffs Have No Reasonable Expectation of Privacy in the Information Collected. ................................................................36

XII. PLAINTIFFS FIFTEENTH CLAIM FOR UNJUST ENRICHMENT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE THE LACK OF AN ADEQUATE LEGAL REMEDY....................................................37

XIII. CONCLUSION.................................................................................39

MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF DEFS.' MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Access Cardiosystems, Inc.*,
  404 B.R. 593 (Bankr. D. Mass. 2009) ............................................................. 30

*In re Actimmune Mktng. Litig.*,
  2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) .................................................. 33

*Aguiar v. Merisant Co.*,
  2014 WL 6492220 (C.D. Cal. Mar. 24, 2014) ................................................ 37

*Andrew Duqum v. Scottrade, Inc.*,
  2016 WL 3683001 (E.D. Mo. July 12, 2016) ................................................... 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 2, 6

*Attias v. CareFirst, Inc.*,
  __ F. Supp. 3d __, 2016 WL 4250232 (D.D.C. Sep. 8, 2016) ......................... 8

*Austin v. AARP & AARP Servs. Inc.*,
  119 F.Supp.3d 1 (D.D.C. 2015) ................................................................. 10, 11

*Austin-Spearman v. AMC Network Entm't LLC*,
  98 F. Supp. 3d 662 (S.D.N.Y. 2015) .............................................................. 17

*Baghdasarian v. Amazon.com, Inc.*,
  2009 WL 4823368 (C.D. Cal. Dec. 9, 2009) ................................................... 30

*Bassam v. Bank of Am.*,
  2015 WL 4127745 (C.D. Cal. Jul. 8, 2015) ...................................................... 2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 2, 6

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) ....................................................................................... 19

*Blue Nile, Inc. v. Ice.com, Inc.*,
  478 F. Supp. 2d 1240 (W.D. Wash. 2007) ...................................................... 38

*Boorstein v. Men's Journal LLC*,
  2012 WL 2152815 (C.D. Cal June 14, 2012) .................................................. 10

*BP W. Coast Prod. LLC v. SKR Inc.*,
  989 F. Supp. 2d 1109 (W.D. Wash. 2013) ...................................................... 30

*Bruton v. Gerber Prods. Co.*,
  2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ................................................... 13

*Buckland v. Threshold Enters., Ltd.*,
    155 Cal. App. 4th 798 (2007) ................................................................ 30, 33

*Bunnell v. Motion Picture Ass'n of Am.*,
    567 F. Supp. 2d 1148 (C.D. Cal. 2007) ....................................................... 24

*Burns v. Heyns*,
    2015 WL 4391983 (W.D. Mich. July 15, 2015) ............................................. 27

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
    2011 WL 159380 (N.D. Cal. Jan. 10, 2011) .................................................. 12

*In re Cascade Int'l Sec. Litig.*,
    840 F. Supp. 1558 (S.D. Fla. 1993) .......................................................... 30

*Cefalu v. Globe Newspaper Co.*,
    391 N.E.2d 935 (Mass. Ct. App. 1979) ....................................................... 34

*In re Cheerios Mktg. & Sales Practices Litig.*,
    2012 WL 3952069 (D.N.J. Sept. 10, 2012) ................................................... 11

*Cherrone v. Florsheim Dev.*,
    2013 WL 772526 (E.D. Cal. Feb. 28, 2013) .................................................. 29

*Cousineau v. Microsoft Corp.*,
    992 F. Supp. 2d 1116 (W.D. Wash. 2012) .................................................... 26

*Denarii Sys., LLC v. Arab*,
    2013 WL 6162825 (S.D. Fla. Nov. 25, 2013) ................................................ 37

*Dilorenzo v. Costco Wholesale Co.*,
    515 F. Supp. 2d 1187 (W.D. Wash. 2007) .............................................. 29, 30, 33

*DirecTV, LLC v. Wright*,
    2016 WL 3181170 (W.D.N.Y. June 3, 2016) .................................................. 25

*Doe v. Gonzaga*,
    24 P.3d 390 (Wash. 2001) .................................................................... 35

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
    711 F. Supp. 2d 1074 (C.D. Cal. 2010) ...................................................... 28

*Edmunson v. Procter & Gamble Co.*,
    2011 WL 1897625 (S.D. Cal. May 17, 2011) ................................................. 30

*Eichenberger v. ESPN, Inc.*,
    2015 WL 7252985 (W.D. Wash. May 7, 2015) ............................................. 18, 21

*Ellis v. Cartoon Network, Inc.*,
    2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) .............................................. 18, 21

*Ellis v. Cartoon Network, Inc.*,
    803 F.3d 1251 (11th Cir. 2015) ........................................................ 15, 17

iv

*In re Facebook Internet Tracking Litig.*,
    140 F. Supp. 3d 922 (N.D. Cal. 2015) ................................................................ 27, 28

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ...................................................................... 33

*Falco v. Nissan N. Am. Inc.*,
    2016 WL 1327474 (C.D. Cal. Apr. 5, 2016) ....................................... 21, 29, 30, 33

*Folgelstrom v. Lamps Plus, Inc.*,
    195 Cal. App. 4th 986 (2011) ............................................................................ 36, 37

*Fox v. Pollack*,
    181 Cal. App. 3d 954 (1986) ....................................................................................... 30

*Gakuba v. Hollywood Video, Inc.*,
    2015 WL 5737589 (D. Or. Sep. 30, 2015) ................................................................ 15

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .............................................................................. 6, 9

*Gomez v. Carmax Auto Superstores California, LLC*,
    2015 WL 350219 (C.D. Cal. Jan. 22, 2015) ............................................................. 31

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002) .................................................................................................... 35

*Goodman v. HTC Am., Inc.*,
    2012 WL 2412070 (W.D. Wash. June 26, 2012) ...................................................... 29

*In re Google Android Consumer Privacy Litig.*,
    2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) .......................................................... 35

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    806 F.3d 125 (3d Cir. 2015) ............................................................................... 25, 26

*Gragg v. Orange Cab Co., Inc.*,
    942 F. Supp. 2d 1111 (W.D. Wash. 2013) ................................................................ 34

*Granfield v. Nvidia Corp.*,
    2012 WL 2847575 (N.D. Cal. July 11, 2012) ........................................................... 12

*Groshek v. Time Warner Cable, Inc.*,
    2016 WL 4203506 (E.D. Wis. Aug. 9, 2016) .............................................................. 8

*Gubala v. Time Warner Cable, Inc.*,
    2016 WL 3390415 (E.D. Wis. June 17, 2016) ........................................................ 8, 9

*Hall v. Time Inc.*,
    158 Cal. App. 4th 847 (2008) (UCL) ....................................................................... 33

*Hancock v. Urban Outfitters, Inc.*,
    32 F. Supp. 3d 26 (D.D.C. 2014) .............................................................................. 20

**MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF DEFS.' MOTION TO DISMISS**

*Hargrove & Costanzo v. C.I.R.*,
   240 F.R.D. 652 (E.D. Cal. 2006) ............................................................... 30

*Hart v. BHH, LLC*,
   2016 WL 2642228 (S.D.N.Y. May 5, 2016) ............................................... 37

*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009) ............................................................................... 35

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   7 Cal. 4th 1 (1994) ..................................................................................... 36

*Himes v. Brown & Co. Sec. Corp.*,
   518 So.2d 937 (Fla. Ct. App. 1987) ..................................................... 29, 33

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) .................................................................... 11

*Holomaxx Techs. v. Microsoft Corp.*,
   783 F. Supp. 2d 1097 (N.D. Cal. 2011) ...................................................... 25

*In re Hulu Privacy Litig.*,
   2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ...................................... 15, 18

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011) .................................................. 29, 30

*In re iPhone App. Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................... 26, 35

*In re iPhone Application Litig.*,
   2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........................................... 33

*Jamison v. Bank of America*,
   __ F. Supp. 3d __, 2016 WL 3653456 (E.D. Cal. July 7, 2016) .................. 7

*Jodoin v. Baystate Health Sys.*,
   2010 WL 1257985 (D. Mass. Mar. 29, 2010) ............................................ 34

*Kane v. Chobani, Inc.*,
   2013 WL 5289253 (N.D. Cal. Sep. 19, 2013) ............................................ 13

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .............................................................. 29, 31

*Kelley v. CVS Pharmacy, Inc.*,
   23 Mass. L. Rptr. 87, 2007 WL 2781163 (Mass. Super. Ct. 2007) ........... 34

*Khan v. Children's Nat'l Health Sys.*,
   __ F. Supp. 3d __, 2016 WL 2946165 (D. Md. May 19, 2016) .............. 8, 9

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ......................................................... 23, 24, 25

**MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF DEFS.' MOTION TO DISMISS**
MDL Case No. 8:16-ml-02693-JLS-KES

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011) ................................................................................ 30

*Larsen v. Trader Joe's Co.,*
    2012 WL 5458396 (N.D. Cal. June 14, 2012) .......................................... 12

*In re Lehman Bros. Sec. & ERISA Litig.,*
    2013 WL 5730020 (S.D.N.Y. Oct. 22, 2013) ........................................... 30

*Lewert v. P.F. Chang's China Bistro, Inc.,*
    819 F.3d 963 (7th Cir. 2016) ..................................................................... 11

*Librizzi v. Ocwen Loan Serv. LLC,*
    120 F. Supp. 3d 1368 (S.D. Fla. 2015) ................................................ 29, 33

*Locklear v. Dow Jones & Co., Inc.,*
    101 F. Supp. 3d 1312 (N.D. Ga. 2015) ................................................ 18, 21

*Low v. LinkedIn Corp.,*
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) .............................................. 31, 35

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...................................................................................... 6

*In re Lupron Mktg. & Sales Practices Litig.,*
    295 F. Supp. 2d 148 (D. Mass. 2003) ........................................................ 38

*Mark v. Seattle Times,*
    635 P.2d 1081 (Wash. 1981) ...................................................................... 35

*Marolda v. Symantec Corp.,*
    672 F. Supp. 2d 992 (N.D. Cal. 2009) ........................................................ 31

*Mason v. Coca-Cola Co.,*
    774 F. Supp. 2d 699 (D.N.J. 2011) ............................................................ 11

*Mazza v. Am. Honda Motor Co., Inc.,*
    666 F.3d 581 (9th Cir. 2012) ...................................................................... 21

*McBeth v. Porges,*
    2016 WL 1092692 (S.D.N.Y. Mar. 21, 2016) .......................................... 30

*Medley v. Johnson & Johnson Consumer Cos., Inc.,*
    2011 WL 159674 (D.N.J. Jan. 18, 2011) ................................................... 11

*Mendoza v. Microsoft Inc.,*
    2014 WL 4540213 (W.D. Wash. Sep. 11, 2014) ......................................... 9

*Mirkin v. Wasserman,*
    5 Cal. 4th 1082 (1993) ............................................................................... 30

*Mollett v. Netflix, Inc.,*
    795 F.3d 1062 (9th Cir. 2015) ............................................................*passim*

**MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF DEFS.' MOTION TO DISMISS**

MDL Case No. 8:16-ml-02693-JLS-KES

*Mulgrew v. City of Taunton,*
    574 N.E.2d 389 (Mass. 1991) ...................................................................... 34

*In re Nickelodeon Consumer Privacy Litig.,*
    2014 WL 3012873 (D.N.J. July 2, 2014) ............................... 15, 19, 21

*In re Nickelodeon Consumer Privacy Litig.,*
    827 F.3d 262 (3d Cir. 2016) ....................................... 16, 18, 19, 21

*Norcia v. Samsung Telecommunications Am., LLC,*
    2015 WL 4967247 (N.D. Cal. Aug. 20, 2015) ......................................... 32

*O'Dell v. Conseco Senior Health Ins. Co.,*
    2011 WL 13044240 (W.D. Wash. Feb. 10, 2011) .................................... 30

*Oppenheim v. I.C. Sys., Inc.,*
    695 F. Supp. 2d 1303 (M.D. Fla. 2011) ................................................. 35

*Opperman v. Path, Inc.,*
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) .................................................. 28

*Pelman v. McDonald's Corp.,*
    237 F. Supp. 2d 512 (S.D.N.Y. 2003) .................................................. 33

*Perez v. Monster Inc.,*
    149 F. Supp. 3d 1176 (N.D. Cal. 2016) ................................................ 29

*Perry v. CNN,*
    No. 66 Cv 02926 (N.D. Ga Apr. 20, 2016) ...................................... 18, 21

