Eric H. Gibbs (Bar No. 178658)
Andre Mura (Bar No. 298541)
Linda Lam (Bar No. 301461)
**GIRARD GIBBS LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel:  (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amm@classlawgroup.com
lpl@classlawgroup.com

Joseph W. Cotchett (Bar No. 36324)
Adam J. Zapala (Bar No. 245748)
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel:  (650) 697-6000
Fax: (650) 697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com

*Co-lead Counsel for Plaintiffs*

### UNITED STATES DISTRICT COURT FOR THE
### CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

| | |
|---|---|
| IN RE: VIZIO, INC., CONSUMER PRIVACY LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | Case No. 8:16-ml-02693-JLS (KESx)<br><br>**PLAINTIFFS' OPPOSITION TO VIZIO DEFENDANTS' MOTION TO DISMISS**<br><br>DATE:     December 16, 2016<br>TIME:     2:30 p.m.<br>DEPT:     Courtroom 10-A<br>JUDGE:    Hon. Josephine L. Staton |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

FACTS ....................................................................................................1

ARGUMENT ...........................................................................................3

I.   Plaintiffs Have Article III Standing................................................4

   A.   Statutory Privacy Violations. .....................................................4

   B.   Common Law Privacy Violations .............................................7

   C.   Economic Harm .........................................................................7

   D.   Substantially Similar Products. ...............................................10

II.   Plaintiffs' Statutory Privacy Claims Are Well-Pled....................10

   A.   The VPPA ...............................................................................10

     1.   Vizio is a "video tape service provider."...........................11

     2.   Plaintiffs are subscribers and hence consumers. ..............13

     3.   Vizio disclosed personally identifiable information. ........15

   B.   Plaintiffs' Wiretap Act Claim Is Well-Pled ...........................18

     1.   Vizio "Intercepted" an Electronic Communication. .........18

     2.   Vizio Intercepted the "Contents" of Communications......20

      a.  Viewing history and preferences are "contents" ...............20

   C.   Plaintiffs Adequately Pled Violation of the California Invasion of Privacy Act. ………………………………………………………………...21

III.   Plaintiffs' Fraud-Based Claims Are Pled With Sufficient Particularity Under Rule 9(b)................................................................................21

   A.   The Legal Standard for Fraud-Based Claims Under Rule 9(b)........................21

   B.   Plaintiffs Allege Fraudulent Omissions With Particularity. ............22

     1.   The Relaxed Standard For Fraudulent Omissions..........................22

     2.   Fraudulent Omissions Are Adequately Alleged Even Under The Standard That Vizio Claims Is Applicable. ..............................................23

i

C.    Plaintiffs Sufficiently Alleged Claims Based on Affirmative Statements that Required Further Disclosure. ...................................................................24

D.    Plaintiffs Properly Allege What They Saw. .................................................25

E.    Plaintiffs Adequately Allege Reliance. ........................................................26

IV.   The Complaint Adequately States Omissions-Based Claims Under California's False Advertising Law (FAL) And For Negligent Misrepresentation Under California And Washington Law .............................................................................27

A.    An Omission Can Form the Basis of a California False Advertising Claim. ...27

B.    A Material Omission May Form the Basis of a Negligent Misrepresentation Claim Under California Common Law. .......................................................28

C.    A Material Omission May Form the Basis of a Negligent Misrepresentation Claim Under Washington Law. .................................................................29

V.    Plaintiffs Properly Alleged Actual Injury for Purposes of Their Consumer Protection Claims ...........................................................................................29

VI.   Plaintiffs Allege Cognizable Claims for Invasion of Privacy. ...........................31

VII.  Plaintiffs Allege Cognizable Unjust Enrichment Claims .................................35

CONCLUSION ...........................................................................................................36

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

# TABLE OF AUTHORITIES

**Cases**

192 Wash. App. 1002, 2015 WL 9462096 (Dec. 28, 2015) ............................................ 29

*Alexander v. Sanford,*
  181 Wash. App. 135 (2014) ............................................................................ 29

*In re Anthem Inc. Data Breach Litigation,*
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ............................................................ 31

*Astiana v. Hain Celestial Grp., Inc.,*
  783 F.3d 753 (9th Cir. 2015) .......................................................................... 36

*Austin-Spearman v. AMC Network Entm't LLC,*
  98 F. Supp. 3d 662 (S.D.N.Y. 2015) .............................................................. 15

*Baggett v. Hewlett–Packard, Co.,*
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) .......................................................... 22

*Bailey v. Kind, LLC,*
  2016 WL 3456981 (C.D. Cal. June 16, 2016) ................................................. 36

*Barr v. United States,*
  324 U.S. 83 (1945) .......................................................................................... 12

*Brickman v. Fitbit, Inc.,*
  2016 WL 3844327 (N.D. Cal. July 15, 2016) ................................................. 25

*Bunnell,*
  567 F. Supp. 2d ....................................................................................... 18, 20

*Goodman v. HTC America, Inc.,*
  2012 WL 2412070 (June 26, 2012) ................................................................ 35

*Campbell v. Facebook,*
  77 F. Supp. 3d 836 (N.D. Cal. 2014) .............................................................. 19

*Carrese v. Yes Online Inc.,*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) ............................................ 4

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.,*

2016 WL 4729302 (N.D. Cal. Sept. 12, 2016) ..................................... 10

*Corson v. Toyota Motor Sales, U.S.A., Inc.,*

2013 WL 10068136 (C.D. Cal. July 18, 2013) .................................... 26

*E.digital Corp. v. Toshiba Am. Info. Sys., Inc.,*

2014 WL 12516081 (S.D. Cal. July 10, 2014) ............................... 16, 17

*Edwards v. First Am. Corp.,*

610 F.3d 514 (9th Cir. 2010) ............................................................... 5

*Ehret v. Uber Technologies, Inc.,*

2014 WL 4640170 (N.D. Cal. Sept. 17, 2014) .................................... 25

*Ehrlich v. BMW of North America,*

801 F.Supp.2d 908 (C.D. Cal. 2010) ................................................... 28

*Ellis v. Cartoon Network, Inc.,*

803 F.3d 1251 (11th Cir. 2015) ........................................................... 14

*Ferreira v. Sterling Jewelers, Inc.,*

130 F. Supp. 3d 471 (D. Mass. 2015) .................................................. 32

*Fisher v. State ex rel. Dept. of Health,*

106 P.3d 836 (Wash. Ct. App. 2005) ................................................... 34

*Fraley v. Facebook, Inc.,*

830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................... 9

*Fraser v. Wal-Mart Stores, Inc.,*

2016 WL 6094512 (E.D. Cal. Oct. 18, 2016) ........................................ 6

*Glenn v. Hyundai Motor Am.,*

2016 WL 3621280 (C.D. Cal. June 24, 2016) ...................................... 27

*Handy v. LogMeln, Inc.,*

2015 WL 1729681 (E.D. Cal. Apr. 15, 2015) ...................................... 28

iv

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982)................................................................. 5

*Herremans v. BMW of N. Am., LLC,*
  2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) .............................. 26

*Hill v. Nat'l Collegiate Athletic Ass'n,*
  865 P.2d 633 (Cal. 1994).......................................................... 32

*Hinojos v. Koh's Corp.,*
  718 F.3d 1098 (9th Cir. 2013) ............................................. 7, 30

*In re Canon Cameras,*
  2006 WL 1751245 (S.D.N.Y. June 23, 2006) ........................... 36

*In re Carrier IQ, Inc.,*
  78 F. Supp. 3d 1051 (N.D. Cal. 2015)........................... 19, 20, 31

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
  806 F.3d 125 (3d Cir. 2015) ................................................. 7, 33

*In re Hulu Privacy Litig.,*
  2012 WL 3282960 ....................................... 12, 13, 14, 17

*In re iPhone Application Litig.,*
  844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................................... 8

*In re Lenovo Adware Litigation,*
  2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ......................... 8, 31

*In re Nickelodeon Consumer Privacy Litig.,*
  827 F.3d 262 (3d Cir. 2016) ................................................... 4, 5

*In re Sony Gaming Networks and Consumer Data Sec. Breach Litig.,*
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ...................................... 28

*In re Toyota Motor Corp.,*
  790 F. Supp. 2d 1152 (C.D. Cal. 2011) ....................... 27, 28, 30

*In re Yahoo Mail Litig.,*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................. 35

*In re Zynga Privacy Litig.,*

750 F.3d 1098 (9th Cir. 2014) ................................................................. 4, 20

*Johnson v. City of Shelby, Miss.,*

135 S. Ct. 346 (2014) ................................................................. 18

*Kasky v. Nike, Inc.,*

27 Cal. 4th 939 (2002) ................................................................. 28

*Keegan v. Am. Honda Motor Co.,*

838 F. Supp. 2d 929 (C.D. Cal. 2012) ................................................................. 27

*Knevelbaard Dairies v. Kraft Foods, Inc.,*

232 F.3d 979 (9th Cir. 2000) ................................................................. 26

*Konop v. Hawaiian Airlines, Inc.,*

302 F.3d 868 (9th Cir. 2002) ................................................................. 18, 19

*Kwikset Corp. v. Super. Ct.,*

246 P.3d 877 (Cal. 2011) ................................................................. 8

*Leoni v. State Bar,*

39 Cal. 3d 609 (1985) ................................................................. 28

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*

134 S. Ct. 1377 (2014) ................................................................. 7

*Lorillard v. Pons,*

434 U.S. 575 (1978) ................................................................. 13

*Low v. LinkedIn Corp.,*

900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................. 32, 33, 35

*Luis v. Zang,*

833 F.3d 619 (6th Cir. 2016) ................................................................. 19

*Lujan v. Defenders of Wildlife,*

504 U.S. 555 (1992) ................................................................. 4, 6

vi

*Lusson v. Apple, Inc.,*
  2016 WL 6091527 (N.D. Cal. Oct. 19, 2016) ................................................. 23

*MacDonald v. Ford Motor Co.,*
  37 F. Supp. 3d 1087 (N.D. Cal. 2014) ........................................................ 23

*Massachusetts v. Mylan Labs.,*
  357 F. Supp. 2d 314 (D. Mass. 2005) ........................................................ 36

*Matera v. Google Inc.,*
  2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .................................. 4, 5, 6

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) ........................................................................ 7

*Mendoza v. Microsoft Inc.,*
  2014 WL 4540213 (W.D. Wash. Sept. 11, 2014) ...................................... 6

*Miller v. Gammie,*
  335 F.3d 889 (9th Cir. 2003) ........................................................................ 5

