**AKIN GUMP STRAUSS HAUER & FELD LLP**
ANTHONY T. PIERCE (*admitted pro hac vice*)
apierce@akingump.com
1333 New Hampshire Avenue NW, Suite 1500
Washington, DC  20036
Tel:  202-887-4000
Fax: 202-887-4288

HYONGSOON KIM (SBN 257019)
kimh@akingump.com
4 Park Plaza, Suite 1900
Irvine, CA  92614
Tel:  949-885-4100
Fax: 949-885-4101

PATRICK EOGHAN MURRAY (SBN 293765)
pmurray@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067
Tel:  310-229-1000
Fax: 310-229-1001

*Attorneys for Defendants VIZIO Holdings, Inc.,*
*VIZIO, Inc., VIZIO Inscape Services, LLC,*
*and VIZIO Inscape Technologies, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re: Vizio, Inc., Consumer Privacy Litigation | MDL Case No. 8:16-ml-02693-JLS-KES |
| | **NOTICE OF DEFENDANTS' MOTION AND MOTION TO CERTIFY ORDER GRANTING MOTION TO DISMISS IN PART, DENYING IN PART, FOR INTERLOCUTORY REVIEW; MEMORANDUM OF POINTS AND AUTHORITIES** |
| This document relates to: | |
| ALL ACTIONS | |
| | Judge:      Hon. Josephine L. Staton |
| | Date:       July 14, 2017 |
| | Time:       2:30 p.m. |
| | Courtroom:  10A |

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 14, 2017 at 2:30 p.m.  or as soon thereafter as counsel may be heard in Courtroom 10A of the Ronald Reagan Federal Building and United States Courthouse for the Central District of California, located at 411 W. Fourth St., Santa Ana, CA 92701, Defendants VIZIO, Inc.; VIZIO Holdings, Inc.; VIZIO Inscape Technologies, LLC; and VIZIO Inscape Services, LLC ("Defendants") will and hereby do move, pursuant to Fed. Rule of App. P. 5(a)(3) and 28 U.S.C. § 1292(b), for an order certifying the Court's March 2, 2017 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (Doc. No. 130) ("Order"), for an interlocutory appeal.[1] Defendants seek this certification to petition the Ninth Circuit to review the Order's holding that Plaintiffs had stated a claim under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), specifically whether (1) Plaintiffs had adequately alleged the disclosure of "Personally Identifiable Information" as defined by the VPPA; (2) Plaintiffs had adequately alleged that Defendants were "Video Tape Service Providers" as defined by the VPPA; and (3) Plaintiffs adequately alleged that Plaintiffs were "Consumers" as defined by the VPPA.

This request is based on this Notice of Motion and Motion, Defendants' supporting Memorandum of Points and Authorities, the Order, all pleadings and papers on file with the Court in this action, and on such other matters as may be presented to the Court at or before the hearing of this Motion.

This Motion is made following the telephone conference of counsel pursuant to Local Rule 7-3, which took place on April 27, 2017.

---

[1] Defendants are not seeking a stay of discovery while the Order would be on interlocutory appeal.

Dated:  May 5, 2017

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:  ___/s/ *Hyongsoon Kim*___
Anthony T. Pierce (*admitted pro hac vice*)
apierce@akingump.com
1333 New Hampshire Avenue NW
Suite 1500
Washington, DC 20036
Tel:   202-887-4000
Fax:   202-887-4288

Hyongsoon Kim (SBN 257019)
kimh@akingump.com
4 Park Plaza, Suite 1900
Irvine, CA  92614
Tel:   949-885-4100
Fax:   949-885-4101

Patrick Eoghan Murray (SBN 293765)
pmurray@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067
Tel:   310-229-1000
Fax:   310-229-1001

*Attorneys for Defendants VIZIO Holdings, Inc., VIZIO, Inc., VIZIO Inscape Services, LLC, and VIZIO Inscape Technologies, LLC*

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................1

II.  THIS COURT'S MARCH 2, 2017 ORDER SHOULD BE CERTIFIED FOR
     AN INTERLOCUTORY APPEAL...........................................................2

    A.   The Court's Order Involves a Controlling Issue of Law. ....................2

    B.   An Immediate Interlocutory Appeal May Materially Advance the
        Ultimate Termination of this Litigation. ...............................................3

    C.   The Order Raises Questions on Which there are Substantial Grounds
        for Difference of Opinion...................................................................6

        1.   There is Substantial Grounds for a Difference of Opinion on
            the Court's Ruling that Plaintiffs Had Sufficiently Alleged the
            Collection of "Personally Identifiable Information" as Defined
            by the VPPA..................................................................................6

        2.   There is a Substantial Grounds for a Difference of Opinion
            on the Court's Ruling that Plaintiffs Had Sufficiently Alleged
            that Defendants were "Video Tape Service Providers" under
            the VPPA......................................................................................9

        3.   There is a Substantial Grounds for a Difference of Opinion on
            Whether Plaintiffs had sufficiently alleged that they met the
            definition of "Consumers" under the VPPA............................11

III. AN INTERLOCUTORY APPEAL WILL PROVIDE CLARITY FOR
     INDUSTRIES THAT NOW FACE THE SAME POTENTIAL LIABILITY
     AS VIZIO. .......................................................................................14

