VENABLE LLP
DANIEL P. HOFFER (SBN No. 173812)
  Email: dphoffer@venable.com
MATTHEW M. GURVITZ (SBN No. 272895)
  Email: mmgurvitz@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile:  (310) 229-9901

Emmett O'Keefe (MD Bar No. 9612180293)
Senior Vice President
Data & Marketing Association
225 Reinekers Lane, STE 325
Alexandria, VA 22314
Tel: 202-861-2140
Fax: 202-628-4383

Attorneys for Amicus Curiae
The Direct Marketing Association, Inc.
d/b/a The Data & Marketing Association

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re: Vizio, Inc., Consumer Privacy Litigation<br><br>This document relates to:<br>ALL ACTIONS | MDL CASE NO. 8:16-ml-02693-JLS-KES<br><br>Hon. Hon. Josephine L. Staton<br>Courtroom 10A<br><br>**APPLICATION FOR LEAVE FOR THE DIRECT MARKETING ASSOCIATION, INC. D/B/A THE DATA & MARKETING ASSOCIATION TO FILE BRIEF AS *AMICUS CURIAE* IN SUPPORT OF VIZIO, INC.'S MOTION TO CERTIFY ORDER ON MOTION TO DISMISS FOR INTERLOCUTORY REVIEW**<br><br>Hearing:<br>Date:       July 14, 2017<br>Time:      2:30 p.m.<br>Courtroom: 10A |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT The Direct Marketing Association, Inc. d/b/a The Data & Marketing Association ("DMA") hereby respectfully requests leave to file the attached brief as *amicus curiae* supporting defendants' Vizio Holdings, Inc., Vizio, Inc., Vizio Inscape Services, LLC and Vizio Inscape Technologies, LLC (collectively, "Vizio") Motion to Certify Order Granting Motion to Dismiss in Part, Denying in Part, For Interlocutory Review (Dkt. No. 155).  DMA requests leave to help explain the significant industry-wide impact the Court's order on Vizio's Motion to Dismiss (Dkt. No. 130) may have, as well as potential unintended consequences.

**I.      STANDARD FOR LEAVE TO FILE BRIEF OF *AMICUS CURIAE***

"[A] district court has broad discretion to appoint *amici curiae*."  *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982) (*abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)).  "There are no strict prerequisites that must be established prior to qualifying for amicus status although an individual or organization seeking to participate as amicus curiae must make a showing that his participation is useful to or otherwise desirable to the court." *Congregation Etz Chaim v. City of Los Angeles*, No. CV 97-5042 CAS(EX), 2009 WL 1293257, at *5 n.4 (C.D. Cal. May 5, 2009) (*quoting Infineon Techs. N Am. Corp. v. Mosaid Techs., Inc.*, No. C 02-5772 JF(RS), 2006 WL 3050849, at *3 (N.D. Cal. Oct. 23, 2006)).  "An amicus brief should normally be allowed" when, among other considerations, "the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Cmty. Ass'n for Restoration of the Env't (CARE) v. DeRuyter Bros. Dairy*, 54 F. Supp. 2d 974, 975 (E.D. Wash. 1999) (citation omitted).  "District courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential

ramifications beyond the parties directly involved[.]" *Sonoma Falls Developers, LLC v. Nevada Gold & Casinos, Inc.*, 272 F. Supp. 2d 919, 925 (N.D. Cal. 2003).

## II. DMA'S EXPERTISE WILL BENEFIT THE COURT

DMA is the leading global trade association of businesses and non-profit organizations that use direct marketing techniques to reach consumers and donors. DMA's membership consists of over 1,200 organizations in the data-driven marketing industry that have a profound impact on the economy of the United States. For example, in 2015 the industry employed nearly 1 million people, adding output to the U.S. economy worth at least $202 billion. To this end, DMA has been closely monitoring recent developments in this case and others like it because of the significant implications for the interests of its members.

The resolution of the issue presented – whether this Court properly applied the definitions of "Personally Identifiable Information," "Video Tape Service Provider" and "consumer" under the Video Privacy Protection Act (VPPA) – will have a direct impact on DMA and its members. Should the district court's decision be upheld, DMA members will face an increased risk of liability under this expansive reading of the VPPA. Accordingly, DMA has substantial knowledge and a unique perspective regarding these issues, and submits that its participation as an *amicus* would assist the Court in assessing the "potential ramifications beyond the parties directly involved." *Sonoma Falls Developers*, 272 F. Supp. 2d at 925.

