1
2
3
4
5
6
7
8                UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10
11                            CASE NO. 8:16-ml-02693-JLS-KES
12
13
14 **In re: Vizio, Inc., Consumer Privacy**
**Litigation**
15
16                            **ORDER (1) DENYING MOTIONS FOR**
**LEAVE TO FILE AMICUS BRIEF**
**AND (2) DENYING VIZIO**
**DEFENDANTS' MOTION TO**
**CERTIFY IN PART UNDER 28 U.S.C.**
**§ 1292(b) THE MARCH 2, 2017**
**ORDER GRANTING IN PART AND**
17
18
19
20 **DENYING IN PART DEFENDANTS'**
**MOTION TO DISMISS (Docs. 155, 157,**
**158)**
21
22
23
24
25
26
27
28

1    Before the Court is a Motion to Certify Order for Interlocutory Appeal filed by

2    Defendants VIZIO, Inc.; VIZIO Holdings, Inc.; VIZIO Inscape Technologies, LLC; and

3    VIZIO Inscape Services, LLC (collectively, the "Vizio Defendants" or "Vizio").  (Mot.,

4    Doc. 155.)  Plaintiffs have submitted an Opposition (Opp'n, Doc. 191), and Vizio has filed

5    a Reply (Reply, Doc. 196).  Having carefully reviewed the parties' briefing and supporting

6    documentation, the Court DENIES Vizio's Motion.[1]

7    **I.    BACKGROUND**

8        This multidistrict litigation concerns allegations that Vizio offered Smart TVs

9    equipped with automatic content recognition software that collected consumers' viewing

10   histories and then sold that information—along with "highly specific" information about

11   consumers' digital identities—to third parties, without consumers' knowledge or consent.

12   *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1212–13 (C.D. Cal.

13   2017).

14       After the appointment of Co-Lead Counsel, on August 15, 2016, Plaintiffs filed

15   their First Consolidated Complaint.  (FCC, Doc. 108.)  In this Complaint, Plaintiffs alleged

16   claims for violations of: (1) the Video Privacy Protection Act, (2) Wiretap Act, (3)

17   California's Invasion of Privacy Act, (4) California Civil Code § 1799.3, (5) California

18   Consumer Legal Remedies Act, (6) California Unfair Competition Law, (7) California

19   False Advertising Law, (8) Florida Deceptive and Unfair Trade Practices Act, (9) N.Y.

20   Gen. Bus. Law §§ 349, 350, (10) N.Y. Gen Bus. Law §§ 670–675, (11) Massachusetts

21   Unfair and Deceptive Trade Practices Statute, (12) Massachusetts Video Records

22   Protection Statute, (13) Massachusetts Privacy Act, and (14) Washington Consumer

23   Protection Act, as well as common law claims for (15) unjust enrichment or quasi-contract,

24   _____

25       [1] The Motions for Leave to File Amicus Brief are DENIED because (1) Vizio is
26   represented ably by counsel, (2) amici have not identified any interest in another pending case that
     may be affected by the litigation, and (3) amici reiterate views expressed by Vizio.  *See*
27   *AmeriCare MedServices, Inc. v. City of Anaheim*, No. 8:16-CV-1596-JLS-AFMx, 2017 WL
     1836354, at *1 n.3 (C.D. Cal. Mar. 28, 2017) (Staton, J.).

28

(16) intrusion upon seclusion, (17) intentional misrepresentation or fraud by omission, and (18) negligent misrepresentation.[2]  (*Id.* ¶¶ 111–317.)  Plaintiffs dropped their state video privacy law claims in their Opposition to Defendants' Motion to Dismiss.  (Opp'n at 3 n.2, Doc. 121.)

