Eric H. Gibbs (Bar No. 178658)
Andre M. Mura (Bar No. 298541)
Linda Lam (Bar No. 301461)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
amm@classlawgroup.com
lpl@classlawgroup.com

Joseph W. Cotchett (Bar No. 36324)
Adam J. Zapala (Bar No. 245748)
Adam J. Trott (Bar No. 275520)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
atrott@cpmlegal.com

*Plaintiffs' Interim Co-Lead Counsel*

**UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION**

| | |
|---|---|
| IN RE: VIZIO, INC., CONSUMER PRIVACY LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | Case No. 8:16-ml-02693- JLS (KESx)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT (UNOPPOSED)**<br><br>Date:      December 7, 2018<br>Time:      10:30 a.m.<br>Dept:      Courtroom 10-A<br>Judge:    Hon. Josephine L. Staton |

# TABLE OF CONTENTS

I.     Introduction...............................................................................................1

II.    Summary of Argument ............................................................................2

III.   Overview of the Litigation .....................................................................3

       A.     The alleged circumstances that prompted these lawsuits. .......................3

       B.     An abbreviated history of these legal proceedings. ..........................6

IV.    Terms of Proposed Settlement.................................................................9

       A.     Proposed Settlement Class ....................................................9

       B.     Settlement Fund ....................................................................10

       C.     Injunctive Relief ...................................................................11

       D.     Release ...................................................................................13

       E.     Notice ....................................................................................13

       F.     Administration........................................................................15

IV.    Argument ..............................................................................................15

       A.     Certification of the Proposed Settlement Class Is Appropriate. .........16

              1.  Rule 23(a) Is Satisfied. ..............................................18

              2.  Rule 23(b)(3) Is Satisfied..........................................20

              3.  Appointment of Class Counsel Is Merited. .............22

       B.     Preliminary Approval of the Settlement Is Warranted. .......................22

              1. Strength of Plaintiffs' Case ....................................24

              2. Risk, Complexity, Costs, and Likely Duration of Further Litigation, and
                 Risk of Maintaining Class Certification ................29

              3. Amount Offered in Settlement................................30

              4. Method of Distributing Relief ...............................33

              5. Attorneys' Fees and Costs, and Service Awards ................34

              6. Stage of the Proceedings and Extent of Discovery Completed .........35

              7. Support of Experienced Counsel ...........................36

              8. Positive Views of Class Members ..........................36

              9. No Signs of Collusion .............................................36

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

      C.     Approval of the Proposed Settlement Administrator ..........................................38

V.     CONCLUSION ...........................................................................................................42

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

# TABLE OF AUTHORITIES

Page

**Cases**

*Abdullah v. U.S. Sec. Assocs.*,
   731 F.3d 952 (9th Cir. 2013) ...................................................................20

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007) ..............................................................24

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................20

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (C.D. Cal. 2013) ..............................................................19

*Brown v. Hain Celestial Group, Inc.*,
   2016 WL 631880 (N.D. Cal. Feb. 17, 2016) .............................................39

*Campbell v. Facebook Inc.*,
   315 F.R.D. 250 (N.D. Cal. 2016) ........................................................28, 29

*Cf. Lee v. Enter. Leasing Co.-W.*, No. 3:10-CV-00326-LRH,
   2015 WL 2345540 n.5 (D. Nev. May 15, 2015) ........................................32

*Clesceri v. Beach City Investigations & Protective Servs., Inc.*,
   Case No. CV-10-3873-JLS (RZx), 2011 WL 320998 (C.D. Cal. Jan. 27, 2011) ..................36

*DirecTV, Inc. v. Huynh*,
   2005 WL 5864467 (N.D.Cal. May 31, 2005) ......................................28, 29

*Ehret v. Uber Techs., Inc.*,
   148 F. Supp. 3d 884 (N.D. Cal. 2015) .......................................................20

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ....................................................................26

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) ..................................................................18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ..................................................................................30

*Gustafson v. BAC Home Loans Servicing, LP*,
   294 F.R.D. 529 (C.D. Cal. 2013) ..............................................................21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..............................................................21, 22

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ....................................................................34

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ..........................................................23, 35, 37

*In re Hyundai And Kia Fuel Econ. Litig.*,
   897 F.3d 1003 (9th Cir. 2018) ..................................................................21

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ..............................................................31

iii

*In re Mex. Money Transfer Litig.*,
    267 F.3d 743 (7th Cir. 2001) ................................................................ 21

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................... 36

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ............................................................... 35

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................... 24, 31

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ..................................... 39

*In re Vizio, Inc., Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ......................................... 21, 27

*In re Zynga Privacy Litigation*,
    750 F.3d 1098 (9th Cir. 2014) ............................................................. 27

*Konop v. Hawaiian Airlines*,
    302 F.3d 868 (9th Cir. 2002) ............................................................... 27

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ............................................................. 36

*Linney v. Cellular Alaska P'ship*,
    Nos. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) .... 37

*Los Angeles Cnty. Metro. Transp. Auth. v. Superior Court*,
    123 Cal. App. 4th 261 (2004) ............................................................. 25

*Mullins v. Premier Nutrition Corp.*,
    No. 13-CV-01271-RS, 2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ... 22

*Munday v. Navy Fed. Credit Union*,
    No. SACV151629-JLS-KESx, 2016 WL 7655807 (C.D. Cal. Sept. 15, 2016) ... 17

*Munday v. Navy Federal Credit Union*,
    2016 WL 7655796 (C.D. Cal. Sep. 15, 2016) ..................................... 39

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................... 31, 36

*Nicholson v. UTI Worldwide, Inc.*,
    No. 3:09-cv-722-JPG-DGW, 2011 WL 1775726 (S.D. Ill. May 10, 2011) ... 20

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ............................................................... 24

*Pelzer v. Vassalle*,
    655 Fed. App'x 352 (6th Cir. 2016) .................................................... 38

*Ramos v. Capital One, N.A.*,
    No. 17-CV-00435-BLF, 2017 WL 3232488 (N.D. Cal. July 27, 2017) ... 25

*Rhom v. Thumbtack, Inc.*,
    No. 16-CV-02008-HSG, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017) ... 35

*Schuchard v. Law Office of Rory W. Clark*,
    No. 15-cv-01329-JSC, 2016 WL 232435 (N.D. Cal. Jan. 20, 2016) .... 31

*Smoot v. United Transp. Union*,
    246 F.3d 633 (6th Cir. 2001) ............................................................... 28

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................... passim

*Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ................................................................ 17, 19

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ....................................................................................29

*United States v. Szymuszkiewicz*,
    622 F.3d 701 (7th Cir. 2010) .........................................................................27

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) .........................................................................22

*Vandervort v. Balboa Capital Corp.*,
    8 F. Supp. 3d 1200 (C.D. Cal. 2014) ...........................................................30

*Vandervort v. Balboa Capital Corp.*,
    2013 WL 12123234 (C.D. Cal. Nov. 20, 2013) ...........................................38

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................ 17, 18

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) .........................................................................17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ..........................................................23, 24, 25

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016) .........................................................................26

**Statutes**

18 U.S.C. § 2520(a) ......................................................................................... 17, 27

18 U.S.C. § 2710 ...................................................................................................17

18 U.S.C. § 2710(c)(2) ..........................................................................................28

28 U.S.C. 2072 ......................................................................................................16

28 U.S.C. § 1715(b) ..............................................................................................42

28 U.S.C. § 1715(d) ..............................................................................................42

N.Y. Gen. Bus. Law § 349 .....................................................................................8

**Rules**

Fed. R. Civ. P. 23(a)(1) .................................................................................. 17, 18

Fed. R. Civ. P. 23(c)(b)(2) ............................................................................ 39, 41

Fed. R. Civ. P. 30(b)(6) ........................................................................................36

Fed. R. Evid. 408 ..................................................................................................36

Rule 23(a) ..............................................................................................................17

Rule 23(a)(2) .........................................................................................................18

Rule 23(a)(3) .........................................................................................................19


Rule 23(a)(4) ................................................................................................ 19

Rule 23(b) ..................................................................................................... 17

Rule 23(b)(3) ............................................................................... 17, 18, 20, 22

Rule 23(c)(2)(B) .................................................................................... 40, 42

Rule 23(e) ...................................................................................................... 23

Rule 23(e)(1 ................................................................................................. 40

Rule 23(e)(2) ................................................................................................. 22

Rule 23(e)(3) ................................................................................................. 24

Rule 23(g) ..................................................................................................... 22

**Other Authorities**

Duke Law School, *Implementing 2018 Amendments to Rule 23* ......................... 23, 24, 39

Manual for Complex Litigation, Fourth § 21.63 (2004) ............................. 16

*The End of Objector Blackmail?*,
    62 Vand. L. Rev. 1623 (2009) ......................................................... 38

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

## I.   Introduction

Plaintiffs seek preliminary approval of a settlement agreement providing monetary and injunctive relief for all individuals in the United States who purchased a Vizio Smart Television for personal or household use, and not for resale, that was subsequently connected to the Internet at any time between February 1, 2014 and February 6, 2017. The nationwide relief negotiated at arm's length and under the supervision of a retired federal judge, after years of intensive litigation and probing discovery, would end this multi-district litigation against Vizio on the following terms:

*First*, Vizio will establish a non-reversionary $17 million fund for proportional monetary payments for settlement class members who submit a claim. The fund will cover any court-approved expenses, costs, and attorneys' fees.

*Second*, beginning in December 2016, after this lawsuit was filed and in substantial part because of it, Vizio revised its on-screen disclosures regarding its viewing-data collection and sharing practices, in a stand-alone, on-screen disclosure, and asked for permission to collect and share viewing data. Under this settlement, Vizio will make additional changes to its on-screen disclosure for new customers and will add a disclosure to a "quick start" guide that accompanies new Smart TVs.

*Third*, Vizio will delete all viewing data collected during the class period which it possesses. An independent auditor will confirm that this deletion is successful.

Plaintiffs and class counsel are proud to present this settlement agreement to the Court because it is restorative. The revenue that Vizio obtained from the collection and licensing of viewing data during the class period will be fully disgorged; and in turn settlement class members will receive compensation comfortably within the range of reasonableness for their claims. Just as important, Vizio's collection of viewing data by default ended as of February 2017. Vizio's disclosures were revamped—and will be further revised as a result of this settlement. And Vizio will destroy the remaining contested viewing data in its possession.

