1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re: Vizio, Inc., Consumer Privacy Litigation** | CASE NO. 8:16-ml-02693-JLS-KES<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 282)** |

Before the Court is an unopposed Motion for Preliminary Approval of Class Action Settlement filed by Plaintiffs Dieisha Hodges, Rory Zufolo, John Walsh, Chris Rizzitello, Linda Thomson, and Mark Queenan.  (Mot., Doc. 282; Mem., Doc. 282-1.)  Plaintiffs ask the Court to (1) preliminarily approve the terms of the Settlement Agreement; (2) provisionally certify the proposed Settlement Class; (3) appoint Plaintiffs as Class Representatives for the Settlement Class; (4) appoint Eric H. Gibbs and Andre M. Mura of Gibbs Law Group LLP and Joseph W. Cotchett and Adam J. Zapala of Cotchett, Pitre & McCarthy, LLP as Class Counsel for the Settlement Class; (5) approve the form, content and method of delivery of the proposed Class Notice; (6) appoint A.B. Data, Ltd. as Settlement Administrator; (7) approve Electronic Privacy Information Center, Privacy Rights Clearinghouse, and World Privacy Forum as *cy pres* recepients; and (8) schedule a final fairness hearing.  (Mot. at 1-2.)  Defendants Vizio Inc., Vizio Holdings, Inc., Vizio Services, LLC, and Inscape Data Inc. (collectively, "Vizio") filed a Notice of Non-Opposition to the Motion.  (Doc. 286.)  Plaintiffs filed a Reply.  (Reply, Doc. 287.)  On December 7, 2018, the Court held a hearing on the matter.  For the following reasons, the Court GRANTS Plaintiffs' Motion and sets a Final Fairness Hearing for May 31, 2019, at 10:30 a.m.

## I.   **BACKGROUND**

This action is a multi-district litigation including 29 member cases.  The Motion relates to all member cases.  (Mot.)  Plaintiffs filed their initial Consolidated Complaint on August 15, 2016.  (Cons. Compl., Doc. 108.)

Vizio is the second-largest manufacturer of "Smart TVs," modern televisions equipped with integrated software that enables consumers to access the internet and on-demand online entertainment services.  (Cons. Compl. ¶¶ 33, 35, 45.)  Vizio's content delivery software comes either preinstalled on its Smart TVs or is installed through software updates.  (*Id.* ¶ 45.)  Plaintiffs alleged that, unbeknownst to them, Vizio's Smart TVs use automatic content recognition software to collect and report consumer data.  (*Id.*

¶¶ 39, 50, 127.)  Plaintiffs alleged that that such data includes both content viewing histories as well as detailed information about a consumer's digital identity, such as consumers' IP addresses, zip codes, MAC addresses, product model numbers, hardware and software versions, chipset IDs, region and language settings, as well as similar information about other devices connected to the same network.  (*Id.* ¶¶ 39, 42, 50, 54, 62, 127.)  Vizio then sells all of this information to advertisers and media content providers so that they can deliver highly targeted advertisements to Vizio Smart TVs and other display-enabled devices connected to the same network.  (*Id.* ¶¶ 2, 5, 35, 41-42.)  Plaintiffs asserted they purchased Vizio Smart TVs unaware of Vizio's data collection and dissemination practices and that such practices were not adequately disclosed in Vizio's marketing or privacy policies.  (*Id.* ¶¶ 16-22, 81-94, 105.)

Based on these allegations, Plaintiffs brought various privacy- and misrepresentation-based claims under both federal and state law.  Under federal law, Plaintiffs alleged claims under the Video Privacy Protection Act (VPPA) and the Wiretap Act.  (*Id.* ¶¶ 111-32.)  Under state law, Plaintiffs brought common law fraud and negligent misrepresentation claims, as well as consumer protection claims under California's Consumers Legal Remedies Act, California's Unfair Competition Law, California's False Advertising Law, Florida's Deceptive and Unfair Trade Practices Act, New York's General Business Law sections 349 and 350, Massachusetts's Chapter 93A, and Washington's Consumer Protection Act.  (*Id.* ¶¶ 150-241, 250-53, 263-87, 301-17.)  Plaintiffs state law privacy claims included allegations of intrusion upon seclusion as well as causes of action under the California Constitution, California's Invasion of Privacy Act, the Massachusetts Privacy Act, and state video privacy statutes.  (*Id.* ¶¶ 133-49, 242-49, 254-62, 294-300.)  Plaintiffs also brought common law claims for unjust enrichment.  (*Id.* ¶¶ 288-93.)

On March 2, 2017, the Court granted in part and denied in part Vizio's first motion to dismiss.  (Order re First MTD, Doc. 130.)  In its Order, the Court dismissed Plaintiffs' Wiretap Act, state law video privacy, negligent misrepresentation, affirmative fraud, and

California False Advertising Law claims with leave to amend.  (*Id.* at 38-39.)  Vizio's

Motion was denied as to Plaintiffs' VPPA, fraudulent omission, state privacy law, and

unjust enrichment claims.  (*Id.*)

On March 23, 2017, Plaintiffs filed their Second Consolidated Complaint, which

dropped all of the dismissed causes of action except Plaintiffs' Wiretap Act claims.

(Second Cons. Compl., Doc. 136.)  Vizio filed a second motion to dismiss soon thereafter,

seeking to dismiss Plaintiffs' Wiretap Act claims and claims for injunctive relief.  (Second

MTD, Doc. 145.)  Vizio argued that Plaintiffs' claims for injunctive relief were mooted by

a consent decree then-recently entered by a district court in New Jersey.  (*Id.* at 2.)