*Prohias v. Pfizer,*
    485 F. Supp. 2d 1329 (S.D. Fla. 2007) ................................................. 10

*Provo v. Rady Children's Hosp.,*
    2016 WL 4625556 (S.D. Cal. Sep. 6, 2016) ............................................ 8

*Regents of Univ. of Cal. v. Principal Fin. Grp.,*
    412 F. Supp. 2d 1037 (N.D. Cal. 2006) ................................................ 32

*Reid v. Johnson & Johnson,*
    780 F.3d 952 (9th Cir. 2015) ............................................................... 11

*Remijas v. Neiman Marcus Group LLC,*
    794 F.3d 688 (7th Cir. 2015) ............................................................... 11

*Robinson v. Disney Online,*
    152 F. Supp. 3d 176 (S.D.N.Y. 2015) .................................... 15, 18, 21

*Rodriguez v. Sony Comput. Entm't Am., LLC,*
    801 F.3d 1045 (9th Cir. 2015) ............................................................. 15

*Romero v. Dep't Stores Nat'l Bank,*
    __ F. Supp. 3d __, 2016 WL 4184099 (S.D. Cal. Aug. 5, 2016) ............... 7

viii

*Rosado v. eBay Inc.*,
  53 F. Supp. 3d 1256 (N.D. Cal. 2014) .................................................................. 30

*Ross v. Kirner*,
  172 P.3d 701 (Wash. 2007) ...................................................................................... 32

*Ruiz v. Gap, Inc.*,
  540 F. Supp. 2d 1121 (N.D. Cal. 2008) .................................................................. 33

*Samiento v. World Yacht Inc.*,
  883 N.E.2d 990 (N.Y. 2008) .................................................................................. 38

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  567 N.E.2d 912 (Mass. 1991) .................................................................................. 35

*Schreiber Distrib. Co. v. Serv–Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986) ................................................................................ 29

*Schwartz v. Independent Appraisals, LLC*,
  2011 WL 5593108 (D. Mass Nov. 17, 2011) ........................................................ 29

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) .................................................................... 34

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) .............................................................................................. 7

*Stanwood v. Mary Kay, Inc.*,
  941 F. Supp. 2d 1212 (C.D. Cal. 2012) .................................................................. 32

*Stasiak v. Kingswood Co-op, Inc.*,
  2012 WL 527537 (M.D. Fla. Feb. 17, 2012) .................................................... 35, 36

*Steve Jackson Games, Inc. v. U.S. Secret Serv.*,
  36 F.3d 457 (5th Cir. 1994) .................................................................................... 24

*Sunbelt Rentals, Inc. v. Victor*,
  43 F. Supp. 3d 1026 (N.D. Cal. 2014) .................................................................... 25

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ............................................................................................ 30

*Tourgeman v. Collins Fin. Servs., Inc.*,
  __ F. Supp. 3d __, 2016 WL 3919633 (S.D. Cal. June 16, 2016) ............................ 7

*U.S. v. Reed*,
  575 F.3d 900 (9th Cir. 2009) .................................................................................. 26

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
  454 U.S. 464 (1982) .................................................................................................. 6

*Van de Velde v. Coopers & Lybrand*,
  899 F. Supp. 731 (D. Mass. 1995) .......................................................................... 30

*Vess v. Ciba–Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir.2003) ................................................................. 29

*Willey v. J.P. Morgan Chase, N.A.*,
   2009 WL 1938987 (S.D.N.Y. Jul. 7, 2009) ............................................ 34

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015) .................................................. 21, 36, 37

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..................................................... 36

*Yamada v. Snipes*,
   786 F.3d 1182 (9th Cir. 2015) ............................................................. 6, 9

*Yershov v. Gannett Satellite Info. Network, Inc.*,
   820 F.3d 482 (1st Cir. 2016) ................................................................. 19

*Yunker v. Pandora Media, Inc.*,
   2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ....................................... 35

*In re Zappos.com, Inc.*,
   108 F. Supp. 3d 949 (D. Nev. 2015) ....................................................... 9

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ................................................. 26, 27, 37

**STATUTES**

18 U.S.C.
   § 2510(4) .......................................................................................... 23, 26
   § 2511(1)(a) ............................................................................................ 24
   § 2710 ..................................................................................................... 13
   § 2710(a)(1) ............................................................................................ 16
   § 2710(a)(3) ............................................................................... 14, 16, 17
   § 2710(a)(4) ............................................................................... 13, 14, 16
   § 2710(b)(1) ............................................................................................ 21

Cal. Bus. & Prof. Code
   § 17500 ................................................................................................... 32
   § 17535 ................................................................................................... 33

Cal. Civil Code
   § 1799.3 ......................................................................................... 5, 8, 22

Cal. Penal Code
   § 631 ....................................................................................................... 28

Mass. Gen. Laws Ann.
   ch. 93, § 106 .......................................................................................... 22
   ch. 93, § 106(2) ..................................................................................... 23
   ch. 214, § 1B ......................................................................................... 34

N.Y. Gen. Bus. Law
§ 349 .................................................................................................................5
§ 350 .................................................................................................................5
§ 670 .........................................................................................................5, 9, 22
§ 671 .........................................................................................................5, 9, 22
§ 672 .........................................................................................................5, 9, 22
§ 672(3) ..........................................................................................................23
§ 673 .........................................................................................................5, 9, 22
§ 674 .........................................................................................................5, 9, 22
§ 675 .........................................................................................................5, 9, 22

## RULES

Fed. R. Civ. P.
9(b) ..................................................................................28, 29, 30, 31
12(b)(1) .................................................................................................6

## OTHER AUTHORITIES

S. Rep. No. 99-541 (1986) ..........................................................................23

S. Rep. No. 100-599 (1988) ........................................................................17

**MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF DEFS.' MOTION TO DISMISS**

# I.   INTRODUCTION

This case boils down to Plaintiffs' allegation that Defendants VIZIO, Inc.; VIZIO Holdings, Inc.; VIZIO Inscape Technologies, LLC; and VIZIO Inscape Services, LLC ("Defendants") transmit "viewing data" from VIZIO televisions, paired only with anonymous data such as device IDs, to analytics companies and other third parties. Plaintiffs struggle to shoehorn that allegation into inapposite statutes that long predate the Internet age.  But the plain terms of the statutes Plaintiffs rely on do not cover Defendants or their alleged actions.  Even accepting Plaintiffs' assertions as true, Defendants' alleged conduct is not proscribed by Congress, any state legislature, or the common law.

This Court need not reach whether Plaintiffs have stated a claim, however, because the Complaint never gets out of the starting gate: Plaintiffs fail to allege any concrete injury-in-fact and thus lack standing to bring their claims.  As the Supreme Court recently held, and as numerous cases have since confirmed, the Constitution requires a concrete injury even in the context of an alleged statutory violation.  Further, the theory of injury supporting Plaintiffs' non-statutory claims—that Defendants' conduct led them to subjectively value their TVs less—has been rejected by courts nationwide.  Plaintiffs cannot muster a single concrete injury—a dollar spent, an opportunity lost, an identity stolen—they allegedly suffered.  That fundamental defect mandates dismissal.

Even if Plaintiffs could overcome that critical threshold standing hurdle, they have plainly failed to state a single claim.  Plaintiffs' principal allegation is that Defendants violated the Video Privacy Protection Act ("VPPA"), a 30-year-old statute Congress enacted in response to a video-store clerk's leaking a Supreme Court nominee's videotape viewing habits to a prying reporter.  That statute prevents 1) a "video tape service provider" from 2) knowingly disclosing information that "identifies a person" who is 3) a "renter[], purchaser[], or subscriber[]" of such services.  Those plain terms foreclose Plaintiffs' claim: Defendants do not "provide" video services to Plaintiffs; Plaintiffs do not rent, purchase, or subscribe to video services from Defendants; and the information allegedly disclosed does not "identif[y] a person."  Courts have sensibly

rejected expansive theories like Plaintiffs' because they would disrupt the way that advertising works in the Internet age, and potentially bring within the VPPA's purview thousands of companies that make products ranging from cars to cable boxes and radios—a result that the VPPA's plain language cannot support.  Plaintiffs seek to amend the VPPA through this lawsuit, something to be accomplished only through clear and explicit direction from Congress—not creative pleading by Plaintiffs' lawyers.

The Complaint's other claims fare no better.  Although Plaintiffs allege a violation of the Wiretap Act, their own allegations prove that no "wiretapping" is going on.  Plaintiffs fail to assert that any information is intercepted in transit, or that the "contents" of any message are ever intercepted—both necessary prerequisites to support a "wiretapping" claim.  Likewise, Plaintiffs' assorted tag-along unfair business practice claims and fraud-based claims rely on speculation and innuendo as opposed to specific allegations about what statements any Plaintiff saw or heard, much less relied on.

This Court should decline to endorse Plaintiffs' theories of expansive liability that no legislature has ever contemplated, never mind tolerated.  Plaintiffs' Complaint should be dismissed in its entirety.

## II.   FACTUAL ALLEGATIONS[1]

### A.   Allegations Regarding Plaintiffs' Purchases.

VIZIO, an American "consumer electronics company" headquartered in Irvine, California, "designs, markets, and distributes for sale consumer electronic devices,

[1]  Plaintiffs' Complaint lumps all four defendants together, and defines them as "VIZIO." Consolidated Complaint, ECF No. 108 (hereinafter "CC"), at 1:5 ("Defendants VIZIO, Inc.; VIZIO Holdings, Inc.; VIZIO Inscape Technologies, LLC; and VIZIO Inscape Services, LLC (collectively referred to as "VIZIO") in this [ ] Complaint"). This impermissible "group pleading" deprives Defendants of the notice required to respond to the allegations against them.  *See Ashcroft v. Iqbal*, 556 U.S. 662, (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Bassam v. Bank of Am.*, 2015 WL 4127745, *7 (C.D. Cal. Jul. 8, 2015) ("A complaint fails to state a claim and must be dismissed if it does not 'indicate which individual … defendants are responsible for which alleged wrongful act.'") (citation omitted).  For example, the Complaint does not allege which defendant made any specific representation, claiming merely that "VIZIO" made the purported misrepresentations.  CC, ¶¶ 14, 64, 73.  Plaintiffs similarly make the blanket assertion that "VIZIO" collects consumers' data (see CC, ¶¶ 2, 13, 14, 15, 53).  Given the impermissible grouping of Defendants in Plaintiffs' pleading, Defendants respectfully request that this Court dismiss the entire Complaint with prejudice.

including Smart TVs, throughout the United States . . . ."  CC, ¶¶ 24, 35.  Plaintiffs do not describe defendants VIZIO Holdings, Inc., VIZIO Inscape Technologies, LLC, and VIZIO Inscape Services, LLC beyond identifying them as Delaware corporations that have a principle place of business in Irvine California.  *Id., ¶¶* 25-27.  Plaintiffs allege that they purchased a variety of VIZIO Smart TV models in five different states: Plaintiff Rizzitello alleges that he purchased his Smart TV at a Wal-Mart location in Catskill, New York, while the remaining Plaintiffs allege only that their Smart TVs were purchased in their home states (California, Florida, Massachusetts, and Washington).  *Id.*, ¶¶ 16-21.  Plaintiffs do not specify when they purchased their Smart TVs, nor do they provide any details about their individual purchasing decisions, including what representations if any Plaintiffs saw or relied upon in connection with their purchases.[2]

### B.      Allegations Regarding Smart Interactivity.

Plaintiffs claim that one or more Defendants collect certain data from consumers' Smart TVs without their consent and disclose this data to "advertisers and media content providers so they can deliver targeted advertisements."  *Id.*, ¶¶ 2, 14.  Defendants allegedly "capture real-time viewing behavior data from VIZIO Smart TVs" (*id.*, ¶ 49) and use automatic content recognition technology called "Smart Interactivity" to "recognize attributes of the content displayed on VIZIO Smart TVs and match those attributes to a database of existing content, such as movies, TV shows, and games" (*id.*, ¶ 50).

Smart Interactivity and/or "Inscape data services" allegedly allows Defendants to "collect, aggregate, and store" the following types of data from "all media sources that connect via external input to the Smart TVs": "data related to publicly available content displayed on VIZIO Smart TVs, such as the identity of a broadcast, cable, or satellite

---

[2] Certain VIZIO Smart TVs are sold with binding arbitration agreements.  Based on the Complaint, however, Defendants do not have sufficient information to determine whether any Plaintiff is subject to such an agreement.  *See* CC, ¶¶ 16-21.  Defendants intend to seek discovery on this issue.  If Defendants determine any Plaintiffs are subject to VIZIO's arbitration agreement, Defendants anticipate filing a motion to compel arbitration with respect to those individuals.