*Moore v. Kayport Package Exp., Inc.,*
  885 F.2d 531 (9th Cir. 1989) ...................................................................... 22

*Morongo Band of Mission Indians v. Rose,*
  893 F.2d 1074 (9th Cir. 1990) ...................................................................... 3

*Neilson v. Union Bank of California, N.A.,*
  290 F. Supp. 2d 1101 (2003) ...................................................................... 29

*Oppenheim v. I.C. Sys. Inc.,*
  695 F.Supp.2d 1303 (M.D. Fla. 2010) ...................................................... 34

*Opperman v. Path, Inc.,*
  87 F. Supp. 3d 1018 (N.D. Cal. 2014) .................................................. 7, 8

*Orlander v. Staples, Inc.,*
  802 F.3d 289 (2d Cir. 2015) ...................................................................... 30

*Peel v. BrooksAmerica Mortg. Corp.,*

vii

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

788 F. Supp. 2d 1149 (C.D. Cal. 2011) ................................................. 21

*Regents of Univ. of Cal. v. Principal Fin. Grp.,*

412 F. Supp. 2d 1037 (N.D. Cal. 2006) ................................................ 29

*Retrophin, Inc. v. Questcor Pharm., Inc.,*

41 F. Supp. 3d 906 (C.D. Cal. 2014) .................................................. 18

*Reynolds v. Wal-Mart Stores, Inc.,*

2015 WL 1879615 (N.D. Fla. Apr. 23, 2015) ...................................... 36

*Rodriguez v. Sony Computer Entm't Am.,*

801 F.3d 1045 (9th Cir. 2015) ........................................................ 4, 5

*Rollins, Inc. v. Butland,*

951 So.2d 860 (Fla. Dist. Ct. App. 2006) ............................................ 31

*Shin v. BMW of N. Am.,*

2009 WL 2163509 (C.D. Cal. July 16, 2009) ...................................... 26

*Spokeo, Inc. v. Robins,*

136 S. Ct. 1540 (2016) ............................................................... 4, 5, 6

*Stasiak v. Kingswood Co-op, Inc.,*

2012 WL 527537 (M.D. Fla. Feb. 17, 2012) ....................................... 34

*Steve Jackson Games, Inc. v. U.S. Secret Service,*

36 F.3d 457 (5th Cir. 1994) ......................................................... 19, 20

*Sunbelt Rentals, Inc. v. Victor,*

43 F. Supp. 3d 1026 (N.D. Cal. 2014) ................................................ 20

*Swartz v. KPMG LLP,*

476 F.3d 756 (9th Cir. 2007) .......................................................... 22

*Perkins v. LinkedIn Corp.,*

53 F. Supp. 3d 1190 (N.D. Cal. 2014) ................................................. 9

*U.S. ex rel. Kester v. Novartis Pharm. Corp.,*

2014 WL 4401275 (S.D.N.Y. Sept. 4, 2014) ....................................... 36

viii

*U.S. v. Jones,*

  132 S.Ct. 945 (2012)............................................................................. 35

*United States v. Gertz,*

  249 F.2d 662 (9th Cir. 1957) ............................................................... 15

*Velasco v. Chrysler Grp. LLC,*

  2014 WL 4187796 (C.D. Cal. Aug. 22, 2014) .............................. 22, 24

*Walker v. Jackson,*

  952 F. Supp. 2d 343 (D. Mass. 2013)................................................. 33

*Warth v. Seldin,*

  422 U.S. 490 (1975)............................................................................... 5

*Witt v. Corelogic Saferent, LLC,*

  2016 WL 4424955 (E.D. Va. Aug. 18, 2016) ...................................... 6

*Yershov v. Gannet Satellite Info. Network, Inc.,*

  2016 WL 4607868 (D. Mass. Sept. 2, 2016).............................. 4, 5, 6

*Yershov,*

  104 F. Supp. 3d 135 (D. Mass. 2015)................................................. 17

*Yershov,*

  820 F.3d .......................................................................................Passim


**<u>Statutes</u>**

18 U.S.C. § 2510................................................................................... 18

18 U.S.C. § 2710............................................................................ 11, 35

18 U.S.C. § 2710(a)(1)......................................................................... 13

Cal. Bus. & Prof. Code § 17200 ......................................................... 22

Cal. Penal Code § 630.......................................................................... 21

Fla. Stat. § 501.201 .............................................................................. 31

M.G.L. 214, § 1B ................................................................................. 33

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

§ 2510(4) ................................................................................................ 18

§ 2510(8) ................................................................................................ 18

§ 2710(a)(3) ........................................................................................... 15

**Rules**

Fed. R. Civ. P. 15(a) .............................................................................. 3

Fed. R. Civ. P. 9(b) ....................................................................... Passim

Rule 8 of the Federal Rules of Civil Procedure ................................. 36

**Other Authorities**

S. Rep. No. 100-599 ......................................................................... 10, 15

*The PII Problem: Privacy and A New Concept of Personally Identifiable Information,*
    86 N.Y.U. L. Rev. 1814 (2011) ................................................. 15, 16

## INTRODUCTION

Vizio's[1] motion to dismiss has a catch-me-if-you-can quality. The law, it insists, is outmoded and can do nothing to stop the trap Vizio has laid for consumers. It can lure consumers with the promise of Smart TVs that deliver entire video libraries on demand through Vizio's state-of-the-art user interface. Once they take the bait, Vizio can follow them home using technology that secretly tracks everything they watch as well as the real-world location of all the electronic devices they connect to their TVs. It can then sell this information to data brokers and advertisers, knowing it's all those entities need to identify individual consumers' personal viewing habits. Vizio can do this without obtaining consumers' consent, and it can continue doing this indefinitely.

But the law is not so meek. Congress and state legislatures have enacted privacy statutes that apply directly. It is no answer that these laws were enacted before the modern era of streaming video and "big data" analytics. "Drafters of every era know that technological advances will proceed apace and that the rules they create will one day apply to all sorts of circumstances they could not possibly envision." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 85–86 (2012). These statutes require Vizio to obtain consumers' consent before collecting or disclosing consumers' personal information, and Vizio's failure to secure that consent renders it liable for damages.

Beyond these privacy laws, consumer protection and tort law broadly prohibit unfair business practices like those at issue here. Vizio's challenge to those laws is limited largely to pleading technicalities, but it cannot avoid this Court's consideration of the merits of Plaintiffs' claims. The motion to dismiss should be denied.

## FACTS

Vizio manufactures and sells Smart TVs that are equipped with its proprietary "discovery and engagement" software. The software, called either Vizio Internet Apps or SmartCast, allows consumers to access programming available on applications such as

---

[1] "Vizio" refers collectively to all Defendants: Vizio, Inc.; Vizio Holdings, Inc.; Vizio Inscape Technologies, LLC; and Vizio Inscape Services, LLC.

1

Netflix, Hulu, and Amazon Instant Video. Consolidated Complaint, Dkt. No. 108 ("Compl.") ¶¶ 33, 35, 38, 45.

Vizio's business model is thus much more than just selling TVs, *id*. at ¶¶ 36-39, as Vizio reaps large profits collecting and selling its consumers' viewing data to offset slim margins on TV sales. *Id*. at ¶ 39. Vizio uses automatic content recognition technology, coined "Smart Interactivity," to capture, in real time, viewing data from over eight million Smart TVs daily. *Id.* at ¶ 42. Vizio collects, aggregates, and stores data on most of the content viewed on Vizio's Smart TVs, including from cable and satellite providers, gaming consoles, DVD players, and other sources. *Id.* at ¶ 52. Vizio then sells this data to advertisers and media content providers, who use that information to target consumers. *Id.* at ¶ 49.

Throughout this process, Vizio collects a wide array of additional information about viewers, including their IP addresses, zip codes, online services used, and MAC addresses. *Id.* at ¶ 54. For those who use SmartCast, an application created by Vizio that delivers movies, TV shows, and other streaming content, Vizio also collects information on what is being viewed on a user's tablet remote or SmartCast application, any content requested, and the date and time of any searches. *Id.* at ¶¶ 47, 55.

Vizio's data collection is, by design, unbeknownst to consumers. *Id.* at ¶ 10. Vizio pre-installs Smart Interactivity on its Smart TVs. *Id* at ¶ 59. Thus, unlike with competitors like Samsung and LG, the collection of sensitive viewing data is on by default in Vizio Smart TVs. *Id.* at ¶¶ 60-61. Consumers, therefore, must affirmatively opt out of data collection to avoid having Vizio collect and sell their individual viewing habits. *Id.* at ¶ 61. But nowhere in the packaging or marketing does Vizio disclose its data collection practice. *Id.* at ¶¶ 81-85. Neither is Smart Interactivity adequately disclosed in any privacy policy that a consumer may read from a Smart TV's screen. *Id.* at ¶ 86.

Even where Vizio does mention its data collection, its statements omit material information. *Id.* at ¶ 89. Online, Vizio claims any information it collects is "anonymous," and cannot be traced back to individuals–even though such information *can* be used to

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

identify specific people and connect them with what they have been watching and where they live. *Id.* at ¶¶ 90-91. Thus, while Vizio says any information it collects is "non-personal information," the opposite is true. *Id.* at ¶¶ 63-64, 68-80. For example, MAC addresses are unique 12-digit identifiers assigned to mobile devices, computers, and Smart TVs, which automatically broadcast whenever a device searches for networks or communicates with other devices. *Id.* at ¶ 69. MAC addresses can be linked to individual names and geolocation data. *Id.* at ¶¶ 70-71. Likewise, when SmartCast users sign up for the service, they provide their first and last names (and e-mail addresses), making it especially easy for third parties to identify their viewing habits. *Id* at ¶ 72.

Vizio's sharp practices are an outlier in the industry. Vizio's major competitors impose an opt-in requirement to invasive data tracking, whereas Vizio impose a buried and misleading opt-out default option.

The five named Plaintiffs in this case bought Vizio Smart TVs with no inkling of the fact that Vizio would be monitoring and disclosing everything they watch. *See id.* at ¶¶ 16-22. Although Plaintiffs examined Vizio's packaging when they were shopping for their Smart TVs and noted features such as the TVs' ability to connect to the Internet and stream content from many sources, Plaintiffs did not see–because Vizio failed to disclose– any indication that their viewing data would be collected and sold to third parties. Id. at ¶ 22. With no idea what Vizio was doing, they of course never consented to the disclosure of their private information. *Id.* Instead, had Plaintiffs known the truth, they would not have purchased, or would have paid substantially less for, their Vizio Smart TVs. *Id.*

## ARGUMENT

Vizio seeks dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction, and dismissal under Rule 12(b)(6) for failure to state a claim. Vizio's motion to dismiss should be denied.[2] If any claim is dismissed, however, Plaintiffs request leave to amend.