IV. CONCLUSION ...................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Association of Irritated Residents v. Fred Schakel Dairy*,
  634 F. Supp. 2d 1081 (E.D. Cal. 2008) ....................................................3, 4, 14

*Austin-Spearman v. AMC Network Entm't LLC*,
  98 F. Supp. 3d 662 (S.D.N.Y. 2015) .........................................................11, 12

*In re California Title Ins. Antitrust Litig.*,
  2010 WL 785798 (N.D. Cal. March 3, 2010)...................................................3

*In re Cement Antitrust Litig.*,
  673 F.2d 1020, 1026-1027 (9th Cir. 1982)...................................................2, 3

*Eichenberger v. ESPN, Inc.*,
  2015 WL 7252985 (W.D. Wash. May 7, 2015) .................................................8

*Ellis v. Cartoon Network, Inc.*,
  2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) ...........................................*passim*

*Environmental World Watch, Inc. v. Walt Disney Co.*,
  2014 WL 10979864 (C.D. Cal. Apr. 2, 2014) ...................................................6

*Fox Television Stations, Inc. v. AereoKiller*,
  115 F. Supp. 3d 1152 (C.D. Cal. 2015) ...........................................................14

*Gakuba v. Hollywood Video, Inc.*,
  2015 WL 5737589 (D. Or. Sep. 30, 2015) ......................................................10

*In re Gilead Sciences Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ..........................................................................3

*Helman v. Alcoa Global Fasteners Inc.*,
  2009 WL 2058541 (C.D. Cal. June 16, 2009)...................................................3

*Leite v. Crane Co.*,
  2012 WL 1982535 (D. Haw. May 31, 2012)...................................................15

*Locklear v. Dow Jones & Co., Inc.*,
  101 F. Supp. 3d 1312 (N.D. Ga. 2015)..............................................................8

*McClelland v. Gronwaldt*,
   958 F. Supp. 280 (E.D. Tex. 1997) .................................................................. 5

*Mollett v. Netflix, Inc.*,
   795 F.3d 1062 (9th Cir. 2015) ............................................................. 9, 10, 11

*In re Nickelodeon Consumer Privacy Litig.*,
   2014 WL 3012873 (D.N.J. July 2, 2014) ...................................................... 10

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016) ...................................................... 7, 8, 9, 10

*Ovando v. City of Los Angeles*,
   92 F. Supp. 2d 1011 (C.D. Cal. 2000) ...................................................... 3, 14

*Perry v. Cable News Network, Inc.*,
   2017 WL 1505064 (11th Cir. Apr. 27, 2017) ...................................... 12, 13

*Perry v. Cable News Network, Inc.*,
   2016 WL 4373708 (N.D. Ga. Apr. 20, 2016) ................................................ 8

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ................................................................... 4, 6

*Robinson v. Disney Online*,
   152 F. Supp. 3d 176 (S.D.N.Y. 2015) ................................................... 8, 10

*Rodriguez v. Sony Comput. Entm't Am., LLC*,
   801 F.3d 1045 (9th Cir. 2015) ...................................................................... 10

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,
   86 F.3d 656 (7th Cir. 1996) ........................................................................... 4

*Steering Comm. v. United States*,
   6 F.3d 572 (9th Cir. 1993) ............................................................................. 2

*Sterk v. Redbox Automated Retail, LLC*,
   672 F.3d 535 (7th Cir. 2012) ......................................................................... 4

*Su v. Siemens Indus.*,
   2014 WL 2600539 (N.D. Cal. June 10, 2014) .............................................. 14

*In re Text Messaging Antitrust Litig.*,
   630 F.3d 622 (7th Cir. 2010) ......................................................................... 5

iii

*Walsh v. Ford Motor Co.*,
    807 F.2d 1000 (D.C. Cir. 1986) ........................................................................ 6

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016) ............................................................... 7, 11, 13

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    104 F. Supp. 3d 135 (D. Mass. 2015) .......................................................... 11

**Statutes and Rules**

18 U.S.C. § 2710 ................................................................................................*passim*

28 U.S.C. § 1292(b) ..........................................................................................*passim*

Federal Rule of Appellate Procedure 5(a)(3) .......................................... 1, 2, 16

Florida Deceptive and Unfair Trade Practices Act ........................................ 5

Washington Consumer Protection Act ............................................................. 5

**Other Authorities**

Jeff Kosseff, "A VHS-era privacy law in the Digital Age," TECH CRUNCH
    (May 24, 2016) ................................................................................................ 15

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.    INTRODUCTION**

3

In its March 2, 2017 Order Granting in Part and Denying in Part Defendants'

4

Motion to Dismiss (Doc. No. 130) ("Order"), this Court made three separate rulings of

5

law on Plaintiffs' Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") claim.

6

(Order at 16-25):

7

8

- The Court found that the alleged disclosure of "an array of information" about Plaintiffs' devices (such as IP addresses and MAC addresses) met the statutory definition of a disclosure of "Personally Identifiable Information" ("PII") under the VPPA.  (Order at 21-25.)

9

10

11

- The Court held that Plaintiffs' allegation that software on Defendants' Smart TVs allowed Plaintiffs to access content from third parties was enough to establish that Defendants were Video Tape Service Providers ("VTSPs") "in the business of delivering video content." (Order at 17-19.)