## III. CONCLUSION

Based on the foregoing, DMA respectfully requests that the Court grant this Application and permit DMA to file its Brief in Support of Vizio's Motion to Certify the Order Granting Motion to Dismiss in Part, Denying in Part, For Interlocutory Review.

DMA brings this Application after conferring with the parties' counsel. Counsel for Vizio indicated that they have no opposition to DMA's Application. On the other hand, Counsel for Plaintiffs have indicated that they intend to oppose DMA's Application.

Dated: May 11, 2017

**VENABLE LLP**

By:/s/ Matthew M. Gurvitz
   Matthew M. Gurvitz
*Attorneys for Amicus Curiae*
The Direct Marketing Association, Inc. d/b/a The Data & Marketing Association

# EXHIBIT A

| | |
|---|---|
| 1 | VENABLE LLP |
| | DANIEL P. HOFFER (SBN No. 173812) |
| 2 |   Email: dphoffer@venable.com |
| | MATTHEW M. GURVITZ (SBN No. 272895) |
| 3 |   Email: mmgurvitz@venable.com |
| | 2049 Century Park East, Suite 2300 |
| 4 | Los Angeles, CA 90067 |
| | Telephone: (310) 229-9900 |
| 5 | Facsimile: (310) 229-9901 |
| 6 | Emmett O'Keefe (MD Bar No. 9612180293) |
| | Senior Vice President |
| 7 | Data & Marketing Association |
| | 225 Reinekers Lane, STE 325 |
| 8 | Alexandria, VA 22314 |
| | Tel: 202-861-2140 |
| 9 | Fax: 202-628-4383 |
| 10 | Attorneys for Amicus Curiae |
| | The Direct Marketing Association, Inc. |
| 11 | d/b/a The Data & Marketing Association |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| In re: Vizio, Inc., Consumer Privacy Litigation | CASE NO. 8:16-ml-02693-JLS-KES |
| | Hon. Hon. Josephine L. Staton<br>Courtroom 10A |
| This document relates to:<br>ALL ACTIONS | **BRIEF FOR AMICUS CURIAE THE DIRECT MARKETING ASSOCIATION, INC. D/B/A THE DATA & MARKETING ASSOCIATION IN SUPPORT OF VIZIO, INC.'S MOTION TO CERTIFY ORDER ON MOTION TO DISMISS FOR INTERLOCUTORY REVIEW** |
| | Hearing:<br>Date: July 14, 2017<br>Time: 2:30 p.m.<br>Courtroom: 10A |

BRIEF FOR AMICUS CURIAE DMA IN SUPPORT OF VIZIO'S MOTION TO CERTIFY ORDER RE MOTION TO DISMISS FOR INTERLOCUTORY REVIEW    5

CASE NO. 8:16-ml-02693-JLS-KES

## I. STATEMENT OF INTEREST OF AMICUS CURIAE

The Data & Marketing Association ("DMA" or "Amicus")[1] [2] is the leading global trade association of businesses and non-profit organizations that use direct marketing techniques to reach consumers and donors. DMA's membership consists of over 1,200 organizations in the data-driven marketing industry that have a profound impact on the economy of the United States. For example, in 2015 the industry employed nearly 1 million people, adding output to the U.S. economy worth at least $202 billion. The data marketing industry is integral in helping to fuel start-ups and small businesses and is considered a growth industry, adding significant value to the U.S. economy year over year, not to mention the impact of nonprofit organizations serving local needs nationally.

DMA submits this brief in favor of the Defendant VIZIO Inc., VIZIO Holdings, Inc., VIZIO Inscape Technologies, LLC, and VIZIO Inscape Services, LLC (collectively "Vizio"), and to support the request for an order certifying the Court's March 2, 2017 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (Doc. No. 130) ("Order"), for an interlocutory appeal. The resolution of the issue presented – whether this Court properly applied the definitions of "Personally Identifiable Information," "Video Tape Service Provider" and "consumer" under the Video Privacy Protection Act (VPPA) – will have a direct and impact on DMA and its members. Should the district court's decision be upheld, DMA members will face an increased risk of liability under this expansive reading of the VPPA.

---

[1] DMA affirms that no counsel for a party authored this brief in whole, or in part, and that no party or a party's counsel contributed money that was intended to fund preparing or submitting the brief, and that no person other than the DMA, its members, or its counsel has made any monetary contributions intended to fund the preparation or submission of this brief.