On March 2, 2017, the Court granted in part and denied in part the Vizio Defendants' Motion to Dismiss.  *See generally In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017).  Specifically, the Court granted the Motion with leave to amend as to Plaintiffs' Wiretap Act, California Invasion of Privacy Act, affirmative fraud, California False Advertising Law, state video privacy, and negligent misrepresentation claims.  *Id.* at 1234.  The Court denied the Motion as to Plaintiffs' Video Privacy Protection Act, fraudulent omission, state law privacy, and unjust enrichment claims.  *Id.*

On Plaintiffs' VPPA cause of action, which is the only one at issue in this Motion, the Court examined each of Vizio's objections to Plaintiffs' pleading.  *First*, the Court concluded that Plaintiffs had plausibly alleged that, through its Smart TVs, Vizio was a "video tape service provider," which the statute defines to encompass those "engaged in the business . . . of . . . [the] delivery" of video content.  *Id.* at 1221–22; 18 U.S.C. § 2710(a)(4).  "Vizio's Internet Apps and Internet Apps Plus are designed to enable consumers to seamlessly access Netflix, Hulu, YouTube, and Amazon Instant Video content in their homes."  *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d at 1222.  Vizio allegedly markets its Smart TVs as "a passport to a world of entertainment, movies, TV shows and more[,]" and "[a] reasonable inference is that Vizio enters into agreements with . . . content providers to enable consumers to access their programming on Vizio's Smart TVs."  *Id.*  Thus, as opposed to mere "peripheral[] or passive[]" involvement in video content delivery, Vizio allegedly was

---

[2] Plaintiffs' FCC was misnumbered, skipping from the sixteenth to its eighteenth cause of action.  (*See* FCC ¶¶ 294–309.)

1    "substantially involved in the conveyance of video content to consumers" and its Smart TVs

2    were "significantly tailored to serve that purpose."  *Id.* at 1221.

3         *Second*, the Court found that Plaintiffs plausibly alleged that they were

4    "subscribers" and thus fell within the Act's definition of "consumer."  *Id.* at 1222–23; *see*

5    18 U.S.C. § 2710(a)(1).  While noting some tension between the First Circuit in *Yershov v.*

6    *Gannett Satellite Information Network*, 820 F.3d 482 (1st Cir. 2016), and Eleventh Circuit

7    in *Ellis v. Cartoon Network*, 803 F.3d 1251 (11th Cir. 2015), on whether users of free

8    mobile applications fall within the statutory definition of "subscribers," the Court

9    concluded that this dispute was ultimately irrelevant because Plaintiffs "allege that they *do*

10   pay for Vizio's applications."  *Id.* at 1223.  Specifically, Plaintiffs alleged that "Vizio

11   charges a premium for its Smart TVs because of their ability to seamlessly deliver video

12   content to consumers through Vizio's Internet Apps, Internet Apps Plus, and SmartCast"

13   and "Vizio continues to service [the Smart TVs] by pushing software updates that improve

14   security and provide additional features."  *Id.*  Considering these allegations, under either

15   *Ellis* or *Yershov*, "Plaintiffs plausibly allege[d] an association with Vizio that is

16   sufficiently substantial and ongoing to constitute a subscription."  *Id.*

17        *Third*, Plaintiffs pleaded sufficient facts to plausibly suggest that—as Vizio's own

18   document described its collection and disclosure capabilities—"provid[ing] highly specific

19   viewing behavior data on a massive scale with great accuracy" constitutes the disclosure of

20   "personally identifiable information," which the statute prohibits.  *Id.* at 1223–26; *see* 18

21   U.S.C. §§ 2710(a)(3), (b).  In determining how to construe the phrase "personally

22   identifiable information," the Court was confronted with two approaches: Either focus on

23   the text and structure of the Act, as *Yershov* did, or rely primarily on legislative history that

24   does not squarely address what the phrase "personally identifiable information" means, the

25   course that *In re Nickelodeon* took.  *Id.* at 1223–24; *see In re Nickelodeon*, 827 F.3d 262,

26   281–90 (3d Cir. 2016).  Because the former approach better accords with contemporary

27   statutory interpretation, the Court followed *Yershov*.  *Id.* at 1224–25.  Thus, based on the

28   plain meaning and structure of the Act, the Court held the Plaintiffs must ultimately show