Given the settlement's many strengths and the real risk of achieving far less after

trial, the Court should grant this unopposed motion to begin the settlement approval process.

## II.    Summary of Argument

All of the factors this Court must consider in determining whether to grant a motion for preliminary approval are met here.

*First*, it is appropriate to conditionally certify a nationwide settlement class of all individuals who purchased affected Smart TVs that were subsequently connected to the Internet during the class period. Millions of consumers purchased the affected TVs and connected them to the Internet (numerosity); questions common to all settlement class members, including whether Vizio disclosed information that would readily permit an ordinary person to identify a specific individual's video-watching behavior, are answerable through common proof (commonality); the harm that Plaintiffs have suffered is identical to the harm suffered by all settlement class members (typicality); and Plaintiffs and class counsel will continue to vigorously prosecute this litigation on behalf of the settlement class, as they have to date (adequacy).[1]

In addition, common questions predominate over any individual ones because Vizio engaged in a uniform course of conduct applicable to all settlement class members. This includes the core allegation that Vizio collected and shared viewing data during the class period without consumers' knowledge or consent. The proposed settlement class is thus sufficiently cohesive to warrant adjudication by representation. And here, because conditional certification of a single nationwide class would be based on alleged violations of federal law, there can be no argument that differences in state law defeat predominance.

Further, class adjudication is superior to other available methods of adjudication, such as individual litigation, for two reasons. The high cost of litigating this case involving complex technology overwhelms Vizio's potential liability per consumer. And the only economically rational way for litigants and the courts to resolve millions of such claims is

---

[1] Vizio does not oppose class certification solely for the purposes of settlement only.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

through the class device.

*Second*, the proposed settlement is fair, reasonable, and adequate, and will likely be granted final approval. It is the product of serious, informed, non-collusive negotiations, before a former federal judge, after considerable litigation and discovery. It does not improperly grant preferential treatment to class representatives or segments of the class. It falls within the range of possible approval. And it has no obvious deficiencies. To assure the Court that preliminary approval is appropriate and final approval likely, Plaintiffs discuss herein the class definition, benefits, claims process, distribution plan (including for unclaimed funds), the scope of the release, the range of litigated outcomes, the extent of discovery, the views of Plaintiffs and counsel, the manner in which attorneys' fees will be addressed, and demonstrate there are no signs, explicit or subtle, of collusion between the parties. Plaintiffs will also seek the Court's approval of a settlement administrator.

*Third*, the proposed content and method of the class notice plan is sufficient. The notice program is tailored to this case and designed to maximize the number of claims from approximately 16 million class members. Affected Smart TVs that remain connected to the Internet will display a clear, concise, and plain notice to an estimated 6 million class members. That same notice will be e-mailed to an estimated 9 million class members. A custom digital and print media campaign accounting for class demographics further pushes the reach of this notice program well past the constitutional line. A long-form notice will also be available, in English and Spanish, at www.VizioTVsettlement.com, and it will answer typical questions and provide important information. Not only is this digital notice program the best practicable under the circumstances, it avoids the sizeable expense that attends first-class mail notice.

## III.   Overview of the Litigation

### A.   The alleged circumstances that prompted these lawsuits.[2]

Based in Irvine, California, Vizio has designed and sold televisions in the United

---

[2] Vizio's current disclosures concerning viewing data collection and licensing, which were implemented in early 2017, are described in more detail in Section IV.C.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

States since 2002. This includes Internet-connected televisions, or "Smart" TVs, a key feature of which is the TV's ability to access online media content, including movies and music.

Beginning in February 2014, Vizio remotely installed automated (or automatic) content recognition software on Smart TVs that had already been sold and that did not have such software when sold. In about August 2014, Vizio began selling Smart TVs with this software pre-installed.

This technology monitors the video stream of all physical inputs and certain streamed content, by capturing real-time or near real-time data to construct a historical record of the content displayed on-screen with one-second granularity. A mathematical representation of a subsample of the viewing data, along with a unique identification number assigned to the TV, are sent to a server that operates as a match database.

More simply: Say you own a Smart TV with this software and it is connected to the Internet. You are watching a cable news program. As the program plays, the software captures certain pixels that appear on your screen and sends the mathematical representation and a unique number assigned to your TV to a computer server in the cloud. If the server has in its library this particular program,[3] then what you're watching on your Smart TV is identified; but if not, not. If there is no match, the viewing information is discarded. But if there is a match, a summary of the viewing information is stored.

In addition to capturing information about what is displayed, the software collects the TV's Internet-protocol address and WiFi signal strength, among other information. This information facilitates the delivery of advertisements to other electronic devices connected to the same network, such as a mobile device.

Why is "viewing data"—information about the content viewed on a TV and reports or data derived therefrom or combined with such data—collected? According to public

---

[3] The server ingests certain types of content and certain services but not pornographic material.

statements by Vizio, "the collection of viewing data can be used to generate intelligent insights for advertisers and media content providers and to drive their delivery of more relevant, personalized content to Smart TVs." Vizio, *Form S-1 Registration Statement* (July 24, 2015), at *2.[4] At one point, Vizio stated that its tracking software captures up to 100 billion data points each day from more than 10 million televisions, and "provides highly specific viewing behavior data on a massive scale with great accuracy, …" *Id.*

Vizio earns revenue by licensing this data to third parties. Decl. of Wilda Siu (identifying specific amount). Between February 1, 2014 and February 6, 2017, Vizio earned revenue that is less than the settlement amount.

During this time, the data was licensed to third parties under contracts that purport to bar them from associating viewing data with individuals or households by name or physical addresses. (Vizio does not itself associate viewing data with individuals or households by name or physical address, or share information such as name or physical address with third parties.) The contracts, however, allow third parties to associate viewing data with demographic information such as sex, age, income, marital status, and education.

Between February 2014 and February 2017, third parties licensed viewing data for three purposes: to determine in the aggregate what consumers watch and how they watch it; to analyze the effectiveness of advertising; and, starting in 2016 (after a notification was displayed on-screen referencing explicitly the delivery of target advertisements based on the collection of viewing data), to enable ad retargeting.

Consumers who purchased Smart TVs that received this tracking software through a software update were presented with a message on the TV that said:

> The VIZIO Privacy Policy has changed. Smart Interactivity has been enabled on your TV, but you may disable it in the settings menu. See www.vizio.com/privacy for more details. This message will time out in 1 minute.

---

[4] *Available at* https://www.sec.gov/Archives/edgar/data/1648158/000119312515262817/d946612ds1.htm.

Consumers who purchased Smart TVs with this software pre-installed also received this notice.

"Smart Interactivity" referred to the collection of viewing data. The software was on by default and operated continuously unless it was turned off by the consumer.

The settings menu of these TVs included the setting "Smart Interactivity" and the description, "Enables program offers and suggestions." Although Vizio maintains that it intended to and worked to develop certain program offers and suggestions during the class period, no program offers or suggestions were enabled for more than two years.

To turn "Smart Interactivity" off, a consumer would have had to find this setting in the menu, click on it, and then click again to disable it.

Between approximately Fall 2015 and Summer 2016, consumers whose Smart TVs had ACR software installed received a new notice stating:

> Select Reset & Admin in System to disable the collection and analysis of viewing history from this television ("Smart Interactivity"). NEW: Smart Interactivity may enable the delivery of tailored ads based upon viewing history to smartphones or other devices that share an IP address or other non-personal identifiers with the television.

## B.    An abbreviated history of these legal proceedings.

In November 2015, investigative journalists at ProPublica reported that Vizio Smart TVs collect and share customers' viewing habits with advertisers. Class action complaints were filed apace and later centralized for pre-trial proceedings in this Court.

Upon centralization here, the Court appointed interim co-lead counsel and a steering committee for Plaintiffs, as well as lead counsel for Defendants; denied a request by Vizio to stay discovery until the pleadings were set; and issued a case management schedule.

In August 2016, Plaintiffs filed a consolidated class action complaint against several Vizio entities on behalf of a nationwide class of individuals who purchased affected Smart TVs, and on behalf of subclasses of individuals from California, Florida, Massachusetts, New York, and Florida. The complaint asserted a variety of federal and state privacy

claims, and state consumer protection claims. The common thread linking all of these claims was the allegation that "Vizio offered Smart TVs equipped with automatic content recognition software that collected consumers' viewing histories and then sold that information—along with 'highly specific' information about consumers' digital identities—to third parties, without consumers' knowledge or consent." Order Denying Mot. for Interlocutory Appeal at 2.

Vizio responded to the complaint by moving to dismiss. After the Court received outsized briefing and held oral argument, it granted and denied the motion in part, allowing Plaintiffs the opportunity to replead any dismissed claim.

In March 2017, Plaintiffs filed a second consolidated complaint. Vizio again moved to dismiss. It argued that Plaintiffs' claims for injunctive relief were moot because Vizio had entered into a consent decree with the Federal Trade Commission in February 2017 that required Vizio to change its business practices relating to the collection of viewing data. Vizio also contested certain legal claims as insufficiently pleaded, and it asked the Court to strike the class definition in the second consolidated complaint because it included consumers who might be bound by arbitration agreements that forbid class proceedings in any forum.

After briefing and oral argument, the Court denied Vizio's motion in full. Vizio then filed an answer to the second consolidated complaint in August 2017. A few months later, the Court refused Vizio's separate request to certify an immediate appeal on questions of law pertaining to Vizio's liability under the federal Video Privacy Protection Act.

As things stand, Dieisha Hodges and Rory Zufolo of California; John Walsh of Massachusetts; Chris Rizzitello of New York; Linda Thomson of Washington; and Mark Queenan of Florida are named Plaintiffs for the nationwide class and their respective state sub-classes.

The Defendants named in the operative pleadings are Vizio, Inc., Vizio Holdings, Inc., Vizio Inscape Technologies, LLC; and Vizio Inscape Services, LLC. Their roles are

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

as follows. Vizio, Inc. is the primary Vizio entity for consumer electronics, such as Smart TVs. Vizio Holdings, Inc. was established as a holding company pending a public offering that was initiated with the filing of an S1 in July 2015 but did not advance.