The consent decree settled claims against Vizio brought by the Federal Trade

Commission, New Jersey Attorney General, and Director of the New Jersey Division of

Consumer Affairs, alleging that Vizio violated the FTC Act and New Jersey Consumer

Fraud Act by collecting and selling consumer data.  (Consent Decree, Doc. 146-3.)  The

charges of malfeasance underlying the consent decree mirror in large part the allegations

brought by Plaintiffs in this action.  (*Id.*)  The consent decree bars Vizio from collecting

certain consumer data without express affirmative consent.  (*Id.* § II.)  Vizio also agreed to

delete its stored viewing data within 120 days, complete a privacy assessment every two

years for the next twenty years, and pay $2.2 million dollars to the charging regulators.

(*Id.* §§ III–VI.)

Vizio argued that these changes to its practices moot Plaintiffs' claims for similar

injunctive relief.  (Second MTD at 2.)  The Court, however, denied Vizio's second motion

to dismiss in its entirety.  (Order re Second MTD, Doc. 199.)  Eleven months later, after

significant discovery and related motion practice, the parties reached a settlement-in-

principle on June 27, 2018.  (Notice of Potential Settlement, Doc. 272.)  The formal

Settlement Agreement now before the Court was executed by the parties on October 3,

2018.  (Settlement Agreement, Ex. 1 to Joint Zapala & Mura Decl., Doc. 282-2.)

The Settlement Agreement defines the Settlement Class as:

> All individuals in the United States who purchased a VIZIO Smart Television for personal or household use, and not for resale, that was subsequently connected to the Internet at any time between February 1, 2014 and February 6, 2017.

(Settlement Agreement § I.32.)  This definition tracks the nationwide class definition pleaded in the Second Consolidated Complaint.  (Second Cons. Compl. ¶ 102.)  The proposed Settlement Class definition differs from the pleading in that the proposed settlement class period corresponds with when Vizio first implemented automatic content recognition technology (February 1, 2014), and when Vizio stopped collecting viewing data through this software from Smart TVs without affirmative consent (February 6, 2017), whereas the pleading's class period references the "applicable statute of limitations." (Settlement Agreement § B.10-14; Second Cons. Compl. ¶ 102; Mem. at 9.)

Vizio estimates approximately 16 million Smart TVs with this software were connected to its servers during the class period.  (Joint Zapala & Mura Decl., Doc. 282 ¶ 13.)  Thus, assuming one purchaser per Smart TV per household, the proposed Settlement Class includes approximately 16 million individuals.  (Mem. at 9.)

The Settlement Agreement establishes a monetary fund of $17,000,000. (Settlement Agreement § X.1.)  This fund covers payments for attorneys' fees and expenses to Class Counsel, administration costs to the Settlement Administrator, and service awards to the Class Representatives.  (*Id.* § X.2.)  The residual sum will be distributed proportionally to members of the Settlement Class ("Class Members") who submit valid claims (meaning the amount of recovery per Class Member depends on the total number of claims filed).  (*Id.* § XI.1.)  Plaintiffs estimate the rate of claims will result in claimant Class Members receiving between $13 and $31.  (Mem. at 14.)  The monetary fund is non-reversionary; any part of the fund that cannot feasibly be distributed to Class Members will be reallocated to *cy pres* recipients.  (*Id.* at 10; Settlement Agreement § X.2.)  The Settlement Agreement restricts Vizio from opposing applications made by the named Plaintiffs for service awards up to $5,000 or by Class Counsel for attorneys' fees up to 33.3% of the monetary fund.  (Settlement Agreement §§ XIII.1, XIV.1.)

In addition to the monetary fund, the Settlement Agreement requires Vizio make certain business practice changes, including prominent on-screen disclosures and opt-out forms regarding data collection. (*Id.* § XII.1.)  Additionally, Vizio must delete viewing data collected during the class period still in its possession and provide third-party verification of such deletion. (*Id.*)

Plaintiffs and any Class Members who do not opt-out of the settlement will release all claims against Vizio "that arise out of or relate directly or indirectly in any manner whatsoever to facts alleged or that could have been alleged or asserted" in this action. (*Id.* § XVII.1.)

The Settlement Agreement calls for notice of the settlement to be sent directly to Class Members through two electronic means: email and on-screen notification through the Smart TVs at issue. (*Id.* § V.2.)  Plaintiffs have also proposed supplementary notice dissemination through an online advertising campaign and print media. (Mem. at 14.)  All forms of disseminated notice will direct Class Members to a website run by the Settlement Administrator that will host a longform Class Notice detailing Class Members' rights, their ability to opt-out, the claims process, and other information about the case. (*Id.*; Class Notice, Exhibit C to Settlement Agreement.)  Class Members may submit claim forms on the website or via U.S. Mail. (Class Notice at 6.)

Plaintiffs filed the instant Motion on October 4, 2018.

## II.   <u>CONDITIONAL CERTIFICATION OF THE CLASS</u>

Plaintiffs ask the Court to conditionally certify the Settlement Class for settlement purposes under Rule 23(a) and 23(b)(3). (Mem. at 16-22.)

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation." *Id.* (citing *Wal-Mart Stores,*

*Inc. v. Dukes*, 564 U.S. 338, 349 (2011)).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Dukes*, 564 U.S. at 350.  This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim."  *Id.* at 350-51.

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."  *Id.* at 345.  Here, Plaintiffs seek certification of the class under Rule 23(b)(3), which permits maintenance of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.    The Proposed Class Meets All Rule 23(a) Requirements

#### 1.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  There are up to 16 million putative Class

Members based on the total number of Smart TVs that were connected to the internet and subject to the allegedly unlawful data collection during the class period.  (Joint Decl. ¶ 13.) Therefore, numerosity is plainly met for the proposed Class.

### 2.     Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 34950 (internal citations and quotation marks omitted).  A plaintiff must allege that the class injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.* at 350.  In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal citations and quotation marks omitted).

Here, Plaintiffs' claims center on whether Vizio collected and shared what Plaintiffs consider to be personally identifiable viewing data without Class Members' knowledge or consent.  (*See* Mem. at 18.)  Because the core issues of Vizio's nondisclosure and the collection and sharing of personally identifiable viewing data are common to the claims, answers to questions such as whether such viewing data were actually collected and whether such data were improperly shared are common to all Class Members.  Because Vizio's alleged data collection and disclosure practices were uniform across all Smart TVs at issue, "resolution of these questions will resolve 'in one stroke' issues that are 'central to the validity' of each [C]lass [M]ember's claims." *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 477 (C.D. Cal. 2012) (*citing Dukes*, 564 U.S. at 350).