3

television provider, and the television programs and commercials viewed (including time, date, channel, and whether they were viewed live or at a later time)"; IP addresses; zip codes; "online services visited by the consumer"; media access control ("MAC") addresses; product model numbers; hardware and software versions; chipset IDs; and region and language settings. *Id.*, ¶¶ 52-54. Plaintiffs allege that "[Defendants'] default policy is to turn on this data collection feature on all of its Smart TVs." *Id.*, ¶ 60.

Plaintiffs allege that certain data, including viewing history, IP addresses, MAC addresses, and zip codes, is disclosed to third parties. *Id.*, ¶ 8. Plaintiffs allege that the data disclosed to third parties in theory could be used to identify individuals. *Id.*, ¶¶ 69-80. But Plaintiffs do not allege any facts establishing that the data collected in fact identifies, or is actually used to identify, any individual person.

## C.    Allegations Regarding SmartCast.

Plaintiffs for the first time in the Consolidated Complaint include allegations related to SmartCast technology, although Plaintiffs do not allege that any named Plaintiff ever purchased or used this technology. SmartCast—"[Defendants'] latest delivery engagement software"—allegedly allows a user to watch programming on "a tablet remote that comes with [their] television" and/or on their smartphone, and to "'cast,' or display," that programming from the tablet remote or smartphone to their display. *Id.*, ¶¶ 47, 48. Inscape is alleged to collect certain information from SmartCast users, such as information about the video or audio playing on the display and certain commands "communicated to the SmartCast Products through the Smartcast App" (*id.*, ¶ 55), but Plaintiffs do not cite any such alleged data collection in support of any of their claims.

## D.    Defendants' Alleged Representations Regarding Smart Interactivity.

Plaintiffs allege that the packaging on Defendants'[3] televisions "failed to inform Plaintiffs that if they took advantage of [their Smart TV's] features or watched live

---

[3] Because the allegations regarding representations made to consumers refer only to Defendants collectively, it is impossible to determine which Defendants are alleged to have made the claimed representations or omissions.

4

broadcast programming on their Smart TVs, their viewing data would be collected by
[Defendants] and disseminated to third parties." *Id.*, ¶ 22.  Plaintiffs further claim that,
had they "known the truth about [Defendants'] data collection practices and tracking
software, they would not have purchased Smart TVs or would have paid less for them."
*Id.*, ¶ 14.

Plaintiffs admit that "consumers may turn off Smart Interactivity" (*id.*, ¶ 7), but
claim that "any reference to Smart Interactivity" is embedded in an "obscure settings
menu" (*id.*, ¶ 85).  Plaintiffs acknowledge that pop-ups regarding Smart Interactivity and
privacy settings appeared on Smart TVs (*id.*, ¶¶ 11, 21, 94), and that Defendants' privacy
policy was available in the Smart TVs' settings menu and on VIZIO's website (*id.*, ¶¶ 86,
88).  Plaintiffs allege that Defendants' privacy policies "have been updated over time[,]"
and that in "all iterations in which VIZIO discusses its data collection practices, its
statements are false or misleading and omit material information."  *Id.*, ¶ 89.

### E.    **Plaintiffs' Claims.**

Plaintiffs bring eighteen separate claims against every defendant for violation of:
1) the Video Privacy Protection Act ("VPPA"); 2) the Wiretap Act; 3) the California
Invasion of Privacy Act ("CIPA"); 4) Cal. Civil Code § 1799.3; 5) California's Consumer
Legal Remedies Act ("CLRA"); 6) California's Unfair Competition Law ("UCL"); 7)
California's False Advertising Law ("FAL"); 8) Florida's Deceptive and Unfair Trade
Practices Act ("FDUTPA"); 9) N.Y. Gen. Bus. Law §§ 349, 350; 10) N.Y. Gen. Bus.
Law §§ 670-675; 11) Massachusetts's Unfair and Deceptive Trade Practices Statute; 12)
Massachusetts's Video Records Protection Statute; 13) Massachusetts's statutory right to
privacy; 14) Washington's Consumer Protection Act ("WCPA"); 15) unjust
enrichment/quasi-contract; 16) "privacy violation based on intrusion;" 17) intentional
misrepresentation/fraud by omission (misnumbered as Claim 18); and 18) negligent
misrepresentation/omission (misnumbered as Claim 19).  *See* CC, ¶¶ 111-317.

Plaintiffs assert Claims 1 through 7 on behalf of "[a]ll individuals in the United
States who purchased a VIZIO Smart TV with Smart Interactivity capability for personal

or household use, and not for resale, during the applicable statute of limitations period." *Id.*, ¶ 95.  Additionally, Plaintiffs also assert Claims 3 through 7 and 15 through 19 on behalf of a California subclass; Claims 8 and 15 through 19 on behalf of a Florida subclass; Claims 9, 10, and 15 through 19 on behalf of a New York subclass; Claims 11 through 13 and 15 through 19 on behalf of a Massachusetts subclass; and Claims 14 through 19 on behalf of a Washington subclass.  *See id.*, ¶¶ 96-100.

## III.   LEGAL STANDARD

To survive a motion to dismiss, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The "facial plausibility" standard requires a plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *accord Iqbal*, 556 U.S. at 678.

## IV.   PLAINTIFFS LACK ARTICLE III STANDING

Article III standing "is not merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit" but rather is "every bit as important in its circumscription of the judicial power of the United States as in its granting of that power." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 476 (1982).  To satisfy this fundamental requirement, Plaintiffs must sufficiently plead an injury-in-fact fairly traceable to the defendant's allegedly unlawful conduct (*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) "for each claim [they] seek[] to press and for each form of relief sought." *Yamada v. Snipes*, 786 F.3d 1182, 1203 (9th Cir. 2015) (citation omitted).  Because Plaintiffs have not alleged injury-in-fact sufficient to support Article III standing for any of their claims, these claims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(1).  *See* Fed. R. Civ. P. 12(b)(1).

### A.    *Spokeo* Confirms the Prior Rule that Statutory Violation Alone Is Insufficient for Article III Standing.

"It is settled that Congress cannot erase Article III's standing requirement by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016).  Plaintiffs must show a "concrete and particularized" injury that is "actual or imminent, not conjectural or hypothetical" to establish standing.  *Id*.  "Article III standing requires a concrete injury *even in the context of a statutory violation*."  *Id.* at 1549 (emphasis added).

In *Spokeo*, the Supreme Court reversed the Ninth Circuit's determination that a plaintiff had Article III standing to bring a Fair Credit Reporting Act ("FCRA") claim against defendant for publishing an online profile about him that contained inaccurate information (regarding his age, job status, and graduate degree), and remanded to the Ninth Circuit to consider whether plaintiff pled a particularized *and concrete* injury.  *Id.* at 1545, 1550.  The Court noted that violations of FCRA such as the publication of an inaccurate zip code or the failure to provide certain notices would likely not present an injury-in-fact supporting Article III standing, as it was "difficult to imagine how" these violations of FCRA, "without more, could work any concrete harm."  *Id.* at 1550.

Following *Spokeo*, courts in the Ninth Circuit have repeatedly held that alleged statutory violations do not establish Article III standing if unaccompanied by allegations of concrete injury.  *See, e.g., Romero v. Dep't Stores Nat'l Bank*, __ F. Supp. 3d __, 2016 WL 4184099, *6 (S.D. Cal. Aug. 5, 2016) (no standing to bring Telephone Consumer Protection Act claim based on defendant's use of automated dialer) ("[i]f the defendant's actions would not have caused a concrete, or *de facto*, injury in the absence of a statute, the existence of the statute does not automatically give a Plaintiff standing"); *Jamison v. Bank of America*, __ F. Supp. 3d __, 2016 WL 3653456, *4-5 (E.D. Cal. July 7, 2016) (no standing for Truth In Lending Act claim for failure to plead concrete harm where plaintiff alleged violation of statute); *Tourgeman v. Collins Fin. Servs., Inc.*, __ F. Supp. 3d __, 2016 WL 3919633, *3 (S.D. Cal. June 16, 2016) (no standing for Fair Debt

7

Collection Practices Act ("FDCPA") claim where only pled injury was alleged violations of statute); *Provo v. Rady Children's Hosp.*, 2016 WL 4625556, *2 (S.D. Cal. Sep. 6, 2016) (no standing for FDCPA claim where plaintiffs did not plead "any harm or material risk of harm . . . suffered as a consequence" of statutory violation).

Post-*Spokeo* courts have also found that mere disclosure of information in violation of a statute is not sufficient to establish concrete injury. *See Khan v. Children's Nat'l Health Sys.*, __ F. Supp. 3d __, 2016 WL 2946165, *7 (D. Md. May 19, 2016) (alleged "violations of state statutes" do not confer standing because loss of privacy due to alleged data breach not sufficiently concrete); *Attias v. CareFirst, Inc.*, __ F. Supp. 3d __, 2016 WL 4250232, *5 (D.D.C. Sep. 8, 2016) ("Even if Plaintiffs' rights under applicable consumer protection acts have been violated" by sharing of personal information in data breach "because they do not plausibly allege concrete harm, they have not demonstrated that they have standing to press their claims."); *Groshek v. Time Warner Cable, Inc.*, 2016 WL 4203506, *2-3 (E.D. Wis. Aug. 9, 2016) (violation of FDCPA resulting in alleged illegal access to plaintiff's information insufficient to confer standing where no concrete harm alleged); *Gubala v. Time Warner Cable, Inc.*, 2016 WL 3390415, *5 (E.D. Wis. June 17, 2016) (no Article III standing where plaintiff alleged injury due to cable provider's retention of names, addresses and social security numbers in violation of Cable Communications Privacy Act ("CCPA")).

In short, it is not enough to merely allege a violation of a statute; to satisfy constitutional standing requirements, Plaintiffs must *also* allege a concrete and particularized injury-in-fact for each statutory violation.

## B.  Plaintiffs' Allegations of Mere Statutory Violations Cannot Establish Article III Standing.

Seven of Plaintiffs' claims—for violations of the VPPA, the federal Wiretap Act, and five state statutes—rely entirely on allegations that Plaintiffs have been injured merely due to the violation of a federal or state statute.[4]  Plaintiffs do not plead a single

---

[4] *See* Claim 1 (VPPA) (CC, ¶ 118); Claim 2 (Wiretap Act) (*id.*, ¶ 131); Claim 3 (California's Invasion of Privacy Act ("CIPA")) (*id.*, at ¶ 139)); Claim 4 (Cal. Civ. Code

8

concrete injury in connection with these claims.  Plaintiffs do not allege, for example, that due to the disclosure of the information allegedly collected by Defendants, any individual Plaintiff was contacted by third parties, such as advertisers, via phone, e-mail, or mail.  Nor do they allege that they have been the victims of fraud, cyber-crime, or identity theft.  Failure to plead such a concrete harm is fatal to Plaintiffs' efforts to establish Article III standing.  *See Gubala*, 2016 WL 3390415, *4 (only allegations such as contact by third-parties or crimes against plaintiffs due to disclosure of information might constitute injury-in-fact stemming from violations of CCPA).

Plaintiffs' failure to allege a concrete injury is not remedied by mere conclusory allegations that they suffered harm.  The Court need not credit "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead*, 536 F.3d at 1055; *Khan*, 2016 WL 2946165, *6 ("Khan argues that the data breach has caused a loss of privacy that constitutes an injury in fact.  However, she has not identified any potential damages arising from such a loss and thus fails to allege a 'concrete and particularized injury.'").  Vague and conclusory allegations of "invasion of privacy" alone do not give rise to standing.  *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) (requiring showing that loss of privacy amounts to concrete and particularized injury); *see also Gubala*, 2016 WL 3390415, *4 ("[a] statement that consumers highly value the privacy of their personally identifiable information . . . does not demonstrate that the plaintiff has suffered a concrete injury"); *Andrew Duqum v. Scottrade, Inc.*, 2016 WL 3683001, *8 (E.D. Mo. July 12, 2016) ("Courts have held that loss of privacy and breach of confidentiality are too abstract to establish Article III standing.").  Having failed to plead any concrete actual injury, Plaintiffs lack standing to pursue any of their statutory claims.  *See Yamada*, 786 F.3d at 1203 (plaintiffs must "demonstrate standing for each claim [they] seek[] to press"); *Mendoza v. Microsoft Inc.*,

---

§ 1799.3) (CC, ¶ 148)); Claim 10 (N.Y. Gen. Bus. Law §§ 670-675) (CC, ¶ 249)); Claim 12 (Mass. Video Records Protection Statute) (*id.*, ¶ 257); and Claim 13 (Mass. Statutory Right to Privacy) (*id.*, ¶ 262).