---

[2] Plaintiffs, however, elect not to press their state video privacy protection claims (Claims 4, 10, and 12), which, as Vizio points out, are narrower than the federal VPPA.

3

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

Fed. R. Civ. P. 15(a); *see Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (policy favoring amendment should be applied with "extreme liberality")

## I. Plaintiffs Have Article III Standing.

Article III standing exists if the plaintiff has (i) "suffered an injury in fact" that is (ii) caused by "the conduct complained of" and (iii) that "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992) (internal quotation marks omitted). Vizio challenges only the injury in fact requirement. But Vizio disclosed Plaintiffs' personal video-watching habits without their consent—and did so for profit. And Vizio only acquired Plaintiffs' money by misrepresenting and concealing its data-mining practices. These allegations demonstrate "concrete" injuries in fact that suffice to give rise to Article III standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016).

### A. Statutory Privacy Violations.

Vizio argues that Plaintiffs did not suffer "concrete" injuries, but bases its argument on grounds that have been expressly rejected; they should be rejected here, too. *See, e.g.*, *Rodriguez v. Sony Computer Entm't Am.*, 801 F.3d 1045, 1053 n.5 (9th Cir. 2015); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1105 n.5 (9th Cir. 2014); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016).[3] As these pre- and post-*Spokeo* cases recognize, Congress and state legislatures have created substantive privacy rights in one's communications and video-viewing history, authorizing suits for statutory damages to deter intrusions. The unauthorized collection and disclosure of video-viewing histories is thus a concrete injury under Article III. *E.g.*, *Rodriguez*, 801 F.3d at 1053 n.5. By alleging that Vizio monitored their private video-viewing histories and disclosed them to third parties, Plaintiffs have adequately pled concrete harm. Compl. ¶¶ 49-58; *In re Nickelodeon*, 827 F.3d at 274 ("While perhaps 'intangible,' the harm is also concrete in

---

[3] *See also Yershov v. Gannet Satellite Info. Network, Inc.*, 2016 WL 4607868, at *8 (D. Mass. Sept. 2, 2016); *Matera v. Google Inc.*, 2016 WL 5339806, at *14 (N.D. Cal. Sept. 23, 2016); *Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *6 (C.D. Cal. Oct. 13, 2016).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information.").

Vizio never acknowledges that the pre-*Spokeo* decisions of *Rodriguez* (VPPA) and *Zynga* (federal Wiretap Act) "foreclosed" its arguments. Those decisions remain binding because *Spokeo* is not "clearly irreconcilable with [the] prior circuit authority." *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). In *Spokeo*, the Supreme Court vacated a ruling that dealt with the *procedural* requirements of the Fair Credit Reporting Act. 136 S. Ct. at 1550. As the Third Circuit recently recognized, "None of the[ ] pronouncements [in *Spokeo* ] call[ ] into question whether [plaintiffs alleging wrongful disclosure under the VPPA] have Article III standing." *In re Nickelodeon*, 827 F.3d at 274. Since *Rodriguez* and *Zynga* remain binding, Vizio's arguments should be rejected.

Rather than address binding authority, Vizio engages in misdirection, arguing that *Spokeo* "confirms the prior rule that [a] statutory invasion alone is insufficient." Mot. at 7. But that misinterprets *Spokeo*, not to mention the prior rule. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982); *Warth v. Seldin*, 422 U.S. 490, 501 (1975). The *Spokeo* decision instructs courts to consider the history and judgment of Congress before determining whether a particular statutory violation constitutes a concrete injury. And *every* court to re-examine these factors in the context of the VPPA, the federal Wiretap Act, *and* CIPA has reached the same conclusion: Violations of the statutory rights under these laws constitute concrete injuries. *See supra* n.3.

As the post-*Spokeo* rulings demonstrate, there are three aspects of the VPPA, CIPA and Wiretap statutes that support the conclusion that violations of these statutes constitute concrete harms even without additional allegations of injury: the (i) existence of a private right of action, (ii) availability of statutory damages, and (iii) creation of a substantive right to privacy in video-viewing histories. *Matera*, 2016 WL 5339806, at *13 (quoting *Edwards*, 610 F.3d at 517); *see Yershov*, 2016 WL 4607868, at *8 & n.5. History confirms these judgments: "[I]t has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's

5

privacy that constitutes a concrete injury sufficient to confer standing to sue." *Witt v. Corelogic Saferent, LLC*, 2016 WL 4424955, at *12 (E.D. Va. Aug. 18, 2016) (finding injury in fact based on alleged violations of FCRA).

For these reasons, Vizio's emphasis of the language in *Spokeo* about "a bare procedural violation, divorced from any concrete harm," is not implicated here, where Plaintiffs allege the violation of a *substantive* statutory right. *Matera*, 2016 WL 5339806, at *13 (federal and state Wiretap); *Yershov*, 2016 WL 4607868, at *8 n.5 (VPPA). But even if the deprivation of Plaintiffs' private statutory rights could properly be typed 'procedural,' Plaintiffs still would not be required to allege any additional harm beyond the invasion of their statutorily created rights, because a "person who has been accorded a procedural right to protect his concrete interests" has standing to assert that right. *Lujan*, 504 U.S. at 572 n.7; *accord Spokeo*, 136 S. Ct. at 1549; *see, e.g.*, *Fraser v. Wal-Mart Stores, Inc.*, No. 2:13-CV-00520-TLN-DB, 2016 WL 6094512, at *5–6 (E.D. Cal. Oct. 18, 2016) (holding plaintiffs adequately alleged a procedural violation of Section 1747.08 through the collection of their zip codes sufficient to satisfy Article III standing).

Finally, none of Vizio's cited authorities compel a different outcome. With the exception of *Mendoza v. Microsoft Inc.*, 2014 WL 4540213 (W.D. Wash. Sept. 11, 2014), none address the statutes at issue or analogous substantive rights. And even *Mendoza* is distinguishable. The court there concluded that plaintiffs "failed to allege sufficient facts to establish a *particularized* injury" under the VPPA *Id*. at *4 (emphasis added). But here Vizio does not (and cannot) argue that Plaintiffs were not personally affected—it only challenges the concreteness element. And the *Mendoza* decision on particularity provides no help to Vizio with respect to concreteness.

In sum, Plaintiffs have alleged concrete harm that constitutes an injury in fact under Article III. The law allows Plaintiffs to seek relief for violations of their substantive legal rights, which is precisely what they seek to do here.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

### B.   Common Law Privacy Violations

As for Plaintiffs' common law privacy claims, the same allegations of privacy invasions—Vizio collected and disclosed Plaintiffs' video-watching habits without their consent in order to profit from the sale of this sensitive, private, and economically valuable information (Compl. ¶¶ 43, 49-58)—suffice to demonstrate Plaintiffs' concrete injuries. *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1057 (N.D. Cal. 2014) ("It is beyond meaningful dispute that a plaintiff alleging invasion of privacy as Plaintiffs do here presents a dispute the Court is permitted to adjudicate."); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 134 (3d Cir. 2015) (finding Article III standing, including for common law and constitutional privacy intrusion claims, and stating economic loss is not required)

### C.   Economic Harm

The complaint evinces two financial injuries: (1) Plaintiffs bought, and overpaid for, their Smart TVs, and (2) Vizio misappropriated their viewing histories (which are economically valuable) for its own commercial advantage. Beginning with overpayment, each Plaintiff alleges that Vizio represented, on the packaging, that the Smart TVs deliver a wide variety of video content—but without disclosing that the same features allow Vizio to collect Plaintiffs' video-viewing histories, which Vizio sells to third parties. Plaintiffs would not have purchased, or would have paid less for, their televisions had Vizio adequately disclosed these facts. Compl. ¶ 22.

These allegations of financial injury establish that Plaintiffs lost money or property, satisfying both Article III and statutory requirements. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014) ("A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III[.]"). When "Plaintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so," they have suffered an Article III injury in fact. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012); *accord Hinojos v. Koh's Corp.*, 718

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

F.3d 1098, 1104 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013). "The economic harm [can come] from the fact that 'the consumer ha[d] purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay . . . whether or not a court might objectively view the products as functionally equivalent.'" *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543, 2016 WL 3920353, at *20 (S.D.N.Y. July 15, 2016) (quoting *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 890 (Cal. 2011) (emphasis in original)).

Courts regularly credit allegations of overpayment when, as here, plaintiffs allege that defendant secretly "designed its products to allow consumers' personal information to be transmitted to third parties" and "led them to overpay for their devices." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1056 (N.D. Cal. 2012). For example, in the *In re Lenovo Adware Litigation*, plaintiffs alleged that a laptop manufacturer omitted material information about hidden software that intercepted plaintiffs' web-browsing in order to target them with ads, and that they would not have bought their laptops (or would have paid less for them) had Lenovo disclosed its preinstalled software. 2016 WL 6277245, at *5 (N.D. Cal. Oct. 27, 2016). These allegations of overpayment, the court found, demonstrated economic injury. *Id*. Similarly, in *Opperman v. Path, Inc.*, the court held that plaintiffs demonstrated economic harm based on allegations that "Apple misled them through its advertising and failed to disclose material information, that each Plaintiff relied on these misrepresentations or nondisclosures," and that each class member overpaid for the products. 87 F. Supp. 3d 1018, 1038 (N.D. Cal. 2014). There is no daylight between the allegations of overpayment in those cases and Plaintiffs' here. In both instances, consumers paid for a product that was materially different than represented. And in those cases, like here, consumers relied on the misrepresentations or omissions to their financial detriment.

Vizio responds that its televisions work as intended, Plaintiffs got what they paid for, and any claim of overpayment is speculative. No, the televisions do not work as televisions are intended to work, and in that sense are defective. Vizio cannot defeat

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

standing by imagining a world in which an intrinsic function of televisions is the unauthorized collection of viewing histories for sale to third parties. In reality, television manufacturers do not cull and sell video-viewing history without first obtaining permission. Compl. ¶¶ 60-61 (noting other major television manufacturers do not do this). It is no stretch, then, to say that a reasonable person, fully apprised of these facts, would negatively value these televisions. Vizio recognized as much, hence its business decision to hide its data-mining program so that consumers, who have many choices in the hyper-competitive television market, would not shop elsewhere. For these reasons, when Plaintiffs allege they were misled by Vizio's misrepresentations and omissions and overpaid for Vizio televisions that secretly collected their viewing history for sale to third parties, they have demonstrated a concrete economic injury.