12

13

14

- The Court held that Plaintiffs alleged they were "subscribers" and thus "consumers" under the VPPA since Plaintiffs alleged that they paid a premium for their Smart TVs that came with software that Defendants would periodically update.  (Order at 19-20.)

15

These three rulings make the Order particularly appropriate for interlocutory

16

review pursuant to Rule 5(a)(3) of the Federal Rules of Appellate Procedure and Section

17

1292(b) of the United States Code.  The Court's holdings concerning Plaintiffs' VPPA

18

claim are "controlling question[s] of law" for which an immediate appeal "may

19

materially advance the ultimate determination of the litigation."  28 U.S.C. §1292(b).  A

20

reversal on any of these rulings would be dispositive of Plaintiffs' central claim in this

21

litigation, and an interlocutory appeal would streamline the ultimate resolution of this

22

case.  Plaintiffs' counsel has identified the VPPA claim as "the core dispute driving this

23

litigation" and urged "the parties, and the Court" to **"prioritize the VPPA claim,**

24

**including by developing . . . an efficient schedule to resolve any challenges to an**

25

**operative consolidated pleading . . . that appropriately facilitates the VPPA claim's**

26

**progression and resolution.**"  (Doc. No. 58 at 3; Doc. No. 48 at 9 (emphasis added).)

27

Furthermore, there is, at a minimum, a "substantial ground for different of opinion"

28

regarding these legal questions because the Order is at odds with the majority of

1

decisions of other courts that have interpreted the VPPA.  Not only does the Order meet the criteria for certification under 28 U.S.C. §1292(b), but the Order has sweeping policy implications for numerous industries that should be addressed as soon as possible to resolve any uncertainty such industries presently face.

Accordingly, Defendants respectfully request that this Court certify the Order for immediate interlocutory review.  This will allow the Ninth Circuit to provide clarity on the following questions:

- Have Plaintiffs adequately alleged that Defendants disclosed Plaintiffs' "Personally Identifiable Information" as defined by the VPPA?

- Have Plaintiffs adequately alleged that Defendants are "Video Tape Service Providers" as defined by the VPPA?

- Have Plaintiffs adequately alleged that Plaintiffs were "Consumers" as defined by the VPPA?

## II.   THIS COURT'S MARCH 2, 2017 ORDER SHOULD BE CERTIFIED FOR AN INTERLOCUTORY APPEAL.

Under Rule 5(a)(3) of the Federal Rules of Appellate Procedure and 28 U.S.C. §1292(b), a party may petition a district court to amend an interlocutory order and certify such order for immediate appeal under certain conditions.  As discussed below, the Order meets all criteria specified in Section 1292(b): it "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).

### A.   The Court's Order Involves a Controlling Issue of Law.

"[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court."  *In re Cement Antitrust Litig.*, 673 F.2d at 1026.  The "controlling question of law" factor is most easily satisfied by a "pure legal question" involving no

factual issues.  *Steering Comm. v. United States*, 6 F.3d 572, 575-76 (9th Cir. 1993); *Association of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1089 (E.D. Cal. 2008) ("[A] question of law under Section 1292(b) is a 'question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine' that 'the court of appeals could decide quickly and cleanly without having to study the record'") (citation omitted); *Helman v. Alcoa Global Fasteners Inc.*, 2009 WL 2058541, at *5 (C.D. Cal. June 16, 2009) (interlocutory appeal is "especially appropriate" for questions of law), *aff'd*, 637 F.3d 986 (9th Cir. 2011).  Here, the Court ruled on the sufficiency of Plaintiffs' Complaint, ultimately holding as a matter of law that Plaintiffs had sufficiently stated a claim under the VPPA.  (Order at 16-25.)  There are no factual issues at play here.  For the purposes of deciding a motion to dismiss, each of Plaintiffs' non-conclusory allegations is taken as true.  *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) ("[A] district court ruling on a motion to dismiss is not sitting as a trier of fact.").  Given this procedural posture, the questions presented here for interlocutory appeal are purely legal in nature.

### B.  An Immediate Interlocutory Appeal May Materially Advance the Ultimate Termination of this Litigation.

"Whether an appeal may materially advance the termination of the litigation is linked to whether an issue of law is 'controlling' in that the court should consider the effect of a reversal by the Ninth Circuit on the management of the case." *In re California Title Ins. Antitrust Litig.*, 2010 WL 785798, at *2 (N.D. Cal. March 3, 2010).  When determining whether a case satisfies the first and third criteria of Section 1292(b), courts consider whether immediate appellate review could "avoid protracted and expensive litigation" and "materially affect the eventual outcome of the litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026–27; *Ovando v. City of Los Angeles*, 92 F. Supp. 2d 1011, 1025 (C.D. Cal. 2000).

"[T]he Ninth Circuit has not limited 1292(b) motions to actions where the question is dispositive of the entire action." *Ass'n of Irritated Residents*, 634 F. Supp. 2d at 1093.

Thus, the controlling question of law "does not need to dispose of the litigation, only advance its ultimate termination." *Id*. at 1092; *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (certification permissible where reversal "may" take certain claims or parties out of case); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536–37 (7th Cir. 2012) (resolution of one of two VPPA claims was "almost certain" to materially advance termination of litigation because resolution of case would be simpler without claim at issue, and uncertainty about VPPA claim would delay settlement); *see also Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996) ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so.").