[2] The Data & Marketing Association is a recently adopted dba of the Direct Marketing Association, Inc.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

1
BRIEF FOR AMICUS CURIAE DMA IN SUPPORT OF VIZIO'S MOTION TO CERTIFY ORDER RE MOTION TO DISMISS FOR INTERLOCUTORY REVIEW
CASE NO. 8:16-ml-02693-JLS-KES

6

## II. ARGUMENT

The District Court erred in interpreting the definitions of the Video Privacy Protection Act as set forth below, and therefore, the request for an Interlocutory appeal should be granted in order to provide much needed guidance to the entire data-driven marketing industry.

The VPPA is a statute that prohibits the knowing disclosure of personally identifiable information, defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider[,]" by video tape service providers ("VTSP") to other persons, subject to certain exceptions.[3] VTSPs are defined as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."[4] While the VPPA was originally enacted to regulate entities that operated brick-and-mortar video rental stores, the statute's private right of action has led to class action law suits that seek to expand the VPPA's coverage to online and mobile video streaming services and media companies.

Recent VPPA cases have dealt with the collection of data regarding consumer viewing habits from video streaming services by data analytics and advertising companies. Those analytics and advertising companies use data collected from video streaming services for a variety of purposes, such as conducting market research and delivering more relevant advertising to viewers.[5] Importantly, those companies do not as a general matter share information with

---

[3] 18 U.S.C. § 2710.

[4] 18 U.S.C. § 2710(a)(4).

[5] *See e.g.*, *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015), appeal dismissed (Oct. 28, 2015); *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662 (S.D.N.Y. 2015); *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015).

2

BRIEF FOR AMICUS CURIAE DMA IN SUPPORT OF VIZIO'S MOTION TO CERTIFY ORDER RE MOTION TO DISMISS FOR INTERLOCUTORY REVIEW
CASE NO. 8:16-ml-02693-JLS-KES

7

Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310-229-9900

third parties that identifies the individuals about which that data may pertain.

In general, district and appellate courts have reached different conclusions in interpreting the statutory definitions of the VPPA. For example, unlike the Order at issue here, no court has held a television or device manufacturer to be within the coverage of the VPPA's definition of VTSP or that the disclosure of only a persistent identifier and video viewing habits, absent additional data points, results in the knowing disclosure of PII for purposes of the VPPA.

As a result, the Order creates substantial legal uncertainty for a wide range of businesses that participate in the data driven marketing economy that must now reevaluate the risk of liability under this new standard. Regardless of how the Ninth Circuit ultimately rules on the underlying issues of statutory interpretation, an interlocutory appeal would provide much needed guidance to the entire data driven marketing economy by clarifying the scope of the VPPA as expeditiously as possible. As such, the resolution of these close legal issues by the Court of Appeals will provide guidance, not only to the parties to resolve this case efficiently, but to other actors in the marketplace to avoid wasting judicial resources in future cases.[6] In fact, the result of the uncertainty around these important issues has already lead to additional litigation against other television manufacturers, proving Vizio's point that the overly broad interpretation by the Court will create liability under the VPPA for new sectors of the economy.[7] The Court should grant the Defendant's motion in order to provide stability in the marketplace, and provide guidelines within which companies can continue to innovate and provide value to consumers without the threat of potential liability.

---

[6] *See e.g.*, *Fox Television Stations, Inc. v. AereoKiller*, 851 F.3d 1002 (9th Cir. 2017).

[7] *See* Dkt. No. 155, Notice of Defendants' Motion and Motion to Certify Order Granting Motion to Dismiss in Part, Denying in Part, for Interlocutory Review; Memorandum of Points and Authorities, at 14-16.

3

BRIEF FOR AMICUS CURIAE DMA IN SUPPORT OF VIZIO'S MOTION TO CERTIFY ORDER RE MOTION TO DISMISS FOR INTERLOCUTORY REVIEW
CASE NO. 8:16-ml-02693-JLS-KES

8

### III. CONCLUSION

For the reasons stated above, Vizio's Motion to Certify the Order Granting Motion to Dismiss in Part, Denying in Part, for Interlocutory Review should be granted.

Dated: May 11, 2017                                        **VENABLE LLP**

By:/s/ Matthew M. Gurvitz
   Matthew M. Gurvitz
*Attorneys for Amicus Curiae*
The Direct Marketing Association, Inc.
d/b/a The Data & Marketing Association

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

4

BRIEF FOR AMICUS CURIAE DMA IN SUPPORT OF VIZIO'S MOTION TO CERTIFY ORDER RE MOTION TO DISMISS FOR INTERLOCUTORY REVIEW
9
CASE NO. 8:16-ml-02693-JLS-KES