4

that "Vizio's disclosures are 'reasonably and foreseeably likely to reveal' what video content Plaintiffs have watched."  *Id.* at 1225 (quoting *Yershov*, 820 F.3d at 486).  Under this standard, Plaintiffs had plausibly alleged that "highly specific" information about consumers' digital identities—in particular, linked data revealing consumers' MAC addresses, IP addresses, zip codes, product model numbers, hardware and software versions, chipset IDs, region and language settings, and information about devices connected to the same network—qualifies as "personally identifiable information."  *Id.*  Overall, the Court "stresse[d] the posture of this case."  *Id.*  Because the VPPA's statutory terms demand fact-intensive inquiries and this case involves several intricate technologies, the Court declined "to engage in judicial fact-finding or make sweeping determinations as a matter of law on this Motion to Dismiss."  *Id.* at 1226.

On March 23, 2017, Plaintiffs filed a Second Consolidated Complaint that dropped all of the dismissed claims except for the Wiretap Act and California Invasion of Privacy Act claims.  (SCC ¶¶ 294–309, Doc. 136.)  On their Second Motion to Dismiss, the Vizio Defendants renewed their attack on Plaintiffs' Wiretap Act and California Invasion of Privacy Act claims.  (Second MTD Mem. 11–14, Doc. 145-1.)  Vizio separately moved to dismiss Plaintiffs' demand for injunctive relief as moot and certain additional allegations in Plaintiffs' Second Consolidated Complaint about Vizio's collection of information from additional sources.  (*Id.* at 6–11, 14–16.)  Finally, Vizio sought to strike Plaintiffs' class definition as overbroad because an unknown fraction of the alleged class members could be subject to mandatory arbitration agreements.  (*Id.* at 16–21.)  On July 25, 2017, the Court denied Defendants' Second Motion to Dismiss.  (Order, Doc. 199.)  Thus, after two rounds of Motions to Dismiss, Plaintiffs may proceed on their Video Privacy Protection Act, Wiretap Act, California Invasion of Privacy Act, California Consumer Legal Remedies Act, California Unfair Competition Law, Florida Deceptive and Unfair Trade Practices Act, N.Y. Gen. Bus. Law § 349, Massachusetts Unfair and Deceptive Trade Practices Statute, Massachusetts Privacy Act, Washington Consumer Protection Act,

1  unjust enrichment, intrusion upon seclusion, and fraudulent omission claims.  (*See* SCC ¶¶

2  118–284.)

3  **II.    <u>LEGAL STANDARD</u>**

4          Codified in 28 U.S.C. § 1291, the final judgment rule provides that the Courts of

5  Appeals generally have jurisdiction over only "final decisions of the district courts of the

6  United States."  28 U.S.C. § 1291; *Cunningham v. Hamilton Cty.*, 527 U.S. 198, 203

7  (1999).  Section 1291's finality requirement "evinces a legislative judgment that

8  '[r]estricting appellate review to "final decisions" prevents the debilitating effect on

9  judicial administration caused by piecemeal appeal disposition of what is, in practical

10  consequence, but a single controversy.'"  *Coopers & Lybrand v. Livesay*, 437 U.S. 463,

11  471 (1978) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974)).  Section

12  1292(b) provides a very narrow exception to the final judgment rule whereby "litigants can

13  bring an immediate appeal of a non-final order upon the consent of both the district court

14  and the court of appeals."  *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1025–26 (9th Cir.

15  1982).  "This screening procedure serves the dual purpose of ensuring that such review

16  will be confined to appropriate cases and avoiding time-consuming jurisdictional

17  determinations in the court of appeals."  *Coopers & Lybrand*, 437 U.S. at 474–75.  A

18  district court may certify an order for interlocutory appeal only where the order (1)

19  "involves a controlling question of law," (2) "as to which there is substantial ground for

20  difference of opinion," and (3) "an immediate appeal from the order may materially

21  advance the ultimate termination of the litigation . . . ."  28 U.S.C. § 1292(b).  Each of the

22  three certification requirements must be satisfied for an order to be appropriate for

23  interlocutory review.  *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)

24  (reversing certification under § 1292(b) where defendant failed to establish substantial

25  ground for difference of opinion); *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

26          Because "[s]ection 1292(b) is a departure from the normal rule that only final

27  judgments are appealable," the statute "must be construed narrowly" and a district court

28  should invoke its certification authority "sparingly and only in exceptional circumstances."