Inscape Data, Inc. (formerly Vizio Inscape Technologies, LLC) (hereinafter "Inscape") develops the software on Vizio units that can recognize onscreen content, and selectively maintains a record of viewing history associated with the television. Inscape also owns the underlying automated content recognition technology, which recognizes onscreen content.[5] And Vizio Services, LLC (formerly Vizio Inscape Services, LLC) is the entity that enters into contracts with customers for Inscape viewing data.[6]

As for the parties' respective legal theories, Plaintiffs have proceeded to discovery under the Video Privacy Protection Act, Wiretap Act, California Invasion of Privacy Act, California Consumer Legal Remedies Act, California Unfair Competition Law, Florida Deceptive and Unfair Trade Practices Act, N.Y. Gen. Bus. Law § 349, Massachusetts Unfair and Deceptive Trade Practices Statute, Massachusetts Privacy Act, Washington Consumer Protection Act, unjust enrichment, intrusion upon seclusion, and fraudulent omission claims.

Vizio has denied Plaintiffs' allegations and has raised thirty-seven affirmative defenses. Vizio takes the position that it properly disclosed the collection of viewing data to consumers; that consumers consented to or had knowledge of Vizio's collection and sharing of viewing data; that the data collected by Vizio does not constitute personally identifiable information; that consumers must arbitrate their claims and cannot maintain class actions; and consumers' damages are speculative or must be judicially limited by law which proscribes damages awards that exceed actual harm.

---

[5] Inscape is the original Cognitive Media Networks Inc. entity. It was converted to an LLC when acquired by Vizio, Inc., and all Vizio-owned viewing data was transferred to this entity.

[6] The second consolidated complaint named Vizio Inscape Technologies, LLC and Vizio Inscape Services, LLC. The Defendants' answer to this complaint recognizes that the former is now Vizio Services, LLC, and the latter is now Inscape Data, Inc. We thus refer to these Vizio entities by their current corporate names in settlement documents and this motion.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

## IV.   Terms of Proposed Settlement[7]

### A.   Proposed Settlement Class

If approved, the settlement would offer relief to the following proposed class:

> All individuals in the United States who purchased a VIZIO Smart Television for personal or household use, and not for resale, that was subsequently connected to the Internet at any time between February 1, 2014 and February 6, 2017.

Joint Decl. in Support of Motion for Preliminary Approval, Ex. 1 (hereinafter, "Settlement") ¶ I.32.

The time frame proposed corresponds with when Vizio first implemented automatic content recognition technology (February 1, 2014), and when Vizio stopped collecting viewing data through this software from Vizio Smart TVs unless the consumer affirmatively consented (February 6, 2017). Settlement ¶¶ Recitals B.10-14. Note that "viewing data" is defined in the settlement agreement to correspond with the definition of viewing data in the consent decree with the Federal Trade Commission.

All Vizio Smart TVs, including the SmartCast product line, were pre-installed with this software, or the software was installed remotely through an over-the-air update. The number of TVs with this software which connected to Vizio's servers during the class period is approximately 16 million. Assuming one purchaser per TV per household, the proposed class covers approximately 16 million individuals

The proposed settlement class definition parallels the nationwide class definition pleaded in the operative Second Consolidated Complaint (which is identical to the definition pleaded in the Consolidated Complaint). The definition proposed in these pleadings was:

> All individuals in the United States who purchased a VIZIO Smart TV with Smart Interactivity capability for personal or household use, and not for resale, during the applicable statute of limitations period.

Second Consol. Compl., Doc. 136 at ¶ 102.

---

[7] For readability, defined terms are not capitalized in the motion or memorandum, unless in quoted material or in the conclusion. The proposed order, by contrast, capitalizes defined terms as they appear in the settlement agreement.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

The parties have made two changes to the proposed nationwide settlement class definition, neither of which affects the scope of the class. First, the proposed class definition now includes a specific date range. Second, the proposed class definition no longer refers to "Smart Interactivity capability," the Vizio's name for the automated content recognition software. Because Vizio's entire Smart TV line had this software during the class period, it is unnecessary to mention the software by name for purposes of class identification. The time period specified is sufficient to identify who is in, and who is outside of, the proposed class. The deletion of this language also improves clarity.

**B.    Settlement Fund**

The proposed settlement contemplates a settlement fund in the amount of $17,000,000. After payment of attorneys' fees and expenses to Class Counsel, payment of the settlement administration costs, and payment of service awards, the remaining balance will be distributed proportionally to all settlement class members who submit valid claims.

The settlement fund is non-reversionary, meaning, Vizio will not be entitled to retain any part of the settlement amount that is not paid out or distributed as part of the administration of the settlement for any reason. Any part of the settlement amount that cannot feasibly be distributed to the class will be subject to a cy pres distribution to be proposed by Plaintiffs and approved by the Court.

Plaintiffs will ask the Court to award each named plaintiff up to $5,000 from the settlement fund in recognition of the time, effort, and expense they incurred pursuing claims against Vizio, which ultimately benefited the entire class. Vizio will not oppose this request. The settlement agreement preserves the Court's supervisory authority to determine the appropriateness of any service award.

Counsel will petition the Court for an award of attorneys' fees and reimbursement of costs or expenses from the settlement fund. Vizio will not oppose a request that does not exceed 33 percent of the settlement fund. The settlement agreement also preserves the Court's supervisory authority to determine the appropriateness of any such award or reimbursement.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

## C.    Injunctive Relief

The proposed settlement provides several different forms of injunctive relief in the form of business practice changes that correspond with changes which took place during the class period pursuant to a consent decree between Vizio and the Federal Trade Commission. *See* Settlement, §§ VI, XII.

Under this consent order, Vizio agreed to display a prominent and detailed notification on the TV screen, separate and apart from any privacy policy, terms of use page, or other similar document. As part of this notification, Vizio gave consumers the option to accept viewing data collection. If a consumer opted not to accept viewing data collection, then no viewing data would be collected from the Smart TV.

Professor Joseph Turow, a leading privacy expert, was asked to review the disclosures Vizio has used since February 2017 and the disclosures proposed here, as well as contemporaneous on-screen disclosures of other smart television manufacturers whose TV sets have software that collect viewing data. He concluded that only the revised Vizio on-screen disclosures implemented with the FTC agreement:

> prominently and collectively disclose to the customer—separate from any privacy policy, terms of use page, or other similar document— four categories of information: the types of viewing data that are collected and used; the types of viewing data that will be shared with third parties; specific categories of such third parties; and purposes for sharing such information.

Turow Decl. ¶ 32.[8] Professor Turow also concluded that these revised disclosures "are reasonably informative," and "[a]s compared to the previous disclosures, this presentation gives readers a useful overview of what the viewing data collection yields Vizio and possibly them." *Id.* ¶ 28.

Vizio's imposition of prominent and clear disclosures in February 2017, and its shift to an affirmative consent model, is a significant change which resolves a central concern that motivated this lawsuit and the Federal Trade Commission's investigation.

---

[8] The disclosures negotiated by the parties also address these categories of information. *See id.*

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

Vizio acknowledges that "Plaintiffs' filing of this Action was a substantial cause of VIZIO's implementation of the Disclosures." Settlement ¶ A.12.

The parties have negotiated further changes to the on-screen disclosure for new customers and have secured an agreement that Vizio will disclose viewing data collection in a "quick-start" guide. Turow Decl. ¶¶ 5, 7, 31-33. The disclosures will be displayed in substantially the same form for the next five years. *Id.* ¶ 5.

The changes to the on-screen disclosure are two-fold. First, a "Decline" button will now appear next to an "Accept" button. *Id.* ¶ 31. The "Decline" button replaces the Settings button and different process for declining data collection, which Professor Turow describes in his declaration. *Id.*

Second, the disclosure now explicitly states that "Declining Viewing Data collection will not change the functionality of your device." *Id.* Disabling viewing data collection on Smart TVs of other manufacturers can change the functionality of the TV, including key features. The language to be added effectively informs consumers of Vizio Smart TVs "that there have not been adverse consequences in terms of functionality if viewing data collection is declined." *Id.*

In addition to the on-screen disclosure, Vizio will include additional language in the device's quick start guide . . . [that] alerts the customer to the right and ability to make a decision during installation about allowing Vizio's viewing data sharing[,] . . . [and] increases the chances that customers will pause and think about what choice is best for them." *Id.*

Professor Turow concludes, based on his evaluation of these disclosures and the disclosures of other manufacturers, "that the result is far superior to the disclosures (or non-disclosures) that prompted this litigation and will be among the best in the industry." *Id.* ¶ 34.. He further writes:

> This court proceeding is to be commended for setting a precedent of significance. Its resolution signals to the industry the importance of obtaining affirmative consent from a consumer before viewing data is collected, and it provides a template for a prominent and clear disclosure that

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

allows a consumer to make an informed decision. Equally significant, this precedent is being set at a time when the Smart TV viewing-data collection industry is emerging.

*Id.* ¶ 8.

The final business practice change we will mention here is Vizio's agreement to delete the remaining contested viewing data in its possession. Under the governmental consent decree, Vizio was obligated to destroy viewing data that was collected prior to March 1, 2016, unless a user of the television subsequently affirmatively consented to viewing data collection when presented with the revised notices.

Under the settlement agreement, Vizio will extend the deletion period to correspond with the class period and will destroy all viewing data collected during the class period without exception. A third party will verify that the viewing data has been successfully destroyed and will report to class counsel. If class counsel does not receive such verification within the time specified by agreement, it is obligated to inform this Court, which retains continuing jurisdiction to address any issues with the enforcement of the settlement agreement.

These changes will take place after the effective date of finality.

### D.    Release

In exchange for the benefits provided under the settlement, the Plaintiffs and settlement class members will release any legal claims that may arise from or relate to the facts alleged or that could have been alleged in this action. This release is appropriately tailored to the claims litigated to date in this multi-district litigation in that it extends only to the "Vizio Released Parties" and does not include any other individual or entity.

### E.    Notice

The settlement proposes notice by electronic means.

First, notice will be provided directly to Vizio Smart TVs three separate times, unless a person viewing the notice selects to dismiss the notice, in which case it will only appear one more time (for a total of two times). The notice will time out after 45 seconds. It tells class members that this is a class action; it references the class definition

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

("Purchased a VIZIO Smart TV Connected to the Internet Between February 1, 2014 and February 6, 2017? You Could Get Money From a $17 Million Class Action Settlement"). And it informs the reader that the class alleges privacy and consumer protection claims; that a class member may appear through an attorney if the member wants; that class members can be excluded; the time and manner for requesting exclusion; and the binding effect of a class judgment. It includes the date by which to file a claim and provides the address for a settlement website, which hosts the Long Form notice and important pleadings and other filings. This notice is estimated to reach 6 million Smart TVs.