Plaintiffs have therefore satisfied the commonality requirement.

### 3.     Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "[U]nder the

rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (quoting *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998)), *rev'd on other grounds*, 564 U.S. 338 (2011).  As to the representative, "[t]ypicality requires that the named plaintiffs be members of the class they represent." *Id.* (citing *Gen. Tech. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).  The commonality, typicality, and adequacy-of-representation requirements "tend to merge" with each other.  *Dukes*, 564 U.S. at 349 n.5 (citing *Falcon*, 457 U.S. at 157-58 n.13).

Here, Plaintiffs' claims, like those of the proposed Settlement Class, are based on their purchase of Vizio Smart TVs, connection of those Smart TVs to the internet, and alleged unlawful exploitation of such connections to collect and share personally identifiable viewing data without Plaintiffs' knowledge or consent.  Because these claims arise from the same alleged classwide course of conduct and Plaintiffs fall within the Settlement Class definition, typicality is met.  (*See* Mem. at 19.)

### 4.  Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

Plaintiffs' claims arise out of the same set of facts, allege common injury, and assert the same theories of liability as the claims for the proposed Settlement Class.  Therefore, Plaintiffs' interests in obtaining the maximum recovery are coextensive with the interests of Class Members.  (*See* Mem. at 19.)  However, the Court does note that Plaintiffs seek enhancement awards of $5,000 each, an amount which far exceeds the value of the payouts that Class Members will receive.  (*See* Settlement Agreement § XIII.)  Courts recognize a

potential conflict of interest between the named plaintiffs and the class "when, as here, there is a large difference between the enhancement award and individual class member recovery." *Mansfield v. Sw. Airlines Co.*, No. 13CV2337 DMS (KSC), 2015 WL 13651284, at *7 (S.D. Cal. Apr. 21, 2015). The existence of a common fund, as here, heightens this concern because the enhancement awards reduce the funds available for payments to class members. *Cf. Campbell v. Best Buy Stores, L.P.*, No. LACV-1207794-JAK (SHX), 2015 WL 12744268, at *4 (C.D. Cal. June 23, 2015). Recognizing these principles, at the final approval stage, the Court will "be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Nevertheless, at this preliminary stage, and in the absence of any apparent actual conflict, the Court concludes that Plaintiffs are adequate Class Representatives.

As to the adequacy of Plaintiffs' counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs ask the Court to appoint Eric H. Gibbs and Andre M. Mura of Gibbs Law Group LLP and Joseph W. Cotchett and Adam J. Zapala of Cotchett, Pitre & McCarthy, LLP as Class Counsel for the Settlement Class. (Mot. at 1.) The Court previously reviewed their qualifications and appointed these attorneys as Co-Lead Counsel for Plaintiffs in this action. (Order re Appointment of Counsel, Doc. 85.) In addition to the materials submitted related to that appointment, Gibbs, Mura, Cotchett, and Zapala have provided individual resumes describing their relevant experience in complex class actions and a "firm resume" for Cotchett, Pitre & McCarthy, LLP, which describes the firm's experience in consumer protection class action matters. (Joint Decl. ¶ 42; Exs. 2-3 to Joint Decl.) From this experience, it appears that Gibbs, Mura, Cotchett, and Zapala have knowledge of the applicable law in this area. They also identify the results they have

1  obtained in many consumer class actions, including class certification and final approval of
2  large class settlements in complex cases.  (Exs. 2-3 to Joint Decl.)    Based on the
3  experience and work of Plaintiffs' proposed Class Counsel, the Court concludes that they
4  have satisfied the adequacy requirement.  The Court therefore appoints Eric H. Gibbs and
5  Andre M. Mura of Gibbs Law Group LLP and Joseph W. Cotchett and Adam J. Zapala of
6  Cotchett, Pitre & McCarthy, LLP as Class Counsel for the Settlement Class.

7

8  **B.**      **The Proposed Class Meets the Rule 23(b) Requirements**

9          Plaintiffs seek certification under Rule 23(b)(3).  (Mem. at 20.)  For the reasons set
10  forth below, the Court holds that certification of the proposed Settlement Class is
11  appropriate under Rule 23(b)(3).
12          Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that
13  the questions of law or fact common to class members *predominate* over any questions
14  affecting only individual members, and [2] that a class action is *superior* to other available
15  methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. R. 23(b)(3)
16  (emphases added).  When examining a class that seeks certification under Rule 23(b)(3),
17  the Court may consider:

18
19          (A) the class members' interests in individually controlling the prosecution
            or defense of separate actions;
20
21          (B) the extent and nature of any litigation concerning the controversy
            already begun by or against class members;
22
23          (C) the desirability or undesirability of concentrating the litigation of the
            claims in the particular forum; and
24
25          (D) the likely difficulties in managing a class action.

26  *Id.*  The Court finds that Plaintiffs' proposed Settlement Class satisfies both the
27  predominance and superiority requirements.

28

1       **1**.   **Predominance**

2       "[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship

3 between the common and individual issues in the case, and tests whether the proposed

4 class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S.*

5 *Sec. Associates, Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (internal citations and quotation

6 marks omitted). "Rule 23(b)(3) requires [only] a showing that questions common to the

7 class predominate, not that those questions will be answered, on the merits, in favor of the

8 class." *Id.* (alterations in original).

9       Here, as discussed above, Class Members' claims and Plaintiffs' claims turn on

10 whether Vizio actually collected and shared personally identifiable viewing data without

11 consumers' knowledge or consent.  These common questions and their corresponding

12 common legal remedies will predominate in this action.