2014 WL 4540213, *3 (W.D. Wash. Sep. 11, 2014) (dismissing VPPA claim on the grounds that plaintiffs "fail to allege sufficient facts to establish Article III standing" where plaintiffs pled "broad conclusory statements and formulaic recitations of the VPPA" and did not "allege a single fact to support their allegation that Microsoft allegedly retained and disclosed personally identifiable information").

## C.    Plaintiffs Also Lack Standing to Pursue Claims Relying on Alleged Price Premium Injury.

Plaintiffs assert ten additional claims based on the theory that alleged privacy violations reduced their product's value.  *See* CC, ¶¶ 169, 192, 200, 201, 212, 225, 235, 239, 252, 278, 289, 307, 315 (California, Florida, Massachusetts, New York, and Washington consumer protection claims, intentional misrepresentations/fraud by omission, unjust enrichment, and negligent misrepresentation).  But Plaintiffs do not explain how Defendants' conduct reduced the value of their product.  Plaintiffs simply express dissatisfaction with the product and claim that they would have paid less for it. *See id.*  Such speculation does not establish standing as a matter of law.  *Prohias v. Pfizer*, 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007) (dismissing Florida and New York consumer protection claims because price premium theory was "too speculative to constitute an injury-in-fact under Article III").

Under Plaintiffs' theory, a consumer could *always* manufacture injury merely by alleging that she subjectively valued a product less than what she paid for it.  This would effectively erase the injury-in-fact requirement for consumer litigation.  *Boorstein v. Men's Journal LLC*, 2012 WL 2152815, *4 (C.D. Cal June 14, 2012) ("If injury exists based solely on the consumer's expectation that the defendant will not violate a law, then injury exists in any situation where a business violates a law, regardless of whether there is actual harm to the consumer.").  A mere allegation of dissatisfaction with a defendant's actions is insufficient to allege an actual harm.  *Austin v. AARP & AARP Servs. Inc.*, 119 F.Supp.3d 1, 9 (D.D.C. 2015) (rejecting consumer protection claim premised on disclosure of personal information and stating that "conclusory statements regarding a

plaintiff's own beliefs and expectations are not sufficient to support an alleged 'overpayment' injury; rather, a plaintiff must allege facts that demonstrate that the breached term was objectively essential to the contract at issue, such that the violation effectively robbed the plaintiff of her payment because what she received was not what the parties agreed she had purchased"); *In re Cheerios Mktg, & Sales Practices Litig.*, 2012 WL 3952069, *12 (D.N.J. Sept. 10, 2012) (no Article III standing under price premium theory because "'[a]t most, plaintiffs simply claim that their expectations . . . were disappointed.  Dissatisfaction with a product, however, is not a quantifiable loss . . . .'") (quoting *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011)); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016) (no plausible price premium theory of injury for Article III standing based on loss of data privacy; plaintiffs did not allege that products were "defective or dangerous" but only that they would not have purchased a product if they had known data would be disclosed); *Remijas v. Neiman Marcus Group LLC*, 794 F.3d 688, 695 (7th Cir. 2015) (same);  *Medley v. Johnson & Johnson Consumer Cos., Inc.*, 2011 WL 159674, *2 (D.N.J. Jan. 18, 2011) (no Article III standing for purchasers of shampoo because "Plaintiffs received the benefit of their bargain so long as there were no adverse health consequences, and the product worked as intended, meaning that the hair of Plaintiff's children was cleansed, and their eyes and skin were not irritated").[5]

---

[5]  The facts here are unlike other cases in which plaintiffs allegedly relied on a misrepresentation concerning the product's quality or ability to perform an intrinsic function.  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105-06 (9th Cir. 2013) (defendant allegedly misrepresented "original" price of discounted clothes, which "provides important information about the product's worth"); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (plaintiffs alleged they would not have purchased health food had they known representations about its health effects were false).  Plaintiffs here have not alleged that their Smart TVs are defective or do not perform their television-related functions as advertised; nor have they alleged that the product caused them some concrete injury that in turn reduced the value of their product.  *See Austin*, 119 F.Supp.3d at 9 (D.D.C. 2015) ("The complaint does not (and apparently cannot) contend that website usage is the primary benefit of an AARP membership, nor that it is even an essential part of the bundle of rights that are conferred to AARP members, and this flaw is fatal to Austin–Spearman's economic injury theory of standing.").

### D.   Plaintiffs' Intrusion on Privacy Claim Must Also Be Dismissed for Lack of Standing.

In their last remaining claim—for a "privacy violation based on intrusion" (*see* Claim 16)—Plaintiffs allege only that "[b]y invading Plaintiffs' privacy, [Defendants] [have] obtained moneys which rightfully belong to Plaintiffs and the class." CC, ¶ 298. For all the reasons stated above in Section IV.B., *supra*, such conclusory allegations of privacy violations without concrete injury are wholly insufficient to support Article III standing and this claim must be dismissed.

### E.   Plaintiffs Lack Standing to Bring Any Claim Based on SmartCast.

Plaintiffs vaguely allege that Defendants' SmartCast technology collects certain information from users.  But none of the Plaintiffs allege that they purchased or used the SmartCast technology at any time.  Because a plaintiff may not assert claims for a product she did not purchase, Plaintiffs lack standing to pursue any claims that rely on allegations concerning SmartCast.  *See Granfield v. Nvidia Corp.*, 2012 WL 2847575, *6 (N.D. Cal. July 11, 2012) ("A plaintiff has standing to assert injury based on a defective product or false advertising only if the plaintiff experienced injury stemming from the purchase of that product.  Accordingly, when a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing.") (citations omitted); *accord Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, *3 (N.D. Cal. Jan. 10, 2011) (dismissing claims for products which plaintiff did not allege he purchased); *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, *4-5 (N.D. Cal. June 14, 2012).

This is even more true because Plaintiffs fail to "allege facts sufficient to show that the products Plaintiffs did not purchase are 'substantially similar' to those that they did." *Kane v. Chobani, Inc.*, 2013 WL 5289253, *11 (N.D. Cal. Sep. 19, 2013).  Here, Plaintiffs allege that SmartCast is an entirely different product than an Inscape-enabled Smart TV, with different features and functions.  Plaintiffs allege that SmartCast is "VIZIO's *latest* delivery engagement software" and "can be used on a *tablet remote* . . .

to 'cast,' or display, content from the tablet remote to the television display or speakers"
as well as a smartphone.  CC, ¶¶ 47, 48 (emphasis added).  Plaintiffs allege that
SmartCast gathers different data than Inscape (*see id.*, ¶¶ 55-57) and runs different
software (*see id.*, ¶¶ 45, 47, 50).  Because the Complaint alleges neither that a single
Plaintiff has purchased or used a SmartCast-enabled display nor that SmartCast is
substantially similar to products purchased by Plaintiffs, any claims relying on SmartCast
allegations must be dismissed and the SmartCast allegations must be struck.  *See Bruton
v. Gerber Prods. Co.*, 2014 WL 172111, * 8 (N.D. Cal. Jan. 15, 2014) (dismissing claims
based on products plaintiff did not purchase absent allegations showing how non-
purchased products were similar to purchased products).

## V.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE VIDEO PRIVACY PROTECTION ACT

The Video Privacy Protection Act ("VPPA"), which targets the "[w]rongful
disclosure of video tape rental or sale records," 18 U.S.C. § 2710, permits a private cause
of action against "video tape service providers" for disclosing a consumer's "personally
identifiable information."  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015).
In this first-of-its-kind challenge, Plaintiffs do not sue a provider of video services, but
rather Defendants—whom Plaintiffs collectively call a "consumer electronics company"
(CC, ¶ 35)—under the VPPA.  But Defendants can be liable only if Plaintiffs
demonstrate that: 1) Defendants are "video tape service providers"; 2) Plaintiffs are
"consumers" of such a "provider"; and 3) Defendants disclosed their "personally
identifiable information."  18 U.S.C. § 2710.  Plaintiffs' sweeping allegations and far-
fetched liability theory do not satisfy any of these requirements.

### A.   Defendants Are Not "Video Tape Service Providers," Because They Do Not Provide Any Video Materials or Services.

"[I]n order to plead a plausible claim under [the VPPA], a plaintiff must allege that
a defendant is a 'video tape service provider.'"  *Mollett*, 795 F.3d at 1066 (quoting 18
U.S.C. § 2710(a)(4)).  Plaintiffs cannot do so.

"The VPPA was enacted in 1988 in response to the *Washington City Paper*'s publication of then-Supreme Court nominee Robert Bork's video rental history." *Mollett*, 795 F.3d at 1065.  To solve the problem that prompted the VPPA's enactment, Congress defined the term "video tape service provider" narrowly to capture video tape rental stores and similar enterprises, *i.e.*, entities "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials[.]"  18 U.S.C. § 2710(a)(4); *see also id.*, § 2710(a)(3) (disclosure must relate to "specific video materials or services" obtained from video tape service provider).  Under the statute's plain terms, Defendants are only liable if Plaintiffs can show that they are engaged in the business of *renting*, *selling*, or *delivering* "prerecorded video cassette tapes or similar audio visual materials" to customers who obtained "specific video materials or services" *from Defendants*.

In a strained attempt to fit Defendants within the VPPA, Plaintiffs allege only that Defendants are in the business of "deliver[ing]" video materials or services.  CC, ¶ 112.  But as Plaintiffs elsewhere concede, Defendants are not a "provider of specific video materials or services," but a "consumer electronics company" that sells electronic devices to end users.  *Id.*, ¶ 35; *see also id.*, ¶¶ 24-27 (VIZIO, Inc. "designs, markets, and distributes for sale consumer electronic devices, including Smart TVs, throughout the United States.").  Plaintiffs allege not that Defendants *themselves* deliver any videos, but rather that Defendants[6] "*facilitate[] the transmission* of specific video titles to be made to consumers through its VIA and VIA Plus services[.]"  *Id.*, ¶ 112 (emphasis added); *id.*, ¶ 45 ("VIZIO delivers video content through VIZIO Internet Apps, Internet Apps Plus, and

---

[6] Plaintiffs conflate VIZIO and "Inscape" by identifying all of the Defendants collectively as a "consumer electronics company." *Id.*, ¶ 35.  However, the remainder of the Complaint makes clear that "Inscape"' is a data services software. *Id*., ¶ 49 ("*Inscape data services.* Inscape captures real-time viewing behavior data from VIZIO Smart TVs…"); *Id*., ¶ 52 ("Inscape program" uses Smart Interactivity software and "Inscape collects viewing data behavior from all media sources").  Data services companies are not Video Tape Service Providers ("VTSPs") as they do not rent, sell, or deliver audio visual materials.

**MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF DEFS.' MOTION TO DISMISS**

MDL Case No. 8:16-ml-02693-JLS-KES

SmartCast.  This software allows consumers to *access programming available on Netflix,
Hulu, YouTube, and Amazon Instant Video*, among others.") (emphasis added).

Thus, Defendants are not akin to the video rental store that Congress targeted, but
rather are like a building that leases space to several video rental stores (*i.e.*, video
content providers like Hulu and Netflix).  Plaintiffs make clear that *third-party service
providers*, not Defendants, actually sell, rent, and deliver "specific video materials or
services" to users.  *See id.*, ¶ 45 (although VIZIO provides software platform, "Netflix,
Hulu, YouTube and Amazon Instant Video and the like are entertainment companies that
create, produce, or license video programming either for free, for rent, or as part of a paid
subscription.").

Defendants are not aware of any court that ever found that entities like Defendants
are "video tape service providers."  Every entity that courts have deemed to be "video
tape service providers" either rented, sold, or delivered video content to users, either in a
physical store or in an analogous online format.  *See e.g., Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251, 1253 (11th Cir. 2015) (Cartoon Network mobile application delivered
videos); *Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d 1045, 1048 (9th Cir.
2015) (PlayStation Network rented and sold movies and video games); *Mollett,* 795 F.3d
at 1064 (Netflix sends subscribers videos by mail or allows them to stream videos
online); *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 184 (S.D.N.Y. 2015) (Disney
Channel application delivers videos); *Gakuba v. Hollywood Video, Inc.*, 2015 WL
5737589, *1 (D. Or. Sep. 30, 2015) (Hollywood Video rents movies to plaintiff).