The complaint also describes a second financial injury incurred by all Plaintiffs—that Vizio misappropriated economically valuable video-viewing history. Compl. ¶¶ 43-58. *Perkins v. LinkedIn Corp.*, confirms that misappropriation of valuable information constitutes economic harm. 53 F. Supp. 3d 1190 (N.D. Cal. 2014). There, plaintiffs sued LinkedIn, alleging it misappropriated their names to promote and grow LinkedIn's membership, and that an individual's name has economic value where the name is used to endorse or advertise a product. *Id*. at 1209-11. As in *Perkins*, Plaintiffs here adequately allege that Vizio misappropriated their private viewing histories, which have financial value.

While some courts have found that the mere collection of demographic information does not cause economic loss, and neither does the use of your own demographic information to target you with ads, *see Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 798-99 (N.D. Cal. 2011), the data collected here is *not* generic demographic information, and it is not merely used to target Plaintiffs with ads. Rather, the data is highly personalized video-viewing histories—as Vizio itself acknowledges. The collected information here, therefore, is a commodity, and its misappropriation caused economic harm. Compl. ¶ 67.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

### D.   Substantially Similar Products.

Lastly, Vizio claims that Plaintiffs lack standing to sue for any data mining that occurs on its latest Smart TVs (those with SmartCast technology, first sold in 2016) because none of the named Plaintiffs purchased one of these televisions. But "[t]he majority of the courts in this district and elsewhere in California reject the proposition that a plaintiff cannot suffer injury in fact based on products that the plaintiff did not buy." *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, 2016 WL 4729302, at *9 (N.D. Cal. Sept. 12, 2016). "[T]hese courts allow a plaintiff to proceed past the motion to dismiss stage with claims based on products that a plaintiff did not purchase, at least so long as the products and claims at issue are 'substantially similar.'" *Id.* Here, the newest (2016) and older models (2015 and earlier) are substantially similar, and so are the injuries. Plaintiffs allege the newest models collect the *same* information for the same reasons as the ones they purchased, and the claims pled, relief sought, and allegations of injury are exactly the same. That the newer models *also* collect and allow Vizio to disclose *more* personal data than the older ones does not make these products dissimilar insofar as the injuries, theories of liability, and requested relief are concerned. Plaintiffs, then, have standing to sue for all these models.

## II.   Plaintiffs' Statutory Privacy Claims Are Well-Pled.

Plaintiffs have adequately pled their statutory privacy claims.

### A.   The VPPA

Congress enacted the VPPA to allow consumers "to maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, at 8 (1988). The VPPA protects consumers by requiring that their consent be obtained before their personal video-viewing histories can be divulged. Vizio seeks dismissal of this claim for three reasons: it is not a qualifying "video tape service provider," plaintiffs are not "consumers," and the information it discloses is not "personally identifiable information." Each argument misreads the VPPA and the complaint.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

### 1.  Vizio is a "video tape service provider."

Vizio delivers streaming video directly to consumers through proprietary "discovery and engagement" software that Vizio developed for its Smart TVs. Compl. ¶ 38. Using Vizio's platform, the user can select videos from various video libraries, including Hulu's and Netflix's, for instant delivery. *Id.* at ¶ 45. In exchange for using Vizio's video-delivery software service, Vizio collects certain information about the user.

Vizio competes directly with other video delivery services, such as Roku. Indeed, when Plaintiff DeLaurentis discovered that Vizio was collecting and disclosing his personal information, he "deactivate[d] the data collection and sought a workaround by purchasing and using a Roku to stream video content." *Id.* at ¶ 18.

Against this backdrop, Plaintiffs alleged that Vizio qualifies as a "video tape *service* provider" because it is a "person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or *delivery* of prerecorded video cassette tapes or *similar audio visual materials*[.]" 18 U.S.C. § 2710 (emphasis added). It is quite odd, then, for Vizio to say that Plaintiffs "do not" allege that Vizio delivers any "similar audio visual content" to them. MTD 16. That is precisely what they allege—that Vizio is not merely a television manufacturer, it also provides them a service: the delivery of streaming video ("similar audio visual materials") through its discovery and engagement platform. Indeed, Plaintiffs purchased these Smart TVs in part because Vizio's technology brings the video rental store into the home, allowing Plaintiffs to access video on demand through Vizio's proprietary interface.

Vizio next argues that companies like Hulu, which are accessible through Vizio's video-delivery software, are necessarily the only "video tape service providers" within the arrangement. But the VPPA does not require that conclusion. The VPPA simply asks whether an interstate business is engaged in the delivery of "similar audio visual materials," which includes streaming video. *See In re Hulu Privacy Litig.*, 2012 WL 3282960, at *5-*6 (N.D. Cal. Aug. 10, 2012 (holding Hulu qualified as a "video tape service provider" because it helped deliver television and movies through the Internet for

---

11

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

free). Vizio points to no limitation in the text of the VPAA that says there can be only one video service provider per viewing experience. Instead, under a plain reading of the text, *any* company that provides this service must obtain consent before disclosing individuals' personal viewing-histories. And as a factual matter, receiving video services here requires comparable use of Vizio's proprietary interface as it does Hulu's.

As the statutory text supports Plaintiffs' position, not Vizio's, so does the legislative history. The VPPA was of course enacted before this type of technology existed, but "Congress was concerned with protecting the confidentiality of private information about viewing preferences *regardless of the business model or media format involved*." *Hulu*, 2012 WL 3282960, at *6 (emphasis added). Congress may not have imagined the technology Vizio has developed to deliver streaming video through licensing agreements with content providers like Hulu, but it "cast such a broadly inclusive net in the brick-and-mortar world, [that there is] no reason to construe its words as casting a less inclusive net in the electronic world when the language does not compel that we do so." *See Yershov*, 820 F.3d at 488 (discussing "subscriber"). Congress's choice of language in defining "video tape service provider" fairly brings Vizio's video-delivery service within the VPPA, and therefore "it is unimportant that the particular application may not have been contemplated by the legislators." *Barr v. United State*s, 324 U.S. 83, 90 (1945).

Note also that in 2012, shortly after the *Hulu* decision referenced above, Congress "considered the impact of the VPPA on the electronic distribution of video and chose only to make consent easier to obtain, rather than limiting the reach of the Act in the absence of consent." *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 488 (1st Cir. 2016) (citing 158 Cong. Rec. H6849–01 (Dec. 18, 2012)). Importantly, Congress did not alter the definition of "video tape service provider," which Hulu concluded covered businesses "dealing in digital conduct" such as video streaming. 2012 WL 3282960, at *4. This "supports an inference that Congress understood its originally-provided definition to provide at least as much protection in the digital age as it provided in 1988." See id. (reaching similar conclusion concerning meaning of "consumer"); *Lorillard v. Pons*, 434

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

U.S. 575, 580 (1978) ("Congress is presumed to be aware of . . . judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

In a final effort to evade the application of the VPPA, Vizio likens itself to a landlord who simply rents space to Hulu. But this analogy cannot be squared with the allegations in the complaint, which describes Vizio as an active participant in the video-delivery-service market: Vizio developed software and entered licensing arrangements to have certain video content available on demand through its Smart TVs, so that it could charge a premium for its Smart TVs. Compl. ¶¶ 45-48, 81. Vizio also suggests that if it is a video tape service provider, then so is a shipping company, a blu-ray player, and a car, because all "deliver" video in a literal sense. Vizio then ascribes that bizarre reading to Plaintiffs. But it is Vizio that is reading the word "delivery" in isolation to extend the statute's application far beyond what Congress would have wanted. The VPPA's consent requirements do not apply to anyone—only a qualifying video tape service provider. A shipping company that delivers DVDs is not a video tape service provider—it is a mail provider. The same goes for the other examples: those businesses and items do not transform into providers of video services by the mere act of "delivering" video. But the VPPA's protections plainly do apply to a business that runs a video-delivery service through software designed to bring the video-rental store into the home—which is precisely why Vizio is a qualifying "video tape service provider."

### 2. Plaintiffs are subscribers and hence consumers.

Next, Vizio argues that Plaintiffs are not "consumers" under the VPPA. The statute defines "consumer" to include a "subscriber" of goods or services from a video tape service provider. 18 U.S.C. § 2710(a)(1). Though the word subscriber is not defined therein, its ordinary meaning includes one who receives electronic texts or services by subscription. *Yershov*, 820 F.3d at 487.

In *Yershov*, the First Circuit held that an individual who accesses news and entertainment media content, including videos, through a proprietary mobile software application on his mobile phone qualifies as a "subscriber" within the meaning of the

VPPA. The app was free, but the court rejected the argument that monetary payment is necessary to qualify as a subscriber. *Id*. Instead, it found that the use of the mobile app generated information about that user that the defendant collected, and this was sufficient to establish a subscriber relationship. *Id*.; *see also Hulu*, 2012 WL 3282960, at *8 (concluding plaintiffs were subscribers of Hulu, notwithstanding that they watched videos on Hulu for free, in part because Hulu collected their data in exchange for viewing).

As in *Yershov*, Plaintiffs here used Vizio's proprietary discovery and engagement platform to watch video, and Vizio collects their personal data when they use this platform, such as MAC addresses, which reveals geolocation data. Vizio also collects this data so that it can push personalized ads to their devices. "[A]ccess was not free of a commitment to provide consideration in the form of that information, which was of value to" Vizio. *See id*. at 489. And it was not free in a different sense: Plaintiffs allege they paid a premium for this technology in order to have regular, and easy, access to these video delivery services. In these ways, Plaintiffs have alleged a sufficient relationship with Vizio's video-delivery services, such that it is a subscriber.

*Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015), is not to the contrary. *Ellis* concluded that plaintiff's acts of downloading and using a free mobile device application from the Cartoon Network did not make him a "subscriber" under the VPPA, but the court believed that the user of the application in that case did not have "to provide any information to Cartoon Network." *Id*. at 1254; *accord Yershov*, 820 F.3d at 488.

*Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662 (S.D.N.Y. 2015), is also distinguishable. The court concluded that a user of cable television website, who alleged that the owner of website disclosed her video-viewing history to a social network of which she was a member, failed to plead that she was a "subscriber" of the website because she only alleged episodic and random visits to the website. This fell far short of an "ongoing relationship between provider and subscriber," which could be otherwise established "by affirmative action on the part of the subscriber, so as to supply

---

14

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

the provider with sufficient personal information to establish the relationship and exchange." *Id.* at 669.