Plaintiffs' VPPA claim is central to Plaintiffs' case, and its resolution will almost certainly materially advance the resolution of this litigation.  As Plaintiffs' counsel noted earlier in this litigation, **VIZIO's liability under the VPPA is "the core dispute driving this litigation."**  (Doc. No. 58 at 3 (emphasis added).)  Plaintiffs also correctly observe that clarity on this particular claim will greatly affect "any litigated or voluntary resolution" of the entire case.  (Doc. No. 48 at 9.)  Resolving the legal uncertainty concerning the status of Plaintiffs' VPPA claim – which makes up the bulk of Plaintiffs' factual allegations – will simplify discovery, class certification, settlement discussions, and any trial that may occur on this claim.  *See, e.g., Sterk*, 672 F.3d at 536 ("[U]ncertainty about the status of the [VPPA] claim may delay settlement (almost all class actions are settled rather than tried), and by doing so further protract the litigation. That is enough to satisfy the 'may materially advance' clause of section 1292(b).").  Indeed, as Plaintiffs stated earlier in the lawsuit, "the parties and the Court . . . should **prioritize the VPPA claim**, including by collaboratively developing . . . an efficient schedule to resolve any challenges to an operative consolidated pleading . . . that **appropriately facilitates the VPPA claim's progression and resolution**."  (Doc. No. 48 at 9 (emphasis added).)

Furthermore, a ruling in Defendants' favor at the Ninth Circuit would also substantially affect Plaintiffs' other claims, which are predicated (in part) on Defendants' alleged liability under the VPPA.  Plaintiffs' Fourth, Fifth, Sixth, Tenth, and Thirteenth Claims for Relief all explicitly rely in part upon the purported violation of the VPPA: Plaintiffs rely (in part) upon the purported violation of the VPPA to establish that "Defendants' conduct is unlawful" as required by the UCL.  (Amended Complaint ¶174.) Plaintiffs similarly rely upon this violation to help establish Defendants' purported liability under the Florida Deceptive and Unfair Trade Practices Act and the Washington Consumer Protection Act since each of these consumer protection statutes requires Plaintiffs to demonstrate that Defendants' conduct "offends established public policy." (*Id.*, ¶¶174, 206, 251.)  Similarly, Plaintiffs allege a violation of "statutorily protected rights to privacy" and a lack of "compliance with all governing federal . . . privacy laws" to bolster their CLRA claim.  (*Id.*, ¶156(d), (e).)  Finally, Plaintiffs use the purported violation of the VPPA to establish the "duty" requirement of their fraud claim.  (*Id.*, ¶278.)  *See also,* Doc. No. 48 at 9 ("Vizio's liability under the VPPA is likely to inform its liability under various state-law claims which share similar elements and factual predicates.")

Even if Plaintiffs' other claims were not dismissed entirely as a result of a dismissal of the VPPA claim, discovery and resolution of state-law claims that depend on an alleged VPPA violation would be significantly narrowed, as the portions of those claims that mirror the VPPA claim would also be cut from the litigation.  *See generally In re Text Messaging Antitrust Litig*., 630 F.3d 622, 625-26 (7th Cir. 2010) (where issue to be certified would "spare defendants the expense of responding to bulky, burdensome discovery," it is particularly appropriate for interlocutory review).  For similar reasons, eliminating Plaintiffs' VPPA claim would cut down on the size and complexity of any purported class of plaintiffs.  One of Plaintiffs' two federal claims could be removed, cutting down on the size of any potential nation-wide class, and many of Plaintiffs' state-law claims will be significantly curtailed, reducing the size of any smaller, state classes.

*McClelland v. Gronwaldt*, 958 F. Supp. 280, 283 (E.D. Tex. 1997) (certifying for appeal question of subject matter jurisdiction in class action potentially affecting thousands of class members, because reversal would materially advance termination of litigation); *see also Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1001–02 (D.C. Cir. 1986) (noting "enormity of the litigation presently contemplated" in class action as basis for certification for interlocutory appeal).

For these reasons, interlocutory appeal will "materially affect the outcome of the litigation" by expediting its ultimate termination.  Therefore, Plaintiffs' VPPA claim meets the first and third criteria of Section 1292(b) interlocutory appeal, making the Order particularly appropriate for 18 U.S.C. §1292(b) certification.

### C.   The Order Raises Questions on Which there are Substantial Grounds for Difference of Opinion.

A "substantial ground for difference of opinion" exists when a court's decision "involves an issue over which reasonable judges might differ and such uncertainty provides a credible basis for a difference of opinion."  *Reese*, 643 F.3d at 688 (internal quotations and citation omitted).  "'[C]ourts traditionally will find that a substantial ground for difference of opinion exists where ... novel and difficult questions of first impression are presented.'"  *Id*. (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)); *see also Environmental World Watch, Inc. v. Walt Disney Co.*, 2014 WL 10979864, at *3  (C.D. Cal. Apr. 2, 2014) ("In general, a substantial ground for difference of opinion exists where (1) the circuits are in dispute on the question and the Ninth Circuit has not spoken on the point; (2) complicated questions arise under foreign law; or (3) the order at issue addresses novel and difficult questions of first impression.").