*James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002); *United States v. Woodbury*, 263 F.2d 784, 788 n.4 (9th Cir. 1959).  Accordingly, a party displeased with a pretrial ruling cannot employ section 1292(b) merely to secure "early review of difficult rulings in hard cases."  *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2008 WL 361082, at *1 (S.D.N.Y. Feb. 7, 2008) (quoting *In re Levine*, No. 94-44257, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004)).  "The party seeking review bears the burden of showing that 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'"  *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1087 (E.D. Cal. 2008) (quoting *Coopers & Lybrand*, 437 U.S. at 475).

## III.   DISCUSSION

In its Motion to Certify, Vizio seeks to certify whether "Plaintiffs [have] adequately alleged" that Defendants, through their Smart TV products, are "video tape service providers," that Plaintiffs are "consumers," and that Defendants disclosed "personally identifiable information."  (Mem. at 2.)  Plaintiffs object to Vizio's Motion, arguing that Vizio unreasonably delayed bringing this Motion without explanation, that an interlocutory appeal on the questions posed would not materially advance this multidistrict litigation, that substantial grounds for disagreement do not exist, and that the questions posed do not involve controlling questions of law.  (Opp'n at 2–18.)  The Court focuses on whether granting an immediate, interlocutory appeal would materially advance this litigation and whether substantial grounds for disagreement exist, as these matters are dispositive and straightforward.

### A. At This Stage, an Interlocutory Appeal Does Not Hold the Potential to Materially Advance This Litigation.

On this Motion, the Court's inquiry begins with whether an appeal would materially advance this litigation.  Courts have repeatedly found that certification is unwarranted where "there is a good prospect that the certified question may be mooted by further proceedings."  Charles Alan Wright et al., 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.

2017); *see, e.g.*, *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002); *Oneida Indian Nation of New York State v. Oneida Cty.*, 622 F.2d 624, 628–29 (2d Cir. 1980); *United States v. Rent-A-Homes Sys. of Illinois, Inc.*, 602 F.2d 795, 797 (7th Cir. 1979); *Lillehagen v. Alorica, Inc.*, No. SACV 13-0092-DOC, 2014 WL 2009031, at *7 (C.D. Cal. May 15, 2014); *Dukes v. Wal-Mart Stores, Inc.*, No. C 01-02252 CRB, 2012 WL 6115536, at *5 (N.D. Cal. Dec. 10, 2012).  Indeed, other district courts have recognized that allowing interlocutory appeals of decisions resolving motions to dismiss in multidistrict proceedings often "would serve only to impede institutional efficiency by 'prolong[ing] judicial proceedings, add[ing] delay and expense to litigants, burden[ing] appellate courts, and present[ing] issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions.'"  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 534 (S.D.N.Y. 2014) (quoting *In re World Trade Ctr. Disaster Site Litig.*, 469 F.Supp.2d 134, 144 (S.D.N.Y.2007)); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d at 533 ("Interlocutory review . . . is especially rare in the early stages of litigation.").

Such is the case here.  In the March 2 Order, this Court did not hold that Vizio's collection and disclosure practices *violate* the Video Privacy Protection Act or even that a *reasonable jury* could find as much; all the Court did was open the door to discovery on these highly fact-dependent issues involving intricate technologies.  *See In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d at 1225–26.  Because there is a "good prospect" that the proposed questions would be entirely academic by the time the Ninth Circuit could possibly resolve them, Vizio has not shown that an interlocutory appeal would materially advance this litigation.