Second, a substantially similar notice will also be sent to approximately 9 million potential class members via e-mail. The settlement administrator will use best practices to increase deliverability and verify the number of e-mails successfully delivered

The sample notices do not yet include estimated compensation but an appropriate estimated range for the notices would be $13 to $31, which assumes a 2 percent to 5 percent claims rate.

Third, a digital media campaign will supplement the TV and e-mail notices. As explained further in the Declaration of Eric Schacter of A.B. Data, this campaign will execute digital banners ads through the Google Display Network, Facebook (which includes a settlement-specific Facebook page) and Google AdWords/Search platforms. A minimum of 62 million impressions will be delivered. The campaign will also include a notice through a press release over PR Newswire's US1 and Hispanic Newslines. After the press release is disseminated, both A.B. Data and PR Newswire will post the press release on their respective Twitter pages. A copy of a digital banner ad is attached to the Declaration of Eric Schacter of A.B. Data.

Lastly, the settlement administrator will set up a case-specific webpage for a long form notice in English and Spanish, to host pleadings, to provide case updates, contact information for the settlement administrator, as well as other information. The English version of the long form notice is attached to the settlement agreement as an exhibit.

The notice and notice plan is further described below in Section V.C-D, the

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

Declaration of Eric Schachter of A.B. Data, and the settlement agreement.

**F.     Administration**

The settlement agreement provides that payment will issue upon finality to class members who submit valid a valid claim form. The claim form is attached to the Declaration of Eric Schacter of A.B. Data, which describes the plan of allocation.

The settlement agreement also provides that the Settlement Administrator shall disseminate the notice and implement the notice. And it provides procedures for exclusion from the settlement class or to comment on or opt out of the settlement class.

Deadlines for these events and also the final approval hearing are proposed as follows, under the assumption that an order granting preliminary approval issues on or soon after December 7, 2018:

| Event | Date |
|---|---|
| Notice of Class Action Settlement completed per Notice Plan | February 26, 2019 |
| Deadline for Class Counsel to File Motion for Final Approval | March 19, 2019 |
| Deadline for Class Counsel to File Motion for Attorney's Fees and Costs | March 19, 2019 |
| Opt-Out and Objection Deadline | April 12, 2019 |
| Reply in Support of Motions for Final Approval and Attorney's Fees and Costs | May 3, 2019 |
| Final Approval Hearing | May 31, 2019 |

**IV.   Argument**

The procedure for judicial approval of a proposed class action settlement under Rule 23(e) typically involves three main steps:

(1)     Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary

15

approval.

    (2)    Dissemination of notice of the proposed settlement to the class members.

    (3)    A hearing at which evidence and argument concerning the fairness, adequacy, and reasonableness of the proposed settlement may be presented.

*See* Federal Judicial Center, Manual for Complex Litigation, Fourth § 21.63 (2004).

Plaintiffs respectfully request that the Court begin this process by provisionally certifying the proposed settlement class, granting preliminary approval of the proposed settlement, and directing that notice be provided.

At the outset, we note that pending before Congress are amendments to Federal Rule of Civil Procedure 23 that have been adopted by the Supreme Court of the United States pursuant to 28 U.S.C. 2072. "Among other things, the amendments require lawyers to provide additional information up front for the court to preliminarily approve settlements ('frontloading'), permit notice by electronic means, impose limitations on compensating objectors, and clarify final-settlement criteria." Bolch Judicial Institute, *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, Duke Law School (August 2018), at *ii.[9]

The amendments will take effect on December 1, 2018, absent action by Congress, and will "govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." April 26, 2018 Order of Supreme Court.[10] Because Congress rarely takes such action, we apply here the soon-to-be-amended Rule 23 because this proceeding (and possibly this motion) will be pending when the new rule takes effect in December, and because it is not impracticable or unjust to apply the new rule to this case.

## A.    Certification of the Proposed Settlement Class Is Appropriate.

The Court should conditionally certify the settlement class for settlement purposes

---

[9] *Available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/Class-Actions-Best-Practices-Final-Version.pdf.

[10] www.supremecourt.gov/orders/courtorders/frcv18_5924.pdf (page 3 of 18). A copy of the amendments to this rule is available at this link.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

1  under Rule 23(a) and 23(b)(3) based on violations of the federal Video Privacy Protection
2  Act, 18 U.S.C. § 2710, and Wiretap Act, *see* 18 U.S.C. § 2520(a).

3       "When conditionally certifying a class for settlement purposes, the Court 'must pay
4  undiluted, even heightened, attention to class certification requirements.'" *Munday v. Navy*
5  *Fed. Credit Union*, No. SACV151629-JLS-KESx, 2016 WL 7655807, at *2 (C.D. Cal. Sept.
6  15, 2016) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 952-53 (9th Cir. 2003) (internal
7  quotation marks omitted). "A party seeking class certification must satisfy the
8  requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one
9  of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th
10 Cir. 2013). Rule 23 does not set forth a mere pleading standard," but rather requires the
11 movant to be "prepared to prove that there are in fact sufficiently numerous parties,
12 common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350
13 (2011) (emphasis removed). The Court, in turn, must engage in a "rigorous analysis" of
14 Rule 23 criteria, which frequently overlaps with the merits. *Id.* That said, the Court can
15 "consider merits questions at the class certification stage only to the extent they are
16 relevant to whether Rule 23 requirements have been met." *Torres v. Mercer Canyons Inc.*, 835
17 F.3d 1125, 1133 (9th Cir. 2016).

18       "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the
19 class whose claims they wish to litigate." *Dukes*, 564 U.S. at 349. It sets forth four
20 requirements a party seeking class certification must satisfy: numerosity, commonality,
21 typicality, and adequacy. Fed. R. Civ. P. 23(a).

22       "A proposed class must also satisfy the requirements for at least one of the three
23 types of class actions enumerated in Rule 23(b)." *Munday*, 2016 WL 7655807, at *3. Here,
24 Plaintiffs seek certification under Rule 23(b)(3), which authorizes a class proceeding if
25 "the court finds that the questions of law or fact common to class members predominate
26 over any questions affecting only individual members, and that a class action is superior to
27 other available methods for fairly and efficiently adjudicating the controversy." Fed. R.
28 Civ. P. 23(b)(3).

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

1.    **Rule 23(a) Is Satisfied.**

   a.    **The Class Members Are Too Numerous to Be Joined.**

The proposed class is so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). Vizio collected viewing data from Smart TVs that were connected to the Internet between February 1, 2014 and February 6, 2017. All such TVs had automated content recognition software installed, including the SmartCast product line.[11] Vizio estimates that 16 million TVs connected to its servers during the settlement class period. Because the class is defined as one purchaser per household per television, numerosity is plainly met.

   b.    **The Action Involves Common Questions of Law or Fact.**

Under Rule 23(a)(2)'s requirement that there be "questions of law or fact common to the class," the claims "must depend upon a common contention" such that "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal citation omitted, emphasis removed).

Here, commonality is satisfied because the "circumstances of each particular class member . . . retain a common core of factual or legal issues with the rest of the class." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (citations and quotations omitted). Plaintiffs' claims center on whether Vizio collected and shared what Plaintiffs consider to be personally identifiable viewing data without consumers' knowledge or consent. Because the core issues of Vizio's nondisclosure and the collection and sharing of viewing data is common to the claims, Plaintiffs have met their "minimal" burden of demonstrating commonality. *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (C.D. Cal. 2013).

---

[11] Viewing data was not collected from a small percentage of SmartCast TVs during the class period; however, it would be administratively difficult to exclude purchasers of such TVs during the class period.

**c.       Plaintiffs' Claims Are Typical of Those of the Class.**

"[R]epresentative claims are 'typical' [under Rule 23(a)(3)] if they are reasonably coextensive with those of absent class members." *Torres*, 835 F.3d at 1141. "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct.'" *Id.* (citation omitted).

Here, the claims of Plaintiffs and all class members arise out of the same course of conduct—the alleged collection and sharing of personally identifiable viewing data without consumers' knowledge or consent—and assert the same theories of liability. As a result, the typicality requirement is satisfied.

**d.       Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of Class Members.**

The test for evaluating adequacy of representation under Rule 23(a)(4) is: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

In this instance, there is no conflict between Plaintiffs and the settlement class members. Plaintiffs were allegedly harmed in the same way as all class members when their personally identifiable viewing data was collected without their consent or knowledge. In light of this common injury, the named Plaintiffs have every incentive to vigorously pursue the class claims. And in fact, each has done so: Plaintiffs have made important contributions to the case, including by preparing and sitting for depositions. Each Plaintiff has agreed to undertake the responsibilities of serving as a class representative, and each has sworn that he or she will continue to act in the class members' best interests.

Class counsel likewise are qualified to continue representing the class. The Court appointed us as interim co-lead class counsel because of our experience in data privacy and consumer class actions. Since then, this Court and Magistrate Judge Scott have had an

opportunity to review class counsel's written work and oral presentations, including the work of Andre Mura and Adam Zapala. The results obtained in the course of litigation and settlement negotiations confirm counsel's adequacy.

### 2.    Rule 23(b)(3) Is Satisfied.

#### a.    Common Questions of Fact and Law Predominate.

Predominance analysis under Rule 23(b)(3) "focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive . . . ." *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 894-95 (N.D. Cal. 2015) (quoting *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 964 (9th Cir. 2013)). "When a proposed class challenges a uniform policy, the validity of that policy tends to be the predominant issue in the litigation." *Nicholson v. UTI Worldwide, Inc.*, No. 3:09-cv-722-JPG-DGW, 2011 WL 1775726, at *7 (S.D. Ill. May 10, 2011) (citation omitted). Further, when a settlement class is proposed, the manageability criteria of Rule 23(b)(3) do not apply. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

This case involves an alleged uniform policy of Vizio to equip its Smart TVs with software that collects viewing data to license to third parties, in order to create an additional revenue stream for Vizio. The common thread running through Plaintiffs' federal privacy claims—the Video Privacy Protection Act, and the Wiretap Act—is that Vizio allegedly collected (or intercepted) personally identifiable viewing data, without consumers' consent or knowledge, as this viewing data was communicated on the TV screen.[12] Plaintiffs allege Vizio then licensed this sensitive viewing data to third parties— along with information about their digital identities—thus allegedly enabling these third parties to connect viewing data with individuals on a personal, or household, level.