13       **2.**   **Superiority**

14       The Court further finds that a class action would be a superior method of

15 adjudicating Plaintiffs' claims for the proposed Settlement Class.  "The superiority inquiry

16 under Rule 23(b)(3) requires determination of whether the objectives of the particular class

17 action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023.  "This

18 determination necessarily involves a comparative evaluation of alternative mechanisms of

19 dispute resolution." *Id.*  Here, each member of the proposed Settlement Class pursuing a

20 claim individually would burden the judicial system and run afoul of Rule 23's focus on

21 efficiency and judicial economy.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d

22 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class

23 representation would further the goals of efficiency and judicial economy.").  Further,

24 litigation costs would likely exceed potential recovery if each Class Member litigated

25 individually.  "Where recovery on an individual basis would be dwarfed by the cost of

26 litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v.*

27 *Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal citations

28 omitted).

1    Considering the non-exclusive factors under Rule 23(b)(3)(A)-(D), the Court finds

2  that Class Members' potential interests in individually controlling the prosecution of

3  separate actions and the potential difficulties in managing the class action do not outweigh

4  the desirability of concentrating this matter in one litigation.  *See* Fed. R. Civ. P. 23(b)(3).

5  Therefore, the Court finds that the proposed Class may be certified under Rule 23(b)(3).

6

7    **C.    Rule 23(g) – Appointment of Class Counsel**

8    Under Rule 23(g), "a court that certifies a class must appoint class counsel."  Fed.

9  R. Civ. P. 23(g)(1).  As previously stated in this Order, the Court is satisfied that Plaintiffs'

10  counsel is adequate and thus may be appointed as Class Counsel in this case.

11    Having found that the proposed Settlement Class satisfies the remaining elements of

12  Rule 23(a), the Court conditionally certifies the Settlement Class for settlement purposes

13  only.

14

15  **III.    PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

16    To preliminarily approve a proposed class action settlement, Rule 23(e)(2) requires

17  the Court to determine whether the proposed settlement is fair, reasonable, and adequate.

18  Fed. R. Civ. P. 23(e)(2).  In turn, review of a proposed settlement typically proceeds in two

19  stages, with preliminary approval followed by a final fairness hearing.  Federal Judicial

20  Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004). "The decision to [grant

21  preliminary approval and] give notice of a proposed settlement to the class is an important

22  event.  It should be based on a solid record supporting the conclusion that the proposed

23  settlement will likely earn final approval after notice and an opportunity to object."  Fed.

24  R. Civ. P. 23 at Committee Notes on Rules – 2018 Amendment.

25    "To determine whether a settlement agreement meets these standards, a district

26  court must consider a number of factors, including: the strength of plaintiffs' case; the risk,

27  expense, complexity, and likely duration of further litigation; the risk of maintaining class

28  action status throughout the trial; the amount offered in settlement; the extent of discovery

completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[1] and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026) (alterations omitted).

In addition to these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (internal citations and quotation marks omitted). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotation marks omitted).

At this preliminary stage and because Class Members will receive an opportunity to be heard on the Settlement Agreement, "a full fairness analysis is unnecessary." *Munday*

---

[1] Although the FTC obtained a consent decree covering the same subject matter at issue in this case, this factor does not directly apply in this case.

1 *v. Navy Fed. Credit Union*, No. SACV-151629-JLS (KESx), 2016 WL 7655807, at *7

2 (C.D. Cal. Sept. 15, 2016).  Instead, preliminary approval and notice of the settlement

3 terms to the proposed Settlement Class are appropriate where "[1] the proposed settlement

4 appears to be the product of serious, informed, non-collusive negotiations, [2] has no

5 obvious deficiencies, [3] does not improperly grant preferential treatment to class

6 representatives or segments of the class, and [4] falls within the range of *possible* approval

7 . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)

8 (internal citations and quotation marks omitted) (emphasis added); *see also Acosta v.*

9 *Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether

10 preliminary approval is appropriate, the settlement need only be *potentially* fair, as the

11 Court will make a final determination of its adequacy at the hearing on the Final Approval,

12 after such time as any party has had a chance to object and/or opt out.") (emphasis

13 original).

14     In evaluating all applicable factors below, the Court finds that the proposed

15 Settlement Agreement should be preliminarily approved.

16

17 **A.     Strength of Plaintiffs' Case**

18     The principal claims at issue here involve Vizio's alleged collection and licensing

19 of viewing data without consumers' knowledge or consent.  Plaintiffs note that the novelty

20 of the legal theories and disputed questions of fact create considerable risk that no

21 meaningful recovery would ultimately be obtained should the parties continue to litigate.

22 (Mem. at 28-29.)  Specifically, Plaintiffs concede that the Ninth Circuit's recent decision

23 in *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017) implements a less

24 forgiving legal standard regarding "personally identifiable information" than previously

25 adopted by this Court in a prior Order.  (Mem. at 25 (citing Order Denying Mot. for

26 Interlocutory Appeal, Doc. 224 at n. 4).)  This more rigorous standard substantially

27 decreases the likelihood that Plaintiffs could establish the data at issue are "personally

28 identifiable information" as required for VPPA liability.  (*Id.* at 26.)  Additionally,

1  Plaintiffs note that their Wiretap Act claim raises an issue of first impression in this

2  Circuit, and they worry that dicta in *Konop v. Hawaiian Airlines*, 302 F.3d 868, 878 (9th

3  Cir. 2002) suggest that the present facts might not amount to Wiretap Act liability, though

4  there is competing non-binding authority on the matter.  (Mem. at 26-27.)

5         Beyond uncertainty in the governing law, significant questions of fact persist,

6  including whether consumers were adequately advised that their viewing data would be

7  collected and shared and whether the information collected is sensitive.   (*Id.* at 27.)

8  Potential resolution of these questions against Plaintiffs presents significant risk to further

9  litigation.  Finally, Plaintiffs note that statutory damages—which could represent the bulk

10  of Plaintiffs' recovery—are largely discretionary and may not ultimately be awarded even

11  if liability is attached.  (*Id.* at 27-28.)