In contrast, a district court rejected the argument that Google was a "video tape
service provider."  Even though Google operates a video service (*i.e.*, YouTube), the
district court dismissed the claims against Google where Plaintiffs failed to show that any
"'specific video materials or services' have been requested" *from Google*.  *In re
Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, *8 (D.N.J. July 2, 2014).  The
Third Circuit affirmed Google's dismissal, after plaintiffs on appeal abandoned any

argument that Google was a "video tape service provider" for purposes of the claims in suit.  *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 281 n.119 (3d Cir. 2016).

Accepting Plaintiffs' expansive theory—that the VPPA applies to anyone who merely "facilitates the transmission" of video services by others—would extend liability under the Act far beyond the limits Congress imposed.  Countless products and services arguably "facilitate the transmission" of video content: shipping services, Blu-ray players, smartphones, app stores, cable boxes, wireless routers, personal computers, video game consoles, and even cars.  Nothing in the statute or legislative history indicates that Congress intended the meaning of "video tape service provider" to sweep in companies like FedEx or Toyota, which—like Defendants— arguably "facilitate" delivery of video content but are not "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," and which do not deliver "specific video materials" to consumers.  18 U.S.C. § 2710(a)(3)-(4); *see Nickelodeon,* 827 F.3d at 290 ("The classic example [of a VPPA violation] will always be a video clerk leaking an individual customer's video rental history.  Every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim.").

Because Plaintiffs do not allege that Defendants delivered any "prerecorded video cassette tapes or similar audio visual content" to Plaintiffs or that Plaintiffs "requested or obtained specific video materials or services" from Defendants, Defendants are not "video tape service providers" and Plaintiffs' VPPA claim fails for that reason alone.

### B. <u>Plaintiffs Are Not "Consumers" Within the Meaning of the VPPA.</u>

The VPPA "defines the term 'consumer' as 'any renter, purchaser, or subscriber of goods or services from a video tape service provider.'"  *Mollett,* 795 F.3d at 1066 (quoting 18 U.S.C. § 2710(a)(1)).  Plaintiffs do not allege that they "rent[]" or "purchase[]" any video services from Defendants, nor that they "subscribe[]" to any of Defendants' services; instead, Plaintiffs allege that "[a]s *users* of VIZIO's Smart TVs, Plaintiffs and members of the Class are consumers within the definition of . . . the VPPA."  CC, ¶ 113 (emphasis added).  But the term "user" is not in the VPPA.  And

several courts have specifically rejected the idea that a mere "user" of a service is a "subscriber."  *See Ellis*, 803 F.3d at 1256–57 ("user" of app not a subscriber given lack of "ongoing commitment or relationship between the user and the entity which owns and operates the app"); *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 670 (S.D.N.Y. 2015) (rejecting argument that if "the provider has been able to access a user's information, . . . [that] is thereby sufficient to render her a subscriber"; instead, "an individual must do more than simply take advantage of a provided service . . . in order to have acted as a 'subscriber' of the provider").  Of course, "Congress *could have* employed broader terms in defining 'consumer' when it enacted the VPPA (e.g., *'user'* or 'viewer') or when it later  amended the Act (e.g., 'a visitor of a web site or mobile app'), but it did not."  *Ellis*, 803 F.3d at 1256–57 (emphases added).

Equating "consumer" with "user" would "sweep[] so broadly as to be effectively limitless," as essentially anyone who provides personal information to a service could be considered that service's "user."  *Austin-Spearman,* 98 F. Supp. 3d at 670.  Plaintiffs' effort to "render[] the 'consumer' clause superfluous" should be rejected.  *Id.*

### C. Plaintiffs Fail to Allege that Defendants Disclosed Personally Identifiable Information.

#### 1. Anonymous Device Identifiers Are Not "Personally Identifiable Information".

The VPPA defines "personally identifiable information" ("PII") as "information which *identifies a person* as having requested or obtained specific video materials or services[.]"  18 U.S.C. § 2710(a)(3) (emphasis added); *see also* S. Rep. No. 100-599 (1988), *12 (PII is information "that *identifies a particular person* as having engaged in a specific transaction with a video tape service provider") (emphasis added).

Plaintiffs, however, have failed to allege any facts showing that Defendants disclose information that "identifies a person."  Instead, the Complaint alleges only that Defendants disclosed "IP addresses, media access control (MAC) addresses, zip codes,

---

17

computer names, and product serial numbers." CC, ¶¶ 114, 115.[7]  But as many courts have held, such "anonymous identification data alone is not PII." *In re Hulu Privacy Litig*., 2014 WL 1724344, *11 (N.D. Cal. Apr. 28, 2014); *see, e.g., Eichenberger v. ESPN, Inc*., 2015 WL 7252985, *6 (W.D. Wash. May 7, 2015) (dismissing plaintiff's VPPA claim because Roku device serial number is not PII); *see also*, *e.g*., Request for Judicial Notice ("RJN"), Ex. A (*Perry v. CNN*, No. 66 Cv 02926, *8-10 (N.D. Ga Apr. 20, 2016)) (anonymous string of numbers such as MAC address is not PII; personal information must directly link specific person with actual video choices); *Robinson*, 152 F. Supp. 3d at 184 (dismissing VPPA claim against Disney; an "anonymized Roku serial number . . . does not [identify a specific person]"); *Locklear v. Dow Jones & Co., Inc*., 101 F. Supp. 3d 1312, 1317 (N.D. Ga. 2015), *abrogated on other grounds by Ellis*, 803 F.3d at 1255; *Ellis v. Cartoon Network, Inc*., 2014 WL 5023535, *3 (N.D. Ga. Oct. 8, 2014) (dismissing VPPA claim because an "Android ID, without more, is not personally identifiable information"), *aff'd on other grounds by Ellis*, 803 F.3d 1251.

As in these cases, Plaintiffs have alleged (at best) only that Defendants have disclosed *device-identifying* information.  *E.g*., CC ¶ 54 (IP addresses are "unique identifiers assigned to personal digital *devices*"); *id.*, ¶ 63 (Defendants collect "Non-Personal Information" "about their *VIZIO products* (such as MAC addresses, product model numbers, hardware and software versions, chipset IDs, and region and language settings)"); *id.*, ¶ 69 ("[MAC] addresses, for example, are unique 12-digit identifiers that are assigned to individual mobile *devices*") (emphasis added).  But information that identifies a *device* is plainly not the same as information that "identifies a person."  *See Nickelodeon*, 827 F.3d at 295 (definition of PII "does not extend to the kind of static digital identifiers allegedly disclosed"); *cf. Mollett*, 795 F.3d 1066 ("The VPPA, however, does not prohibit *all* disclosures.").  "If an IP address were to count as

---

[7] The Complaint inaccurately suggests that Defendants disclose data associated with the user profile for SmartCast consumers, but never alleges that any of the Plaintiffs are SmartCast consumers.  Therefore any allegations concerning SmartCast are inapplicable to this case.  *See* Section IV.E, *supra*.

personally identifiable information, either standing alone or coupled with similar data points, then the disclosure of an IP address to *any* Internet company with registered users might trigger liability under the Act." *Nickelodeon,* 827 F.3d at 290.[8]

Plaintiffs vaguely allege that disclosure of these multiple data points "provides a 'game plan' to associate individuals with their viewing habits." CC, ¶ 72. But the Third Circuit rejected that precise theory in the context of alleged disclosure of a much more comprehensive data set. The disclosure in *Nickelodeon* included not only virtually all the information at issue here (such as IP addresses and unique device identifiers), but additional person-specific information like "(1) the child's username/alias; (2) the child's gender; (3) the child's birthdate[.]" *Nickelodeon*, 827 F.3d at 269. The Third Circuit concluded that the Act's prohibition applies "only to the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior," *i.e.,* that "*identifies a specific person.*" *Id*. at 267. Thus, disclosure of anonymous device identifiers like IP addresses—"either standing alone or coupled with similar data points"—was not disclosure of PII as a matter of law. *Id.* at 290.

In reaching its conclusion, the *Nickelodeon* court distinguished *Yershov v. Gannett Satellite Info. Network, Inc*., 820 F.3d 482 (1st Cir. 2016), in which the First Circuit concluded that disclosure of *GPS coordinates* triggered application of the VPPA. *See Nickelodeon,* 827 F.3d at 289 ("the First Circuit focused on the fact that the defendant there allegedly disclosed not only what videos a person watched on his or her smartphone, but also the GPS coordinates of the phone's location at the time the videos were watched"); *see also Yershov,* 820 F.3d at 486.

Like *Nickelodeon* (and unlike *Yershov*), this case involves no GPS coordinates or similar information.[9] This case involves only device-specific information (like IP

---

[8] The VPPA's legislative history supports the plain-text view. Although Congress recently amended the VPPA, it "left the law almost entirely unchanged" with respect to what constitutes PII—despite public testimony recommending that the definition be expanded to include things like IP addresses. *Nickelodeon,* 827 F.3d at 288; *see Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 732-33 (1975) (Senate committee's refusal to adopt change to statutory text evidence that judicial interpretation was correct).

addresses, MAC addresses, and product serial numbers) that could not be tied to a particular user by an ordinary person as a matter of law.  *Nickelodeon,* 827 F.3d at 290. Such *device-specific* disclosures are in fact far more limited and anonymous than the disclosures at issue in *Nickelodeon*, which included such additional *person-specific* disclosures as usernames, birthdates, and gender.  Nevertheless, the Third Circuit held that such information, even in combination, was not PII as a matter of law: there, as here, Plaintiffs allegations are "simply too far afield from the circumstances that motivated the Act's passage to trigger liability."  *Id.*

### 2.  Anonymous Device Information Cannot Become PII Based on a Recipient's Idiosyncratic Knowledge.

Plaintiffs also appear to allege that, regardless of whether Defendants actually disclosed any PII, third parties could potentially combine Defendants' non-PII data with other information that Defendants *do not provide* to identify particular persons.  CC, ¶¶ 68-80.  But Plaintiffs have not alleged that any third-party has actually identified any of the specific Plaintiffs' actual names, ages, addresses, phone numbers, genders, or the like. Even if they had, this theory truly stretches the VPPA to the breaking point.  The VPPA creates liability only when a video tape service provider "discloses" PII to a third-party. 18 U.S.C. § 2710(b)(1).  Nothing in the Act suggests that a party that does *not* disclose PII could nonetheless be held liable simply because of something that happened later.

Unsurprisingly, courts have roundly rejected the suggestion that disclosure of anonymous data could lead to VPPA liability simply because a third-party data expert might piece together a person's identity: "The allegation that Google will assemble otherwise anonymous pieces of data to unmask the identity of individual children is, at least with respect to the kind of identifiers at issue here, simply too hypothetical to

---

[9] Plaintiffs vaguely allege that Defendants reveal "geolocation data" (CC, ¶¶ 8, 72, 79), but elsewhere make clear that Plaintiffs only disclose "IP addresses, media access control (MAC) addresses, zip codes, computer names, and product serial numbers." (*id.*, ¶114). Zip codes, which can cover areas with populations of 10,000 or more, are not PII. *Hancock v. Urban Outfitters, Inc.*, 32 F. Supp. 3d 26, 32 (D.D.C. 2014) ("[A] ZIP code is not a 'unique location identifier' since tens of thousands of people and organizations have the same ZIP code."), *vacated and remanded on other grounds*, 2016 WL 3996710 (D.C. Cir. July 26, 2016).

support liability under the [VPPA]." *Nickelodeon,* 827 F.3d at 290; RJN, Ex. A (*Perry v. CNN,* No. 66 Cv 02926, *8-10 (N.D. Ga Apr. 20, 2016)) (alleged disclosure of MAC address to analytics company that used addresses to identify users did not violate VPPA; VPPA's emphasis "falls 'on disclosure, not comprehension by the receiving person'"); *Robinson*, 152 F. Supp. 3d at 182 (transmission of device identifier did not violate VPPA because disclosed information "must *itself* do the identifying that is relevant for purposes of the VPPA," "not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties") (emphasis added); *Ellis*, 2014 WL 5023535, *3 (sending Android IDs to data analytics company specializing in tracking individual user behaviors was not violation of VPPA; data analytics company had to collect information from other sources before it could identify specific individuals); *Locklear*, 101 F. Supp. 3d at 1317 (transmitting Roku serial number to analytics company that identified specific individuals was not a violation of VPPA because analytics company had to take further steps to match Roku number with specific individual); *Eichenberger*, 2015 WL 7252985, *4 (ESPN did not violate VPPA by sending Roku serial number to data broker who identified specific individual using existing data already in data broker's system).