Here, as noted above, the allegations are quite different and in line with those found to be sufficient in *Yershov*. For these reasons, Plaintiffs are "subscribers."

### 3. Vizio disclosed personally identifiable information.

The VPPA provides that "the term 'personally identifiable information' includes information which identifies a person . . ." § 2710(a)(3). Unlike other definitions of PII which list specific types of data as qualifying, this is an example of a "standard" which is "open rather than closed in nature" and "can evolve and remain flexible in response to new developments." Paul M. Schwartz & Daniel J. Solove, *The PII Problem: Privacy and A New Concept of Personally Identifiable Information*, 86 N.Y.U. L. Rev. 1814 (2011). That Congress chose to define PII in terms of a standard is evident from its use of the word "includes." This word "normally implies that the proffered definition falls short of capturing the whole meaning." *Yershov*, 820 F.3d at 486; *see United States v. Gertz*, 249 F.2d 662, 666 (9th Cir. 1957) ("The word 'includes' is usually a term of enlargement, and not of limitation."). The legislative history confirms this reading. *Id.* (noting "official Senate Report expressly stating that the drafters' aim was 'to establish a minimum, but not exclusive, definition of personally identifiable information.'" (quoting S. Rep. No. 100–599, at 12)).

Congress's approach makes great sense for two reasons. For one, "many types of information other than a name can easily identify a person." *Id.* It can depend on the context. "[W]hen a football referee announces a violation by 'No. 12 on the offense,' everyone with a game program knows the name of the player who was flagged." *Id.* For another, the ability of any given information to identify individuals may change over time. 86 N.Y.U. L. Rev. at 1836. Consistent with that approach, in *Yershov*, the defendant (a publisher of a mobile news app) allegedly disclosed what videos a person watched on his or her smartphone and the GPS coordinates of the phone's location at the time the videos were watched. The court concluded that "[g]iven how easy it is to locate a GPS coordinate

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

on a street map, this disclosure would enable most people to identify what are likely the home and work addresses of the viewer[.]" *Id.*

Here, Plaintiffs allege that Vizio discloses Plaintiffs' video-viewing history and other information that is "reasonably and foreseeably likely to reveal which" videos Plaintiffs obtained. *See Yershov*, 820 F.3d at 486. Their allegations detail how this information links viewing data to specific individuals, including by pinpointing the location of Plaintiffs' Smart TVs. Compl. ¶¶ 68-73. Plaintiffs describe how MAC addresses are unique to Plaintiffs' Smart TVs and other electronic devices and serves as a wireless beacon that regularly broadcasts the device's precise location. *Id.* at ¶ 69. Plaintiffs allege Vizio discloses this data for not only the Smart TVs themselves, but all media sources connected to the Smart TVs and networks. Compl. ¶¶ 63, 72. These allegations plausibly state a claim under the VPPA.

Vizio offers two responses. It *agrees* that the disclosure of "GPS coordinates *or similar information*" with video-viewing histories "trigger[s] application of the VPPA." MTD 19 (emphasis added) (citing *Yershov*, 820 F.3d at 486). But it says this is not what it is doing, and it asks the Court to hold *as a matter of law* that the information it discloses, such as MAC addresses, do not provide, as Plaintiffs allege, "highly specific geolocation data" that identify where they watch these videos.

As Vizio knows, this factual argument is improper at the pleadings stage. *E.digital Corp. v. Toshiba Am. Info. Sys., Inc.*, 2014 WL 12516081, at *3 (S.D. Cal. July 10, 2014). The Court would be forced to decide a dispute of scientific fact at the pleadings stage. This includes whether MAC addresses in fact identify the precise location of Plaintiffs' Smart TVs where they watch videos, or whether the disclosure of MAC addresses are the equivalent of GPS coordinates.[4] "[S]uch arguments are better suited for a motion for

---

[4] The complaint notes that "retail analytics firms have used MAC addresses to pinpoint customer locations—a practice which the Federal Trade Commission ("FTC") has investigated," and that the data supplied by MAC addresses provides a correlated look-up table. Compl. ¶¶ 71, 79. Given these allegations, which must be accepted as true, with all

16

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

summary judgment on a more developed record." *E.digital Corp.*, 2014 WL 12516081, at *3; see *Yershov*, 104 F. Supp. 3d 135, 145 (D. Mass. 2015) ("the factual record would need to be developed before concluding that an Android ID is not PII"); *In re Hulu Privacy Litig.*, 2012 WL 3282960, at *7 (N.D. Cal. Aug. 10, 2012) ("Plaintiffs do not have to plead their evidence to give fair notice of their claims.").

Vizio cites a single case, *Perry v. Cable News Network*, in which the district court dismissed a VPPA claim, finding that "Plaintiff has merely pled that Defendants disclosed his MAC address along with the viewing history tied to that address. He has not, however, pled any facts to establish that the video history and MAC address were tied to an actual person and disclosed by Defendants." Case No. 1:14-cv-02926-ELR, Dkt. No. 66, at 10 (N.D. Ga. April 20, 2016). Citing plaintiff's complaint, the court described a MAC address as "a unique numeric string assigned to network hardware in the iPhone." *Id.* at 2 n.3. There is no mention of geolocation data or its disclosure. The allegations the court described in its order, and on which it granted dismissal, are not comparable to Plaintiffs' allegations here.[5]

At the pleadings stage, "the Court must accept as true all allegations of material facts that are in the complaint and must construe all inferences in the light most favorable to the non-moving party." *Retrophin, Inc. v. Questcor Pharm., Inc.*, 41 F. Supp. 3d 906, 910 (C.D. Cal. 2014). Plaintiffs have alleged enough facts to plausibly demonstrate that Vizio is disclosing information that is reasonably and foreseeably likely to reveal which videos Plaintiffs obtained—such as "highly specific geolocation data" pinpointing the

---

inferences drawn in Plaintiffs' favor, it would not be appropriate to conclude that "the linkage of information to identity" is "too uncertain." *Yershov*, 820 F.3d at 486.

[5] Even on its own terms, *Perry* is wrong. Far more persuasive is the district court's decision in *Yershov*, 104 F. Supp. 3d 135 (D. Mass. 2015), which the First Circuit affirmed, albeit by emphasizing location data. There, the district court concluded that any unique identifier—including a person's smartphone ID—is personally identifiable information. *Id*. at 145-46. The reasoning of the district court in *Yershov* would support a finding that MAC addresses are PII even in the absence of allegations regarding location-based data.

17

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

location of their Smart TVs. "Having informed [Vizio] of the factual basis for their complaint, [Plaintiffs] were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *See Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014).

### B.   Plaintiffs' Wiretap Act Claim Is Well-Pled

The Wiretap Act prohibits "interceptions" of electronic communications. 18 U.S.C. § 2510. It defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." § 2510(4). The "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication." § 2510(8). Plaintiffs' complaint alleges enough facts to state a Wiretap Claim that is plausible on its face.

### 1.    Vizio "Intercepted" an Electronic Communication.

In order for a communication to be "intercepted" under the Wiretap Act, the communication must be captured contemporaneous with its transmission. *See, e.g.*, *Bunnell*, 567 F. Supp. 2d at 1153; *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ("intercept" means "consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'") (citations omitted). Here, Plaintiffs' Complaint specifically pleads that "Inscape captures *real-time* viewing behavior data from VIZIO SmartTVs," (Compl. ¶ 49) (emphasis added), and that information "was *acquired during transmission*, as Smart Interactivity operated in *real-time . . .*" *Id.* at ¶ 128 (emphasis added); see also *id.* at ¶ 62 ("Inscape data services capture, *in real time . . .*") (quoting Vizio's SEC prospectus). For SmartCast users, VIZIO's technology also collects "information about what video or audio is playing on the Smart TV, tablet remote, or mobile phone using the SmartCast App." *Id.* at ¶ 55.

These allegations of real-time acquisition are sufficient to withstand a motion to dismiss. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1078-79 (N.D. Cal. 2015) (denying motion to dismiss Wiretap Act claim where the complaint "references and quotes

18

from a media interview with a Carrier IQ executive" who stated information was provided in real time and holding that the statement "further suggest[s] that the Carrier IQ Software operates contemporaneously with transmissions." ); *Luis v. Zang*, 833 F.3d 619, 630-31 (6th Cir. 2016) (interception sufficiently pled where plaintiff alleged that the product in question "immediately and *instantaneously* rout[e]s the intercepted communications to their . . . servers" in "near real-time," attaching marketing materials to his complaint that "directly support[ed] an inference of contemporaneous transmission."); *Campbell v. Facebook*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (similar).

Vizio now suggests that the content at issue was in temporary storage when captured. Mot. at 24. But the Complaint plausibly and sufficiently alleges that it was in transit, and the allegations in the complaint must be accepted as true at this stage. Though Vizio cites several rulings finding insufficient evidence of an interception, these rulings concerned summary judgment or post-trial rulings and thus have no bearing on whether Plaintiffs have adequately alleged interception. *See Konop*, 302 F.3d at 873-74 (summary judgment); *Steve Jackson Games, Inc. v. U.S. Secret Service*, 36 F.3d 457 (5th Cir. 1994) (post-trial appeal).

In any event, Vizio's authorities are easily distinguishable. *Konop*, for example, involved static content on a website. 302 F.3d at 872. There was no interception because the content had already been posted to the website in question. *Id*. at 879. The other cases Vizio cites largely involved email or text messages that had already been sent and received, a distinctly different factual scenario from that alleged in the Complaint.[6] *Carrier IQ* distinguished cases involving email and similar technology with allegations that the relevant communications were intercepted in real-time, which, is precisely what

---

[6] *See, e.g.*, *Bunnell*, 567 F. Supp. 2d at 1153 ("Anderson's actions necessarily fall outside the scope of the Wiretap Act . . . Plaintiffs' messages were copied and forwarded from the server to his Google email account."); *Steve Jackson Games*, 36 F.3d at 459, 461 (involving "[p]rivate E-mail . . . stored on the BBS computer's hard drive disk" that was therefore "in 'electronic storage.'"); *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1031 (N.D. Cal. 2014) ("the pleadings suggest that Sunbelt read Victor's text messages *after* they were sent and received on the Sunbelt iPhone") (emphasis in original).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

1   the Complaint pleads here. 78 F. Supp. 3d at 1078. Plaintiffs have sufficiently alleged
2   interception.

3           **2.       Vizio Intercepted the "Contents" of Communications.**

4        Under the Wiretap Act, "the term 'contents' refers to the intended message
5   conveyed by the communication, and does not include record information regarding the
6   characteristics of the message that is generated in the course of the communication." *In re*
7   *Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Here, the Complaint
8   sufficiently pleads facts showing Vizio intercepted the "contents" of their
9   communications.