### 1.   There is Substantial Grounds for a Difference of Opinion on the Court's Ruling that Plaintiffs Had Sufficiently Alleged the Collection of "Personally Identifiable Information" as Defined by the VPPA.

Under the VPPA, Plaintiffs are required to allege that Defendants disclosed "Personally Identifiable Information."  18 U.S.C. § 2710.  The VPPA defines "personally

6

identifiable information" ("PII") as "information which *identifies a person* as having requested or obtained specific video materials or services[.]" *Id.*, § 2710(a)(3) (emphasis added).

Here, the Court held that Plaintiffs' allegation that Defendants disclosed **device-identifying** information consisting of "MAC addresses, IP addresses, zip codes, chipset IDs, product model numbers, hardware and software versions, region and language settings, viewing history, purchase history, and 'the presence of other devices connected to [the same] network'" (Order at 21-25) was sufficient to allege disclosure of PII under the VPPA.  This Court even outlined the difference of opinion in two different circuits involving the definition of PII, adopting the broad definition of PII articulated by the First Circuit: that PII extends to "'information reasonably and foreseeably likely to reveal which . . . videos [the plaintiff] has obtained.'" (Order at 22 (quoting *Yershov v. Gannett Satellite Info. Network, Inc.,* 820 F.3d 482, 486 (1st Cir. 2016).)  The Court rejected the narrower test adopted by the Third Circuit: that PII is "'the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior.'"  (Order at 23 (quoting *In re Nickelodeon Consumer Privacy Litig.,* 827 F.3d 262, 285-86, 290 (3d Cir. 2016).)  The difference of opinion between these circuits that the Court identifies, demonstrates that the definition of PII under the VPPA is a question on which reasonable jurists could disagree.

This Court stated that its ruling did not disagree with *In re Nickelodeon* in particular because Plaintiffs had alleged the disclosure of "MAC addresses and information about other devices[.]"  (Order at 24.)  But Plaintiffs did not allege, and the Court did not require Plaintiffs to allege, how an "ordinary person" could possibly "readily identify a specific individual" using a MAC address, either singly or in combination with the other information allegedly disclosed by Defendants.[2]  Although

_____

[2] *In re Nickelodeon* explicitly rejected the argument that data could become PII based on a recipient's idiosyncratic knowledge,  827 F.3d at 290 ("The allegation that Google will assemble otherwise anonymous pieces of data to unmask the identity of individual children is, at least with respect to the kind of identifiers at issue here, simply too hypothetical to support liability under the [VPPA].").  Other courts have similarly

the Court left opened the possibility that further factual development might show that the device information in Plaintiffs' allegations constituted PII, that holding came only after the Court had explicitly rejected the narrower test adopted by *Nickelodeon* that purely device-identifying information is not PII and which, as many courts have held, should result in dismissal at the pleadings stage.  *See, e.g., Perry v. Cable News Network, Inc.*, 2016 WL 4373708, at \*4 (N.D. Ga. Apr. 20, 2016) ("A number of courts, addressing similar factual situations, have held that an anonymous string of numbers, such as the MAC address here, is insufficient to qualify as personally identifiable information.") (citing cases); *Eichenberger v. ESPN, Inc.*, 2015 WL 7252985, at \*6 (W.D. Wash. May 7, 2015) (dismissing plaintiff's VPPA claim because Roku device serial number is not PII); *Locklear v. Dow Jones & Co., Inc.*, 101 F. Supp. 3d 1312, 1317 (N.D. Ga. 2015) (transmitting Roku serial number to analytics company that identified specific individuals did not violate VPPA because analytics company had to take further steps to match Roku number with specific individual), *abrogated on other grounds by Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1255 (11th Cir. 2015); *Ellis v. Cartoon Network, Inc.*, 2014 WL 5023535, at \*3 (N.D. Ga. Oct. 8, 2014) (dismissing VPPA claim because an "Android ID, without more, is not personally identifiable information"), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir. 2015).  It is thus highly likely that reasonable judges

---

rejected the suggestion that disclosure of anonymous data could lead to VPPA liability simply because a third-party data expert might piece together a person's identity. *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 182 (S.D.N.Y. 2015) (transmission of device identifier did not violate VPPA because disclosed information "must *itself* do the identifying that is relevant for purposes of the VPPA," "not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties") (emphasis added);  *Ellis v. Cartoon Network, Inc.*, 2014 WL 5023535, at \*3 (N.D. Ga. Oct. 8, 2014) (sending Android IDs to data analytics company specializing in tracking individual user behaviors was not violation of VPPA; data analytics company had to collect information from other sources before it could identify specific individuals); *Locklear v. Dow Jones & Co., Inc.*, 101 F. Supp. 3d 1312, 1317 (N.D. Ga. 2015) (transmitting Roku serial number to analytics company that identified specific individuals was not a violation of VPPA because analytics company had to take further steps to match Roku number with specific individual); *Eichenberger v. ESPN, Inc.*, 2015 WL 7252985, at \*4 (W.D. Wash. May 7, 2015) (ESPN did not violate VPPA by sending Roku serial number to data broker who identified specific individual using existing data already in data broker's system).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO CERTIFY ORDER
MDL Case No. 8:16-ml-02693-JLS-KES

could disagree with this Court on whether a disclosure of information about devices only
would constitute a disclosure of PII.