Further cautioning against an interlocutory appeal, the questions Vizio seeks to certify would be presented to the Ninth Circuit in a particularly awkward posture.  Not only would the Ninth Circuit lack any factual record, but Plaintiffs' First Consolidated Complaint lacks the additional allegations about Vizio's collection and disclosure practices found in the FTC Complaint.  *See In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp.

3d at 1225 n.6 (noting that the Court could not consider the allegations in the FTC's complaint because they were not incorporated into Plaintiffs' First Consolidated Complaint).  And, if Plaintiffs claims have merit, they will undoubtedly have additional allegations to plead at a later juncture.  So, even if Vizio were to prevail on an interlocutory appeal, the parties would be left to litigate yet another round of motions to dismiss in two years.  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d at 531 ("The Second Circuit regularly denies interlocutory appeals at such preliminary stages where, as here, the appeal could at most lead only to a remand for repleading.").  Which is to say, instead of materially advancing the multidistrict litigation, an interlocutory appeal on Vizio's Motion to Dismiss could derail it.

For this reason, perhaps, Vizio represents that it will seek a sweeping ruling from the Ninth Circuit entirely exempting Smart TV manufacturers, like itself, from the purview of the Video Privacy Protection Act.  (Reply at 7.)  The Court has at least some doubts whether this would be Vizio's sole strategy because it devotes substantial attention in its Motion to minor quibbles over whether Plaintiffs should have been more explicit in their pleading, rather than any substantial legal questions.  (*See* Mem. at 11 n.3, 13 at nn. 4, 5, 6.)  At any rate, whatever standard the Ninth Circuit may adopt, Vizio is unlikely to obtain a ruling completely exempting those who offer integrated hardware and software platforms designed for accessing streaming video content from the VPPA.  Vizio's attempt to distinguish itself from, say, Hulu finds no support in the text of the Act, and Vizio's proffered distinction between software and hardware providers proves elusive.

Finally, even if Vizio obtains a far-reaching ruling on an interlocutory appeal, such a decision would resolve only one of Plaintiffs' thirteen claims.  (*See* SCC at ¶¶ 118–284.) Where "a substantial amount of litigation remains in [a] case regardless of the correctness of the Court's ruling,  . . . arguments that interlocutory appeal would advance the resolution of this litigation are unpersuasive." *Lillehagen*, 2014 WL 2009031, at *7; *Friedman v. 24 Hour Fitness USA, Inc.*, No. CV 06-6282 AHM CTX, 2009 WL 545783, at *2 (C.D. Cal. Mar. 3, 2009); *United States ex rel. Bagley v. TRW, Inc.*, No. CV-954153-

AHM-AJWx, 2001 WL 369790, at *2 (C.D. Cal. Mar. 26, 2001).  When applying this standard to determine whether to certify an order resolving a motion to dismiss, "it is 'quite unlikely' that an immediate appeal will materially advance the termination of the litigation" if "discovery as to the challenged claims 'appears likely to overlap to a considerable extent'" with others brought in the same litigation.  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d at 533 (quoting *Isra Fruit Ltd. v. Agrexco Agr. Exp. Co.*, 804 F.2d 24, 25 (2d Cir. 1986)).  True, before the appointment of Co-Lead Counsel, Plaintiffs highlighted the importance of the VPPA claims to this multidistrict litigation in a Joint Statement filed with the Court.  (*See* Joint Statement at 9, Doc. 48.) But nothing suggests that the questions Vizio seeks to certify would affect that nature of discovery or even the length of a trial, because Plaintiffs' Wiretap Act and state privacy claims remain viable at this stage as well.  Plaintiffs need not succeed on their VPPA claims for their Wiretap Act, consumer protection, and state privacy claims to have merit. Vizio also focuses on the statutory damages available under the VPPA (Reply at 5–6), but—assuming this is a relevant consideration—the Wiretap Act offers similar penalties. *See* 18 U.S.C. § 2520(c).