Because the technology at issue operated uniformly across Vizio's TVs, legal and

---

[12] This is likewise a core allegation for Plaintiffs' state-law privacy claims. These state laws are closely related to federal privacy law. *See In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1215 (C.D. Cal. 2017) ("Plaintiffs' federal claims under the Wiretap Act bear a 'close relationship' to the tort of invasion of privacy."). Also, this allegation addresses issues important to the consumer protection claims, which ask whether Vizio adequately informed consumers of this data collection and licensing.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

factual issues respecting collection and disclosure may be resolved for all in a single adjudication. Issues of consent or knowledge may also be answered for all on a class-wide basis, because arguably there is no evidence of any adequate disclosure of the collection of viewing data during the class period. Consequently, central issues common to the class predominate over any individual considerations that might arise.

Finally, because conditional certification of a single nationwide class is based on violations of federal law, there can be no argument that differences in state law defeat predominance.[13] *See Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 544 (C.D. Cal. 2013); *see also In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) (class representatives can meet the predominance requirement by limiting their legal theories to aspects of law that are uniform).

### b.    A Class Action Is the Superior Method for Resolving These Claims.

A class action is superior under Rule 23(b)(3) because it represents the only realistic means through which purchasers of affected Smart TVs may obtain relief. *See, e.g., Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (explaining that a class action may be superior where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency"). Even assuming class members could recover statutory damages, they nonetheless would lack an incentive to bring their own cases given the high expert costs involved in litigating a case such as this concerning complex technology. *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057, at

---

[13] Such an argument would fail on its own terms. "Variations in state law do not necessarily preclude a 23(b)(3) action," and would not do so here if conditional certification of consumer claims were sought, because of "the commonality of substantive law applicable to all class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998); *id.* at 1022-23 (concluding "the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims"); *In re Hyundai And Kia Fuel Econ. Litig.*, 897 F.3d 1003, 1007 (9th Cir. 2018) (granting en banc review of this issue). In any event, here the issue is academic, because conditional certification of a nationwide class is based on federal law, which fully suffices for purposes of preliminary and final approval of this settlement.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

1   *8 (N.D. Cal. Apr. 15, 2016) ("Cases, such as this, 'where litigation costs dwarf potential

2   recovery' are paradigmatic examples of those well-suited for classwide prosecution.")

3   (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998)).

### 3.    Appointment of Class Counsel Is Merited.

5   Under Rule 23(g), "a court that certifies a class must appoint class counsel." Fed. R.

6   Civ. P. 23(g). As discussed above in addressing the adequacy requirement of Rule 23(a),

7   Eric Gibbs and Andre Mura of Gibbs Law Group LLP, and Joseph Cotchett and Adam

8   Zapala of Cotchett, Pitre, McCarthy LLP, each possesses the necessary skill and expertise

9   to ably represent the class, as each has to date. The Court should thus appoint these four

10  lawyers as class counsel.

11                                    * * *

12  For all these reasons, the proposed settlement class merits provisional certification.

### B.    Preliminary Approval of the Settlement Is Warranted.

14  "To preliminarily approve a proposed class action settlement, Rule 23(e)(2) requires

15  the Court to determine whether the proposed settlement is fair, reasonable, and

16  adequate." *Oda v. DeMarini Sports, Inc.*, No. 8:15-cv-2131-JLS-JCGx, slip op. at 13 (C.D.

17  Cal. June 6, 2018) (Doc. 157) (citing Fed. R. Civ. P. 23(e)(2)). If preliminary approval is

18  granted, the Court will examine many of the same procedural and substantive factors at

19  the approval stage that it is now considering at this notice stage. *Id.*

20  "A proposed settlement that is 'fair, adequate and free from collusion' will pass

21  judicial muster."*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,

22  895 F.3d 597, 610 (9th Cir. 2018). "To determine whether a settlement agreement meets

23  these standards, a district court must consider a number of factors, including: the strength

24  of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation;

25  the risk of maintaining class action status throughout the trial; the amount offered in

26  settlement; the extent of discovery completed, and the stage of the proceedings; the

27  experience and views of counsel; the presence of a governmental participant; and the

28  reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

(internal citation and quotation marks omitted).

In addition, "[w]hen, as here, the settlement was negotiated before the district court certified the class, 'there is an even greater potential for a breach of fiduciary duty' by class counsel, so we require the district court to undertake an additional search for 'more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *In re Volkswagen*, 895 F.3d at 610–11. "Such signs include (1) when counsel receive a disproportionate distribution of the settlement, (2) when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from class funds, and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Oda*, No. 8:15-cv-2131-JLS-JCGx, slip op. at 14 (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011)).

The 2018 amendments to Rule 23(e) similarly require counsel to provide additional information up front at the preliminary approval stage, so that the court can determine whether it "will likely be able to [finally] approve" it. Duke Law School, *Implementing 2018 Amendments to Rule 23*, *supra*, at *2. This information must address the adequacy of class representatives and class counsel; whether the settlement proposal was negotiated at arm's length; the relief provided to the class, in view of a variety of factors, including the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3); and lastly whether the proposal treats class members equitably relative to each other.

Ultimately, however, the factors are "guideposts. 'The relative degree of importance to be attached to any particular factor will depend upon . . . the unique facts and circumstances presented by each individual case.'" *In re Volkswagen*, 895 F.3d at 611 (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "Deciding whether a settlement is fair is ultimately an amalgam of delicate

balancing, gross approximations and rough justice," that is "best left" to the sound discretion of the trial judge. *Id.* (internal citation and quotation marks omitted).

Furthermore, "[a]t this preliminary stage and because Class Members will receive an opportunity to be heard on the Settlement Agreement, a full fairness analysis is unnecessary." *Oda*, No. 8:15-cv-2131-JLS-JCGx, slip op. at 14 (citation and quotation marks omitted). The 2018 amendments to Rule 23 do not change this law. Despite requiring courts to ask whether a proposed settlement is likely to win final approval, the preliminary approval standard remains "more lenient than the eventual standard required to grant final approval." Duke Law School, *Implementing 2018 Amendments to Rule 23, supra,* at *2.

As such, "preliminary approval and notice of the settlement terms to the proposed Class are appropriate where '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of *possible* approval . . . .'" *Oda*, No. 8:15-cv-2131-JLS-JCGx, slip op. at 15 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (emphasis supplied by *Oda*); *see also Acosta v. Trans Union*, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original).

After evaluating the "lengthy but non-exhaustive list of [overlapping fairness] factors," *In re Volkswagen*, 895 F.3d at 610, the Court should preliminarily approve the settlement agreement because it is fair, reasonable, and adequate, and will likely be granted final approval.

### 1. Strength of Plaintiffs' Case

As mentioned, the principal claims at issue here involve Vizio's alleged collection and licensing of viewing data without consumers' knowledge or consent. The collection of

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

the content of this communication in real time (Wiretap Act) for purposes of licensing to third parties (VPPA) without consumers' knowledge or consent (Wiretap, VPPA) are core issues that unite Plaintiffs' federal privacy claims, and are similarly critical to the resolution of Plaintiffs' state-law privacy claims (the scope of the intrusion and the sensitivity of the information obtained) and consumer-protection claims (whether these practices were adequately disclosed in marketing materials or privacy policies). If these legal theories were proven at summary judgment or trial, Plaintiffs could theoretically be entitled to liquidated or statutory damages under the VPPA or Wiretap Act, for $2,500 and $10,000, respectively.[14]

Plaintiffs allege that the viewing data is sensitive and personally identifies them. Vizio disputes the sensitive and personal nature of the data collected and shared. The recent decision in *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017), throws a wrench in the gears of Plaintiffs' case. There, the Ninth Circuit held that "personally identifiable information" under the VPPA includes only information that readily permits an ordinary person to identify a particular individual as having watched certain videos. *Id.* at 985. This is a less forgiving legal standard than that applied by the First Circuit in *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016), and adopted by this Court: "whether a video tape service provider can escape liability for disclosures that would reasonably and foreseeably result in identifying a specific person as watching a particular program merely because an 'ordinary person' would not be able, on her own, to identify the consumer." Order Denying Mot. for Interlocutory Appeal, Doc 224 at 12

---

[14] For almost the entire class period, the California wiretap act authorized a single $5,000 award of statutory damages per individual, rather than an award per violation. *See Ramos v. Capital One, N.A.*, No. 17-CV-00435-BLF, 2017 WL 3232488, at *5-7 (N.D. Cal. July 27, 2017), *appeal dismissed*, No. 17-16723, 2017 WL 5891737 (9th Cir. Nov. 14, 2017). Still, because the elements of the federal and state wiretap claims are essentially the same, and because these two laws arguably serve the same remedial purpose, courts applying California law might not allow a California plaintiff to recover multiple statutory penalties for the same wiretap. *See Los Angeles Cnty. Metro. Transp. Auth. v. Superior Court*, 123 Cal. App. 4th 261, 267 (2004). We thus consider the federal Wiretap Act claim only, though it hardly matters whether we consider only one wiretap act or both; either way, any such award of statutory damages would be colossal and could never be recovered from Vizio.

n.4.[15]

Applied here, *Eichenberger*'s more restrictive standard for "personally identifiable information" under the VPPA would be difficult to meet. Put simply, whether the information Vizio discloses would require too much detective work for an ordinary person to link an individual to viewing data is a factual matter that could be challenging for Plaintiffs to establish under Ninth Circuit law. We say this recognizing that the Ninth Circuit itself left the open the possibility that "modern technology may indeed alter—or may already have altered—what qualifies under the statute" as personally identifiable. 876 F.3d at 986.

The Wiretap Act claim also raises issues of first impression in this circuit. The statute authorizes "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter" to sue for damages. 18 U.S.C. § 2520(a). Vizio has argued that it does not "intercept" any electronic communications, and the messages it collects do not constitute the "contents" of an electronic communication. Plaintiffs, in turn, believe there is favorable evidence supporting the real-time nature of the interception of the contents of a communication.