12         Considering these potential obstacles and risks inherent in further litigation, the

13  Court finds this factor weighs in favor of preliminary approval.

14

15       **B.**    **Risk, Complexity, and Likely Duration of Further Litigation**

16         In addition to the legal complexity discussed above, this case is technically complex

17  and would require the continued intensive involvement of experts to address the hardware,

18  software and data issues at play.  (*Id.* at 29-30.)  In addition to the expense and likely

19  protraction of such a complicated case, Plaintiffs would face two significant litigation risks

20  if they continued to press their suit.  First, Vizio will again seek to limit Plaintiffs'

21  injunctive relief based on its compliance with the consent decree with the Federal Trade

22  Commission, as its first attempt to do so was denied without prejudice.  (*Id.*; Order re

23  Second MTD at 5-10.)  Second, if Plaintiffs were to successfully certify a class—a risk

24  itself—Vizio would seek to compel arbitration proceedings, where equitable relief is

25  unobtainable and monetary damages may be severely limited.  (Mem. at 29.)  The Court

26  previously ruled that it "cannot definitively adjudicate the enforceability of the arbitration

27  agreement unless a class is ultimately certified."  (Order re Second MTD at 14.)

28         Settlement eliminates the risks inherent in certifying a class, prevailing at trial, and

16

withstanding any subsequent appeals, and it may provide the last opportunity for Class Members to obtain relief.  This factor therefore weighs in favor of granting preliminary approval.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (internal citations omitted)).

### C.     Risk of Maintaining Class Certification

Although Plaintiffs believe class certification would be easily obtained and maintained, they anticipate a vigorous opposition from Vizio.  (Mem. at 30.) Even a "small" risk that class certification is not achievable "weigh(s) in favor of granting final approval, as the settlement would eliminate the risk." *Vandervort v. Balboa Capital Corp*., 8 F. Supp. 3d 1200, 1206 (C.D. Cal. 2014).  Therefore, the Court finds that even the ostensibly minimal risk of maintaining class certification in this action weighs in favor of preliminary approval.

### D.     Amount Offered in Settlement

Upon reviewing Plaintiffs' Memorandum in support of their Motion and the accompanying declarations, and for the purpose of preliminary approval, the Court finds sufficient indicia that the amount offered in settlement is fair and reasonable.

Plaintiffs' expert calculates that the maximum actual harm per Class Member is $4.76, based on the value of the allegedly misappropriated personal and viewing data. (Egelman Rep. at 12.)  With an estimated 16 million potential Class Members, Vizio's maximum potential compensatory liability would be approximately $76 million.  Thus, the $17 million cash portion of the settlement represents approximately 22% of Vizio's maximum liability.  On the one hand, this percentage is somewhat inflated because it excludes any potential liability for statutory damages.  As discussed above, however, novel issues of law in the underlying claims and the discretionary nature of such damages would

make realistic calculation of potential liability speculative at best.  On the other hand, the percentage is somewhat deflated because it excludes the value of achieved injunctive relief.  (Egelman Rep. at 3, 12.)  As discussed above, however, Vizio has argued that there is considerable overlap between injunctive relief obtained as a result of the Settlement Agreement and practices implemented by a separate settlement with the FTC, which muddies the effort to ascribe value to the injunctive portion of the settlement.  Therefore, considering the difficulties inherent evaluating the potential liability associated with statutory damages and injunctive relief, the Court finds the 22% figure sufficient for present purposes, as it speaks apples to apples—compensatory liability to direct compensation—and serves as a useful barometer of settlement fairness.

A "settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (internal citations and quotation marks omitted).  The Court finds that a 22% recovery of maximum liability is consistent with recoveries that courts have found reasonable in other consumer class actions.  *See, e.g.*, *Weeks v. Kellogg Co.,* No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *15 n. 85 (C.D. Cal. Nov. 23, 2013) (approving settlement amount of 10% of consumers' average total damages); *Retta v. Millennium Prod., Inc.*, No. CV15-1801 PSG AJWX, 2017 WL 5479637, at *5 (C.D. Cal. Aug. 22, 2017) (finding settlement amount of 21% of estimated damages to be reasonable and beneficial to the class); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 588 (N.D. Cal. 2015) (approving a settlement for approximately 30% of what consumers could have expected to receive at trial); *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d at 833 (approving a consumer settlement of 42% of the plaintiffs' total potential recovery).

Moreover, the $17 million cash fund is consistent with approved funds in other VPPA or Wiretap Act claims.  *See Perkins v Linkedln*, No. 5:13-cv-04303-LHK (N.D. Cal.), Doc. 134 at 4 (approving $13 million settlement of claims concerning the collection and dissemination of user e-mails and address book contents); *Sony Gaming Networks*, No. 3:11-md-02258 (S.D. Cal.), Doc. 204-1 at 6-10 (approving $15 million settlement of

claims concerning the disclosure of online account holder information); *In re Netflix Privacy Litigation*, No. 5:11-cv-00379 (N.D. Cal.), Doc. 256 at 10 (approving settlement for $9 million plus injunctive relief valued at $4.65 million regarding claims concerning the collection and retention of users' viewing and personal information); *Fraley v. Facebook*, No. 3:11-cv-01726 (N.D. Cal.), Doc. 359 at 5 (approving $20 million settlement of claims concerning the collection of names and likenesses for promotional purposes); *Lane v. Facebook*, No. 5:08-cv-03845 (N.D. Cal.), Doc. 123 at 6-7 (approving $9.5 million settlement of claims concerning the public dissemination of information about members' online activities).

Plaintiffs also submit a declaration from Vizio's Senior Director of Accounting that discusses and contextualizes the settlement in terms of revenues Vizio obtained through licensing the data at issue.  (Siu Decl., Doc. 284-1.)  This sworn testimony allows the Court to conclude that "the aggregate size of the settlement—and, relatedly, each individual claimant's recovery—is fully supported by the reality of Defendants' financial position."  *Etter v. Thetford Corp.*, No. 8:13-cv-00081 (C.D. Cal.), Doc. 468 at 20.