As these cases make clear, the VPPA is concerned only with disclosures of data that *independently qualify* as PII. *Nickelodeon,* 827 F.3d at 290. "If nearly any piece of information can, with enough effort on behalf of the recipient, be combined with other information so as to identify a person, then the scope of PII would be limitless." *Robinson*, 152 F. Supp. 3d at 181. This Court should reject this radical expansion of the definition of PII.

## VI. PLAINTIFFS' STATE LAW VPPA-ANALOG CLAIMS MUST BE DISMISSED FOR THE SAME REASONS AS THE VPPA CLAIM[10]

---

[10]  For purpose of this motion only, Defendants assume that the law of the state in which the Plaintiff allegedly resides in fact applies to Plaintiff's claims.  Defendants reserve the right to challenge Plaintiffs' choice-of-law selection at the appropriate stage. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012) (UCL, FAL, and CLRA claim could not be brought on behalf of nationwide class); *In re Yahoo Mail Litig.*, 308

Plaintiffs bring three claims pursuant to state statutory analogs to the VPPA: Claim 4 (under California Civil Code Section 1799.3); Claim 10 (under N.Y. Gen. Bus. Law, §§ 670-675); and Claim 12 (under Mass. Gen. Laws Ann. ch. 93, § 106). Each statute contains language similar to the VPPA. Cal. Civ. Code § 1799.3 ("No person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information" without consent); N.Y. Gen. Bus. Law, § 673 (prohibiting video tape service providers and sellers from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer"); and Mass. Gen. Laws Ann. ch. 93, § 106 (prohibiting "persons engaged in the business of leasing or renting videos or any employee thereof [to] maintain records that would indicate the title or category of any video leased or rented by a borrower other than the records necessary to ensure a completed transaction of such video").

Each claim fails for the same reason that the VPPA claim fails. First, Plaintiffs have not alleged that Defendants sell or rent video content, as required under the various statutes. California Civil Code Section 1799.3 applies only to persons who provide "video recording sales or rental services," a definition that is narrower than VTSP under the VPPA. N.Y. Gen. Bus. Law also is narrower than the VPPA, applying only to "retail establishments" defined as "any person engaged in the business of rental of prerecorded video cassette tapes or similar audio visual materials" and "'any person engaged in the business of selling prerecorded video cassette tapes or similar audio visual materials."). *Id.* at §§ 671, 672. The Massachusetts Video Records Protection Statute applies only to "persons engaged in the business of leasing or renting videos." Mass. Gen. Laws Ann. ch. 93, § 106. Plaintiffs do not allege that Defendants are in the business of renting or selling videos or content. *See* CC, ¶¶ 143, 245.

These claims also fail because Plaintiffs have not alleged that Defendants disclose consumers' PII to third parties. The Ninth Circuit has held that section 1799.3 should be

---

F.R.D. 577, 603 (N.D. Cal. 2015) (CIPA claim could not be brought on behalf of nationwide class).

interpreted similarly to the VPPA.  *See, e.g., Mollett*, 795 F.3d at 1066 (liability for disclosure under VPPA almost identical to liability under Section 1799.3).  The New York statute defines PII as "any information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider or video tape seller."  N.Y. Gen. Bus. Law, § 672(3).  Though New York courts have not analyzed this language, courts interpreting the almost identical language in the VPPA have found that anonymous identifiers do not qualify as PII.  *See* Section V, *supra*.  Finally, the Massachusetts statute prohibits the disclosure of "records that would indicate the name of the borrower or the title or category of any video leased or rented by a borrower."  Mass. Gen. Laws Ann. ch. 93, § 106(2).  Plaintiffs have not alleged that Defendants ever disclosed the name of the borrower or the video content leased or rented by a specific borrower, as discussed in detail above.

## VII.   PLAINTIFFS' WIRETAP ACT CLAIM MUST BE DISMISSED

Plaintiffs' claim for relief under the Wiretap Act, 18 U.S.C. § 2510 *et seq.* similarly attempts to shoehorn ill-fitting allegations into a statute that has no applicability and was not intended to regulate the conduct at issue.  In enacting the Wiretap Act, Congress was concerned with government surveillance of transmissions – a far cry from the conduct alleged here.  S. Rep. No. 99-541, p. 5 (ECPA created "a fair balance between the privacy expectations of American citizens and the legitimate needs of law enforcement agencies.").

Plaintiffs' claim under this statute must be dismissed for two reasons.  First, Plaintiffs have not—and cannot—adequately allege facts supporting that Defendants intentionally "intercepted" an electronic communication—a fundamental requirement of the Wiretap Act.  *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002).  Second, none of the information allegedly intercepted constitutes "contents" of the communications.  *See* 18 U.S.C. § 2510(4) (defining "intercept" as "the aural or other acquisition of the contents of any . . . communication").

### A.   Plaintiffs Have Not Alleged that Communications Are Acquired in Transmission, as Required by the Wiretap Act.

The Wiretap Act governs a person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[.]"  18 U.S.C. § 2511(1)(a).  "Intercept" means to acquire a communication *during its transmission*.  *Konop*, 302 F.3d at 878-79; *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1153 (C.D. Cal. 2007) ("[T]he Wiretap Act applies only to 'acquisition contemporaneous with transmission.'") (citation omitted).  This "is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course *before arrival*.'"  *Konop*, 302 F.3d at 878-79 (emphasis added).  Where content is in temporary storage or has arrived at its final destination, it is no longer in transmission.  *Id.* at 876 (finding no interception when defendant accessed website without authorization because written content on a website is no longer in transmission); *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 461-62 (5th Cir. 1994) (unread, private email messages hosted on electronic bulletin board system were not intercepted because they were no longer in transmission).

The Complaint makes clear that any alleged acquisition of data was not during "transmission."  Plaintiffs allege that Defendants gather data through Inscape, which captures the "content *displayed on VIZIO Smart TVs*" and that "Smart Interactivity intelligently recognizes the content *on the screen*" of the Smart TVs.  CC, ¶¶ 50, 52, 88 (emphasis added).  Similarly, Plaintiffs allege that the "viewing data points" are taken "from over 8 million VIZIO Smart TVs."  *Id.*, ¶ 39.  Plaintiffs thus allege that Inscape takes only communications already being displayed on their Smart TVs, in other words, communications that have been received.  Plaintiffs' allegations regarding the collection of IP addresses and other record information also rely on Inscape's technology (*see* CC, ¶ 54: "Inscape also collects consumers' IP addresses . . . .").  Gathering data after Plaintiffs have already received the communication and are viewing it on their Smart TVs does not qualify as an interception under the Wiretap Act.

1    *DirecTV, LLC v. Wright*, 2016 WL 3181170 (W.D.N.Y. June 3, 2016) is

2    particularly instructive.  In *DirecTV*, defendants allegedly rebroadcast their DirecTV

3    satellite programming using secondary receivers that mirrored DirecTV programming to

4    other televisions.  The court focused on "whether DirecTV has alleged that the

5    [defendants] *actually intercepted* a DirecTV satellite signal within the meaning of

6    § 2511."  *Id.* at *5.  The court did not find interception, noting that "DirecTV does not

7    appear to be alleging that the Wrights 'seize[d] satellite signals 'before arrival' to

8    DirecTV receivers" as required by *Konop*.  *Id.* at *5-6.  The court noted that there was no

9    unauthorized seizure when the content was mirrored from the televisions that were

10   authorized to and had already received the content.

11       As in *DirecTV*, the Complaint alleges that the relevant data has arrived at the

12   television before such data is allegedly "intercepted."  *See* CC, ¶¶ 39, 50, 52, 88, 62

13   ("Inscape collects, aggregates and stores data regarding most content *displayed on Vizio*

14   *television screens* . . . . ." (emphasis added)).  Given these clear factual allegations, the

15   Court can and should disregard Plaintiffs' conclusory allegations that "interception [by

16   Defendants of viewing data] was acquired during transmission" (CC, ¶ 128).  *See In re*

17   *Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 142 (3d Cir.

18   2015) (dismissing Wiretap Act claim; court "need not give legal effect to 'conclusory

19   allegations' that are contradicted by the pleader's actual description of what happened");

20   *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1106 (N.D. Cal. 2011)

21   (dismissing Wiretap Act claim where allegations regarding how Microsoft "intercepted"

22   plaintiff's communications "are both conclusory and devoid of factual support"); *Sunbelt*

23   *Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1030-31 (N.D. Cal. 2014) (plaintiff "vaguely

24   allege[d]" that defendant intercepted his text messages but "provide[d] no facts to support

25   this otherwise conclusory assertion" and "[i]f anything, the pleadings suggested that

26   [defendant] read [plaintiff's] text messages *after* they were sent and received . . . which is

27   insufficient to demonstrate intentional interception").

28

**MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF DEFS.' MOTION TO DISMISS**

## B.     The Information Allegedly Captured Is Not Actionable Under the Wiretap Act.

The Wiretap Act only prohibits the acquisition of "*the contents* of any wire, electronic, or oral communication . . . ."  18 U.S.C. § 2510(4) (emphasis added).  But the information allegedly "captured," such as "viewing histories and preferences, IP addresses, MAC addresses, zip codes, product model numbers, hardware and software versions, chipset IDs, and region and language settings" (CC, ¶ 129), is not the "content" of a communication for purposes of the Wiretap Act.  The Ninth Circuit limits "content" to "the intended message conveyed by the communication"; it "does not include record information regarding the characteristics of the message that is generated in the course of the communication."  *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).  None of the following is "content" under the Wiretap Act: a telephone call's origination, length, and time, *U.S. v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009); the geographic location of a mobile device, *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1127 (W.D. Wash. 2012); and routing or signaling information when performing a routing function (like telephone numbers, URL addresses, *In re Google Inc. Cookie Placement*, 806 F.3d at 136-38; *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1062 (N.D. Cal. 2012) ("[P]ersonally identifiable information that is automatically generated by the communication but that does not comprise the substance, purport, or meaning of that communication is not covered by the Wiretap Act").

Plaintiffs allege no facts establishing that the data allegedly "intercepted" constitutes the substance of any communication.  CC, ¶ 129.  Plainly, "IP addresses, MAC addresses, zip codes, product model numbers, hardware and software versions, chipset IDs, and region and language settings" do not constitute "contents" of communications.  Like routing and geographic information, *see Reed*, 575 F.3d at 917, such record information is automatically generated in connection with Plaintiffs' usage of their Smart TVs, and does not constitute the "substance, purport, or meaning" of the

26

communication itself.  *See e.g.* CC, ¶ 69 ("MAC addresses are automatically broadcast when devices search for networks or communicate with other devices.").

Similarly, "viewing histories" do not constitute "content" under the Wiretap Act but are instead mere "record" information excluded from the Act's coverage.  *See In re Zynga Privacy Litig.*, 750 F.3d at 1102 (reference header sent when Facebook user clicked on link that included "the user's Facebook ID and the address of the Facebook webpage the user was viewing when the user clicked the link" did not constitute "contents"); *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935-36 (N.D. Cal. 2015) (alleged interception of users' browsing histories and "the identity of the webpages that the users visited" failed to state claim under Wiretap Act);  *Burns v. Heyns*, 2015 WL 4391983, 83, 18 (W.D. Mich. July 15, 2015) (information generated from prison computer about "the time, order and duration the computer spent on each web page as well as which files were accessed and/or downloaded," was not content because data "merely provides 'record information' about a prisoner's usage of the [computer]").  According to the Complaint, Plaintiffs' "viewing histories" – alleged to include "online services a consumer visited" and the identity of "movies or television consumers watch" (CC, ¶¶ 8, 13) – provide only a list of what Plaintiffs accessed on their Smart TV, not the "the intended message conveyed" by the actual movies, shows, or services themselves.

Indeed, Plaintiffs allege that the "viewing data points" allegedly collected are "*attributes* of the content displayed on VIZIO Smart TVs" and that Smart Interactivity "match[es] those *attributes* to a database of existing content . . . ."  *Id.*, ¶ 50 (emphasis added).  According to Plaintiffs' own allegations then, the viewing data points themselves are simply record information.  Any actions taken by Defendants after collecting those data points, such as allegedly using Smart Interactivity to "match those attributes to a database of existing contents" are immaterial to the Wiretap Act analysis, which concerns the act of interception.  Here, as alleged by Plaintiff, interception is the collection of data points "on the screen" of their Smart TVs.  CC, ¶ 88.