10           **a.  Viewing history and preferences are "contents"**

11        Plaintiffs allege that Vizio intercepted communications between them and cable and
12   satellite providers, streaming devices, and media sources that connect via external input
13   to their Smart TVs. Compl. ¶ ¶ 49-53. Vizio thus learned what movies and television
14   Plaintiffs watch. Just as a request in person to a video store clerk for a specific movie is
15   the substance of the message itself, so too are Plaintiffs' requests for programming through
16   their Smart TVs and other devices, which Vizio intercepts. *Cf. Zynga*, 750 F.3d 1098,
17   2014 WL 1814029, at *9 ("[u]nder some circumstances, a user's request to a search engine
18   for specific information could constitute a communication such that divulging that search
19   term to a third party" could result in disclosure of contents).

20        Vizio's argument that viewing histories and preferences are mere record
21   information mischaracterizes the allegations in the complaint. As described in the
22   complaint, when consumers request a particular program, and Vizio intercepts that
23   communication, it is learning specific, highly personal information about Plaintiffs'
24   interests. It then sells that information so that it can be used to target Plaintiffs with ads
25   about their interests. Mere record information would not "generate intelligent insights for
26   advertisers and media content providers [ ] to drive [Inscape's] delivery of more relevant,
27   personalized content." Compl. ¶ 62. But Vizio's interception of the contents of Plaintiffs'
28   communication allows just that.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

1

2       **C.   Plaintiffs Adequately Pled Violation of the California Invasion of**

3              **Privacy Act.**

4              California's anti-wiretapping and anti-eavesdropping statute prohibits unauthorized

5       interceptions of communications in order "to protect the right of privacy." Cal. Penal Code

6       § 630 ("CIPA"). Vizio challenges Plaintiffs' CIPA claim on the same grounds as their

7       federal Wiretap Claim, and does not make any new arguments. For the reasons discussed

8       above and incorporated here by reference, Plaintiffs have adequately pled interceptions of

9       their communications in violation of CIPA.

10      **III.   Plaintiffs' Fraud-Based Claims Are Pled With Sufficient Particularity Under**

11             **Rule 9(b).**

12             **A.   The Legal Standard for Fraud-Based Claims Under Rule 9(b).**

13             Vizio overstates Plaintiffs' burden under Fed. R. Civ. P. 9(b). The purpose of Rule

14      9(b)'s heightened pleading standard is "to require a plaintiff to be '*specific enough to give*

15      *defendant*[] *notice of the particular misconduct which is alleged* . . . so that they can defend

16      against the charge and not just deny that they have done anything wrong.'" *Peel v.*

17      *BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1160 (C.D. Cal. 2011) (Staton, J.)

18      (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (emphasis added)).

19      Plaintiffs' 62-page complaint provides that information; it details Vizio's misleading and

20      incomplete statements, and key omissions, all of which obscured Vizio's practice of

21      collecting highly specific data about consumers' viewing histories, which Vizio sold to

22      third parties. *See* Compl. ¶¶ 9-10, 43, 62-67, 73, 75, 82-88, 90-91. Plaintiffs have satisfied

23      Rule 9(b).

24             At the outset, it is worth noting that Vizio seeks dismissal under Rule 9(b) regarding

25      Claims 5-9, 11, 14 and 19. Yet for many of these statutes, such as California's Unfair

26      Competition Law, Cal. Bus. & Prof. Code § 17200, liability does not hinge on "fraudulent"

27      conduct alone.  A defendant may be liable for fraudulent, unlawful, or unfair conduct. *Id*.

28      To the extent defendants seek complete dismissal of such claims, they have failed to carry

their burden as they have not moved to dismiss based on unlawful or unfair conduct proscribed by those state consumer protection laws.

**B. Plaintiffs Allege Fraudulent Omissions With Particularity.**

**1. The Relaxed Standard For Fraudulent Omissions.**

Plaintiffs have pled omission-based claims that are based on a legal duty to disclose that is independent of any affirmative representations that Vizio made. Vizio nevertheless argues that omissions claims are "subject to the same heightened pleading" standard as misrepresentation claims. Mot. at 31. But many courts have held otherwise. Judge Pregerson, for example, recently concluded that a "fraud by omission or fraud by concealment claim … 'can succeed without the same level of specificity required by a normal fraud claim.'" *Velasco v. Chrysler Grp. LLC*, 2014 WL 4187796, at *3 (C.D. Cal. Aug. 22, 2014) (quoting *Baggett v. Hewlett–Packard, Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007)). As Judge Pregerson explained there, a defendant is able to "prepare an adequate answer from the allegations" even without a plaintiff "specify[ing] the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Id.* (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)). Other California courts (including those cited by Judge Pregerson) have reached similar conclusions. *See, e.g.*, *Lusson v. Apple, Inc.*, 2016 WL 6091527, at *3 (N.D. Cal. Oct. 19, 2016) ("Rule 9 doesn't require maximum possible specificity, and an omission theory necessarily prevents plaintiffs from pleading every detail.") (citations omitted).

With this pleading standard in mind, Plaintiffs have met their Rule 9(b) burden of pleading Vizio's material omissions:

- Vizio's Smart TVs are designed to collect "highly specific data about consumers' viewing histories and preferences through invasive software," Compl. ¶¶ 2, 13, 49-57, 61, 69-71, 82;

- Vizio sells that sensitive information to third parties, *id.* ¶¶ 2, 43, 58, 68, 72, 82, 91, 157;

22

- Vizio knows the third parties can readily combine the personal viewing histories with viewers' individual identities and their pinpointed locations, *id.* ¶¶ 8, 72-79;

- Vizio knows consumers would not agree to share such personal and sensitive information and thus purposefully hid the practice from its customers, *id.* ¶¶ 10, 65-66, 82, 158, 167; and

- Plaintiffs would not have bought, or would have paid less for, their televisions because Vizio failed to disclose that it collects and disseminates private information, *id.* ¶¶ 11, 161, 165.

These allegations satisfy the requirements of Rule 9(b).

### 2.   Fraudulent Omissions Are Adequately Alleged Even Under The Standard That Vizio Claims Is Applicable.

Relying on *Marolda v. Symantec*, Vizio seeks to impose a heightened burden on Plaintiffs, asking the Court to require that the allegations "describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on[.]" Mot. at 31. But this is not true for omissions-based claims that do not derive from affirmative representations. *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (declining to apply *Marolda* requirements to allegations of pure omission unrelated to any particular defendant statement); *Velasco*, 2014 WL 4187796, at *4 (same). Because Plaintiffs are advancing omission claims that are based on a legal duty to disclose that is independent of any affirmative representations by Vizio, *Marolda* does not apply.

Even if *Marolda* were to apply here, Plaintiffs' Complaint would satisfy its requirements:

***Plaintiffs "describe the content of the omission."*** As discussed, the Complaint alleges that Vizio failed to disclose that their Smart TVs track consumers' viewing histories in a non-anonymous manner and disclose it to third-parties for profit. Compl. ¶¶ 9-10, 43, 62-63, 73-75, 79, 82-93.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

**_Plaintiffs allege "where the omitted information should or could have been revealed."_** The Complaint discusses the product packaging, Vizio's privacy policy, and other opportunities Vizio had to disclose what it was doing. The Complaint provides a picture of Vizio's Smart TV packaging and alleges "[w]hile the packaging on VIZIO's Smart TVs describe its features and indicate that the televisions are equipped to deliver video content through the Internet and can display content from cable and satellite providers, streaming devices, and other connected media sources, the packaging fails to inform (let alone adequately inform) consumers that if they take advantage of the TV's connectivity platform, their viewing data and personal information will be collected and shared with others." Compl. ¶¶ 81-94. The Complaint also explains how the omissions continue through the set up process, _id._ at ¶ 85, and how neither Vizio's Privacy Policy, which is buried in the TVs' "Reset & Admin" section, _id._ at ¶ 86, nor Vizio's website adequately discloses what Vizio is doing. _Id._ at ¶ 87.

**_Plaintiffs "provide representative samples" of representations._** As noted, the Complaint includes images and descriptions of both the Smart TV packaging and the on-screen privacy policy. Compl. ¶¶ 81-86.

Thus, even under the _Marolda_ standard that does not apply, the Complaint's omission allegations satisfy Rule 9(b).

## C. Plaintiffs Sufficiently Alleged Claims Based on Affirmative Statements that Required Further Disclosure.

Plaintiffs also advance claims based on affirmative statements by Vizio which, because they were not clarified, were likely to deceive consumers. With respect to this liability theory, "Rule 9(b) does not demand that plaintiffs research and present a detailed exposé in their complaint." _Brickman v. Fitbit, Inc._, 2016 WL 3844327, at *2 (N.D. Cal. July 15, 2016). Instead, Rule 9(b) can be satisfied by simply identifying the statements on Vizio's product packaging that are reasonably likely to mislead. _Id._ The complaint therefore does not need to "expressly allege when and where Plaintiff saw the statements." _Ehret v. Uber Technologies, Inc._, 2014 WL 4640170, at *3 (N.D. Cal. Sept. 17, 2014).

1  Requiring more, courts have explained, "would be unrealistic and would needlessly
2  impede access to important remedial … statute[s]." *Id.*

3       Plaintiffs' allegations here suffice; they explain why the language and images on
4  Vizio's product packaging are likely to mislead consumers. Specifically, plaintiffs allege
5  that the packaging enclosing Vizio's Smart TVs contains a misleading combination of
6  language and images in light of the information *not* provided. On the one hand, the
7  packaging emphasizes that by buying and using one of Vizio's Smart TVs, consumers can
8  gain access to a variety of video programming through enhanced "connectivity."  Users
9  can access video programming through the internet and through external devices (such as
10 smartphones, tablets, and computers). Compl. ¶¶ 10, 81, 83-84. The packaging in this
11 regard emphasizes that the Smart TVs can access apps made for TVs, and provide visual
12 examples such as Netflix, Hulu, Amazon, and Vudu—all well-known sources of video
13 content. *Id.* at ¶ 83. On the other hand, Vizio fails to qualify those statements to avoid
14 misleading consumers. Vizio knows it is an industry-standard practice for manufacturers
15 to use an "opt-in" method if they want to collect viewing data. Even though Vizio knew
16 consumers would not expect their Smart TV to spy on their viewing and sell the data to
17 third parties, it chose not to tell consumers, on the packaging or elsewhere, that *everything*
18 they watch will be collected and disseminated in a way that personally identifies them and
19 where they live. *Id.* at ¶¶ 10, 84. Plaintiffs have thus stated a claim under Rule 9(b) based
20 on Vizio's misleading and incomplete statements as well.