The Court also relied upon Plaintiffs' allegation that device identifiers could be
combined with information about other devices on the same network as Plaintiffs' Smart
TVs.  (Order at 24.)  But the Third Circuit specifically rejected an argument that a
combination of disparate information could collectively be considered PII.  In particular,
the Third Circuit found that a disclosure of detailed device information combined with
certain *personal, biographical information* about the user of the device did not constitute
a disclosure of PII.  *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir.
2016) (disclosure of device information including IP addresses, unique device identifiers,
browser settings, operating system, screen resolution, browser version, persistent cookie
identifiers, combined with personal information such as username/alias, gender,
birthdate, and web communications, did not constitute PII under VPPA).

Given that the Ninth Circuit has not spoken on the issue, and the overwhelming
number of opinions that find that the kind of information alleged by Plaintiffs is not PII,
there are substantial grounds for a difference of opinion on whether Plaintiffs have
adequately alleged the disclosure of PII under the VPPA.

> **2.**    **There is a Substantial Grounds for a Difference of Opinion on the
> Court's Ruling that Plaintiffs Had Sufficiently Alleged that
> Defendants were "Video Tape Service Providers" under the
> VPPA.**

"[I]n order to plead a plausible claim under [the VPPA], a plaintiff must allege that
a defendant is a 'video tape service provider.'"  *Mollett v. Netflix, Inc.*, 795 F.3d 1062,
1066 (9th Cir. 2015) (quoting 18 U.S.C. § 2710(a)(4)).  Congress defined the term "video
tape service provider" narrowly to capture video tape rental stores and similar enterprises,
i.e., entities "engaged in the business, in or affecting interstate or foreign commerce, of
rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual
materials[.]"  18 U.S.C. § 2710(a)(4).

9

Here, the Court reasoned that Plaintiffs' allegations that "Vizio's Internet Apps and Internet Apps Plus are designed to enable consumers to seamlessly access Netflix, Hulu, YouTube and Amazon Instant Video content in their homes" established that Defendants were "engaged in the business of delivering video content." (Order at 17-18.) But, thus far, every other court to consider the definition of a VTSP tends to deal only with entities that are the equivalent of a brick and mortar video tape rental store – *i.e.* an entity that itself directly distributes video content. *See, e.g., Ellis*, 803 F.3d at 1253 (Cartoon Network mobile application delivered videos); *Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d 1045, 1048 (9th Cir. 2015) (PlayStation Network rented and sold movies and video games); *Mollett*, 795 F.3d at 1064 (Netflix sends subscribers videos by mail or allows them to stream videos online); *Robinson*, 152 F. Supp. 3d at 184 (Disney Channel application delivers videos); *Gakuba v. Hollywood Video, Inc.*, 2015 WL 5737589, at *1 (D. Or. Sep. 30, 2015) (Hollywood Video rents movies to plaintiff). The only court to consider whether a defendant who merely facilitated the delivery of third party video content was a VTSP was in *In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873 (D.N.J. July 2, 2014). There, the district court **rejected** the argument that defendant Google was a "video tape service provider" simply because it owned YouTube, a website that allowed consumers to access video content from third parties. *Id*. at *8. The district court dismissed the claims against Google because Plaintiffs failed to allege that any "'specific video materials or services' have been requested" *from Google. Id*.

It is likely that reasonable jurists would disagree with this Court's definition of a VTSP, given that it plausibly implicates entities far removed from the original paradigm of a brick and mortar video store. *Nickelodeon*, 827 F.3d at 290 ("The classic example [of a VPPA violation] will always be a video clerk leaking an individual customer's video rental history. Every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim."). Currently, there are many devices, similar to VIZIO's Smart TVs, that could be characterized as being "substantially involved in the

conveyance of video content but also significantly tailored to serve that purpose." (Order at 18.)  If this Court's reasoning is adopted, the VPPA could now apply to the makers of personal computers, smart phones, tablets, video game consoles, and virtually any contemporary device made with a screen and accompanying software.  Each of these devices is designed to have the same capability, including in many instances software or software platforms, to facilitate the delivery of video content as a VIZIO Smart TV. Manufacturers of these devices are already concerned and confused about this expansive application of the VPPA.  Section III below.

> **3.    There is a Substantial Grounds for a Difference of Opinion on Whether Plaintiffs had sufficiently alleged that they met the definition of "Consumers" under the VPPA.**

The VPPA applies only to "consumers," and "defines the term 'consumer' as 'any renter, purchaser, or subscriber of goods or services from a video tape service provider.'" *Mollett*, 795 F.3d at 1066 (quoting 18 U.S.C. § 2710(a)(1)).  The Court recognized that "Plaintiffs do not contend that they are renters or purchasers" and that Plaintiffs "must be 'subscribers' for the VPPA to apply."  (Order at 19.)[3]

The Ninth Circuit has not spoken on what constitutes a "subscriber" for purposes of the VPPA.  Other courts that analyzed this issue emphasize the importance of the ongoing and committed nature of a subscriber relationship.  *Ellis*, 803 F.3d at 1256 ("Subscriptions involve some or most of the following factors: payment, registration, commitment, delivery, expressed association, and/or access to restricted content.") (quoting *Yershov v. Gannett Satellite Info. Network, Inc.*, 104 F. Supp. 3d 135, 147 (D. Mass. 2015), *rev'd*, 820 F.3d 482 (1st Cir. 2016)); *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015) (a subscriber must have a "deliberate and durable affiliation with the provider . . . one generally undertaken in advance and by affirmative action on the part of the subscriber, so as to supply the