Thus, considering the potential for further proceedings to moot the questions presented, the peculiar manner in which these questions would be presented to the Ninth Circuit, and the unlikelihood at this point that an appeal would affect the scope of discovery or length of trial, Vizio has failed to demonstrate that an interlocutory appeal would materially advance this litigation.[3]

## B.   Vizio has Failed to Show a Substantial Ground for Disagreement on Two of the Questions Posed

Vizio's failure to identify a substantial ground for disagreement on two of the

---

[3] The Court further notes that Ninth Circuit may provide guidance on the meaning of "personally identifiable information," in *Chad Eichenberger v. ESPN, Inc.*, Case No. 15-35449, which was argued on October 3, 2017.  Certifying an issue already pending before the Ninth Circuit would be a peculiar use of judicial and private resources.

questions also precludes certification of those issues.  A substantial ground for a difference of opinion may exist if "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented."  *Couch*, 611 F.3d at 633 (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010) (footnotes omitted)).  But "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal."  *Id.*; *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d at 539 ("A substantial ground for difference of opinion exists when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the [governing circuit].'").

    For the reasons discussed in the March 2 Order, the Court finds *In re Nickelodeon*'s appraisal of the legislative history unconvincing when compared with the more conventional approach to statutory interpretation found in the First Circuit's decision in *Yershov v. Gannett Satellite Info. Network, Inc.*  To put it simply, "[a] statute says what it says, and the place to begin is with the words themselves."  *Yershov v. Gannett Satellite Info. Network, Inc.*, 104 F. Supp. 3d 135, 140 (D. Mass. 2015), *rev'd on other grounds*, 820 F.3d 482 (1st Cir. 2016); *see also*, *e.g.*, *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) ("[W]e . . . presume . . . 'that [the] legislature says . . . what it means and means . . . what it says.'" (quoting *Dodd v. United States*, 545 U.S. 353, 357 (2005)).  Further, the panel in *In re Nickelodeon* appears to have been animated by the concern that a literal interpretation of "personally identifiable information" would mean that certain websites would be "presumptively illegal" due to their disclosure of consumers' IP addresses.  *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 290.  But the decision does not acknowledge that the VPPA creates an explicit exception allowing the disclosure of such information to "any person if the disclosure is incident to the ordinary course of business of the video tape service provider."  18 U.S.C. §

2710(b)(2)(E).  Nonetheless, the strongest evidence of a substantial ground for disagreement is tension or outright disagreement among the circuits with the governing circuit providing few clues on how it would rule.  As such, a substantial ground for disagreement exists over the import of "personally identifiable information" under the VPPA.[4]

As for the other two questions Vizio poses, however, the company offers little other than its vehement disagreement with the Court's disposition.  On whether Plaintiffs have plausibly pleaded that they qualify as "subscribers," any tension between the First Circuit's decision in *Yershov* and the Eleventh Circuit's decisions in *Perry v. Cable News Network, Inc.*, 854 F.3d 1336 (11th Cir. 2017), and *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015), has no bearing on this case.  While Vizio correctly notes that *Perry* mentioned that the plaintiff did not create a login account for the free mobile application, both *Perry* and *Ellis* focused on how consumers paid nothing for the product and the ease at which the application could be quickly "delete[d] . . . without consequences whenever [the user] likes."  *Ellis*, 803 F.3d at 1257 (describing these two factors as "[i]mportant[]"); *Perry*, 854 F.3d at 1342 (reiterating these factors in describing *Ellis*'s holding).  In contrast to these decisions about free mobile applications, this litigation concerns products allegedly sold at a premium because of their ability to access video content, that have a relatively long lifecycle, and for which the manufacturer provides continuing updates and support after consumers purchase the product.  *Ellis* and *Perry* did not suggest that—even if a consumer pays for the product and the defendant provides ongoing support and updates—a consumer is not a subscriber unless she creates a login account.  This Court did

---

[4] Vizio again protests that it should not be held liable for the "idiosyncratic" capabilities of third parties to whom it discloses consumers' information.  (Mem. at 7–8 n.2.)  By its very definition, an "idiosyncratic" usage is not "reasonable and foreseeable," so Vizio's conclusion does not follow logically from its premise.  Rather, the relevant inquiry is whether a video tape service provider can escape liability for disclosures that would reasonably and foreseeably result in identifying a specific person as watching a particular program merely because an "ordinary person" would not be able, on her own, to identify the consumer.