Even so, whether information qualifies as having been "intercepted" within the meaning of the Wiretap Act, if it is acquired simultaneously with its arrival on the Smart TV, has not been established. The Ninth Circuit in *Konop v. Hawaiian Airlines* suggested in dicta that the Wiretap Act might not be implicated by such facts, but it did not resolve the issue. 302 F.3d 868, 878 (9th Cir. 2002).

This Court identified legal authority to support the view that such an acquisition "satisfies the contemporaneous interception requirement." *In re Vizio*, 238 F. Supp. 3d at

---

[15] While *Yershov* sets forth a more forgiving legal standard, it was nonetheless insurmountable in that case. *See Yershov*, Joint Stipulation of Dismissal With Prejudice, Case No. 1:14-cv-13112-FDS (D. Mass. March 27, 2017) (Doc. 83 at 1) ("the Parties agree that Plaintiff lacks sufficient evidence to support his allegation that Defendant violated the Video Privacy Protection Act by 'disclosing his PII—in the form of the title of the videos he watched [on the USA Today App], his unique Android ID, and his GPS coordinates—to third party analytics company Adobe Systems Inc.' from which Adobe identified Yershov and attributed his video viewing records to an individualized profile of Plaintiff Yershov in its databases.") (brackets and internal quotation marks removed).

1226 (citing *United States v. Szymuszkiewicz,* 622 F.3d 701, 706 (7th Cir. 2010)). Plaintiffs would defend that view. But *Szymuszkiewicz* has been criticized by a leading Fourth Amendment scholar who claims the Seventh Circuit misread the Wiretap Act. Orin Kerr, *The Perils of Interpreting Statutes With Multiple Remedial Schemes: A Comment on the Dicta in United States v. Szymuszkiewicz,* The Volokh Conspiracy blog.[16] The professor's arguments have some force, so it is not free from doubt that Plaintiffs could prevail on their Wiretap Act claim.[17]

As for Plaintiffs' remaining claims, their strength on the merits may largely turn on whether consumers were adequately advised that their viewing data would be collected and shared. The parties disagree on this point, because Plaintiffs believe there is evidence that Vizio's disclosures in marketing materials and privacy policies during the class period were inadequate.

In addition, the remaining claims may turn on whether the information collected is deemed sensitive. This matters both for purposes of materiality under the consumer-protection claims and the state privacy claims, which may be actionable when community norms are violated. Again, the parties disagree on the degree of risk for these claims. If the named Plaintiffs' negative reaction to Vizio's conduct is any indication, however, likeminded jurors could resolve these factual questions favorably for Plaintiffs.

Finally, even if Plaintiffs are able to establish that Vizio violated these federal privacy laws, "statutory damages are not to be awarded mechanically." *Campbell v. Facebook Inc.,* 315 F.R.D. 250, 268 (N.D. Cal. 2016). The Wiretap Act, for instance, "makes the decision of whether or not to award damages subject to the court's discretion." *DirecTV, Inc. v. Huynh,* 2005 WL 5864467, at *8 (N.D.Cal. May 31, 2005), *aff'd,* 503 F.3d 847 (9th Cir. 2007). This is apparent in the text of the Wiretap Act, "which was amended in 1986

---

[16] http://volokh.com/2010/09/10/the-perils-of-interpreting-statutes-with-multiple-remedial-schemes-a-comment-on-the-dicta-in-united-states-v-szymuszkiewicz/.

[17] Citing *In re Zynga Privacy Litigation,* 750 F.3d 1098, 1106 (9th Cir. 2014), Vizio has argued that Wiretap Act claim should fail because the information Vizio collects from Smart TVs does not constitute the "contents" of an electronic communication. Plaintiffs disagree with Vizio's reading of *In re Zynga.*

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

to state that the court 'may' award damages, rather than stating that it 'shall' award damages." *Campbell*, 315 F.R.D. at 268. The Court's "discretion is limited to deciding whether to 'either award the statutory sum or nothing at all,' it 'may not award any amount between those two figures.'" *Id.* (quoting *Huynh*, 2005 WL 5864467, at *8).[18]

In authorizing liquidated damages under the VPPA, Congress employed similar language—"The court may award . . . actual damages but not less than liquidated damages in an amount of $2,500," or punitive damages, 18 U.S.C. § 2710(c)(2)—rather than directing that a court "shall" award such damages. *See id.*

When exercising such discretion, courts consider "(1) whether the defendant profited from his violation; (2) whether there was any evidence that the defendant actually used his pirate access devices; (3) the extent of [plaintiff's] financial harm; (4) the extent of the defendant's violation; (5) whether the defendant had a legitimate reason for his actions; (6) whether an award of damages would serve a legitimate purpose; and (7) whether the defendant was also subject to another judgment based on the same conduct." *Huynh*, 2005 WL 5864467 at *8.[19] If this Court were to conclude that some or many class members suffered little monetary harm from the collection and disclosure of viewing data, it could conclude that any liquidated, statutory, or punitive damages would disproportionately penalize Vizio.[20]

For all these reasons, while aspects of Plaintiffs' claims are strong, Plaintiffs may face considerable headwinds in seeking to establish new law in these complex areas and to

---

[18] The $10,000 lump sum for liquidated damages is limited to a single award per victim as long as the violations are "interrelated and time compacted." *Smoot v. United Transp. Union*, 246 F.3d 633, 642-645 (6th Cir. 2001).

[19] We see no sensible reason why such factors would not also be germane to the VPPA.

[20] In *Campbell*, the court declined to certify a Rule 23(b)(3) litigation class because it concluded that "sorting out those disproportionate damages awards would require individualized analyses that would predominate over common ones." 315 F.R.D. at 269. Plaintiffs believe this analysis of predominance clashes with *Tyson Foods, Inc. v. Bouaphakeo*, which recognized: "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." 136 S. Ct. 1036, 1045 (2016) (internal quotation marks and citation omitted). Therefore, Plaintiffs have not mentioned this case as posing a risk to class certification.

---

28

1    recover more in the way of monetary relief. *See also* Section IV.B.2 (explaining that further

2    litigation could extinguish Plaintiffs' legal entitlement to, and ability to negotiate for,

3    injunctive relief). Overall, then, this factor weighs in favor of preliminary approval.

4    **2.      Risk, Complexity, Costs, and Likely Duration of Further
5    Litigation, and Risk of Maintaining Class Certification**

6    This litigation is complex because it "involves several intricate technologies"; it is

7    risky because it requires Plaintiffs to establish new law; and it is expensive because it

8    requires intensive work by qualified experts familiar with the data industry, tracking

9    software, and privacy practices in the digital sphere. Order Denying Mot. for Interlocutory

10   Appeal, Doc. 224 at 5. Neither party is likely to accept a dispositive, adverse ruling

11   without an appeal. The litigation has been intensive to date, and would only become more

12   so, and increasingly costly, if litigation were to continue.

13   More critically, if this settlement is not approved, it is unlikely that further litigation

14   would lead to a better settlement. This is evident for two reasons. One, there is the risk

15   that Vizio will again seek to limit Plaintiffs' injunctive relief based on its compliance with

16   the consent decree with the Federal Trade Commission. The Court previously denied such

17   a request by Vizio—an important ruling which allowed Plaintiffs to negotiate the

18   injunctive relief in this case. But it did so without prejudice, noting Vizio could yet satisfy

19   its "formidable burden" of demonstrating that "subsequent events make it absolutely clear

20   that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of*

21   *the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation

22   omitted).

23   Two, if Plaintiffs were to succeed in certifying a litigation class, Vizio would then

24   press the Court to "definitively adjudicate the enforceability of the arbitration agreement."

25   Order Denying Mot. to Dismiss and Strike. The arbitration agreement that applies to such

26   class members does not, by its terms, permit class proceedings, and it does not allow the

27   arbitrator to award equitable relief. *See* Brinkman Decl., Exs. A-B, Docs. 142-3, 142-4.

28   Also, monetary relief in arbitration may be limited to actual damages. *Id.*

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

1    If either of these two events were to occur, Plaintiffs would be diminished in their

2    ability to negotiate settlement terms as favorable as those in the proposed settlement.

3    Costs will increase substantially if the litigation continues through class certification,

4    *Daubert* motions, summary judgment, trial, and appeals. Expert costs in particular would

5    be high. Plaintiffs have been judicious in their use of experts to date, but class certification

6    and trial will require considerable work by experts.

7    Plaintiffs do not see serious obstacles to obtaining and maintaining class

8    certification. Even so, Vizio would vigorously resist class certification, before this Court

9    and on appeal. Even a "small" risk that class certification is not achievable "weigh(s) in

10   favor of granting final approval, as the settlement would eliminate the risk." *Vandervort v.*

11   *Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1206 (C.D. Cal. 2014).

12   This settlement, by comparison, "eliminates the risks inherent in certifying a class,

13   prevailing at trial, and withstanding any subsequent appeals, and it may provide the last

14   opportunity for class members to obtain" monetary and injunctive relief. *Oda*, No. 8:15-

15   cv-2131-JLS-JCGx, slip op. at 16. This factor therefore weights in favor of settlement

16   approval. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.

17   Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance

18   and approval are preferable to lengthy and expensive litigation with uncertain results."

19   (citation omitted)).

20   ### 3.    Amount Offered in Settlement

21   "To determine whether a settlement 'falls within the range of possible approval,'

22   courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected

23   recovery balanced against the value of the settlement offer.'" *Schuchard v. Law Office of Rory*

24   *W. Clark*, No. 15-cv-01329-JSC, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016)

25   (quoting *Tableware*, 484 F. Supp. 2d at 1080). "Immediate receipt of money through

26   settlement, even if lower than what could potentially be achieved through ultimate success

27   on the merits, has value to a class, especially when compared to risky and costly continued

28   litigation." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

The class benefits offered in this settlement—both monetary and injunctive relief—represent an excellent outcome for the class. To begin, the settlement establishes a cash fund of $17,000,000. This is more than the revenue Vizio obtained from licensing viewing data during the class period. *See* Siu Decl. ¶ 11. Plaintiffs' expert calculates that actual harm per consumer is in the range of $0.78 and $4.76. *See* Egelman Rep. at 12. There are approximately 16 million class members. After payment of notice and administration costs and any approved award of attorneys' fees, costs, and service awards, all funds remaining in the settlement fund will be distributed to the class (*i.e.*, "the net settlement fund").