Finally, the amount of the settlement is fair in view of the claims released by Plaintiffs and the Settlement Class. Each Class Member will release claims that were or could have been asserted in this action, and the release does not extend beyond Vizio and Vizio-related entities and persons.  (Settlement Agreement § XVII.1.)   The scope of this release weighs in favor of preliminary approval.  *See Retta*, 2017 WL 5479637, at *8 (approving a similar release in a consumer class action); *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." (internal citations and quotation marks omitted)).

### E.     <u>Stage of the Proceedings and Extent of Discovery Completed</u>

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Discovery can be both formal and informal. *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JLS (RZx), 2011 WL 320998, at \*9 (C.D. Cal. Jan. 27, 2011). Here, the parties engaged in extensive discovery and investigation, including: voluminous document production and review, depositions of all of the Plaintiffs, one non-party deposition, three depositions of corporate representatives pursuant to Fed. R. Civ P. 30(b)(6), interrogatories, and extensive consultation with leading technologists and privacy experts. (Mem. at 35.) Moreover, Plaintiffs' claims were tested through two motions to dismiss, a motion for interlocutory appeal, and numerous discovery motions.

Considering the parties' ample knowledge of the legal and factual strengths and weaknesses of their respective positions, the Court concludes that the parties possess sufficient information to make an informed settlement decision. Accordingly, this factor weighs in favor of granting preliminary approval.

### F.     <u>Experience and Views of Counsel</u>

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). As discussed above, Class Counsel have experience serving as plaintiffs' counsel in consumer protection class actions, and they have endorsed the Settlement Agreement as fair, reasonable, and adequate. (Joint Decl. ¶ 43.) Thus, this factor favors preliminary approval.

### G.     <u>Reaction of Class Members to Proposed Settlement</u>

The named Plaintiffs have each submitted declarations in support of settlement approval. (Docs. 282-3 to 282-8.) The Court recognizes that these are hardly a

20

1   representative sample, but without evidence of contrary Class Member opinions, they are

2   sufficient at this stage.  All Class Members will have a chance to object and otherwise be

3   heard at the Final Fairness Hearing.  At that point, a small number of objections may raise

4   a presumption that the Settlement Agreement is favorable to the Settlement Class.  *See In*

5   *re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043.

6

7   **H.    Signs of Collusion**

8          As noted above, because this settlement was reached prior to certification of the

9   class, the Court must be "particularly vigilant" for signs of collusion, including: (1) a

10  disproportionate distribution of the settlement fund to counsel, or when the class receives

11  no monetary compensation but counsel receive an ample award of attorneys' fees; (2)

12  negotiation of a "clear sailing provision" according to which defendants agree not to

13  oppose an attorney's fee award up to a certain amount; and (3) an arrangement for funds

14  not awarded to revert to defendants rather than to be added to the common settlement fund.

15  *In re Bluetooth*, 654 F.3d at 946-47.  Ultimately, the Court must determine whether Class

16  Counsel "permitted self-interest to trump their obligation to ensure a fair settlement for the

17  class as a whole."  *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions*

18  *Act (FACTA) Litig.*, 295 F.R.D. 438, 457 (C.D. Cal. 2014).

19         As to the first sign of collusion, the Court has concerns with the amount of

20  attorneys' fees that Class Counsel plans to request and will ensure a reasonable

21  relationship between attorneys' fees awarded and the benefit of the settlement to the Class

22  Members.  *See In re Bluetooth*, 654 F.3d at 948.  These concerns are further detailed

23  below.  The second sign of collusion is present, as the parties have negotiated a clear

24  sailing provision.  (*See* Settlement Agreement § XIV.1.)  The third sign of collusion is not

25  present, as any unawarded funds will be distributed to *cy pres* recipients.  (*Id.* § X.1.)

26         The Court concludes that, despite the portion of the fund allocated to attorneys' fees

27  and the presence of a clear sailing provision, "the [C]lass stands to receive a sufficiently

28  large award that these indications of collusion do not warrant invalidating the agreement as

a whole." *Georgino v. Sur la Table, Inc.*, No. CV-11-03522-MMM (JEMx), 2013 WL 12122430, at *16 (C.D. Cal. May 9, 2013);  *see also Knapp*, 283 F. Supp. 3d at 835 (finding that the *Bluetooth* factors did not indicate collusion when fully analyzed, even though "[t]he potential for two of the three signs of collusion" existed).  Moreover, the settlement was the result of extensive arm's length negotiations spanning two full days of mediation and numerous follow up discussions.  (*See* Settlement Agreement § A.6-9; Joint Decl. ¶¶ 30-34.)  These efforts were facilitated by the involvement of a retired federal judge serving as a mediator.  (*Id.*)  A "mediator's involvement in the settlement supports the argument that it is non-collusive."  *Graham v. Capital One Bank (USA), N.A.*, No. SACV-13743 JLS (JPRx), 2014 WL 12579809, at *6 (C.D. Cal. July 29, 2014).

## I.      The Court's Concerns

The Settlement Agreement provides that Class Counsel may seek an award of attorneys' fees not to exceed 33.3% of the $17 million cash fund.  (Settlement Agreement § XIV.1.)  In the Ninth Circuit, the benchmark for fees is 25% of the value of the settlement.  *See In re Bluetooth*, 654 F.3d at 942.  Accordingly, before final approval, the court will "scrutinize closely the relationship between attorneys' fees and benefit to the class" and will not "award[] unreasonably high fees simply because they are uncontested." *In re Bluetooth*, 654 F.3d at 948.