## VIII.   PLAINTIFFS' CIPA CLAIM MUST BE DISMISSED FOR THE SAME REASONS AS WIRETAP ACT CLAIM

"The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) (granting judgment on the pleadings on CIPA claim for the same reasons that supported the dismissal of its Wiretap Act claim). Like the Wiretap Act, CIPA requires interception of communications "in transit" and does not apply when a party has not obtained the contents of a communication. Cal. Penal Code § 631; *see Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1064 (N.D. Cal. 2014) (dismissing CIPA claim that "suffer[ed] from the same deficiency" as plaintiffs' Wiretap Act claim, which did not allege an interception contemporaneously with a communication's transmission); *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015) (dismissing CIPA claim for failure to allege that defendant obtained contents of a communication). Because Plaintiffs have not alleged that Defendants intercept communications while in transmission, or that Defendants collect the content of communications, Plaintiffs' CIPA claim must be dismissed.

## IX.   PLAINTIFFS' FRAUD-BASED CLAIMS ARE NOT PLED WITH PARTICULARITY REQUIRED BY FED. R. CIV. P. 9(B)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Claims 5 through 9, 11, 14, and 19 are all fraud claims, or are grounded, at least in part, in fraud: Plaintiffs claim that Defendants failed to adequately disclose the purported collection and disclosure of consumer data to consumers, and in so doing, induced consumers to purchase VIZIO Smart TVs. CC ¶¶ 150-175; 184-194; 195-215; 223-228; 230-241; 250-253; 263-274; 284-287; 301-317. Rule 9(b)'s heightened pleading requirements thus apply to Plaintiffs' fraud claims (Claims 18 and 19), Plaintiffs' FAL Claim (Claim 7),[11]

---

[11] *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) ("Plaintiff's false advertising claims are grounded in fraud and that Rule 9(b) applies to the pleading of this claim.").

and Plaintiffs' state consumer protection claims to the extent that they are based on fraud or deception (Claims 5, 6, 8, 9, 11, and 14).[12]

To satisfy Rule 9(b), Plaintiffs' allegations must include "'the who, what, when, where, and how' of the alleged misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted); *accord Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Plaintiffs must also set forth what is false or misleading about a statement. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003). Plaintiffs have failed to meet the requirements of Rule 9(b) in pleading these claims; they do not describe what statements Defendants made that Plaintiffs actually saw, when they saw it, or any details regarding their reliance on such statements.

## A.   Plaintiffs Do Not Allege What Specific Representations the Named Plaintiffs Saw or When They Saw Any Representation.

While Plaintiffs identify certain statements on VIZIO's website and in VIZIO's privacy policy that they contend are misleading (*see* CC, ¶¶ 87-90, 92-94), no named Plaintiff is alleged to have actually seen any of these statements. Plaintiffs only generally allege that, "[w]hen shopping for their Smart TVs, Plaintiffs looked at the description of the televisions provided on the boxes in which their VIZIO Smart TVs were packaged." CC, ¶ 22. This single allegation collectively refers to "Plaintiffs" without naming any single plaintiff, and does not specify the packaging material that any individual Plaintiff actually saw. *Cherrone v. Florsheim Dev.*, 2013 WL 772526, *2 (E.D. Cal. Feb. 28, 2013) (dismissing claim under Rule 9(b) because plaintiffs "refer[red] to a broad array of advertising material" but failed to "explain how each of the plaintiffs encountered the alleged misrepresentation"); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F.

---

[12] *Perez v. Monster Inc.*, 149 F. Supp. 3d 1176, 1181 (N.D. Cal. 2016) (UCL, FAL, and CLRA claims); *Librizzi v. Ocwen Loan Serv. LLC*, 120 F. Supp. 3d 1368, 1381 (S.D. Fla. 2015) (FDUTPA claims); *Schwartz v. Independent Appraisals, LLC*, 2011 WL 5593108, *7 (D. Mass Nov. 17, 2011) ("Where a [Massachusetts] Chapter 93A action sounds in fraud, a plaintiff must plead such fraud with particularity."); *Goodman v. HTC Am., Inc.*, 2012 WL 2412070, *16 (W.D. Wash. June 26, 2012) (fraud-based WCPA claim).

Supp. 2d 993, 1006 (S.D. Cal. 2011) (rejecting complaint alleging that "Plaintiff was exposed to and read Defendants' advertising claims, including . . . labeling," because the complaint did not "specify which of the advertising claims each Plaintiff saw or read.").

Nor does the Complaint allege when the named Plaintiffs encountered any allegedly misleading statement.  Indeed, Plaintiffs do not even provide a time period during which alleged misrepresentations were made or advertisements, product packages, or statements on VIZIO's website were distributed and available.  *Hargrove & Costanzo v. C.I.R.*, 240 F.R.D. 652, 658 (E.D. Cal. 2006) (Rule 9(b) not satisfied when complaint merely stated that the fraudulent conduct "took place from 1995 through 2000"); *Hydroxycut*, 801 F. Supp. 2d at 1006-07 (dismissing claim under Rule 9(b) where "[n]o facts are alleged as to the timing of the purchase in relation to the Plaintiffs exposure to the advertising claims"); *Edmunson v. Procter & Gamble Co.*, 2011 WL 1897625, *5 (S.D. Cal. May 17, 2011) (accord).

### B.   Plaintiffs Have Failed to Allege Actual Reliance with Particularity.

The following claims require allegations of facts establishing actual reliance: Claim 5 (CLRA), Claim 6 (UCL), Claim 7 (FAL), and Claim 14 (WCPA),[13] Claim 18 (fraud)[14], and Claim 19 (negligent misrepresentation).[15]  Plaintiffs' boilerplate allegations that Defendants' withholding of allegedly material information (*see* CC, ¶¶ 166, 185, 209, 210, 270) induced Plaintiffs to purchase VIZIO Smart TVs (*see* CC, ¶¶

---

[13] *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 810 (2007) (CLRA), disapproved on other grounds, *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 325-26 (2009) ( (UCL); *Baghdasarian v. Amazon.com, Inc.*, 2009 WL 4823368, *6 (C.D. Cal. Dec. 9, 2009) (UCL); *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1266 (N.D. Cal. 2014) (FAL); *Health Ins. Co.*, 2011 WL 13044240, *8 (W.D. Wash. Feb. 10, 2011) (WCPA).

[14] *See e.g. Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1088-89 (1993) (California law); *In re Cascade Int'l Sec. Litig.*, 840 F. Supp. 1558, 1571 (S.D. Fla. 1993) (Florida law); *Van de Velde v. Coopers & Lybrand*, 899 F. Supp. 731, 738 (D. Mass. 1995) (Massachusetts law); *BP W. Coast Prod. LLC v. SKR Inc.*, 989 F. Supp. 2d 1109, 1120 (W.D. Wash. 2013) (Washington law); *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 5730020, *4 (S.D.N.Y. Oct. 22, 2013) (New York law).

[15] *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986) (California law); *In re Cascade* , 840 F. Supp. at 1571 (Florida law); *In re Access Cardiosystems, Inc.*, 404 B.R. 593, 648 (Bankr. D. Mass. 2009) (Massachusetts law), *aff'd*, 488 B.R. 1 (D. Mass. 2012); *BP W. Coast Prod.*, 989 F. Supp. 2d at 1120 (Washington law); *McBeth v. Porges*, 2016 WL 1092692, *4 (S.D.N.Y. Mar. 21, 2016) (New York law).

168, 187, 272) fall far short.  To satisfy Rule 9(b)'s pleading requirement, Plaintiffs must allege reliance based on *specific* statements and *specific* products, which they have simply failed to do.  Plaintiffs never allege how, when, or where any Plaintiff was deceived by or otherwise relied upon any allegedly false statement that such Plaintiff saw or any specific omission.  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1027 (N.D. Cal. 2012) (dismissing FAL claim where "Plaintiffs never alleged reliance on any specific representation or advertising in registering for or using the LinkedIn website.").

### C.  <u>Plaintiffs Are Required to Plead, but Have Not Pled, Their Omission Claims with Particularity.</u>

Fraud claims based on omissions are subject to the same heightened pleading requirements as fraud claims based on affirmative misrepresentations.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) ([The] contention that . . . nondisclosure claims need not be pleaded with particularity is unavailing.").

"To plead the circumstances of an omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and failed to include the allegedly omitted information." *Gomez v. Carmax Auto Superstores California, LLC*, 2015 WL 350219, *6 (C.D. Cal. Jan. 22, 2015) (internal quotations and citation omitted); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) (dismissing omission-based fraud claims where plaintiff failed to "provide representative samples of advertisements, offers or other representations that plaintiff relied on to make her purchase that failed to include the allegedly omitted information").

As discussed above, Plaintiffs have failed to allege facts that could show reliance upon any omissions by Defendants at the time of purchase.  Plaintiffs have failed to identify any statements that any named Plaintiff actually saw (if any), much less describe a particular omission from such statement.  Nor do Plaintiffs allege that any named

1  Plaintiff actually relied upon any of the "advertisements, offers or other representations"

2  identified in the Complaint.

3      **D.    To the Extent that Plaintiffs' California False Advertising Law Claim
        and Plaintiffs' Claim for Negligent Misrepresentation Under California
4       and Washington Law Are Based on an Omissions Theory, These Claims
        Should Be Dismissed.**

5      The law is clear in California and Washington that a negligent omission alone is

6  not actionable; Plaintiffs must allege an affirmative misrepresentation.  *See Regents of*

7  *Univ. of Cal. v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1045 (N.D. Cal. 2006)

8  ("California negligent misrepresentation law . . . does not impose liability for negligent

9  omissions; some 'positive assertion' is required."); *Ross v. Kirner*, 172 P.3d 701, 704

10 (Wash. 2007) ("An omission alone cannot constitute negligent misrepresentation").

11 Similarly, a claim under the FAL requires an affirmative misleading statement.  *See* Cal.

12 Bus. & Prof. Code § 17500 ("It is unlawful . . . to make or disseminate  . . . any statement

13 . . . which is untrue or misleading . . . ."); *Norcia v. Samsung Telecommunications Am.,*

14 *LLC,* 2015 WL 4967247, *8 (N.D. Cal. Aug. 20, 2015) ("There can be no FAL claim

15 where there is no 'statement' at all."); *Stanwood v. Mary Kay, Inc.,* 941 F. Supp. 2d 1212,

16 1222 (C.D. Cal. 2012) ("FAL requires an untrue or misleading statement" and dismissing

17 claims that were "based on omissions, not misleading statements or partial

18 representations").

19     But Plaintiffs' negligent misrepresentation claim is entirely based on an omission

20 theory: that Defendants failed to disclose their alleged data collection and disclosure

21 practices.  *See* CC, ¶ 311 ("Defendants' negligently concealed, suppressed, or omitted a

22 material fact. . . .  Defendants concealed the existence of the Smart Interactivity tracking

23 software . . . and its disclosure of such viewing history, along with personally identifiable

24 information.").  Similarly, Plaintiffs' FAL claim is largely premised on the same alleged

25 omission.  CC, ¶ 200 ("Defendants failed to further inform Plaintiffs' that if they take

26 advantage of these feature and/or watch live broadcast programming on their Smart TVs,

27

28

their viewing data is collected and disseminated to third parties.").  To the extent that these claims are based on an omissions theory, Plaintiffs cannot pursue them.

## X. PLAINTIFFS' STATE CONSUMER PROTECTION CLAIMS MUST BE DISMISSED FOR FAILURE TO ALLEGE AN "ACTUAL INJURY" TO THE EXTENT THAT THE INJURY ALLEGED IS THE COLLECTION AND DISCLOSURE OF PERSONAL INFORMATION

Claims 5, 6, 7, 8, 9, 11, 13, and 14 are based on the consumer protection statutes of California, Florida, New York, Massachusetts, and Washington (respectively).  Although each statute has its own particular requirements and jurisprudence, each of the statutes requires a plaintiff to demonstrate that she suffered an actual injury before liability will attach.[16]  Similarly, a plaintiff alleging an FAL claim must have "suffered injury in fact and . . . lost money or property as a result of a violation of" the FAL.  Cal. Bus. & Prof. Code § 17535; *In re Actimmune Mktng. Litig.*, 2009 WL 3740648, *15 (N.D. Cal. Nov. 6, 2009) (citing *Buckland*, 155 Cal. App. 4th at 819).