21     **D.  Plaintiffs Properly Allege What They Saw.**

22      Although Vizio contends that the Complaint fails to allege what Plaintiffs saw, the
23 section concerning the Class Representatives states that each of the "Plaintiffs looked at
24 the description of the televisions provided on the boxes in which their VIZIO Smart TVs
25 were packaged . . . . The packaging, however, failed to inform Plaintiffs that if they took
26 advantage of those features or watched live broadcast programing on their Smart TVs,
27 their viewing data would be collected by VIZIO and disseminated to third parties." Compl.
28 ¶ 22.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

### E.   Plaintiffs Adequately Allege Reliance.

In a one-paragraph argument, Vizio argues that Plaintiffs failed to allege reliance. Vizio again misstates the legal standard and ignores well-pleaded facts. The Court should assess a motion to dismiss by analyzing what Plaintiffs have actually alleged, not Vizio's recasting of those allegations. *See Knevelbaard Dairies* v. *Kraft Foods, Inc.*, 232 F.3d 979, 989-91 (9th Cir. 2000).

The law does not require great specificity when it comes to pleading reliance. *Shin v. BMW of N. Am.*, 2009 WL 2163509, at *4 (C.D. Cal. July 16, 2009) ("Plaintiffs are not required to plead 'reliance' … with particularity"). This is particularly true under California law, which allows at least an inference of reliance whenever the non-disclosed information is material. *E.g.*, *Corson v. Toyota Motor Sales, U.S.A., Inc.*, 2013 WL 10068136, at *6 (C.D. Cal. July 18, 2013) ("Plaintiffs have sufficiently alleged material omissions and reliance is presumed."); *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *18 (C.D. Cal. Oct. 3, 2014) (because plaintiff "sufficiently alleged that a reasonable consumer would have found the [non-disclosed information] material in deciding whether or not to purchase" the product at issue, the court could "reasonably infer [plaintiff's] actual reliance on the failure to disclose"); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 961 (C.D. Cal. 2012) (same). Here, Vizio does not challenge the materiality of its omissions—namely, that a reasonable consumer would find it important that their viewing history is collected and disclosed to third parties in a way that identifies them personally as well as where they live. Plaintiffs' reliance is thus well-pled based on the allegations of materiality.

In addition, the Complaint contains additional allegations of reliance: "Had Plaintiffs known the truth about [Vizio's] data collection practices and tracking software, they would not have purchased Smart TVs or would have paid less for them." Compl. ¶ 14.  These allegations suffice. *Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, at *12 (C.D. Cal. June 24, 2016) ("the Court notes all Plaintiffs allege that had 'Hyundai adequately disclosed the … defect,' they would not have purchased their vehicles, or

26

'would have paid substantially less' for them. The Court finds these statements sufficient to allege reliance at this stage."); *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1169 (C.D. Cal. 2011) ("Because Plaintiffs allege that they would have made a different purchasing decision but for [the deceptive act], Plaintiffs satisfy the actual reliance requirement…"). These allegations are buttressed by the fact that each Plaintiff "looked at the description of the televisions provided on the boxes in which [they] were packaged," and that only because the packaging "failed to inform" Plaintiffs about the privacy-invading software did they buy their televisions for the prices they ended up paying. Compl. ¶ 22; *see also id.* ¶¶ 16-21, 162d, 164-65, 168-169, 180, 183, 188 192, 200. The Court should reject the argument that Plaintiffs failed to plead reliance.

**IV.    The Complaint Adequately States Omissions-Based Claims Under California's False Advertising Law (FAL) And For Negligent Misrepresentation Under California And Washington Law.**

It is settled that omissions may serve as the basis for a claim under the FAL, and that partial misrepresentations may be the basis for claims under California and Washington common law for negligent misrepresentation.  Allegations that Vizio failed to disclose material information, or partially misrepresented its data-collection-and-disclosure activity, support Plaintiffs' claims under the FAL as well as negligent misrepresentation under both California and Washington law.

**A.    An Omission Can Form the Basis of a California False Advertising Claim.**

The FAL prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (quoting *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985)). A plaintiff may also state a claim under the FAL for a defendant's fraudulent omissions. *Handy v. LogMeIn, Inc.*, 2015 WL 1729681, *5 (E.D. Cal. Apr. 15, 2015); *see also In re Sony Gaming Networks and Consumer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 991 (S.D. Cal. 2014) (a duty to

27

disclose arises "when the defendant makes partial representations but also suppresses some material fact"); *Tait v. BSH Home Appliances Corp.*, 2011 WL 3941387, at *2 (C.D. Cal. Aug. 31, 2011) (denying a motion to dismiss FAL claims where plaintiffs "assert[ed] a theory of misrepresentation by omission"). Here, Plaintiffs' claims are premised on both partial representations (e.g., that the data it collects is anonymous and cannot be traced back to specific individuals) as well as omissions (e.g., that consumers' data could be readily combined to pinpoint consumers' locations and that Vizio would sell this information to third parties). Compl. ¶¶ 8, 10, 72-79, 84, 90-91. Courts regularly accept such allegations as stating an FAL claim. *See In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1171 (C.D. Cal. 2011); *see, also, Handy v. LogMeIn, Inc.*, 2015 WL 1729681 (E.D. Cal., April 15, 2015) ("a plaintiff may state a claim under the FAL for fraudulent omissions by a defendant") (citing *Ehrlich v. BMW of North America*, 801 F.Supp.2d 908, 916 (C.D. Cal. 2010)); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 991 (S.D. Cal. 2014) (denying motion to dismiss in light of "Plaintiffs' fraud-based omission claims"); *Tait v. BSH Home Appliances Corp.*, 2011 WL 3941387, at *2 (C.D. Cal. Aug. 31, 2011) (denying a motion to dismiss FAL claims even though plaintiffs "assert[ed] a theory of misrepresentation by omission").

## B. A Material Omission May Form the Basis of a Negligent Misrepresentation Claim Under California Common Law.

Selectively citing a single paragraph in the Complaint, Vizio claims that "Plaintiffs' negligent misrepresentation claim is entirely based on an omission theory. Mot. at 32. This mischaracterizes Plaintiffs' allegations, which include *both* affirmative statements *and* omissions. Because Plaintiffs pled that Vizio knew these representations to be untrue, their negligent misrepresentation claim stands. *See Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (2003) ("to plead negligent misrepresentation, it is sufficient to allege that the defendant lacked reasonable grounds to believe the representation was true."); *see also Regents of Univ. of Cal. v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1045 (N.D. Cal. 2006) (requiring only that "some 'positive assertion'" be made).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

### C.  A Material Omission May Form the Basis of a Negligent Misrepresentation Claim Under Washington Law.

On a similar note, omissions are actionable as negligent misrepresentations under Washington law. In *WGW USA, Inc. v. Legacy Bellevue 530, LLC*, the court explained:

> Failure to disclose material information may constitute misrepresentation of that information. A claim of negligent misrepresentation may rest on an omission by one party when that party has a duty to disclose information . . . . Failure to disclose that information is treated as if the party "had represented the nonexistence of the matter that [it] has failed to disclose . . . ."

192 Wash. App. 1002, 2015 WL 9462096, *4 (Dec. 28, 2015). A duty to disclose can arise "where a seller has knowledge of a material fact not easily discoverable by the buyer." *Alexander v. Sanford*, 181 Wash. App. 135, 177 (2014). Here, Vizio had a duty to disclose the whole truth about its data collection because buyers do not have a reasonable way of discovering that if they purchase a Vizio Smart TV, their viewing data may be aggregated and sold for a profit. Compl. ¶¶ 39, 52. Indeed, Vizio fails to inform consumers that the data it collects may be traced back to individuals, and distributed to third parties. *Id.* ¶¶ 90-91. Such failure to disclose constitutes negligent misrepresentation under Washington law.

### V.  Plaintiffs Properly Alleged Actual Injury for Purposes of Their Consumer Protection Claims.

Vizio argues that Plaintiffs have failed to plead "actual injury" for purposes of their consumer protection claims. As already discussed, however, Plaintiffs have adequately pled economic harm in two ways: They overpaid for their Smart TVs, and Vizio misappropriated their viewing histories (which are economically valuable) for its own commercial advantage. See *supra* at 7-9.

Plaintiffs' allegations of injury suffice under the consumer protection statutes as well. In California, with respect to Plaintiffs' consumer protection claims, it is established law that allegations of overpayment suffice to demonstrate economic harm. *Hinojos*, 718

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

F.3d at 1104–05 (addressing UCL and FAL claims) (internal quotation omitted); see also *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1168-1171 (C.D. Cal. 2011) (finding plaintiffs had sufficiently alleged "actual injury" under the UCL, FAL and CRLA because they "[a]ll allege that they would have made a different purchasing decision had it been disclosed that Toyota vehicles could accelerate suddenly . . . .").

Likewise, in New York, such allegations suffice to show actual harm for purposes of the consumer protection laws. In *Orlander v. Staples, Inc.*, 802 F.3d 289, 301 (2d Cir. 2015), the Second Circuit determined that plaintiff had "sufficiently alleged an injury stemming from [a] misleading practice" by pleading that "he would not have purchased [a set of services] had he known that [d]efendant intended to decline to provide him any [such] services" during the first of year of his contract. That reasoning directly governs Plaintiffs' overpayment claim here. *See Anthem*, 162 F. Supp. 3d at 995 (reaching similar conclusion regarding standing to pursue benefit of the bargain losses under New York law on an omissions theory).

Plaintiffs acknowledge that the court in *Lenovo* concluded the exact opposite: paying more, and receiving less than one bargained for, based on a misrepresentation or omission does not qualify as actual harm. 2016 WL 6277245, at *10. But, unlike *Anthem*, *Lenovo* did not consider more recent authority such as *Orlander*.

In any event, *Anthem* also found that loss of value of personal information constitutes a cognizable injury under New York law, 162 F. Supp. 3d at 995—a basis for standing not at issue in *Lenovo. See* 2016 WL 6277245, at *10. Here, Plaintiffs' allegations that Vizio misappropriated their viewing histories (which are economically valuable) for its own commercial advantage thus constitutes cognizable injury under New York law.