---

[3] Plaintiffs' complaint alleges that VIZIO "delivers video content through VIZIO Internet Apps, Internet Apps Plus, and SmartCast."  (Complaint, ¶45.)  However, the subscription relationship it identifies is one between Plaintiffs and "entertainment companies that create, produce, or license video programming . . . as part of a paid subscription" not between Plaintiffs and Vizio.  *Id.*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO CERTIFY ORDER

MDL Case No. 8:16-ml-02693-JLS-KES

provider with sufficient personal information to establish the relationship and exchange").

This case is very similar to *Ellis*, where the Court held that there was no subscriber relationship.   803 F.3d at 1257.  In *Ellis*, the plaintiff used a Cartoon Network application on his mobile phone, but "did not provide any personal information to Cartoon Network, did not make any payments to Cartoon Network for use of the CN app, did not become a registered user of Cartoon Network or the CN app, did not receive a Cartoon Network ID, did not establish a Cartoon Network profile, did not sign up for any periodic services or transmissions, and did not make any commitment or establish any relationship that would allow him to have access to exclusive or restricted content." *Id.*; *see also Perry v. Cable News Network, Inc.*, -- F.3d ---, 2017 WL 1505064, at *4 (11th Cir. Apr. 27, 2017) (no subscriber relationship where plaintiff "did not sign up for or establish an account with [defendant], provide any personal information to [defendant], make any payments to [defendants] in using its app, become a registered user of [defendant] or its app, receive a[n] . . ID, establish a . . . profile, sign up for any periodic services or transmission, nor make any commitment or establish any relationship that would allow him to have access to exclusive or restricted content.").

Just as in *Ellis*, Plaintiffs here did not allege that they provided any personal information to VIZIO to access the applications, received a username from VIZIO, established a VIZIO profile, or signed up for any periodic services or transmissions. Plaintiffs did not allege that their access to Defendants' applications allowed them to have access to exclusive or restricted content.  To the contrary: the applications simply provided an additional method for accessing subscriptions plaintiffs obtained from third parties.  (Complaint, ¶ 45).

In its Order, the Court did not analyze these factors.  Instead, the Court focused on the presence of one factor, namely Plaintiffs' allegation that they paid a premium for

software applications that allowed them to access video content.[4]  But even if Plaintiffs had established that they paid for access to VIZIO applications, both *Ellis* and *Yershov* indicate that payment alone is not determinative.  *Ellis*, 803 F.3d at 1256 ("Payment, therefore, is only one factor a court should consider when determining whether an individual is a 'subscriber' under the VPPA."); *Yershov*, 820 F.3d at 488 ("[W]e therefore decline to interpret the statute as incorporating monetary payment as a necessary element.").  Just within the last couple of weeks, the Eleventh Circuit held that an allegation that the purveyor of an app who received an indirect payment from the user was not enough to establish a "subscriber" relationship.  *Perry*, 2017 WL 1505064, at *5 (plaintiff could not demonstrate a "subscriber" relationship where monetary benefit received was indirect and plaintiff did not establish the factors that would indicate "ongoing commitment or relationship.")[5]

In its Order, the Court also relied on Plaintiffs' allegation that VIZIO "continues to service [its applications] by pushing software updates that improve security and provide additional features." (Order at 20.)[6]  It is likely that reasonable jurists could also disagree

---

[4] Plaintiffs never alleged that "Vizio charges a premium for its Smart TVs because of their ability to seamlessly deliver video content through [its applications]."  (Order at 20.) The Court derived this finding from two paragraphs of Plaintiffs complaint, Paragraph 22 where Plaintiffs alleged that they would have paid less for their Smart TVs had they known of the alleged data collection and Paragraph 33 which contains an allegation that Smart TVs have software applications that allow access to internet-based content providers.  (Complaint, ¶¶ 22, 33.)  Whether or not Plaintiffs made an indirect payment for access to VIZIO applications is not supported by Plaintiffs' Complaint.

[5] At oral argument, this Court opined that Plaintiffs' premium payment for their televisions was analogous to an individual who pays a lump sum to obtain a lifetime subscription to a magazine.  *See* Doc. No. 125, at 14:6-11.  But Plaintiffs are not paying a lump sum for a lifetime subscription to video content.  Plaintiffs allege that they paid an undetermined portion of the price of their television for software that facilitates display of video content.  In other words, Defendants are not the magazine provider.  They sold the mailbox that allows one to receive a magazine subscription.

[6] The Court cites several paragraphs which discuss software updates in general, but none mentions Defendants providing any additional features or security updates to the VIZIO applications that allegedly give Plaintiffs access to video content.  *See* Complaint, ¶ 45 (describing applications preinstalled in VIZIO Smart TVs that "allow[] consumers to access programming available" from third party content providers); *id*., ¶ 59 (describing an "over-the-air" update to Smart Interactivity, not VIZIO application that provides access to video content), *id*., ¶ 66 (describing effect of "update" generally on Smart TV settings), *id*., ¶ 92 (2015 update to Smart Interactivity software).