1  not mechanically march through the factors articulated in *Ellis* because—considering this

2  was a motion to dismiss—Plaintiffs had clearly alleged the requisite "commitment,

3  relationship, or association (financial or otherwise) between a person and an entity." *Ellis*,

4  803 F.3d at 1256; *see Perry*, 854 F.3d at 1343.

5         For the reasons touched upon already, Vizio fares no better in its attempts to argue

6  that a substantial ground exists over whether integrated hardware and software platforms

7  designed to access streaming video content are categorically excluded from the VPPA.

8  Besides reiterating the contentions made in its Motion to Dismiss, Vizio's argument

9  reduces to observing that prior VPPA litigation did not involve this product.  (Mem. at 10.)

10  To conjure up disagreement, Vizio asserts that the Court's holding contravenes the district

11  court's holding in *In re Nickelodeon* that Google was not a video tape service provider.

12  (*Id.* at 10.)  That court, however, simply concluded that Google's ownership of YouTube

13  was insufficient to make it a videotape service provider when the plaintiffs' allegations did

14  not involve the collection of data via YouTube.  *See In re Nickelodeon Consumer Privacy*

15  *Litig.*, No. CIV.A. 12-07829, 2014 WL 3012873, at *8 (D.N.J. July 2, 2014) ("YouTube

16  videos are irrelevant to this lawsuit, which focuses exclusively on three Viacom websites

17  and the Defendants' data collection activities in regards to those sites.").  This Court in no

18  way took a contrary position: Plaintiffs allege that Vizio is collecting consumers' data

19  through the *very product* that Vizio markets as a "passport to a world of entertainment,

20  movies, TV shows and more" and that consumers use to seamlessly access streaming video

21  content.  *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d at 1222.  Vizio's

22  failure to identify a single case—from either a circuit or district court—holding that

23  offering an analogous product does not qualify as "the business . . . of . . . deliver[ing]"

24  video content strongly suggests that a substantial ground for disagreement does not at

25  present exist.  *See Couch*, 611 F.3d a 633 (finding that a defendant's failure to "provide[] a

26  single case that conflicts with the district court's construction or application" of the

27  relevant statute to be a "[s]ignificant[]" indication that a substantial ground for

28  disagreement did not exist); *Fenters v. Yosemite Chevron*, 761 F. Supp. 2d 957, 1005 (E.D.

Cal. 2010) (observing that a "substantial ground for difference of opinion" requires more than "a showing that there is a dearth of case law, or that the issue is a question of first impression").

In sum, the Court appreciates that this Motion is motived at least in part by an attempt to resolve questions reaching beyond the facts at issue in this multidistrict litigation for the benefit of the Smart TV industry.  (Mem. at 14–16.)  But section 1292(b) does not permit district courts to certify orders merely because they pose interesting questions.  As the Ninth Circuit has stressed, "[a] district court confronting a motion to certify pursuant to § 1292(b) should remain focused on the statutory requirements, not policy considerations which may or may not be furthered by certification."[5]  *Couch*, 611 F.3d at 635.  Because Vizio has not shown that this case falls within the very narrow category of "exceptional circumstances" where an interlocutory appeal is warranted, the Court DENIES its Motion to Certify.

**IV.    CONCLUSION**

For the foregoing reasons, the Court DENIES the Vizio Defendants' Motion to Certify.

DATED: October 13, 2017

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE

---

[5] Besides, Vizio grossly overstates the policy implications of this Court's construction of the VPPA; the Court simply did not suggest that anything with a screen is a video tape service provider.  (*Contra* Mem at 11, Reply at 7–8.)