In addition to the monetary benefits obtained through the settlement, Plaintiffs have obtained extensive injunctive relief. Plaintiffs' expert has opined that the value of the injunctive relief is, conservatively, $6 to $8 million. *See* Egelman Rep. at 3, 12. Thus, even assuming that 100 percent of the class submits a claim for payment from the Settlement Fund, each member of the class would theoretically receive up to $0.62 in direct compensation (assuming $10,000,000 in a Net Settlement Fund made available to 16 million class members), plus the value of injunctive relief per class member, which is approximately $0.50. Thus, in a scenario where 100 percent of the class make claims, each class member would receive $1.12 in settlement benefits, which is above 100 percent of the damages a class member could expect to receive at trial at the lower bounded range of the maximum amount recoverable. Assuming a more realistic claims rate of 5 percent— which is still considered on the high end of claims rates for consumer class actions— Plaintiffs estimate that the per class member recovery would be $13.00 ($12.50 from the settlement fund and $0.50 in injunctive relief). These amounts greatly exceed the maximum value of actual harm per consumer, per TV.

Because Plaintiffs' expert estimates that average damages for actual harm from the collection and sharing of viewing data is between $0.78 and $4.76, the ranges that class counsel anticipate as direct payment to class members represents a highly favorable recovery on a per-TV basis. *See* Egelman Rep. at 12. And it is more favorable still once the

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

1  value of injunctive relief is considered, as it must be. *Cf. Lee v. Enter. Leasing Co.-W.*, No.

2  3:10-CV-00326-LRH, 2015 WL 2345540, at *5 n.5 (D. Nev. May 15, 2015) ("[T]he Ninth

3  Circuit considers the value available to the class in determining total value, rather than

4  merely the amount redeemed.") (emphasis removed).

5      An examination of settlements in similar consumer privacy cases, where parties

6  pleaded claims for statutory damages under the VPPA or Wiretap Act, further confirms

7  the reasonableness of the proposed settlement in this case. *Perkins v LinkedIn*, which

8  concerned the collection and dissemination of user e-mails and address book contents,

9  settled for $13 million. No. 5:13-cv-04303-LHK (N.D. Cal.), Doc. 134 at 4. *Google Referrer*

10 *Header Privacy Litigation*, which concerned the collection and use of users' search terms,

11 settled for $8.5 million. No. 5:10-cv-04809-EJD (N.D. Cal.), Doc. 85 at 10, *aff'd*, 869 F.3d

12 737 (2017), *cert. granted*, 138 S. Ct. 1697 (2018). *Sony Gaming Networks*, which concerned the

13 disclosure of Sony PlayStation account holder information, settled for $15 million. No.

14 3:11-md-02258 (S.D. Cal.), Doc. 204-1 at 6-10. *In re Netflix Privacy Litigation*, which

15 concerned the collection and retention of users' viewing and personal information, settled

16 for $9 million plus injunctive relief valued at $4.65 million. No. 5:11-cv-00379 (N.D. Cal.),

17 Doc. 256 at 10. *Fraley v. Facebook*, which concerned the collection of names and likenesses

18 for promotional purposes, settled for $20 million. No. 3:11-cv-01726 (N.D. Cal.),

19 Doc. 359 at 5. And *Lane v. Facebook*, which concerned the public dissemination of

20 information about members' online activities, settled for $9.5 million. No. 5:08-cv-03845

21 (N.D. Cal.), Doc. 108 at 4.

22     Several of the settlements just mentioned—*In re Netflix*, *Google Referrer Header*, and

23 *Lane*—resolved the claims of significantly larger classes. The amounts achieved in those

24 settlements were so small per class member that courts concluded compensation could

25 not feasibly be distributed to class members, and thus directed funds to *cy pres* recipients.

26 This fact further confirms the reasonableness of the settlement benefits achieved in this

27 case.

28     The reasonableness of the settlement is further supported by the Declaration of

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

Wilda Siu, senior director of accounting at Vizio, Inc. In this declaration, Ms. Siu discusses Vizio's financial position in relation to the settlement amount, and she confirms the revenue received during the class period from the licensing of viewing data. This evidentiary submission demonstrates that "the aggregate size of the settlement—and, relatedly, each individual claimant's recovery—is fully supported by the reality of Defendants' financial position." *Etter v. Thetford Corp.*, NO. SACV 13-00081-JLS (RNBx), slip op. at 20 (C.D. Cal. Mar. 29, 2016) (Doc. 468) (order granting plaintiffs' renewed motion for preliminary approval of class action settlement).

Finally, the amount of the settlement is fair in view of the claims released by Plaintiffs and the class. Each class member will release claims that were or could have been asserted in this action, and the release does not extend beyond the Vizio released parties. Settlement § XVII.1. Because the release mirrors those that have won approval in other similar cases, its scope supports the conclusion that the amount offered in this settlement is fair. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." (internal quotation marks and citation omitted)).

### 4. Method of Distributing Relief

The 2018 amendments to Rule 23 instruct that the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, should be considered as part of the fairness inquiry. This factor supports approval for several reasons.

For one, A.B. Data will distribute relief directly from the settlement fund to all settlement class members who submit valid claims. The settlement class will have the option to receive payment immediately through electronic payment systems (such as PayPal) or by printed check.

For another, the claims process is not unduly demanding, burdensome, or

oppressive. A claimant need not submit a receipt but must state under oath that he or she is a class member based on the objective criteria set forth in the class definition. *See* Schachter Decl. ¶ 17.

Further, the claims process facilitates the filing of claims. Claimants can complete a claim form on a website or on a paper form, and the case-specific website answers frequently asked questions through a long-form notice and provides a toll-free telephone number with an automated interactive voice response system.

Finally, the claims process will also deter unjustified claims and has appropriate security for electronic payment methods. The e-mail notice will provide a unique pin that is associated with an e-mail address. A.B. Data also employs fraud-detection techniques. The electronic payment walls, in turn, are operated by the payment systems themselves, such as PayPal, and thus have advanced security in place. The class member is simply directed to the platforms of these systems. A.B. Data does not receive any log in or password information.

For all these reasons, the method of distributing relief is reasonable and supports preliminary approval.

### 5.    Attorneys' Fees and Costs, and Service Awards

At this stage, courts do not formally consider whether to approve attorneys' fees or service payments for named Plaintiffs. Nevertheless, in light of the amendments to Rule 23, we forecast the application for such payments.

In the Ninth Circuit, when the percentage-of-recovery method is employed, 25 percent of a common fund is a presumptively reasonable amount of attorneys' fees. *See In re Bluetooth*, 654 F.3d at 942. Here, counsel will not ask for more than 25 percent of the total value of the settlement for monetary *and* injunctive relief. *See Staton*, 327 F.3d at 974 ("where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained [ ] courts [may] include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees.").

Plaintiffs will seek service awards of $5,000. This enhancement is set at the Ninth

Circuit's benchmark award for representative plaintiffs. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015). It is an appropriate enhancement in this case because the representative Plaintiffs actively participated in the litigation and sat for depositions, and because the cumulative awards sought will constitute a small fraction (0.18 percent) of the total settlement fund. *Rhom v. Thumbtack, Inc.*, No. 16-CV-02008-HSG, 2017 WL 4642409, at *8 (N.D. Cal. Oct. 17, 2017) ("A \$5,000 award also equals approximately 1–2% of the total settlement fund, which is consistent with other court-approved enhancements.").

### 6.   Stage of the Proceedings and Extent of Discovery Completed

In order to settle a class action, the parties must have "sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). This information can be obtained through formal or informal discovery. *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JLS (RZx), 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011).

Plaintiffs have engaged in extensive discovery, formally and informally, including the production and review of voluminous documents, interrogatories, depositions of all of the Plaintiffs, and one non-party deposition. Further, Plaintiffs took three Fed. R. Civ P. 30(b)(6) depositions of Vizio and served additional interrogatories in the course of crafting injunctive relief. During this period, Vizio also shared information memorializing business-practice changes that Vizio had made pursuant to its consent decree with the government. The report was provided to Plaintiffs under Fed. R. Evid. 408.

Plaintiffs consulted with leading technologists and privacy experts about the strengths and weaknesses of this case. What's more, Plaintiffs' legal theories were put to adversarial testing through two motions to dismiss, a motion for interlocutory appeal, and numerous discovery motions before Magistrate Judge Scott.

Although the parties are proposing to settle before class certification, they possess sufficient information to make an informed decision about the settlement. This factor, then, weighs in favor of granting preliminary approval.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

### 7.    Support of Experienced Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). In fact, experienced counsel's judgment in this respect carries considerable weight. *See Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citation omitted).

Class counsel wholeheartedly endorse the settlement agreement as fair, reasonable, and adequate. That endorsement is the product of arm's length negotiations before a former federal judge and following relevant discovery. The Court should therefore credit counsel's recommendation that the settlement warrants preliminary approval. *See Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.").

### 8.    Positive Views of Class Members

The named Plaintiffs have all submitted declarations summarizing their individual views of the settlement. *See* Hodges Decl., Zufolo Decl., Walsh Decl., Rizzitello Decl., Thomson Decl., and Queenan Decl. All are excited by the benefits achieved for the class and support settlement approval. As the views of other class members are known, the Court may take them into account as well. At this stage, however, all indications are that the class is reacting positively to the proposed settlement.

### 9.    No Signs of Collusion

When, as here, a class settlement is reached before class certification, courts are "particularly vigilant" in searching for signs of collusion. *In re Bluetooth*, 654 F.3d at 946–47. Courts must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the

1  negotiations." *Id.* at 947. Such signs include "when the parties arrange for fees not

2  awarded to revert to defendants rather than be added to the class fund," disproportionate

3  distributions of settlement funds to counsel, and clear-sailing arrangements. *Id.*

4      There are no signs, explicit or subtle, of collusion between the parties here. First,

5  settlement funds will not revert to Vizio under any circumstances. Settlement funds will

6  go to class members, and the use of electronic payment methods will increase the chances

7  that even small dollar amounts can be distributed to the class. These payments will be

8  divided proportionally among purchasers per TV per household, and thus all class

9  members are treated equitably. The same may be said for the injunctive relief which

10  admits no distinctions among class members. The named Plaintiffs, moreover, have stated

11  under oath that they understand they are not legally entitled to any benefits other than

12  those available to all settlement class members.