Plaintiffs construe their prospective fee request as approximately 25% of the total Settlement value, when including the injunctive relief obtained.  (Mem. at 34.)  "[I]n the *unusual* instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained [] courts [may] include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees."  *Staton*, 327 F.3d at 974 (emphasis added).  As noted above, however, the Court is not now confident that the Settlement Agreement's injunctive relief has been accurately evaluated.  Accordingly, Class Counsel is reminded that they must make a sufficient showing to justify an award of fees and they should identify relevant facts and

legal authority that supports the calculation and percentage of the proposed award.

As already discussed, Plaintiffs intend to seek representative enhancements of $5,000, an amount which is more than 160 times maximum anticipated value of payouts to individual Class Members.  (Mem. at 14.)  The enormous disparity between these proposed enhancement awards and the recovery of individual Class Members raises the specter of conflict between Plaintiffs and the Settlement Class.  *Mansfield*, 2015 WL 13651284, at *7.  Plaintiffs aver, however, that $5,000 is in line with the Ninth Circuit benchmark for representative plaintiffs who have substantially assisted with the prosecution of the case.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015).  Accordingly, any request for enhancement awards should include competent evidence demonstrating such assistance.

Considering all of the factors together, and notwithstanding the aforementioned concerns, the Court preliminarily concludes that the Settlement Agreement is fair, reasonable, adequate, and likely to earn final approval.

## IV.   APPROVAL OF THE PROPOSED SETTLEMENT ADMINISTRATOR[2]

The parties agreed to appoint A.B. Data, Ltd. as the Settlement Administrator in this action, subject to the Court's approval.  (*See* Mot. at 1.)  A.B. Data was selected through a competitive bidding process based on objective criteria.  (Reply at 2.)  Plaintiffs have provided sufficient documentation of A.B. Data's competence in carrying out the duties of a settlement administrator.  (*See* Schachter Decl., Doc. 282-11.)  Moreover, this Court has previously approved A.B. Data as Claims Administrator in another class action settlement.  *Munday v. Navy Federal Credit Union*, 2016 WL 7655796, at *9 (C.D. Cal. Sep. 15, 2016).  Accordingly, the Court approves A.B. Data as the Settlement Administrator in this

---

[2] The Court does not approve any award of costs to A.B. Data at this time.  Plaintiffs shall apply for approval of an award of costs for claims administration concurrently with their application for attorneys' fees and service payments.

1 | action.

2 |

3 | **V.     UNDERLINED: APPROVAL OF THE PROPOSED *CY PRES* RECIPIENTS**

4 |      Plaintiffs propose Electronic Privacy Information Center, Privacy Rights

5 | Clearinghouse, and World Privacy Forum be the beneficiaries of any residual settlement

6 | funds not feasibly distributable to Class Members.  (Mem. at 37.)  "Not just any worthy

7 | recipient can qualify as an appropriate *cy pres* beneficiary."  *Dennis v. Kellogg Co.*, 697

8 | F.3d 858, 865 (9th Cir. 2012).  Instead there must be "a driving nexus between the plaintiff

9 | class and the *cy pres* beneficiaries."  *Id.* (quoting *Nachsin v. AOL, LLC*, 663 F.3d 1034,

10 | 1038 (9th Cir. 2011)).  "A *cy pres* award must be guided by (1) the objectives of the

11 | underlying statute(s) and (2) the interests of the silent class members, and must not benefit

12 | a group too remote from the plaintiff class."  *Id.* (internal citations and quotation marks

13 | omitted).  Here, the proposed *cy pres* beneficiaries meet this standard.  Each has provided

14 | materials (1) affirming independence from the parties, the parties' counsel, and the Court;

15 | (2) describing organizational consumer data privacy goals aligned with the Class

16 | Members' interests at stake in this case; (3) describing how any received funds would

17 | appropriately be used; and (4) noting previous court approvals as a *cy pres* beneficiary.

18 | (*See* Ex. 4 to Joint Decl.)

19 |

20 | **VI.    PRELIMINARY APPROVAL OF CLASS NOTICE FORM AND METHOD**

21 |      For a class certified under Rule 23(b)(3), "the court must direct to class members

22 | the best notice that is practicable under the circumstances, including individual notice to all

23 | members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

24 | However, actual notice is not required.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir.

25 | 1994).

26 |      Pursuant to the Settlement Agreement, three forms of abbreviated notice will be

27 | distributed to Class Members, each of which will direct Class Members to a website hosted

28 | by the Settlement Administrator that will include a longform Class Notice and pertinent

case filings. (Settlement Agreement § VI.2; Schachter Decl. ¶¶ 6-14.)  First, Vizio will
distribute a TV Notice to approximately 6 million Class Members through affected Vizio
televisions capable of displaying such notice that will advise Class Members that they may
be members of the Settlement Class, the anticipated monetary relief, claims deadlines, and
the address for the settlement website.  (Settlement Agreement § VI.4; Mem. at 40; Ex. A
to Settlement Agreement.)  Such TV Notices will remain displayed for 45 seconds unless
dismissed by the television user.  In the event of such dismissal, the TV Notice will be
displayed on that television twice.  If not dismissed, then the TV Notice will be displayed
on that television a total of three times.  Second, the Claims Administrator will distribute
an Email Notice to the approximately 9 million potential Class Members for which Vizio
has email addresses.  (Settlement Agreement § VI.2; Mem. at 41; Ex. B to Settlement
Agreement.)  Like the TV Notice, the Email Notice will include overview information
about the case, the recipient Class Member's potential eligibility to recover, and directions
to access the settlement website.  (*Id.*)  At the hearing, Plaintiffs clarified that the Email
Notice and TV Notice groups overlap by approximately 4 million persons, meaning that a
total of 11 million unique potential Class Members will receive a TV Notice, Email
Notice, or both.  Third, the Settlement Administrator will run a digital advertising
campaign yielding a minimum of 62 million impressions.  The online advertisements will
read: "If you purchased a Vizio Smart TV you could get money from a $17 million class
action settlement" and "Click here to file a claim." (Ex. 2 to Schachter Decl.)  They will
link to the settlement website.