For many of the same reasons that Plaintiffs lack Article III standing (*see* Section IV, *supra*), Plaintiffs cannot satisfy the "actual damages" requirement under these statutes by merely alleging the collection and disclosure of their private information, as Plaintiffs do in the Consolidated Complaint.  *See* CC, ¶¶ 183, 220, 240, 281.  Under California law, an individual does not have a property interest in their personal information, and its disclosure is thus not an "injury" under California consumer protection statutes.  *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011) (where "Plaintiffs allege[d] that Defendant unlawfully shared their 'personally identifiable information' with third-party advertisers[,]" such "personal information does not constitute property for purposes of a UCL claim"); *In re iPhone Application Litig.*, 2011 WL 4403963, *14 (N.D. Cal. Sept. 20, 2011) (same); *Ruiz v. Gap, Inc.*, 540 F.

---

[16] *Falco v. Nissan N. Am. Inc.*, 2016 WL 1327474, *7 (C.D. Cal. Apr. 5, 2016) (CLRA); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 847 (2008) (UCL); *Himes v. Brown & Co. Sec. Corp.*, 518 So.2d 937, 938 (Fla. Ct. App. 1987) (FDUTPA); *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 525 (S.D.N.Y. 2003) (NYDPA); *Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 53 (D. Mass. 2015) (Massachusetts Unfair and Deceptive Trade Practice statute); *Dilorenzo v. Costco Wholesale Co.*, 515 F. Supp. 2d 1187, 1198 (W.D. Wash. 2007) (WCPA).

33

Supp. 2d 1121, 1127 (N.D. Cal. 2008) (dismissing UCL claim because the "unauthorized release of personal information" did not constitute an actual injury).

Nor is disclosure of personal data a cognizable injury for purposes of Plaintiffs' state consumer protection claims.  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 994 (S.D. Cal. 2014) ("[P]ersonal data does not have an apparent monetary value that fluctuates like the price of goods or services.  As a result, to the extent Plaintiffs are alleging an entitlement 'to the value of their Personal Information,' but have not alleged a monetary loss relating to the disclosure of their Personal Information, these allegations fail under Florida law") (internal quotations omitted); *Willey v. J.P. Morgan Chase, N.A.*, 2009 WL 1938987, *10 (S.D.N.Y. Jul. 7, 2009) (dismissing New York Deceptive Trade Practice Act claim in data breach case because allegation of "loss of privacy . . . does not rise to the level of actual damages"); *Kelley v. CVS Pharmacy, Inc.*, 23 Mass. L. Rptr. 87, 2007 WL 2781163, *12 (Mass. Super. Ct. 2007) (allegation that pharmacy disclosed personal information without plaintiffs' authorization not actual injury); *Gragg v. Orange Cab Co., Inc.*, 942 F. Supp. 2d 1111, 1118-19 (W.D. Wash. 2013) ("Plaintiff cites no Washington law that establishes that an invasion of privacy is a cognizable injury under the [consumer protection statute], and the Court has not found any such authority").

## XI.   PLAINTIFFS' CLAIMS FOR VIOLATION OF PRIVACY MUST BE DISMISSED

### A.   Plaintiffs Fail to Allege a Highly Offensive Intrusion.

Under the laws of each of the four states in which Plaintiffs have alleged a common law claim for violation of privacy as well as a claim under M.G.L. c. 214, Section 1B,[17] Plaintiffs must allege that the intrusion was highly offensive to the

---

[17] M.G.L. c. 214, Section 1B similarly requires disclosure of "facts about an individual that are of a highly personal or intimate nature when there exists no legitimate countervailing interest," *Mulgrew v. City of Taunton*, 574 N.E.2d 389, 393 (Mass. 1991), or "private conduct which is no business of the public and the publicizing of which is, therefore, offensive." *Cefalu v. Globe Newspaper Co.*, 391 N.E.2d 935, 939 (Mass. Ct. App. 1979); *Jodoin v. Baystate Health Sys.*, 2010 WL 1257985, *28 (D. Mass. Mar. 29, 2010), (finding no violation of privacy for sharing personal medical information, because

34

reasonable person.  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009);[18] *Stasiak v. Kingswood Co-op, Inc.*, 2012 WL 527537, *2 (M.D. Fla. Feb. 17, 2012); *Doe v. Gonzaga*, 24 P.3d 390, 399 (Wash. 2001), *rev'd on other grounds sub nom., Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002); *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1309 (M.D. Fla. 2011) (to establish intrusion claim, plaintiff must allege that "behavior is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency"), *aff'd*, 627 F.3d 833 (11th Cir. 2010); *Mark v. Seattle Times*, 635 P.2d 1081, 1094 (Wash. 1981) ("The interference with a plaintiff's seclusion must be a substantial one resulting from conduct of a kind that would be offensive and objectionable to the ordinary person."); *see also*, *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 N.E.2d 912, 916 (Mass. 1991) (violation under Massachusetts privacy claim must be unreasonable and either serious or substantial).

Courts consistently hold that mere alleged disclosure of information or viewing history does not establish claim for an offensive intrusion of privacy.  For example, in *Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010 (N.D. Cal. 2012), plaintiffs alleged that LinkedIn collected and distributed the LinkedIn ID and the URL of the LinkedIn profile page that the user viewed to third parties that in turn could de-anonymize this data and determine the specific individual.  The court found that the defendant's conduct did not amount to a "serious" invasion of privacy.  *Id.* at 1025.[19]  Similarly, Plaintiffs' allegation

even if individuals could de-anonymize the data to identify a specific individual, "no private information was shared").

[18] The California Constitutional law right to privacy "sets standards similar to the common law tort of intrusion," and has "parallel elements" that include "(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion."  *Hernandez*, 47 Cal. 4th at 287-88. Any analysis of this right to privacy would equally apply to the common law tort of violation of privacy based on intrusion.

[19] *See also, In re Google Android Consumer Privacy Litig.*, 2013 WL 1283236, *4 (N.D. Cal. Mar. 26, 2013) (tracking and sharing highly detailed and confidential PII over substantial period of time without plaintiffs' knowledge or consent not serious or offensive enough to constitute invasion of privacy); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, *14-15 (N.D. Cal. Mar. 26, 2013) (same); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("Even assuming this information was transmitted without Plaintiffs' knowledge and consent, a fact disputed by Defendants, such disclosure [of information including device identifier number, personal data, and

that Defendants disclosed users' viewing history and anonymous information is insufficient to state a claim for an offensive intrusion, even if the data is collected and disclosed without the users' knowledge or consent.

Courts have also held that the use of personal information to engage in targeted advertising is nothing but routine commercial behavior. *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992-93 (2011) ("Here, the supposed invasion of privacy essentially consisted of [defendant] obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements. This conduct is not an egregious breach of social norms, but routine commercial behavior."). Since Plaintiffs have failed to show that Defendants collected and disclosed data for an "offensive or improper purpose," Plaintiffs' intrusion upon seclusion claim should be dismissed.

### B. Plaintiffs Have No Reasonable Expectation of Privacy in the Information Collected.

Plaintiffs also have entirely failed to allege that they have a reasonable expectation of privacy in the information allegedly collected and disclosed. "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). Only the most sensitive and confidential information triggers this particular tort.

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) is instructive. In *In re Yahoo,* the plaintiffs alleged that Yahoo scanned and stored the content of Yahoo Mail users' emails. *Id*. at 1021. The court held that while there could be a "legally protected privacy interest or reasonable expectation of privacy in any confidential and sensitive content within emails," there is no reasonable expectation of privacy in emails generally. *Id.* at 1040. "To the extent Plaintiffs claim a legally protected privacy interest and

geolocation information] does not constitute an egregious breach of social norms."); *Stasiak v. Kingswood Co-op, Inc.,* 2012 WL 527537, *3 (M.D. Fla. Feb. 17, 2012) (dismissing an invasion of privacy claim for obtaining consumer reports without a permissible purpose, because the intrusion "does not rise to the level of 'intolerable in a civilized society'").

reasonable expectation of privacy in email generally based on the mere fact that Yahoo intercepted and distributed their emails, regardless of the specific content in the emails, [p]laintiffs' claim fails as a matter of law." *Id.*

Here, Plaintiffs have entirely failed to allege how their viewing history (the only data that forms the basis for this claim, CC ¶ 129) is confidential or sensitive in any way. *See* CC ¶¶ 295-296.[20]  There is no allegation that Plaintiffs' specific "viewing data" (or any other information allegedly collected by Defendants) constitutes particularly confidential or sensitive information.  And as *Yahoo* establishes, Plaintiffs cannot claim a legally protected privacy interest based on the mere collection of viewing data, "regardless of the specific content" of such data.

## XII.  PLAINTIFFS FIFTEENTH CLAIM FOR UNJUST ENRICHMENT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE THE LACK OF AN ADEQUATE LEGAL REMEDY.

A majority of California courts hold that "unjust enrichment" is not a separate cause of action under California Law.  *Aguiar v. Merisant Co.*, 2014 WL 6492220, *9 (C.D. Cal. Mar. 24, 2014) ("Defendants contend that California law does not recognize a cause of action for unjust enrichment. The Court agrees."); *see also Hart v. BHH, LLC*, 2016 WL 2642228, *5 (S.D.N.Y. May 5, 2016) (collecting California federal cases and finding that "a majority of courts—including federal courts sitting in California—have found that such claims are not cognizable under California law").  Plaintiffs' California-based "unjust enrichment" claim should be dismissed on this basis.

The courts of Florida, Massachusetts, New York, and Washington all require Plaintiffs to allege that there is no adequate legal remedy in order to sustain an unjust enrichment cause of action.  *Denarii Sys., LLC v. Arab*, 2013 WL 6162825, *6 (S.D. Fla. Nov. 25, 2013) ( "'[T]o properly state a claim for unjust enrichment [under Florida law],

---

[20] Plaintiffs do not separately allege that the collection of information other than viewing data triggers the tort of invasion of privacy.  Even if they did, Plaintiffs have not alleged how anonymous identifiers constitute confidential or sensitive pieces of information. *See In re Zynga Privacy Litig.*, 750 F.3d at 1108 (law allows warrantless collection of email and IP addresses because information is not revealing).

a party must allege that no adequate legal remedy exists.'") (internal citations omitted); *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 182 (D. Mass. 2003) (dismissing unjust enrichment claim where Plaintiffs had adequate remedy at law under RICO claims); *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 996 (N.Y. 2008) (affirming dismissal of unjust enrichment claim because "plaintiffs have an adequate remedy at law"); *Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1251 (W.D. Wash. 2007) (dismissing unjust enrichment claim because it was equivalent to statutory copyright claim).

Here, Plaintiffs have not and cannot allege that there is no adequate legal remedy for the complained-of conduct.  Plaintiffs have asserted both fraud and consumer protection claims based on the same facts as their unjust enrichment claim.  (CC ¶¶150-172, 173-194, 203-226, 227-241, 250-253, 263-287, 301-309, 310-317.)  As Plaintiffs have an adequate legal remedy under each of the state laws for any purported harm implicated by their unjust enrichment claim, their Fifteenth Claim for unjust enrichment should be dismissed.

**MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF DEFS.' MOTION TO DISMISS**

MDL Case No. 8:16-ml-02693-JLS-KES

# XIII.  **CONCLUSION**

For the reasons stated above, Defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety.

Dated:  September 19, 2016

                                             **AKIN GUMP STRAUSS HAUER & FELD LLP**

By:  ____/s/ *Hyongsoon Kim*_____
Anthony T. Pierce (*admitted pro hac vice*)
apierce@akingump.com
1333 New Hampshire Avenue NW
Suite 1500
Washington, DC 20036
Tel:   202-887-4000
Fax:   202-887-4288

Hyongsoon Kim (SBN 257019)
kimh@akingump.com
4 Park Plaza, Suite 1900
Irvine, CA  92614
Tel:   949-885-4100
Fax:   949-885-4101

Patrick Eoghan Murray (SBN 293765)
pmurray@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067
Tel:   310-229-1000
Fax:   310-229-1001

*Attorneys for Defendants VIZIO Holdings, Inc., VIZIO, Inc., VIZIO Inscape Services, LLC, and VIZIO Inscape Technologies, LLC*

**MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF DEFS.' MOTION TO DISMISS**