Turning to Florida law, consumers who have been wronged by a deceptive act may sue under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*, for actual damages. The damages recoverable is measured by the difference between the market value of the product delivered and market value of the product as it should have been delivered. *Rollins, Inc. v. Butland*, 951 So.2d 860, 869-70

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

(Fla. Dist. Ct. App. 2006). Accordingly, Plaintiffs' allegations that they paid more, and received less, than what they bargained for because of Vizio's omissions and misrepresentations suffice to show actual damage.

As for Washington law, the court in *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015), concluded that plaintiffs had sufficiently alleged "injury to the plaintiff's business or property" under Washington's Consumer Protection Act in a case concerning a mobile device that allegedly collected and transmitted text messages, passwords, internet search terms, and other personal information by making them available for transmission to third parties. *Id*. at 1123–24. As in *Carrier IQ*, Plaintiffs' allegations establish injury to their business or property.

Lastly, under Massachusetts' Unfair and Deceptive Trade Practices Statute, "[o]verpayment can constitute an economic loss that is cognizable under chapter 93A where the consumer continues to own the misrepresented product 'whose value was artificially inflated by a deceptive act or practice at the time of purchase.'" *Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 479 (D. Mass. 2015) (citation omitted). Plaintiffs' allegations that Vizio's "omission or affirmative misrepresentation caused [them] to pay more for the [Smart TVs] than [they] otherwise would have paid, but for the omission or misrepresentation," demonstrate cognizable economic loss under Massachusetts law. *Id*.

## VI.    Plaintiffs Allege Cognizable Claims for Invasion of Privacy.

In California, the right to privacy is recognized both in the state constitution and the common law. The elements of a claim under the California Constitution are: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012) (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 654–56 (Cal. 1994).[7]

---

[7] The California Supreme Court recognized two general types of privacy interests that fall within the first prong: "(1) interests in precluding the dissemination or misuse of sensitive

31

Whether the first element is met is a question of law, but whether the second and third elements are met are mixed questions of law and fact. *See Hill*, 865 P.2d at 657. Therefore, claims of invasion under the California Constitution may only be disposed as a matter of law if the plaintiff has not identified a legally protected privacy interest, or the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests. *See id.* The elements of a California common law invasion of privacy claim are: "(1) intrusion into a private place, conversation or matter (2) in a manner highly offensive to a reasonable person." *Low*, 900 F. Supp. 2d at 1025.

Massachusetts provides a statutory right to privacy. M.G.L. 214, § 1B ("A person shall have a right against unreasonable, substantial or serious interference with his privacy."). "Whether the intrusion or interference is unreasonable and substantial or serious is ordinarily a question of fact." *Walker v. Jackson*, 952 F. Supp. 2d 343, 353–54 (D. Mass. 2013).

The elements of common law invasion of privacy or intrusion upon seclusion claims in Florida and Washington are substantially similar to the elements of the California and Massachusetts claims. *See Stasiak v. Kingswood Co-op, Inc.*, 2012 WL 527537, at *2 (M.D. Fla. Feb. 17, 2012) (citing *Oppenheim v. I.C. Sys. Inc.*, 695 F.Supp.2d 1303, 1309 (M.D. Fla. 2010)); *Fisher v. State ex rel. Dept. of Health*, 106 P.3d 836, 878–79 (Wash. Ct. App. 2005).

Plaintiffs' allegations are sufficient at this stage to set forth claims for invasion of privacy/intrusion in all of the foregoing jurisdictions. Plaintiffs alleged that Vizio collected viewing history, user-initiated search information, online services used, the presence of other Internet-connected devices including their model types, IP addresses, MAC addresses, and zip codes, and disclosed enough of this information to third parties that individuals could be, and in fact were, uniquely identified with it. CAC ¶¶ 8–9, 49,

_____

and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." *Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 654 (Cal. 1994).

32

53–58, 64. In fact, as Plaintiffs alleged, one of the primary purposes of Vizio's data collection was to enable its third-party data-purchasers to "re-target" and push ads to specific individuals based on the data collected from the users' Smart TVs. CAC ¶¶ 1–10, 40–43, 49, 58, 62–64, 68–79.

Plaintiffs had a reasonable expectation of privacy in the information collected and disseminated by Vizio, and Vizio's suggestion to the contrary is undermined by the existence of laws which codify the private nature of this information. There is a clear social norm that the movies, TV shows, and other audiovisual material viewed by people in their own homes should not be disclosed to others without the viewer's consent. Congress viewed this privacy interest as serious and important enough to enact a specific federal law, the VPPA, which prohibits the release of this information by the entities most likely to possess it (referred to as "video tape service providers" in the statute). As identified by Plaintiffs, several states have parallel laws protecting this same information. Plaintiffs further alleged that viewing habits on their own may reveal information suggestive of even more private information, such as a person's politics, religious views, even sexual orientation. *Id.*

Contrary to Vizio's argument, courts have found privacy violations in cases where companies extensively tracked and assembled data about electronics users for commercial purposes. In *In re Google*, 806 F.3d at 149-52, the Third Circuit concluded that allegations that providers placed tracking cookies on users' browsers in contravention of browsers' cookie blockers stated common-law and constitutional privacy-intrusion claims under California law. The court explained that this alleged conduct "implicated a protected privacy interest," in part because "California tort law treats as actionable an 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.'" *Id.* at 151 (citation omitted). And it noted "the California Constitution protects an interest in 'conducting personal activities without observation,' with the reasonableness of any given expectation 'rest[ing] on an examination of customs ... as well as the opportunity to be notified in advance and consent to the intrusion.'" *Id.* (citation omitted). The same

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

interests are applicable here, and they are infringed because Visio did not obtain consent, and no consumer could have been expected to know that Vizio would disclose viewing history without consent.

Next, the court found that the conduct was sufficiently egregious because "Google not only contravened the cookie blockers—it held itself out as respecting the cookie blockers." *Id.* Again, the same may be said here: Vizio states in its privacy policy that it is only collecting "anonymous" or "non-personal" information, but these statements are false and misleading. Based on these facts, a reasonable factfinder could find in this case that Vizio's conduct is highly offensive and is an egregious breach of social norms.

Another example, in sustaining a privacy claim brought under the California Constitution, the court in *Goodman v. HTC America, Inc.*, recognized that the collection of "fine location data" from the plaintiffs' smartphones could violate a recognized privacy interest because a person's movements may reveal a "'wealth of detail about her familial, personal, professional, religious, and sexual associations.'"  2012 WL 2412070, at *15 (June 26, 2012) (quoting *U.S. v. Jones*, 132 S.Ct. 945, 955 (2012) (Sotomayor, J., concurring)). The facts of *Goodman* were similar in many respect to this case; the defendant there used location data to create compilations of the data to "analyze [the users'] behavior and build profiles about them," while also transmitting user data to a third party. *Id.* at *14.

The primary cases cited by Vizio are distinguishable. In *Low v. LinkedIn Corp.*, the only data disclosed to third parties was "the LinkedIn ID and the URL of the LinkedIn profile page that the user viewed (which in the aggregate discloses a user's browsing history among LinkedIn profiles)."  *See Low*, 900 F.Supp2d at 1025. This type of information is far more anonymous and far less revealing than the information collected and disclosed by Vizio, as alleged in the Complaint. Furthermore, there is no established privacy interest in the viewing history of LinkedIn profiles, as contrasted with the clearly established privacy interest in audiovisual viewing histories as set forth in the VPPA and similar state laws.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:16-ML-02693-JLS-KES

A crucial distinction between this case and *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) is that the plaintiffs there had not specifically alleged a privacy right with respect to any particular content in their emails. *Id.* at 1040–41. The court refused to find a cognizable privacy interest in emails "generally." *Id.*   Unlike that scenario, the *audiovisual viewing histories* VIZIO collected and disseminated are subject to legally established privacy protection as codified in the VPPA, among other laws. S*ee generally* 18 U.S.C. § 2710.

## VII.   Plaintiffs Allege Cognizable Unjust Enrichment Claims.

Vizio's request to dismiss Plaintiffs' unjust enrichment/quasi-contracts under the laws of five states fails. **California***:* Vizio says California law does not recognize unjust enrichment as a stand-alone claim. But "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted). That is appropriate here because Plaintiffs seek restitution as a quasi-contract claim and explicitly say so. Compl. ¶¶ 288-293; s*ee Bailey v. Kind, LLC*, 2016 WL 3456981, at *7 (C.D. Cal. June 16, 2016) (construing unjust enrichment claim as quasi-contract claim seeking restitution). **Florida**: Vizio says the availability of an adequate remedy at law bars unjust enrichment. But in Florida "the general rule . . . that if adequate legal remedies exist, equitable remedies are not available . . . does not apply to unjust enrichment claims until the existence of an express contract is shown." *Reynolds v. Wal-Mart Stores, Inc.*, No. 4:14CV381-MW/CAS, 2015 WL 1879615, at *15 (N.D. Fla. Apr. 23, 2015). Vizio has not made that showing and thus dismissal is not warranted. **Massachusetts, New York, Washington:** Vizio's request to dismiss unjust enrichment claims because another remedy may ultimately be available should be denied. Courts should not decide at the pleading stage whether an unjust enrichment claim is barred by the availability of an adequate remedy at law but should defer consideration of that question until subsequent stages of the case. *In re Canon Cameras*, 2006 WL 1751245, at *2 (S.D.N.Y. June 23, 2006) (New York law); *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass.

2005) (Massachusetts law).  What is more, Rule 8 of the Federal Rules of Civil Procedure authorizes alternative or inconsistent legal theories and requests for relief. *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, No. 11 CIV. 8196 CM, 2014 WL 4401275, at *12 (S.D.N.Y. Sept. 4, 2014) (denying motion to dismiss unjust enrichment claims under New York and Washington law).

**CONCLUSION**

For the reasons discussed, the Court should deny Vizio's motion to dismiss. If any claim is dismissed, Plaintiffs request leave to amend.

Dated:  November 3, 2016            **GIRARD GIBBS LLP**

*/s/ Eric H. Gibbs*
Eric H. Gibbs
ehg@classlawgroup.com
Andre Mura
amm@classlawgroup.com
Linda Lam
lpl@classlawgroup.com
505 14th Street, Suite 1110
Oakland, CA 94612
Tel:  (510) 350-9700
Fax: (510) 350-9701

**COTCHETT, PITRE & MCCARTHY, LLP**

*/s/ Joseph W. Cotchett*
Joseph W. Cotchett
jcotchett@cpmlegal.com
Adam J. Zapala
azapala@cpmlegal.com
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel:  (650) 697-6000
Fax: (650) 697-0577

*Co-lead Counsel for Plaintiffs*

36