13

with this Court's determination that this type of a passive, insubstantial connection establishes a "'deliberate and durable affiliation'" between Plaintiffs and VIZIO.  *Ellis*, 803 F.3d at 1256 (quoting *Austin-Spearman*, 98 F. Supp. 3d at 669).

Given the absence of the factors identified by other circuits that indicate a subscriber relationship, and the tenuous nature of the allegations supporting the Court's finding of an association between Plaintiffs and VIZIO, it is likely that reasonable jurists could disagree with this Court on whether Plaintiffs had alleged they were "subscribers" as defined by the VPPA.

## III.   AN INTERLOCUTORY APPEAL WILL PROVIDE CLARITY FOR INDUSTRIES THAT NOW FACE THE SAME POTENTIAL LIABILITY AS VIZIO.

In considering motions for interlocutory appeal, courts routinely consider the wider public impact of the issues at stake in addition to, or as a part of, the factors codified in Section 1292(b).  For example, in *Ass'n of Irritated Residents*, the defendants argued that similarly situated dairy businesses would benefit from resolution of the issues at stake on interlocutory appeal because it would "provide guidance as to whether dairies are in compliance with the laws."  634 F. Supp. 2d at 1093.  The court agreed and recognized that "[t]he opportunity to achieve appellate resolution of an issue important to other similarly situated dairies can provide an additional reason for certification; although it is not a requirement."  *Id.* (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) and 16 Wright, Miller & Cooper, Federal Practice and Procedure, § 3930, p. 425).  Similarly, in *Fox Television Stations, Inc. v. AereoKiller*, 115 F. Supp. 3d 1152 (C.D. Cal. 2015) and *Su v. Siemens Indus.*, 2014 WL 2600539 (N.D. Cal. June 10, 2014), the courts granted interlocutory appeal in part because "the legal issues are close and of significant commercial importance, both to these parties and to others" (*Fox Television*, 115 F. Supp. 3d at 1171) and "the questions decided are of substantial public policy importance to the state as a whole" (*Siemens*, 2014 WL 2600539, at *2).  Other courts have considered similar public or industry interests in connection with the Section

14

1   1292(b) factors.  *See, e.g., Ovando*, 92 F. Supp. 2d at 1025 ("Resolution of the issue on

2   an interlocutory basis could materially advance the litigation because it would allow the

3   parties to resolve a controlling question, while providing guidance on an unsettled area of

4   law."); *Leite v. Crane Co.*, 2012 WL 1982535, at *7 (D. Haw. May 31, 2012) ("[A]n

5   interlocutory appeal is appropriate where resolution of the issue would materially

6   advance the termination of not only the present case, but also other cases pending before

7   the court").

8          In this case, Vizio may be one of the first Smart TV manufacturers to be sued

9   under the VPPA.  But given the Court's expansion of both the types of data and

10  companies potentially subject to the VPPA, multiple industries may suddenly be subject

11  to the Act's reach.

12         For example, companies in the Smart TV industry are well aware, that if the VPPA

13  extends to them and to other display technology, such companies must prepare for an

14  industry-wide shift.  *See, e.g.,* Jeff Kosseff, "A VHS-era privacy law in the Digital Age,"

15  TECH CRUNCH (May 24, 2016), < https://techcrunch.com/2016/05/24/a-vhs-era-privacy-

16  law-in-the-digital-age/>.

17         Even beyond the Smart TV industry, this ruling could impact many other

18  industries.  As an example, the numerous prior dismissals of VPPA claims brought

19  against content providers were based largely on those courts' determination that

20  disclosure of device identifiers did *not* trigger liability under the VPPA.  It is likely that

21  such rulings will be revisited given this Court's ruling to the contrary.  Further, other

22  companies who manufacture devices that display video content could easily be classified

23  as VTSPs, so long as a plaintiff alleges that their devices are tailored to provide

24  customers with access to video content.  This ruling will affect computer manufacturers,

25  smartphone manufacturers, videogame console manufacturers, tablet manufacturers, and

26  many others.

27         Whatever the ultimate reach of the VPPA, granting interlocutory appeal would

28  provide vital guidance to these companies – and ultimately serve the consumers relying

on their technology – by establishing exactly what the VPPA is intended to cover in this digital age.

## IV.    CONCLUSION

For the foregoing reasons, the Court should certify the Order for interlocutory review under 28 U.S.C. § 1292 and Rule 5(a)(3) of the Federal Rules of Appellate Procedure.

Dated:  May 5, 2017

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:      /s/ *Hyongsoon Kim*
Anthony T. Pierce (*admitted pro hac vice*)
apierce@akingump.com
1333 New Hampshire Avenue NW
Suite 1500
Washington, DC 20036
Tel:   202-887-4000
Fax:   202-887-4288

Hyongsoon Kim (SBN 257019)
kimh@akingump.com
4 Park Plaza, Suite 1900
Irvine, CA  92614
Tel:   949-885-4100
Fax:   949-885-4101

Patrick Eoghan Murray (SBN 293765)
pmurray@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067
Tel:   310-229-1000
Fax:   310-229-1001

*Attorneys for Defendants VIZIO Holdings, Inc., VIZIO, Inc., VIZIO Inscape Services, LLC, and VIZIO Inscape Technologies, LLC*