13      Any amount that is not feasibly distributable to the class will be split by next-best

14  recipients. Plaintiffs propose that the next-best recipients should be: Electronic Privacy

15  Information Center, Privacy Rights Clearinghouse, and World Privacy Forum. Any

16  residual would be divided evenly. These organizations submitted applications in which

17  they explained how they would commit to use distributed funds in a specified way that

18  benefits the class or substantial portions of it and addresses issues related to the basis of

19  the lawsuit. And each was asked to confirm that the organization is independent of the

20  parties, their counsel, and the district court. The applications which Plaintiffs received are

21  being submitted to the Court so that it can independently determine the suitability of

22  these next-best recipients. *See* Joint Decl., Ex. 4. This process further confirms that there

23  is no collusion.

24      Second, there will not be a disproportionate distribution of the settlement fund to

25  counsel.

26      Third, under the settlement agreement, attorneys' fees are to be awarded from the

27  settlement fund. Although Vizio informed Plaintiffs, after all material class settlement

28  benefits had been negotiated, that it would not oppose an application for fees that does

not exceed 33% of $17,000,000, the settlement agreement explicitly says that the Court is to determine the proportion of the settlement fund that will be awarded as attorneys' fees. Thus, the agreement does not in any way affect the Court's "supervisory discretion" in approving fees. *See Vandervort v. Balboa Capital Corp.*, 2013 WL 12123234, at *5 (C.D. Cal. Nov. 20, 2013) (quoting *Staton*, 327 F.3d at 970).

The timing of the payment of attorneys' fees—shortly after the final approval of fees by this Court—is not controversial, either. *Pelzer v. Vassalle*, 655 Fed. App'x 352, 365 (6th Cir. 2016) ("Quick-pay provisions are common.") (citing Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1643 (2009), which found over one-third of federal class action settlement agreements in 2006 included quick-pay provisions); *Brown v. Hain Celestial Group, Inc.,* 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016) ("Courts . . . approve these 'quick pay' provisions routinely.") (citation omitted); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) (same).

Lastly, there is no undisclosed agreement made in connection with the settlement proposal.

For all these reasons, there is no cause for concern that the settlement is the product of collusion.

\* \* \*

Considering all these guideposts, the Court should preliminarily conclude that the proposed settlement is fair, reasonable, and adequate, and likely to receive final approval.

## C.   Approval of the Proposed Settlement Administrator

Plaintiffs propose, and Vizio does not oppose, the appointment of A.B. Data, Ltd. as settlement administrator. Documentation of A.B. Data's competence is included in the Declaration of Eric Schacter, vice-president of this company. Notably, this Court has previously approved of A.B. Data as a settlement administrator in another class action settlement. *Munday v. Navy Federal Credit Union*, 2016 WL 7655796, at *9 (C.D. Cal. Sep. 15, 2016) (Staton., J.) (order granting renewed joint motion for preliminary approval of class action settlement). For these reasons, the Court should appoint A.B. Data to serve in this

1  capacity in this case.[21]

2  **D.    Preliminary Approval of Class Notice Form and Method**

3        Even as amended in 2018, Fed. R. Civ. P. 23(c)(b)(2) requires the "best notice that

4  is practicable under the circumstances, including individual notice to all members who can

5  be identified through reasonable effort" for certified (b)(3) litigation classes. S. Ct., *Proposed*

6  *Amendments to the Fed. R. Civ. P.*, at *6.[22] The 2018 amendments apply the requirements of

7  subdivision (c)(2)(B) to the notice of class-action settlements for (b)(3) classes. The

8  settlement agreement contemplates a single, combined notice advising the class of the

9  proposed certification and settlement of (b)(3) classes under both Rule 23(e)(1) and

10  (c)(2)(B).

11        Rule 23(c)(2)(B) was amended because means of communication have evolved and

12  permitting notice by *electronic* means, including e-mails, digital media, and social media, may

13  provide the best practicable notice under the circumstances. Duke Law School,

14  *Implementing 2018 Amendments to Rule 23*, *supra*, Rules Appendix C, at *17-18.[23] Specifically,

15  the amended language expressly provides that notice can be made by one or a

16  combination of means, including "United States mail, electronic means, or other

17  appropriate means." *See* S. Ct., *Proposed Amendments*, *supra,* at *6.

18        The Committee Note to amended Rule 23 advises: "Counsel should consider which

19  method or methods of giving notice will be most effective; simply assuming that the

20  'traditional' methods are best may disregard contemporary communication realities."

21  Duke Law School, *Implementing 2018 Amendments to Rule 23, supra*, Rules Appendix C, at

22  *19. Consistent with that directive, counsel for the parties and the settlement

23  administrator have carefully considered cost, customer preference, and effectiveness, in

24  determining the best practicable means of communicating the settlement benefits and

25

26  [21] Plaintiffs will apply for an award of costs to A.B. Data for settlement administration concurrently with their application for attorneys' fees and service payments.

27  [22] *Available at* https://www.fjc.gov/sites/default/files/materials/58/frcv18_5924.pdf.

28  [23] *Available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/Class-Actions-Best-Practices-Final-Version.pdf.

1   rights of exclusion (among other matters) to the class.

2          Vizio has communicated with its customers directly through affected TVs to

3   provide disclosures during and after the class period. Working with the settlement

4   administrator, the parties and the Court will know precisely the number of affected Smart

5   TVs which successfully display the on-screen notice.

6          The parties have a solid sense of the number of Smart TVs capable of displaying

7   the notice based upon the number of TVs which have communicated with Vizio's servers

8   within the last 3 months and 6 months. Based on these estimates, notice will be sent

9   through the Internet directly to approximately 6,000,000 Vizio TVs purchased by potential

10  Settlement Class Members. As such, the notice will effectively reach the class.

11         The notice will display three times for 45 seconds, unless the option to dismiss the

12  notice is selected, in which case it will display a second time but not a third time. The easy-

13  to-remember settlement website address—www.VizioTVsettlement.com—is displayed

14  prominently in the center of the screen and in large font. Because of the frequency of the

15  TV notice, there is assurance that the notice will actually come to the attention of the

16  class.

17         Lastly, the TV notice is informative, engaging, and easy to understand. And it

18  allows class members to learn of their rights and options, and to act on them by visiting

19  the settlement website.

20         In *Hinshaw v. Vizio*, the court preliminarily approved a class action settlement and

21  notice plan which authorized Vizio to display a class action notice on Vizio TVs, among

22  other notice. *See* No. 8:14-cv-00876-DOC (C.D. Cal.), Doc. 56 at § 7.3. Subsequently, the

23  court granted final approval. *Hinshaw*, Doc. 69 at 3-4. Under that notice plan, the TV

24  notice displayed a total of two times for 30 seconds unless the class member selected a

25  command button to remove it. *Hinshaw*, Doc. 56 at § 7.3.

26         The TV Notice presented in this case is superior in that it will display more

27  frequently for longer intervals. The TV Notice here also has the information demanded by

28  Rule 23(c)(B)(2). And in contrast with the *Hinshaw* TV notice, the text of which is

represented in a single font-size, the text in the TV notice here is formatted to enhance class member engagement. We draw these comparisons not to diminish the TV Notice in *Hinshaw*, which satisfied Rule 23, but to explain the reasons why the design of the TV Notice in this case will be particularly effective.

Notice is also accomplished through a combination of e-mail, and digital and print media. Vizio has a large number of e-mail addresses. This reflects the manner in which customers engage Vizio. It also reflects "contemporary communication realities" of this particular demographic. Approximately 9,000,000 potential Settlement Class Members will receive the notice via e-mail. A.B. Data implements certain best practices to increase deliverability and bypass SPAM and junk filters and can verify the number of e-mails successfully delivered.[24]

Other forms of notice, such as the digital and print media campaign, will provide more than adequate coverage in the event that the outreach of the e-mail and TV notice reaches fewer settlement class members than estimated. Digital banners ads through the Google Display Network, Facebook (which includes a settlement-specific Facebook page) and Google AdWords/Search platforms will yield a minimum of 62 million impressions. Utilizing the known contact information and demographics of the settlement class, the digital banner ads will be specifically targeted to settlement class members and likely settlement class members.

Notice of the proposed settlement will be sent to relevant state and federal authorities per the terms of 28 U.S.C. § 1715(b) at least 90 days prior to the date for the final fairness hearing. 28 U.S.C. § 1715(d). A declaration attesting to this fact will be submitted to the Court.

Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an

---

[24] Plaintiffs have provided the Court with mock ups of the TV and e-mail notice, so that the Court can review the notice in a similar manner in which it will be presented to the class.

appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). This information is included in each of the notices in language that is easy to understand.

Because the class notices and notice plan set forth in the settlement agreement satisfy the requirements of due process and Federal Rule of Civil Procedure 23, and provide the best notice practicable under the circumstances, the Court should direct the parties and the Settlement Administrator to proceed with providing notice to settlement class members pursuant to the terms of the settlement agreement and its order granting preliminary approval.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, thereby:

(1)     preliminarily approving the proposed Settlement;

(2)     provisionally certifying the proposed Settlement Class;

(3)     appointing Plaintiffs as Class Representatives;

(4)     appointing Class Counsel as Settlement Class Counsel;

(5)     approving Plaintiffs' proposed notice program and directing that the notice be carried out under that program;

(6)     appointing A.B. Data, Ltd. as Settlement Administrator and directing it to carry out the duties and responsibilities stated in the Settlement;

(7)     approving Electronic Privacy Information Center, Privacy Rights Clearinghouse, and World Privacy Forum as next-best recipients of residual funds that cannot feasibly be distributed to class members; and

(8)     setting a Final Approval Hearing and certain other dates in connection with the settlement approval process.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL
Case No. 8:16-ml-02693-JLS (KESx)

Respectfully submitted,

**GIBBS LAW GROUP LLP**

*/s/ Andre M. Mura*

Eric H. Gibbs
ehg@classlawgroup.com
Andre M. Mura
amm@classlawgroup.com
Linda Lam
lpl@classlawgroup.com
505 14th Street, Suite 1110
Oakland, CA 94612
Tel:  (510) 350-9700
Fax: (510) 350-9701

**COTCHETT, PITRE & MCCARTHY, LLP**

*/s/ Adam J. Zapala*
Joseph W. Cotchett
jcotchett@cpmlegal.com
Adam J. Zapala
azapala@cpmlegal.com
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel:  (650) 697-6000
Fax: (650) 697-0577

*Interim Co-Lead Counsel for Plaintiffs*