The Supreme Court has found notice to be sufficient if the notice is "reasonably
calculated . . . to apprise interested parties of the pendency of the action and afford them an
opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339
U.S. 306, 314 (1950); *accord Sullivan v. Am. Express Publ'g Corp.*, No. SACV 09-142-
JLS ANx, 2011 WL 2600702, at *8 (C.D. Cal. June 30, 2011) (quoting *Mullane*).  Notice
by email satisfies the "reasonably calculated" standard where, as here, the parties
previously provided their email addresses to facilitate their business dealings.  *See Kissel v.*

25

1  *Code 42 Software, Inc.*, No. SACV-151936 JLS (KESx), ECF No. 47 at 20 (C.D. Cal. Oct.

2  4, 2017); *D.Light Design, Inc. v. Boxin Solar Co.*, No. C-13-5988 EMC, 2015 WL 526835,

3  at *3 (N.D. Cal. Feb. 6, 2015) (finding service by email appropriate, in part, because it was

4  a past mode of communication between the parties and the emails did not bounce back as

5  undeliverable).  Moreover, notice via affected televisions is plainly calculated to reach

6  potential Class Members.  Finally, the recent amendments to Fed. R. Civ. P. 23(c)(2)(B)

7  explicitly indicate that "electronic means" are appropriate to disseminate class notices, and

8  the relevant Advisory Committee Note commends courts to "consider the capacity and

9  limits of current technology, including class members' likely access to such technology."

10  Fed. R. Civ. P. 23 at Committee Notes on Rules – 2018 Amendment.

11        Thus, the parties' proposed plan for providing notice by email and television

12  display is sufficient as to known Class Members.  Further, the proposed digital advertising

13  campaign is reasonably calculated to reach unknown Class Members, as its distribution

14  will be targeted based on known contact information and demographic data of the

15  Settlement Class.  (Mem. at 41; Schachter Decl. ¶ 9.)  It also provides sufficient

16  information to induce eligible consumers to follow the link to the website where they can

17  access all of the necessary information regarding the Settlement Agreement and their

18  options.  Thus, the Court finds that the proposed procedure for class notice satisfies Due

19  Process.

20        Plaintiffs have provided the Court with a copy of the proposed longform Class

21  Notice.  (Class Notice.)  Under Rule 23, the notice must include, in a manner that is

22  understandable to potential class members: "(i) the nature of the action; (ii) the definition

23  of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member

24  may enter an appearance through an attorney if the member so desires; (v) that the court

25  will exclude from the class any member who requests exclusion; (vi) the time and manner

26  for requesting exclusion; and (vii) the binding effect of a class judgment on members

27  under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

28        The Court finds the proposed Class Notice sufficient save for two deficiencies.

First, Section 17 ("Do I have a lawyer in the case?") should include the contact information for Class Counsel.  Second, in response to the Court's inquiry at the hearing, Class Counsel indicated that an electronic opt-out process is feasible.  Hence, Section 20 ("How do I exclude myself from the Settlement?") should include instructions for electronic opt-out through the settlement website.

Additionally, the Court finds that Plaintiffs' estimate of $13 to $31 recovery per claimant is reasonable and may be included on the Class Notice, as proposed.

Subject to these changes, the Court approves the form and method of Class Notice. The Court ORDERS the parties to file a revised version of the Class Notice **within ten (10) days** of entry of this Order.  The Court further ORDERS that: (1) delivery and dissemination of the Class Notice be completed within sixty (60) days thereafter; (2) the deadline for Class Members to file a claim, object or opt-out be an additional forty-five (45) days thereafter; (3) any motion for attorneys' fees, costs, and service payments be filed with the Court **no later than fifteen (15) days before** such claims deadline. Plaintiffs shall file their motion for final approval no later than **April 15, 2019**, including a brief responding to any submitted objections and otherwise summarizing Class Members' participation in the settlement to date.

Finally, to the extent that the Court's jurisdiction over this matter arises in part from the Class Action Fairness Act, the parties are required to provide appropriate notice of the proposed settlement to relevant state and federal authorities per the terms of 28 U.S.C. § 1715(b) at least 90 days prior to the date for the final fairness hearing.  28 U.S.C. § 1715(d).  *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1059 n.5 (C.D. Cal. 2010) (recognizing that the Class Action Fairness Act "requires that notice [of a proposed settlement] be sent to 'the appropriate State official of each State in which a class member resides and the appropriate Federal official.'" (quoting 28 U.S.C § 1715(b)).  Plaintiffs have submitted proofs of service demonstrating compliance with this requirement.  (*See* Exs. 1-3 to Reply.)

**VII.    <u>CONCLUSION</u>**

For the reasons discussed above, the Court (1) preliminarily approves the terms of the Settlement Agreement; (2) conditionally certifies the Settlement Class for settlement purposes only; (3) appoints Plaintiffs as Class Representatives for the Settlement Class; (4) appoints Eric H. Gibbs and Andre M. Mura of Gibbs Law Group LLP and Joseph W. Cotchett and Adam J. Zapala of Cotchett, Pitre & McCarthy, LLP as Class Counsel for the Settlement Class; (5) approves the form, content and method of delivery of the proposed Class Notice, subject to the changes identified herein; (6) appoints A.B. Data, Ltd. as Settlement Administrator; (7) approves Electronic Privacy Information Center, Privacy Rights Clearinghouse, and World Privacy Forum as *cy pres* recipients.  The Court ORDERS the parties to file a revised version of the Class Notice **within ten (10) days** of this Order.

The Court sets a Final Fairness Hearing for **May 31, 2019, at 10:30 a.m.**, to determine whether the settlement should be finally approved as fair, reasonable, and adequate to Class Members.  Plaintiffs shall file their motion for final approval no later than **April 15, 2019**.  Class Counsel shall file applications for fees and representative enhancement awards **no later than fifteen (15) days before** the latest exclusion deadline. The Court reserves the right to continue the date of the Final Fairness Hearing without further notice to Class Members.

DATED: January 04, 2019

_____
     JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE